**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

MAYA PARIZER, *et al.*,

      PLAINTIFFS,

      v.

AJP EDUCATIONAL FOUNDATION, INC.
a/k/a AMERICAN MUSLIMS FOR
PALESTINE, *et al.*,

      DEFENDANTS.

CASE NO. 1:24-cv-00724-RDA-IDD

**MEMORANDUM IN SUPPORT OF DEFENDANT AMP'S**
**MOTION TO DISMISS UNDER RULES 12(b)(1) AND 12(b)(6)**

# TABLE OF CONTENTS

TABLE OF CONTENTS................................................................................................................ii

TABLE OF AUTHORITIES ...................................................................................................... iv

I.      INTRODUCTION.............................................................................................................. 1

    A.  Plaintiffs' Claims Fail Under the ATS................................................................. 1

    B.  Plaintiffs' Claims Fail Under the ATA ................................................................ 2

    C.  Plaintiffs Wrongly Merge the Defendants in Their Complaint ....................... 2

II.     FACTS AND PROCEDURAL HISTORY ................................................................ 3

    A.  Plaintiffs Fail to Tie AMP to the October 7 Attacks ........................................ 3

    B.  AMP is the Wrong Defendant for Plaintiffs' Harms ....................................... 4

    C.  Plaintiffs Wrongfully Rely on Post-October 7 Activity to Create Liability ................. 5

    D.  Plaintiffs Wrongfully Rely on Out-of-Circuit, Unproven Allegations .......................... 6

    E.  Procedural History ................................................................................................ 6

III.    STANDARDS OF REVIEW ....................................................................................... 7

    A.  Federal Rule of Civil Procedure 12(b)(1) ........................................................ 7

    B.  Federal Rule of Civil Procedure 12(b)(6) ........................................................ 8

    C.  Judicial Notice ....................................................................................................... 8

    D.  The Anti-Terrorism Act, 18 U.S.C. § 2333(d)................................................ 10

    E.  The Alien Tort Statute, 28 U.S.C. § 1350........................................................ 10

IV.    ARGUMENT .................................................................................................................. 11

    A.  This Court Lacks Subject Matter Jurisdiction Under the ATS ...................... 12

         1.  Plaintiffs fail to justify an extraterritorial application of the ATS ................... 12

         2.  AMP did not perpetrate the October 7 attacks, nor do plaintiffs allege AMP did .................................................................................................. 13

         3.  AMP's alleged activities constitute protected First Amendment speech and advocacy, unconnected to the acts of October 7 ................................ 14

         4.  Fourth Circuit precedent precludes liability ........................................ 15

         5.  Plaintiffs fail to plead a violation of an international norm contemplated by the ATS............................................................................................................. 16

    B.  The U.S.-Citizen Plaintiffs Fail to State a Claim Under the ATA................ 18

         1.  AMP acknowledges plaintiffs sustained harm from Hamas' actions................ 18

         2.  Recent Supreme Court decisions confirm Plaintiffs fail to meet their burden... 19

         3.  Plaintiffs fail to plead sufficient facts showing AMP participated in illegal or tortious activity prior to October 7, 2023 ......................................... 21

4.    Plaintiffs fail to sufficiently plead substantial assistance with the October 7 attack.................................................................................................. 23

C.  The Non-Citizen Plaintiffs Fail to State a Claim Under the ATS................................. 25

V.     CONCLUSION ........................................................................................... 26

CERTIFICATE OF SERVICE............................................................................... 28

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Adams v. Bain*
  697 F.2d 1213 (4th Cir. 1982) ............................................................... 12

*Alexander v. Hilton Hotels Worldwide*
  2024 U.S. Dist. LEXIS 5677 (E.D. Va. Jan. 9, 2024) ........................................ 8, 12

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ........................................................................ 8

*AstraZeneca UK Ltd. v. Atchley*
  2024 U.S. LEXIS 2785 (S.Ct. June 24, 2024) ............................................... 24

*Atchley v. AstraZeneca UK Ltd.*
  22 F.4th 204 (D.C. Cir. 2022) ............................................................ 24

*Aziz v. Alcolac, Inc.*
  658 F.3d 388 (4th Cir. 2011) .......................................................... 14, 26

*Beck v. McDonald*
  848 F.3d 262 (4th Cir. 2017) .............................................................. 8

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) ....................................................................... 8

*Bryant v. Udell & Assocs.*
  2023 U.S. Dist. LEXIS 140767 (E.D. Va. Aug. 11, 2023) ..................................... 7

*Clark v. Trans Union, L.L.C.*
  2016 U.S. Dist. LEXIS 170720 (E.D. Va. Dec. 9, 2016) ..................................... 9

*Cornejo v. Cnty. of San Diego*
  504 F.3d 853 (9th Cir. 2007) ............................................................. 16

*Crosby v. Twitter, Inc.*
  921 F.3d 617 (6th Cir. 2019) ......................................................... 18, 23

*EEOC v. St. Francis Xavier Parochial Sch.*
  117 F. 3d 621 (D.C. Cir. 1997) ........................................................... 9

*Freeman v. HSBC Holdings Pub. Ltd. Co.*
  57 F.4th 66 (2d Cir. 2023) .............................................................. 19

*Halberstam v. Welch*
  705 F.3d 472 (D.C. Cir. 1983) ........................................................... 24

*In re Chiquita Brands Int'l, Inc.*
  792 F. Supp. 2d 1301 (S.D. Fla. 2011) ................................................... 17

*In re IronNet, Inc. Sec. Litig.*
  2023 U.S. Dist. LEXIS 139294 (E.D. Va. Aug. 9, 2023) .................................... 9

*Jesner v. Arab Bank, Pub. Ltd. Co.*
  458 U.S. 241 (2018) ..................................................................... 13

iv

*Jesner v. Arab Bank, Pub. Ltd. Co.*
   584 U.S. 241 (2018) ................................................................................ 16

*Keren Kayemeth LeIsrael, et al. v. Educ. For a Just Peace in the Middle E.*
   144 S. Ct. 713 (2024) .............................................................................. 20

*Kerns v. United States*
   585 F.3d 187 (4th Cir. 2009) .................................................................... 8

*Kiobel v. Royal Dutch Petro. Co.*
   569 U.S. 108 (2013) .......................................................................... 13, 25

*Leisrael v. Educ. for a Just Peace in the Middle E.*
   530 F. Supp. 3d 8 (D.D.C. 2021) ....................................................... 23, 24

*Leisrael v. Educ. for a Just Peace in the Middle E.*
   66 F.4th 1007 (D.C. Cir. 2023) ................................................. 10, 21, 24

*Mastafa v. Chevron Corp.*
   770 F.3d 170 (2d Cir. 2014) ................................................................... 13

*Morrison v. Nat'l Austl. Bank Ltd.*
   561 U.S. 247 (2010) ............................................................................... 13

*Nestle USA, Inc. v. Doe*
   593 U.S. 628 (2021) ........................................................................ *passim*

*Olawole v. ActioNet, Inc.*
   258 F. Supp. 3d 694 (E.D. Va. 2017) ....................................................... 9

*Papasan v. Allain*
   478 U.S. 265 (1986) ................................................................................. 8

*RJR Nabisco, Inc. v. Eur. Cmty.*
   579 U.S. 325 (2016) ............................................................................... 14

*Rodney Mills v. City of Norfolk*
   2020 U.S. Dist. LEXIS 241340 (E.D. Va. Dec. 22, 2020) ....................... 9

*Rosemond v. United States*
   572 U.S. 65 (2014) ................................................................................. 10

*Sosa v. Alvarez-Machain*
   542 U.S. 692 (2004) .................................................................... 11, 12, 16

*Summit Cmty. Bank v. David*
   629 B.R. 804 (E.D. Va. 2021) .............................................................. 9, 10

*Tel-Oren v. Libyan Arab Republic*
   726 F.2d 774 (D.C. Cir. 1984) ................................................................ 17

*Terrorist Attacks on September 11, 2001 v. Al Rajhi Bank*
   714 F.3d 118 (2d Cir. 2013) ................................................................... 17

*Trudeau v. FTC*
   456 F.3d 178 (D.C. Cir. 2006) ................................................................. 8

*Twitter, Inc. v. Taamneh*
   598 U.S. 471 (2023)................................................................................ 10, 21, 23, 24

*Wahi v. Charleston Area Med. Ctr., Inc.*
   562 F.3d 599 (4th Cir. 2009) ........................................................................ 8

## **Statutes**

18 U.S.C § 2331(1) ........................................................................................ 18

18 U.S.C. § 2333(d) .............................................................................. 2, 10, 18

18 U.S.C. § 2333(d)(2) ................................................................................. 10

28 U.S.C. § 1350 ..................................................................... 1, 11, 12, 25

## **Rules**

Fed. R. Civ. P. 12(b)(1) ................................................................................. 7

Fed. R. Civ. P. 12(b)(6) ................................................................................. 8

Fed. R. Evid. 201(b) ..................................................................................... 9

Fed. R. Evid. 201(c)(2) ................................................................................. 9

## I.      INTRODUCTION

Free speech and exercise of the right to freely associate with others, even when not universally liked, do not equate to terrorism. Plaintiffs accuse American Muslims for Palestine of facts that constitute no more, and their claims against it therefore fail as a matter of law. Plaintiffs filed this litigation, amending their Complaint thereafter, with 207 paragraphs of allegations against six defendants. Am. Compl., Doc. 24.[1] Plaintiffs seek compensation for harm caused by Hamas' attack in Israel on October 7, 2023. But Plaintiffs misdirect their lawsuit: instead of going after the perpetrators of the events that caused their harm, Plaintiffs blame AJP Educational Foundation, Inc., d/b/a American Muslims for Palestine ("AMP" or "Defendant") based on its protected free speech within the United States on behalf of Palestine. The law does not support this. The causes of action under which Plaintiffs seek relief do not allow for that. AMP asks this Court to dismiss this misdirected attempt for the reasons stated herein.

### A.      Plaintiffs' Claims Fail Under the ATS

The non-U.S. citizen Plaintiffs' claims under the Alien Tort Statue ("ATS"), 28 U.S.C. § 1350, fail because they allege no facts that endow this Court with subject matter jurisdiction. The Supreme Court and the Fourth Circuit both describe the narrow scope of applicable claims under the ATS that does not include the scope of these Plaintiffs' allegations. Plaintiffs do not allege that AMP either perpetrated the attacks on October 7, or provided support to Hamas for the purpose of committing the October 7 attacks. The non-citizen Plaintiffs fail to establish the necessary prerequisites to show this Court's jurisdiction. In the alternative and should this Court determine it does have jurisdiction, the non-citizen Plaintiffs' claims fail to allege a claim upon which relief can be granted under the ATS.

---

[1] AMP is a stand-alone organization with no corporate affiliation to separate defendants National Students of Justice in Palestine ("NSJP") or WESPAC Foundation ("WESPAC").

**B.      Plaintiffs' Claims Fail Under the ATA**

The U.S.-citizen Plaintiffs fail to allege facts sufficient to show any non-conclusory connections between AMP's legitimate and lawful advocacy within the United States and the actions of Hamas in Israel that establish liability for AMP under the ATA. Plaintiffs' allegations under the ATA hinge on an expansive theory of aiding and abetting liability that exceeds what Congress articulated. *See* Doc. 24 at 1-4. Plaintiffs do not allege that AMP participated in the October 7, 2023 terrorist attack perpetrated by Hamas, or even that AMP provided assistance for the attack. *See, e.g.*, *id*. at ¶ 181. AMP played no role in that attack and provided no support for it; Plaintiffs do not claim otherwise. As a result, their claims under the ATA fail under Fed. R. Civ. P. 12(b)(6). Plaintiffs' allegations at most theorize that AMP participated in constitutionally protected free speech and protests domestically, <u>after</u> the attacks had already occurred. *Id*. at ¶¶ 171, 181, 190-191.[2] The First Amended Complaint identifies numerous campus protests occurring after October 7, none of which meet Plaintiffs' required showing.

AMP bears no liability under the ATA for terrorist actions that Plaintiffs fully acknowledge other parties committed and on which it had no knowledge. Plaintiffs' Amended Complaint remains devoid of any allegations that tie AMP to the acts that caused their injury.

**C.      Plaintiffs Wrongly Merge the Defendants in Their Complaint**

Plaintiffs sued National Students for Justice in Palestine ("NSJP") and WESPAC Foundation ("WESPAC") as separate parties; AMP neither speaks for nor is responsible for any

---

[2] With apparent awareness that their claims target protected free speech rights, Plaintiffs attempt to pre-empt this legal limitation with the conclusory assertion that this lawsuit is "not to suppress constitutionally protected speech." Doc. 24 at 71-72. But that reassuring assertion does not change the nature of their allegations.

acts of NSJP or WESPAC that may or may not lead to liability as pled.[3] Plaintiffs allege that NSJP organized in 2023 with a centralized structure and utilizes WESPAC as its fiscal sponsor. *Id.* at ¶ 61. None of the attachments to Plaintiffs' Amended Complaint refer to AMP. Plaintiffs provide nothing more than their own speculative conclusions that AMP took part in the production or dissemination of the materials. Doc. 24 at ¶¶ 78, 82. Plaintiffs cannot establish any liability of AMP for the actions of any other entity defendant.

## II.     FACTS AND PROCEDURAL HISTORY

AMP operates wholly in the United States as a 501(c)(3) non-profit organization that works to advance Palestinian rights and awareness of Palestine's rich history and culture within the United States.[4] Since its founding in 2006, AMP has continuously worked toward that stated mission.[5] AMP does not accept donations from outside of the United States nor does it send money to any party outside of United States.[6]

### A.     Plaintiffs Fail to Tie AMP to the October 7 Attacks

Plaintiffs, all victims of Hamas' terrorist attack on October 7 in Israel, are seven U.S. citizens and two Israeli citizens who reside outside of the United States. Each Plaintiff alleges

---

[3] AMP takes no position in this Motion on the veracity of Plaintiffs' claims against NSJP or WESPAC, and responds on its own behalf solely as to the allegations made against AMP.

[4] Plaintiffs allege AMP purposefully obfuscates its corporate structure by using a designated "doing business as" name, as businesses of all types commonly do. *See* Doc. 24 at ¶¶ 51-52. In reality, AMP's corporate structure is transparent and available in its publicly filed corporate documents, and legally compliant. *See* Exhibit A.

[5] *About AMP*, AMERICAN MUSLIMS FOR PALESTINE, https://www.ampalestine.org/about-amp (last visited August 5, 2024).

[6] Plaintiffs cite heavily to the operative complaint in the *Boim v. AMP* matter pending in the Northern District of Illinois. *See* Doc. 24 at 6 n.1 and 8 n.7. Yet that litigation arises out of facts and events that occurred in 1996; that lawsuit also alleges only alter ego and successor liability claims against AMP, relating back to a different, now defunct, organization's liability for actions in 1996. This Court therefore need not, and should not, take judicial notice of those unproven allegations or accept them as true.

harms at the hands of Hamas terrorists that caused "mental anguish, pain, and suffering." Doc. 24 at ¶¶ 1-9. While none of the nine Plaintiffs alleges physical injuries, many escaped Hamas' attacks on October 7 and all lost friends and relatives. *See generally* Doc. 24. Plaintiffs assert two causes of action in this lawsuit: the seven U.S.-citizen plaintiffs sue under Count I, relying on the ATA, and the two Israeli citizen plaintiffs sue under Count II, based on the ATS. The bulk of the allegations added by the First Amended Complaint detail post-October 7 college student protests – lawful expressions of free speech – and conferences within the United States. Many of those have nothing to do with AMP, and none predates the attacks on October 7 that caused Plaintiffs' harm. *Id*. at ¶¶ 78-153. None of the Plaintiffs' allegations asserts any participation by AMP in the October 7 attacks; they instead raise only general allegations that AMP must have violated the ATA and ATS because it supports Palestinian advocacy. *Id*. at ¶¶ 176-206. Each of Plaintiffs' exhibits, and the vast majority of their allegations overall, identify incidents that occurred <u>after</u> the October 7, 2023 attacks. *Id*. at ¶¶ 78-171. Plaintiffs do not allege that AMP participated in or orchestrated any of the acts of violence Plaintiffs describe in their allegations. *Id*. at ¶ 95.

**B.     AMP is the Wrong Defendant for Plaintiffs' Harms**

Plaintiffs acknowledge that Hamas perpetrated this attack, and believe it to be with Iranian assistance. *Id*. at ¶ 23. Yet Plaintiffs direct their efforts to recover for their harms at U.S. nonprofit AMP, instead of those they themselves name as the perpetrators. *Id*. at ¶ 67. Plaintiffs have every right to seek restitution from the entities and individuals that caused them harm; AMP simply is not the right defendant to accomplish that goal. AMP's actions fulfill its lawful mission to educate the American public about Palestine and its rich history and culture within the U.S. These acts do not and cannot render AMP responsible to Plaintiffs under any U.S. laws and certainly not under the statutes alleged. The laws of the United States recognize no imputed liability based on shared

4

heritage and ancestry. For that reason, Plaintiffs' claims against AMP fail as a matter of law both under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

Plaintiffs rely on an aiding and abetting theory under the ATA, but do not even allege that AMP directly aided or abetted Hamas in its terrorist attack on October 7, a necessary element for liability under the ATA. *Id*. at ¶¶ 176-194. Plaintiffs rightfully attribute the October 7, 2023 attack in Israel to Hamas. *Id*. at ¶ 67. Plaintiffs also rightly allege that Hamas continues to hold hostages and launch rockets into Israel. *Id*. at ¶ 68. Plaintiffs do not allege that AMP knew of the attacks before October 7, nor that AMP participated in any way in the planning or execution of those attacks by Hamas. Instead, Plaintiffs allege that AMP "provid[es] invaluable communication services that Hamas cannot receive or pay for elsewhere in the United States." Compl. at ¶ 100. Plaintiffs assert that "Defendants" – assuming an interchangeable identity between AMP and the other entity defendants that does not exist – "launch objectively false propaganda and terrorize institutions to sway global public opinion against Israel and toward Hamas." *Id*. at ¶ 73. Plaintiffs make only conclusory and speculative allegations against AMP that "[e]xactly as AMP intended, NSJP acted as Hamas's loyal foot soldiers for Hamas's propaganda battle on university campuses across the United States." *Id*. at ¶ 78. The ten paragraphs that follow that conclusory statement describe an NSJP "Toolkit" attached as an exhibit to Plaintiffs' Amended Complaint; nowhere do Plaintiffs allege that AMP played any role in creating or distributing this Toolkit, nor that AMP reviewed, blessed, or promoted its content. *Id*. at ¶¶ 78-88. Even if the "Toolkit" could suffice to support Plaintiffs' claims against those who created it, Plaintiffs fail to connect AMP.

C.     **Plaintiffs Wrongfully Rely on Post-October 7 Activity to Create Liability**

Plaintiffs also allege that "Defendants" – again, making no distinction between AMP and the other entity defendants – subsequently "engag[ed] in illegal acts of domestic terrorism –

including trespass, assault, vandalism, robbery, destruction of property, harassment, and intimidation." *Id*. at ¶ 95. Plaintiffs provide a list of incidents occurring on college campuses across the nation <u>after</u> October 7, alleging without any factual support that AMP knew of or supported the actions of students on each of those campuses, or that those actions suffice as "terrorism." *Id*. at ¶ 97. Plaintiffs claim instead, as supposed evidence of AMP's coordination with Hamas, that AMP organized and supported efforts within the United States to support Palestine and raise awareness of the plight of Palestinians with actions including marches, boycotts, and strikes. *Id*. at ¶¶ 102(b), 106. As explained more fully below, none of these allegations suffices to demonstrate that AMP at any time knowingly provided substantial assistance to Hamas, either before or after the October 7 attacks.

### D.    Plaintiffs Wrongfully Rely on Out-of-Circuit, Unproven Allegations

The bulk of Plaintiffs' allegations predating October 7 arise from the First Amended Complaint in the *Boim v. AMP* matter arising from events in 1996, pending before the Northern District of Illinois. Plaintiffs point to a 2004 civil judgment against unrelated and now defunct entities (the "Judgment Defendants"), and the criminal convictions of five individuals involved in those entities. *Id*. at ¶¶ 28-31. Yet that ongoing litigation, now in its seventh year, provides no factual basis for AMP's liability in this matter relating to October 7. Even those unproven and unsupported allegations do not establish liability under either the ATA or the ATS because they derive from actions in 1996 that have no bearing on Plaintiffs' claims here.

### E.    Procedural History

Plaintiffs filed their Complaint on May 1, 2024. On May 7, 2024, Plaintiffs served Defendant AMP via its Executive Director, Dr. Osama Abuirshaid, at AMP's listed address in Falls Church, Virginia. Doc. 1. Plaintiffs also attempted to serve Dr. Abuirshaid with the summons

for Defendant NSJP. Dr. Abuirshaid rightly refused to accept service for NSJP. *See* Doc. 9.1 at 4. Counsel for Plaintiffs contacted AMP's counsel to ask if AMP's counsel would accept service on behalf of NSJP, "[g]iven [AMP]'s role as the parent organization of NSJP." *Id*. AMP's counsel informed Plaintiffs' counsel that AMP is <u>not</u> the parent organization of NSJP, and therefore could not and will not accept service on NSJP's behalf. *Id* at 3. Plaintiffs then amended their Complaint. Doc. 24. Defendant AMP, on its own behalf, now respectfully submits this Motion to Dismiss. This Motion neither takes nor presumes any position on the sufficiency of the allegations against any other defendant, and only addresses the insufficiency of the allegations against AMP.

### III.     STANDARDS OF REVIEW

#### A.     Federal Rule of Civil Procedure 12(b)(1)

Courts must satisfy themselves that they have jurisdiction to hear a matter before they may review the allegations. *Bryant v. Udell & Assocs.*, No. 1:23-cv-00414 (AJT/LRV), 2023 U.S. Dist. LEXIS 140767, at *5 (E.D. Va. Aug. 11, 2023) (recognizing federal court jurisdiction derives from the Constitution and federal statutes).

When defendants challenge subject matter jurisdiction under Rule 12(b)(1), plaintiffs bear the burden to show jurisdiction exists. *Id.* If defendants assert a facial challenge and argue that the facts alleged in the complaint do not sufficiently confer jurisdiction, courts consider the alleged facts as true – other than purely conclusory allegations and legal conclusions. *Id.* (citing *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)); *Alexander v. Hilton Hotels Worldwide*, No. 1:23-cv-935 (RDA/JFA), 2024 U.S. Dist. LEXIS 5677, at *3 (E.D. Va. Jan. 9, 2024) (citing *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017)) ("[C]onclusory statements and legal conclusions in a complaint are not entitled to a presumption of truth.").

**B.      Federal Rule of Civil Procedure 12(b)(6)**

To survive a motion to dismiss pursuant to Rule 12(b)(6), Plaintiffs' Complaint must contain sufficient factual allegations that, if accepted as true at this stage, state a plausible claim for relief. Claims are facially plausible when plaintiffs plead factual content that allows the court to draw reasonable inferences that the defendant could be liable for the misconduct alleged if the allegations ultimately prove true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facts alleged in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Courts need not accept as true "a legal conclusion couched as a factual allegation," nor any inferences unsupported by the facts set forth in the complaint. *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (internal quotation marks omitted). Nor must courts accept "unwarranted inferences, unreasonable conclusions, or arguments." *Alexander*, 2024 U.S. Dist. LEXIS 5677, at *4 (2024) (quoting *Wahi v. Charleston Area "ed. "tr., Inc.*, 562 F.3d 599, 616 (4th Cir. 2009)) (internal citations omitted).

**C.      Judicial Notice**

Courts may take into consideration the facts alleged in a complaint, any documents either attached to or incorporated in a complaint and matters of which courts may properly take judicial notice. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F. 3d 621, 624-25 (D.C. Cir. 1997). Courts may "judicially notice a fact that is not subject to reasonable dispute" if the facts are "(1) generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). If a party requests a court take judicial notice of a fact and supplies the necessary information, the court "must" take judicial notice of that fact. Fed. R. Evid. 201(c)(2); *Rodney Mills v. City of*

8

*Norfolk*, No. 2:20CV521 (RCY), 2020 U.S. Dist. LEXIS 241340, at *10 (E.D. Va. Dec. 22, 2020); *see also Summit Cmty. Bank v. David*, 629 B.R. 804, 814 (E.D. Va. 2021) (finding it inappropriate for a court to take judicial notice of facts that are in dispute).

This Court may take judicial notice of the contents of AMP's publicly available website, AMP's publicly filed IRS Form 990s, and AMP's publicly filed incorporation and corporate status documents.[7] *In re IronNet, Inc. Sec. Litig.*, No. 1:22-cv-449 (RDA/JFA), 2023 U.S. Dist. LEXIS 139294, at *3 n.2 (E.D. Va. Aug. 9, 2023) (holding courts may take judicial notice of public filings by a party and exhibits whose authenticity is not in doubt); *Olawole v. ActioNet, Inc.*, 258 F. Supp. 3d 694, 701 n.6 (E.D. Va. 2017) (finding it appropriate for courts to take judicial notice of facts "memorialized in a public record available from Maryland's registry of corporations").

AMP objects to the Court taking judicial notice of each of the exhibits attached to Plaintiffs' complaint, because Plaintiffs do not establish the source of each, many of which are random writings pulled from anonymous sources on the internet. Therefore, each exhibit's accuracy remains reasonably questionable. *Clark v. Trans Union, L.L.C.*, No. 3:15cv391, 2016 U.S. Dist. LEXIS 170720, at *10 (E.D. Va. Dec. 9, 2016) (refusing to take judicial notice of materials where the party "made no attempt to certify this docket sheet as a public record, or to offer any witness regarding its authenticity"). In fact, many citations in the Amended Complaint merely recite social media posts on individual accounts and the opinions therein. Doc. 24 at notes 84, 92, 108, 126, 131, 132, 134, 135, 137, 138, 140–143, 157–163, 167–171, and 173–175. AMP also objects to the Court taking judicial notice of the allegations in the *Boim v. AMP* complaint, as those allegations remain highly contested. *Summit Cmty. Bank*, 629 B.R. at 814 (concluding "the

---

[7] Defendant AMP attaches copies of these documents for this Court's convenience at Exhibits A, B and C.

9

Court cannot find that the Bankruptcy Court's error in considering these extrinsic facts was harmless"). In addition to their contested nature, the *Boim* allegations add no substantive value to the allegations in this lawsuit, as they arise from an entirely different set of facts and timeframe.

**D.      The Anti-Terrorism Act, 18 U.S.C. § 2333(d)**

The Anti-Terrorism Act ("ATA"), pled in Count I of Plaintiffs' Complaint, creates a cause of action for U.S. nationals injured by an act of international terrorism against (in relevant part) "any person who aids and abets, by knowingly providing substantial assistance" to the actor who committed the act of international terrorism. 18 U.S.C. § 2333(d)(2). Plaintiffs must establish that the party alleged to have aided or abetted took "some 'affirmative act' 'with the intent of facilitating the offense's commission.'" *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 490 (2023) (quoting *Rosemond v. United States*, 572 U.S. 65, 71 (2014)). Plaintiffs also bear the burden to establish that a defendant was "generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance." *Leisrael v. Educ. For a Just Peace in the Middle E.*, 66 F.4th 1007, 1016 (D.C. Cir. 2023). The defendant must "knowingly and substantially assist the principal violation." *Id*. Finally, Plaintiffs must show the assistance was both substantial and significantly enhanced the terrorist organization's ability to carry out its activities. *Taamneh*, 598 U.S. at 495 (finding insufficient the claim that a defendant assisted a "transcendent 'enterprise' separate from and floating above all the actionable wrongs that constitute it"). AMP neither undertook, participated in, assisted, or aided and abetted Hamas's October 7 attacks in any way.

**E.      The Alien Tort Statute, 28 U.S.C. § 1350**

The Alien Tort Statute ("ATS") pled in Count II provides an avenue for non-U.S. citizens to bring civil lawsuits in U.S. federal courts for harm caused by torts committed by U.S. actors that constitute serious violations of international law. 28 U.S.C. § 1350. To sufficiently plead a

claim under the ATS, a non-U.S. citizen plaintiff must allege a violation of an international law norm limited by the Supreme Court to a "handful of heinous actions—each of which violates definable, universal and obligatory norms." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 732 (2004). Plaintiffs must also overcome the presumption against extraterritorial application of the statute by alleging that domestic conduct is sufficiently connected to the conduct that harmed the plaintiff. *Nestle USA, Inc. v. Doe*, 593 U.S. 628, 634 (2021). Plaintiffs may not rely on "generic allegations" to "draw a sufficient connection between the cause of action … and domestic conduct." *Id.* Plaintiffs allege no U.S.-based conduct that proximately caused the October 7 attacks and the resulting injuries.

## IV.   ARGUMENT

Plaintiffs fail to allege any facts that would create any liability by AMP under the ATA or the ATS. As an initial matter, this Court does not have subject matter jurisdiction to review the claims under the ATS, a jurisdictional statute. Even if this Court did determine it has jurisdiction, Plaintiffs fail to state a claim on which relief can be granted under either the ATA or the ATS. Plaintiffs fail to allege substantial assistance to Hamas in its October 7 attack, and fail to allege a conspiracy involving AMP to carry out its attacks. Without facts supporting allegations of substantial assistance to or participation in these attacks, there is no liability to the U.S.-citizen Plaintiffs who have sued under the ATA. The facts alleged merely show that AMP advocates, exclusively in the U.S., for the movement for justice for Palestinians, propagates views in favor of Palestinian self-determination, and challenges certain actions of the government of Israel, and has done so since its founding in 2006. If that sufficed to provide liability, under any theory, then potentially millions of Americans would be subject to suit, including prominent personalities and elected officials. Support for Palestinians does not equate to support of terrorism.

**A.      This Court Lacks Subject Matter Jurisdiction Under the ATS**

AMP is incorporated in and acts fully within the United States. Plaintiffs allege no differently. Although Plaintiffs may disagree with the contents reflected in AMP's work, that disagreement does not confer jurisdiction on this Court. This Court must dismiss the non-citizen Plaintiffs' allegations under the ATS because they fail to "allege facts upon which subject-matter jurisdiction may be based." *Alexander*, 2024 U.S. Dist. LEXIS 5677, at *3 (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4ᵗʰ Cir. 1982)). The statute provides jurisdiction for district courts over civil actions brought by an alien for a tort only committed in violation of international law or U.S. treaties. 28 U.S.C. § 1350. Though the statute itself is threadbare, substantial case law creates the contours of its application. First, the non-citizen Plaintiffs fail to plead facts to overcome the presumption against extraterritorial application of the ATS. *Nestle USA, Inc.*, 593 U.S. at 632. Second, the non-citizen Plaintiffs fail to plead that AMP violated one of the limited international law norms contemplated by the statute. *Sosa*, 542 U.S. at 712. Neither advocacy for Palestinians nor education about and awareness of Palestine's history and culture violate any U.S. laws. Even if this Court accepts all non-conclusory allegations as true, the non-citizen Plaintiffs fail to allege a cause of action under the ATS sufficient to vest this Court with jurisdiction.

1.      Plaintiffs fail to justify an extraterritorial application of the ATS

While the ATS gives federal courts jurisdiction to hear specific civil actions filed by aliens, Supreme Court precedents establish that courts may exercise common-law authority under this statute only "in very limited circumstances." *Nestle USA, Inc.*, 593 U.S. at 635. The Supreme Court held that a presumption against extraterritorial application applies to ATS, barring plaintiffs, in most situations, from bringing a claim regarding conduct that occurred in the territory of a foreign sovereign. *See Kiobel v. Royal Dutch Petro. Co.*, 569 U.S. 108, 115 (2013) (explaining that a

presumption against extraterritorial application of U.S. law prevents clashes that could "result in international discord"). A plaintiff may overcome that presumption only where a defendant's actions in support of the tort sufficiently touch and concern the United States. *Compare Mastafa v. Chevron Corp.*, 770 F.3d 170, 182-83 (2d Cir. 2014) (finding sufficient a series of financial transactions that occurred in the U.S. to enable a terrorist actor to bypass sanctions) *with Nestle USA, Inc*, 593 U.S. at 634 (finding insufficient an allegation that a company's general operational decisions are made in the United States). Causes of action based on overseas acts also implicate state and international relations, thereby improperly interfering with Executive Branch functions. *Jesner v. Arab Bank, Pub. Ltd. Co.*, 458 U.S. 241, 258 (2018). Here, the Plaintiffs only allege that the actions causing the injury occurred outside of the U.S.; they have not met the standard to overcome the presumption against the extraterritorial application. For that reason alone, this Court has no jurisdiction over the ATS claim.

       2.     <u>AMP did not perpetrate the October 7 attacks, nor do Plaintiffs allege AMP did</u>

Courts recognize a general norm against extraterritorial application of U.S. law, so where a statute "gives no clear indication of an extraterritorial application, it has none." *Kiobel*, 569 U.S. at 115 (quoting *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 255 (2010)). Although the ATS ensures that the United States can provide a forum for adjudicating certain events, "[n]othing… suggests that Congress also intended federal common law under the ATS to provide a cause of action for conduct occurring in the territory of another sovereign." *Id.* at 124. Supreme Court precedent "reflect[s] a two-step framework for analyzing extraterritoriality issues." *Nestle USA, Inc.*, 593 U.S. at 632 (citing *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 337 (2016)). First, courts will presume that a statute applies only domestically and ask "whether the statute gives a clear, affirmative indication" that rebuts this presumption. *Id.* Second, where the statute does not

apply extraterritorially, plaintiffs must establish that "the conduct relevant to the statute's focus occurred in the United States." *Id.*  In *Nestle*, the Court held that individuals trafficked in the Ivory Coast to undertake cocoa farming could not sue companies in the United States for activities undertaken in the U.S. unrelated to the tort alleged. The gravamen of the complaint was the human trafficking in the Ivory Coast; the U.S. activities alleged exclusively focused on aiding and abetting, through everyday business tasks, acts that occurred overseas. *Id.* at 633. The Court determined that the actions undertaken in the U.S. had insufficient ties to the alleged torts overseas to overcome the presumption. *Id.*

       3.    <u>AMP's alleged activities constitute protected First Amendment speech and advocacy, unconnected to the acts of October 7</u>

All the harmful activity the non-citizen Plaintiffs allege in this lawsuit, the October 7 attacks in Israel, undisputedly occurred outside of the United States. *See* Doc. 24 at ¶ 203. Plaintiffs fail to allege that AMP undertook any actions, enabling the attacks to occur, "with the purpose of facilitating the commission of that crime." *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 396 (4th Cir. 2011). Plaintiffs allege in conclusory fashion that AMP "provided Hamas with material support despite knowledge of Hamas's terrorist activity." *See* Compl. At ¶ 204. That alleged material support, according to Plaintiffs, consists of sponsoring marches, advocating for boycotts, and releasing educational materials in support of AMP's mission to advocate for justice for Palestine within the United States. *Id.* at ¶¶ 102(b), 102€, 106. These lawful acts do not suffice to tie the October 7 attacks in Israel to any domestic action, and Plaintiffs therefore cannot overcome the presumption against extraterritorial application. Accordingly, this Court should find it does not have jurisdiction over Plaintiffs' ATS claims.

4.     Fourth Circuit precedent precludes liability

Even knowledge of wrongful actions does not suffice to trigger liability under the ATS. The Fourth Circuit adopted a narrow reading of liability under the ATS articulating a two part test that practical, substantial assistance be provided for the purpose of committing a crime. In *Aziz v. Alcolac, Inc*., the Court held that "a defendant may be held liable under international law for aiding and abetting the violation of that law by another when the defendant (1) provides practical assistance to the principal which has a substantial effect on the perpetration of the crime, and (2) does so with the purpose of facilitating the commission of that crime." 658 F.3d 388, 396 (4th Cir. 2011). Knowledge of a crime itself does not suffice. *Id*. In *Aziz*, victims of Saddam Hussein's poison gas attacks sued the company that sold the chemicals used to make the poison gas that killed or injured thousands. *Id*. at 389. The Fourth Circuit found the defendant's knowledge of its products' use to kill people inadequate to establish liability under the ATS.  *Id*. at 401. The court found determinative whether the defendant provided products for the purpose of carrying out the poison gas attacks. *Id*. at 398. The Fourth Circuit confirmed the holding in *Aziz* earlier this year, reiterating the standard for aiding and abetting liability. *Estate of Alvarez v. Rockefeller Found*., 96 F.4th 686 (4th Cir. 2024). Plaintiffs do not allege that AMP had knowledge of the attack. Plaintiffs concede the October 7 attack is widely recognized as unprecedented, and a surprise attack known only to a very small circle of operatives. Doc. 24 at n.53 (citing to an article containing the statement that "Hamas terrorists launch unprecedented surprise attack on Israel").

Plaintiffs disagree with the views advocated by AMP. That disagreement does not justify this lawsuit. Open advocacy of ideas and even unpopular ones serves as a foundational hallmark of the rights enshrined in the Constitution and United States law. Plaintiffs assert that critical speech, including criticism of Israeli governmental policies, comprises aiding and abetting

liability. *See generally* Doc. 24 at ¶¶ 102(b), 106. Such an argument fails as a matter of law and cannot sustain Plaintiffs' allegations here.

     5.    <u>Plaintiffs fail to plead a violation of an international norm contemplated by the ATS</u>

The ATS does not create a new form of recovery, instead it but grants subject matter jurisdiction to federal courts for a limited scope of violations of international law. *Sosa*, 542 U.S. at 720. The touchstone of the ATS recognizes three offenses against the law of nations: violation of safe conduct, infringement of the rights of ambassadors, and piracy. *Id.* at 723-24. The Supreme Court reinforced that narrow scope in 2021, recognizing that "[o]ur decisions since *Sosa*, as well as congressional activity, compel the conclusion that federal courts should not recognize private rights of action for violations of international law beyond the three historical torts identified in *Sosa*." *Nestle USA, Inc.*, 593 U.S. at 637. To warrant federal court jurisdiction via the ATS, plaintiffs must plead violation of a "specific, universal, and obligatory" norm. *Jesner v. Arab Bank, Pub. Ltd. Co.*, 584 U.S. 241, 258 (2018). If plaintiffs fail to plead a breach of these norms, no jurisdiction exists.

Plaintiffs allege that AMP should be liable under the ATS for material support to terrorism, and violation of the International Convention for the Suppression of the Financing of Terrorism (the "Terrorism Financing Convention"). Doc. 24. at ¶¶ 205-06. Neither approach creates subject matter jurisdiction over Plaintiffs' claims. The Terrorism Financing Convention does not constitute an enforceable "treaty" under the ATS because it does not "confer individual rights" and is not "self-executing." *Cornejo v. Cnty. of San Diego*, 504 F.3d 853, 856 (9th Cir. 2007) (explaining that self-executing treaties have "the force of domestic law without the need for implementing legislation by Congress"); *see also Sosa*, 542 U.S. at 734-35 (determining no private action exists in federal courts based on the Universal Declaration of Human Rights, because it does not self-execute). By its own language, the Terrorism Financing Convention does not self-execute,

as it requires parties to create additional legislation for implementation. International Convention for the Suppression of the Financing of Terrorism arts. 4-7, Dec. 9, 1999, 2178 U.N.T.S. 197. Plaintiffs therefore cannot bring a cause of action via the ATS in reliance on a violation of the Terrorism Financing Convention. This Court, therefore, lacks subject matter jurisdiction over Plaintiffs' ATS claim.

Even if Plaintiffs had overcome the purpose requirement in *Aziz*, Plaintiffs fail to allege AMP violated a customary international norm recognized by the ATS. Plaintiffs' allegations of material support of terrorism do not suffice. *See* Doc. 24 at ¶ 204 (alleging simply that "Defendants provided Hamas with material support"). No universal definition of "terrorism" exists that establishes a "specific, universal, and obligatory" norm sufficient to confer subject matter jurisdiction on this Court via the ATS. *See, e.g.*, *Terrorist Attacks on September 11, 2001 v. Al Rajhi Bank (In re Terrorist Attacks on September 11, 2001)*, 714 F.3d 118, 125 (2d Cir. 2013) (recognizing that customary international law provides no universal definition of "terrorism"); *Tel-Oren v. Libyan Arab Republic*, 726 F.2d 774, 795 (D.C. Cir. 1984) (Edwards, J., concurring) (describing how the international community is split on the legitimacy of certain acts of aggression "as to make it impossible to pinpoint an area of harmony or consensus"); *In re Chiquita Brands Int'l, Inc.*, 792 F. Supp. 2d 1301, 1317 (S.D. Fla. 2011) (rejecting plaintiffs' grouping of conduct under a broad umbrella of undefined terrorism). The lack of internationally agreed-upon definitions for terrorism, terrorism financing, or support of terrorism renders those allegations insufficient for a cause of action under the ATS. Plaintiffs allege no facts sufficient to give rise to subject matter jurisdiction via the ATS. This Court lacks jurisdiction over that claim in its entirety.

**B.    The U.S.-Citizen Plaintiffs Fail to State a Claim Under the ATA**

Plaintiffs bear a high burden to establish liability under the ATA, and rightly so. To demonstrate aiding and abetting liability under this statute, Plaintiffs must show that 1) an act of international terrorism harmed them; 2) AMP knowingly provided assistance in that harmful act; and 3) AMP provided substantial assistance in committing the harmful act. Plaintiffs fail to allege two of those three required elements. First, Plaintiffs must allege that they were harmed specifically by an act of international terrorism. 18 U.S.C. § 2333(d). The Amended Complaint alleges Hamas committed terrorist acts that caused harm to Plaintiffs on October 7, 2023. Doc. 24 at 28. That satisfies the first prong. However, Plaintiffs fail to allege AMP had knowledge of Hamas' plans prior to October 7, and further fail to allege any substantial assistance in those terrorist acts. Plaintiffs' failure to plead a direct link between AMP and the perpetrator of terrorism mandates dismissal of their aiding-and-abetting liability claims. *Crosby v. Twitter, Inc.*, 921 F.3d 617, 627 n.6 (6th Cir. 2019) (citing cases where courts "routinely dismiss" aiding-and-abetting ATA claims for failure to plead a sufficient link).[8]

1.    <u>AMP acknowledges Plaintiffs sustained harm from Hamas' actions</u>

To establish liability under the ATA, plaintiffs must preliminarily show harm they suffered from an act of international terrorism, as defined by 18 U.S.C § 2331(1). This act must constitute a violent or dangerous action intended to intimidate or coerce a civilian population, influence the policy of a government by intimidation or coercion, or affect the conduct of a government by mass destruction, assassination, or kidnapping. 18 U.S.C. § 2331(1). The harmful act must also "occur

---

[8] *See Crosby*, 921 F.3d at 627 n.6, citing *Copeland v. Twitter, Inc.*, 352 F. Supp. 3d 965, 967 (N.D. Cal. 2018), *affirmed by* 2024 U.S. App. LEXIS 7806 (9th Cir. Cal., Apr. 1, 2024); *Pennie v. Twitter, Inc.*, 281 F. Supp. 3d 874, 886-87 (N.D. Cal. 2017); *Linde v. Arab Bank, PLC*, 882 F.3d 314, 329 (2d Cir. 2018) (citing *Halberstam v. Welch*, 705 F.2d 472, 487 (D.C. Cir. 1983) ("[D]efendant must knowingly and substantially assist the principal violation.").

primarily outside the territorial jurisdiction of the United States." *Freeman v. HSBC Holdings Pub. Ltd. Co.*, 57 F.4th 66, 75 (2d Cir. 2023).

Plaintiffs allege different forms of harm resulting from the attack of October 7, 2023 by Hamas. *See* Doc. 24 at ¶ 69. AMP does not dispute that the October 7 attack by Hamas meets the definition of terrorist acts under the ATA. Yet as set forth below, Plaintiffs allege no facts to show participation by AMP in the October 7 attacks, nor do they allege any acts by AMP prior to October 7 encouraging injury to civilians[9]. *Id.* at ¶¶ 93, 181. Plaintiffs further fail to allege that AMP knew about Hamas' plans either before or during the October 7 attacks. *Id.* at ¶¶ 174-175.

2.     Recent Supreme Court decisions confirm Plaintiffs fail to meet their burden

Controlling case authority mandates dismissal. The Supreme Court recently set out standards to limit aiding and abetting liability under the ATA to "truly culpable conduct, specifically "conscious, voluntary, and culpable participation in another's wrongdoing," which in turn means that the defendant consciously and culpably "participate[d]" in a wrongful act so as to help "make it succeed." *Twitter Inc. v. Taamneh*, 598 U.S. 471, 490 (2023).

In *Taamneh*, victims of an ISIS terror attack on a nightclub in Turkey sued Twitter, because ISIS members had used Twitter to plan such attack, and Twitter's algorithms directed the terrorists to each other and to content that called for such attacks over a period of time. Again, Twitter's platform was knowingly being used by terrorists, allegedly, to further such attack.

In an effort to "cabin" aiding and abetting liability, the Court held that if it broadly applied aiding and abetting liability based on activities over many years, then Twitter arguably could be liable for every ISIS attack perpetrated anyplace, all over the world. Overbroad liability, for

---

[9] AMP affirms that it never supports harm to civilians, prior to or after the October 7, 2023 attacks.  For purposes of this motion, AMP simply acknowledges the conclusory allegations contained in Plaintiffs' Amended Complaint.

example, would allow for "one person [to] be made a trespasser and even a felon against his or her consent," based on the "overheated zeal of another." *Id*. at 489. To be liable for the terrorist attack on the nightclub, the defendant in *Taamneh* would have to provided substantial assistance in "carrying out that attack" at the nightclub. The focus must remain on assistance to the tort for which plaintiffs seek to impose liability. *Id*. Generalized assistance over time, whether through search engines and algorithms, or public advocacy that was part of AMP's non-profit mission, is not actionable. In *Leisrael v. Educ. For a Just Peace in the Middle E.*, 66 F.4th 1007, 1016 (D.C. Cir. 2023), the D.C. Circuit upheld a Rule 12(b)(6) dismissal of an ATA claim despite the U.S. non-profit defendant sending financial aid to and supporting positions similar to an alleged Hamas front organization, allegations analogous to those here. The U.S. Supreme Court, after *Taamneh*, denied a cert petition by Plaintiff seeking to overturn the dismissal. *Keren Kayemeth LeIsrael, et al. v. Educ. For a Just Peace in the Middle E.*, 144 S. Ct. 713 (2024).

AMP has no affiliation to Hamas.  Plaintiffs do not allege that AMP provided any financial assistance to Hamas, do not allege that AMP ever provided any weapons to Hamas, or provided any material support for Hamas. As did the plaintiffs in *Taamneh*, Plaintiffs here contemplate a radical expansion of liability under the ATA.[10]

---

[10] Because AMP has advocated for Palestinian rights over many years, Plaintiffs claim that AMP's advocacy effectively supports Hamas. The same could be said of any individual or organization that has supported Palestinian rights over time, such as Congresswoman Rashida Tlaib, Presidential candidate Cornel West, or actress Vanessa Redgrave (who famously danced on video in support of Palestinian rights while brandishing a rifle). All these people have effectively, systematically provided public relations assistance to the Palestinian cause over many years, and like AMP, should not be subject to suit based on their actions.

3.    Plaintiffs fail to plead sufficient facts showing AMP participated in illegal or tortious activity prior to October 7, 2023

To hold defendants liable for aiding and abetting terrorist acts under the ATA, plaintiffs must allege the defendants knowingly provided substantial assistance to the perpetrator. Plaintiffs must allege facts sufficient to show the defendants had awareness of the nature of the terrorist organization's illegal activities at issue, and knowingly assisted in those activities. *Leisrael*, 66 F.4th at 1017 (granting dismissal because plaintiffs plead no facts from which the court could determine the defendant's awareness of the illegal activity in question). The D.C. District Court dismissed that case on a 12(b)(6) motion, and the D.C. Circuit affirmed that dismissal. Although that organization engaged in civil and advocacy efforts, no plausible tie exists between the defendant and the alleged terrorist acts; any attenuated connection based on support for Palestinian rights, as alleged both in *LeIsrael* and here, did not suffice. The Supreme Court denied the plaintiffs' petition for a writ of certiorari allowing that ruling of the D.C. District Court and D.C. Circuit to remain in force. *Keren Kayemeth LeIsrael*, 144 S. Ct. 713 (2024).

The Supreme Court specifically affirmed in 2023 that ATA liability only attaches when the alleged conduct rises to the level of "conscious, voluntary, and culpable participation in another's wrongdoing." *Taamneh*, 598 U.S. at 493. Even assuming *arguendo* that this Court were to consider Plaintiffs' allegations that AMP acts as Hamas' propaganda wing in the United States plausible, those allegations do not satisfy Plaintiffs' high burden. Plaintiffs cannot merely allege that AMP somehow provided general assistance through public relations; Plaintiffs must instead directly connect AMP to the specific act of terrorism that gives rise to Plaintiffs' injuries. *Id.* at 497, 503. Plaintiffs acknowledge they cannot do so. Doc. 24 at ¶¶ 174-175, 181.

Plaintiffs allege no facts that could establish AMP aided Hamas in its attacks, or knowingly and substantially assisted Hamas in its attacks. Plaintiffs fail to plead any direct link at all between

21

AMP and Hamas. *Id.* at ¶¶ 93, 174-175, 181. Plaintiffs further fail to plead any allegations that AMP had awareness of Hamas's October 7 plans, beyond vague and unsupported speculation. And Plaintiffs allege no communication prior to October 7 that establishes any foreknowledge by AMP of the attacks to come. *Id.* at 93, 174-175, 181.

Instead, Plaintiffs rely on the unproven and highly contested allegations in the *Boim* complaint, relating to 1996 events. *Id.* at ¶¶ 33-34. But those allegations provide no basis to show AMP's knowledge of Hamas' plans for its October 7 attack. They could not because the *Boim* lawsuit derives from purported liability under business tort law for actions that occurred in 1996.[11]

Plaintiffs next attempt to tether a connection between the Judgment Defendants from the Boims' first litigation and AMP. *Id.* at 14. Those allegations fail to support the Plaintiffs' allegations that AMP knew anything about the October 7, 2023 attack at issue in this lawsuit. *Id.* at ¶ 64.

Plaintiffs also allege that actions by AMP <u>after</u> October 7, 2023 establish that AMP knew about Hamas' activities. *Id.* at ¶ 46. Even if these post-dated allegations could demonstrate knowledge of the specific violent acts that harmed Plaintiffs, general allegations that AMP subsequently released statements and educational materials in line with its stated, legal mission hardly indicates knowledge of Hamas' activities at issue. Plaintiffs try to connect AMP's statements to Hamas with the Hail Mary conclusory statement that when Hamas' thanked its "supporters" abroad, that reference must have encompassed AMP. Doc. 24 at¶¶ 93, 181. Yet

---

[11] Plaintiffs allege the Seventh Circuit "has already concluded" that the *Boim* complaint "states a plausible and actionable claim for relief." Doc. 24 at 10 n.7. The Seventh Circuit did no such thing. The Seventh Circuit reversed the prior dismissal of the Complaint under Fed. R. Civ. P. 12(b)(1), determining that the allegations in that complaint gave rise to federal subject matter jurisdiction because, <u>if proven true</u>, the allegations by those plaintiffs could establish a claim arising under federal law.

Hamas never mentions AMP by name, nor does AMP have any control over what Hamas may publish. *Id*. And Plaintiffs do not allege that it does. Plaintiffs further assert that AMP "responded" to Hamas' statements when it promoted its own upcoming convention in the Chicago area and its programs available for students. *Id.* at ¶ 102(e). In reality, AMP responded to the environment in the United States that resulted from the October 7 attack.[12] Plaintiffs ask this Court to make irrational assumptions based on benign and legal activities by AMP, and provide no support for their claim that AMP "knowingly" published any statements "with the intent of facilitating" Hamas' activities. *Taamneh*, 598 U.S. at 490; Doc. 24 at ¶¶ 93, 181.

        4.      <u>Plaintiffs fail to sufficiently plead substantial assistance with the October 7 attack</u>

Plaintiffs' "failure to allege a direct link between the defendants and the individual perpetrator" warrants dismissal of any aiding-and-abetting liability claims. *Leisrael*, 530 F. Supp. 3d 8, 14 (D.D.C. 2021) (quoting *Crosby v. Twitter*, Inc., 921 F.3d 617, 627 n.6 (6th Cir. 2019)) (noting that courts "routinely dismiss" aiding-and-abetting ATA claims on that basis). To determine whether alleged assistance is substantial, Plaintiffs must allege the defendant's substantial assistance significantly enhanced the terrorist organization's ability to carry out the attacks at issue. *Taamneh*, 598 U.S. at 461.

The district court in *Leisrael* held that even allegations of financial support to Hamas did not suffice. 530 F. Supp. 3d at 15. In granting dismissal, the *Leisrael* court examined the *Halberstam* factors to determine "substantial assistance," and ultimately determined the defendant's "assumed" role did not qualify as "substantial." *Id*. The *Leisrael* plaintiffs alleged the defendant, a U.S. nonprofit organization operating in the United States, had connections to Hamas

---

[12] *See, e.g., Reality vs. Propaganda: Changing the Discourse on Gaza*, AMERICAN MUSLIMS FOR PALESTINE (Oct. 8, 2023), https://www.ampalestine.org/media/media-room/statements/reality-vs-propaganda-changing-discourse-gaza.

because it allegedly provided material support and fiscal sponsorship to a different organization that advocates for Palestinian rights. 66 F.4th at 1011. This attenuated connection did not suffice. The Supreme Court recently determined even more substantial connections may still prove inadequate under the ATA, vacating and remanding a claim the D.C. Circuit found sufficient. *AstraZeneca UK Ltd. v. Atchley*, No. 23-9, 2024 U.S. LEXIS 2785 (June 24, 2024) (remanding for further consideration in light of *Twitter v. Taamneh*). Plaintiffs here allege nothing close to the connections pled between the defendant and terrorist actor the Supreme Court remanded for further evaluation. *Atchley v. AstraZeneca UK Ltd.*, 22 F.4th 204, 210 (D.C. Cir. 2022) (holding that allegations the defendant was aware of the terrorist group's operations and still allegedly secured medical supply contracts with them to be sufficient), *vacated,* 2024 U.S. LEXIS 2785.

Plaintiffs fail to plead any a direct links between AMP's alleged actions and Hamas's October 7, 2023 attack. *See* Doc. 24 at ¶¶ 93, 181. Plaintiffs' allegations do not rise to the level needed to establish liability of AMP. Plaintiffs allege even less than the *Leisrael* or the *Atchley* plaintiffs did: Plaintiffs here do not allege that a single dollar from AMP went to Hamas at any time, let alone to assist with the October 7 attack. *Id*. at ¶ 174. Plaintiffs only raise general allegations of "material support" and unspecified "substantial assistance." *See id*. at ¶¶ 93, 174-175, 181. Allegations arising out of unsubstantiated and conclusory assumptions that AMP is acting in some way as the propaganda arm of Hamas in the United States, providing Hamas with vague "invaluable" public relations support it could not legally purchase, fail on their own. *See id*. at ¶ 174. Plaintiffs point to the State of Qatar paying a lobbying firm in the United States as an example of the "value" AMP allegedly provides to Hamas. *Id.* Yet Plaintiffs identify no comparable contract or service to which either AMP or Hamas is a party. These allegations therefore still fail to properly allege AMP has done anything but fulfil its stated mission to legally

advocate for the Palestine in the United States. Plaintiffs' ATA claims therefore fail as a matter of law as insufficient.

## C.        The Non-Citizen Plaintiffs Fail to State a Claim Under the ATS

If this Court determines it possesses subject matter jurisdiction over Plaintiffs' ATS claims, those claims still warrant dismissal under Fed. R. Civ. P. 12(b)(6). Plaintiffs fail to sufficiently plead a claim upon which relief can be granted pursuant to the ATS. While the Alien Tort Statute gives federal courts a vehicle for jurisdiction to hear specific civil actions filed by non-U.S citizens, as defined by the statute, the ATS itself does not create a new cause of action. 28 U.S.C. § 1350; *see also Kiobel*, 569 U.S. at 115. As explained above, Supreme Court precedent makes clear that the right to create private rights of action through the Alien Tort Statute exists only in the limited circumstances identified by courts. *Nestle USA, Inc.*, 593 U.S. at 630.

Demonstrating aiding and abetting liability under the ATS requires that plaintiffs plead facts that if proven, would establish the defendant "1) provides practical assistance to the principal which has a substantial effect on the perpetration of the crime, and 2) does so with the purpose of facilitating the commission of that crime." *Aziz,* 658 F.3d at 396. As explained in Section B, *infra*, Plaintiffs fail to allege AMP aided and abetted Hamas in any way, let alone a way legally sufficient to establish liability under the ATA. *See infra* pp. 19-23.  For the same reasons, Plaintiffs fail to plead facts sufficient to establish that AMP provided assistance to Hamas, that had a "substantial effect" on the crimes on October 7, 2023. Plaintiffs do not and cannot allege that AMP provided any assistance "with the purpose of facilitating the commission of that crime," because AMP did no such thing. *See, e.g.*, Doc. 24 at ¶¶ 174-175, 181. For these reasons, AMP respectfully requests this Court dismiss Plaintiffs' ATS claims pursuant to Fed. R. Civ. P. 12(b)(6).

## V.    <u>CONCLUSION</u>

Plaintiffs fail to plead facts that would establish AMP's liability under the ATA or the ATS. Plaintiffs fail to allege AMP ever had any direct connection to Hamas, or that AMP participated in the October 7, 2023 attack in Israel. That attack, an undeniable tragedy that caused Plaintiffs pain, did not occur because of any actions by AMP. Plaintiffs misdirect their quest for justice to the wrong defendant. AMP operates legally as a wholly domestic nonprofit in good standing with the U.S government that was established to educate the American public about Palestine, through awareness campaigns and limited advocacy within the boundaries of U.S. law and by exercising its constitutional rights to free speech and assembly. Plaintiffs allege no more than that. Pictures, strategic page breaks, charts with many arrows, and conclusory allegations cannot compensate for these legal omissions. Therefore, AMP respectfully asks this Court to dismiss Plaintiffs' claims against AMP with prejudice.[13] As Plaintiffs already filed one amended complaint, they should not be allowed to cause AMP and this Court any further delay with additional amendments that by their own admissions would be futile.[14]

---

[13] *Hornsby v. U.S.*, Civil No.: 2:22cv427, 2023 U.S. Dist. LEXIS 224002, at *10 (E.D. Va. Dec. 15, 2023) (reiterating the Fourth Circuit's determination that district courts may control their dockets through use of with-prejudice dismissals).

[14] This Court cannot permit amendment when it lacks subject matter jurisdiction under the Alien Tort Statute. *See United States ex rel. Carter v. Halliburton Co.*, 144 F. Supp. 3d 869 (E.D. Va 2015) (recognizing the futility of amendment where the court does not have jurisdiction over the stated claims); *see also Lee v. Frederick County Dep't of Soc. Servs.*, 2008 Va. App. LEXIS 370, at 2* (Va. Ct. App. 2008) ("A defect in subject matter jurisdiction cannot be cured by reissuance of process, passage of time, or pleading amendment"). This Court need not permit amendment of the ATA claims, as Plaintiffs already asserted allegations rendering amendment futile. *Perkins v. United States*, 55 F.3d 910 (4th Cir. 1995) (affirming that where amending could not withstand a motion to dismiss, it is futile); *see also Crossroads v. Human Capital Res. & Concepts*, 2020 U.S. Dist. LEXIS 253449 (E.D. Va. 2020) (citing *In re PEC Sols., Inc. Sec. Litig.*, 418 F.3d 379, 391 (4th Cir. 2005) ("Leave to amend need not be given when amendment would be futile")).

DATED: August 6th, 2024

Respectfully Submitted,

/s/ *George R. A. Doumar*
George R.A. Doumar, VSB No. 26490
Raj H. Patel, VSB No. 87893
Mahdavi Bacon Halfhill & Young, PLLC
1530 Wilson Boulevard, Suite 1060
Arlington, Virginia 22209
Tel: 703-243-3737
Fax: 703-524-7610
gdoumar@doumarmartin.com

Christina A. Jump
(*pro hac vice*)
Samira S. Elhosary
(*pro hac vice*)
Constitutional Law Center
for Muslims in America
100 N. Central Expy. Suite 1010
Richardson, Texas 75080
Tel: (972) 914-2507
Fax: (972) 692-7454
cjump@clcma.org
selhosary@clcma.org

COUNSEL FOR DEFENDANT
AJP EDUCATIONAL FOUNDATION, INC. a/k/a
AMERICAN MUSLIMS FOR PALESTINE

27

## **CERTIFICATE OF SERVICE**

I certify that on August 6, 2024, I sent this memorandum via the Court's electronic filing

system to:

GREENBERG TRAURIG, LLP
Scott Bornstein
Richard Edlin
Richard Rosenbaum
Hal Shaftel
One Vanderbilt Avenue
New York, New York 10017
Tel: 212-801-9200
bornsteins@gtlaw.com
edlinr@gtlaw.com
rosenbaumr@gtlaw.com
shaftelh@gtlaw.com

Bradford Kaufman
777 South Flagler Drive, Suite 300 East
West Palm Beach, Florida 33401
Tel: 561-650-7900
kaufmanb@gtlaw.com

Zachary Needell
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, Florida 33301
Tel: 954-765-0500
zachary.needell@gtlaw.com

LAW OFFICES OF
DAVID SCHOEN
David Schoen
2800 Zelda Road, Suite 100-6
Montgomery, Alabama 36106
Tel: 334-395-6611
schoenlawfirm@gmail.com

HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK, PLLC
Jason Torchinsky
Jonathan Fahey
Erielle Davidson
Phillip Gordon
2300 N. Street NW, Suite 643
Washington D.C. 20037
15405 John Marshall Hwy
Haymarket, VA 20169
Tel: 202-737-8808
jtorchinsky@holtzmanvogel.com
jfahey@holtzmanvogel.com
edavidson@holtzmanvogel.com
pgordon@holtzmanvogel.com

NATIONAL JEWISH ADVOCACY CENTER
Mark Goldfeder
Ben Schlager
Anat Beck
1718 General George Patton Drive
Brentwood, TN 37027
Tel: 800-269-9895
mark@jewishadvocacycenter.org
ben@jewishadvocacycenter.org
Anat@jewishadvocacycenter.org

COUNSEL FOR PLAINTIFFS

_____*George R.A. Doumar*_____
George R.A. Doumar, VSB No. 26490
Raj H. Patel, VSB No. 87893
Doumar Martin PLLC
1530 Wilson Boulevard, Suite 430
Arlington, Virginia 22209
Tel: 703-243-3737
Fax: 703-524-7610
gdoumar@doumarmartin.com

COUNSEL FOR DEFENDANT