IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

MAYA PARIZER, *et al.*,

    Plaintiffs,

v.

AJP EDUCATIONAL FOUNDATION, INC. a/k/a AMERICAN MUSLIMS FOR PALESTINE, *et al.*,

    Defendants.

Case No. 1:24-cv-724-RDA-IDD

**[PROPOSED] BRIEF OF THE COMMONWEALTH OF VIRGINIA, STATE OF IOWA, AND 20 OTHER STATES AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFFS**

Jason S. Miyares
   *Attorney General*

Erika L. Maley (VSB #97533)
   *Solicitor General*

Kevin M. Gallagher (VSB #87548)
   *Principal Deputy Solicitor General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-7704 – Telephone
(804) 371-0200 – Facsimile
EMaley@oag.state.va.us

*Counsel for* Amicus Curiae *Commonwealth of Virginia*

Brenna Bird
   *Attorney General*

Eric Wessan
   *Solicitor General*

Office of the Attorney General
1305 E. Walnut St.
Des Moines, Iowa 50319
(515) 823-9117 – Telephone

eric.wessan@ag.iowa.gov

*Counsel for* Amicus Curiae *State of Iowa*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION AND INTERESTS OF *AMICI CURIAE* ....................................................... 1

BACKGROUND ........................................................................................................................... 3

ARGUMENT ................................................................................................................................. 5

    I.    States have an interest in ensuring supporters of terrorism are held accountable .............. 5

    II.   The ATA is the most effective tool for these Plaintiffs to attempt to receive compensation from Defendants................................................................................................................. 8

CONCLUSION ............................................................................................................................ 12

CERTIFICATE OF SERVICE ..................................................................................................... 14

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bay v. Commonwealth*,
   729 S.E.2d 768 (Va. App. 2012)......................................................................................6

*Boim v. Holy Land Found. For Relief & Dev.*,
   549 F.3d 685 (7th Cir. 2008) ..........................................................................................3

*Boim v. Quranic Literacy Inst. & Holy Land Found. for Relief & Dev.*,
   291 F.3d 1000 (7th Cir. 2002) ........................................................................................9

*Cook Cnty., Ill. v. United States ex rel. Chandler*,
   538 U.S. 119 (2003).....................................................................................................10

*Estates of Ungar ex rel. Strachman v. Palestinian Auth.*,
   304 F. Supp. 2d 232 (D.R.I. 2004)...............................................................................11

*Kindhearts v. Geithner*,
   647 F. Supp. 2d 857 (N.D. Ohio 2009).........................................................................3

*Knox v. Palestine Liberation Org.*,
   442 F. Supp. 2d 62 (S.D.N.Y. 2006)............................................................................11

*Linde v. Arab Bank, PLC*,
   706 F.3d 92 (2d Cir. 2013)...........................................................................................10

*Mason v. Machine Zone, Inc.*,
   851 F.3d 315 (4th Cir. 2017) .........................................................................................3

*Osio v. Moros*,
   2023 WL 5019877 (S.D. Fla. July 19, 2023)................................................................7

*Pugh v. Socialist People's Libyan Arab Jamahiriya*,
   530 F. Supp. 2d 216 (D.D.C. 2008).............................................................................11

*Stansell v. Revolutionary Armed Forces of Columbia*,
   2022 WL 17830551 (S.D.N.Y. Dec. 21, 2022) .....................................................10, 11

*United States v. Morrison*,
   529 U.S. 598 (2000).......................................................................................................6

**Statutes**

18 U.S.C. § 2331..................................................................................................................9

18 U.S.C. § 2333 .................................................................................................................................9

18 U.S.C. § 2339A ..............................................................................................................................6

18 U.S.C. § 2339B ........................................................................................................................2, 6

42 Pa. Stat. and Consol. Stat. Ann. § 8318 ..................................................................................7

720 Ill. Comp. Stat. Ann. 5/29D-29.9 ............................................................................................7

AL Code § 13A-10-153 .....................................................................................................................7

Ariz. Rev. Stat. Ann. § 13-2308.01 .................................................................................................7

Ark. Code Ann. § 5-54-202 ..............................................................................................................7

Fla. Stat. Ann. § 775.33 ....................................................................................................................7

Fla. Stat. § 775.30 ..............................................................................................................................7

Ind. Code § 35-46.5-2-5 ....................................................................................................................7

Iowa Code ch. 708A ..........................................................................................................................2

Iowa Code ch. 708A.4 .......................................................................................................................7

La. Civ. Code Ann. art. 2315.9 ........................................................................................................7

Mich. Comp. Laws Ann. § 750.543k ..............................................................................................7

Mo. Rev. Stat. Ann. § 576.080 ........................................................................................................7

N.J. Rev. Stat. 2C:38-5 .....................................................................................................................7

Nev. Rev. Stat. Ann. § 202.445 .......................................................................................................7

Ohio Rev. Code Ann. § 2909.22 .....................................................................................................7

Pub. L. 104-132, Title III, § 301 ..................................................................................................2, 6

Tennessee Code § 39-13-807 ..........................................................................................................7

Va. Code § 18.2-46.5 .....................................................................................................................2, 7

**Other Authorities**

137 Cong. Rec. S4511-04 (April 16, 1991) ...................................................................................9

138 Cong. Rec. S17252-04 (1992) ................................................................................................10

*Antiterrorism Act of 1990*, Hearing Before the Subcommittee on Courts and
    Administrative Practice of Committee on the Judiciary, United States Senate,
    101st Congress, Second Session ...................................................................................9

*Antiterrorism Act of 1990*, Hearing Before the Subcommittee on Courts and
    Administrative Practice of the Senate Committee on the Judiciary, 101st
    Cong., 2nd Sess. (July 25, 1990) ..................................................................................10

*Antiterrorism Act of 1991*, Hearing Before the Subcomm. on Intellectual Property
    & Judicial Admin. of the H. Comm. on the Judiciary, 102d Cong. 10 (1992) ........10

Federal Rule of Civil Procedure 12 ..........................................................................................3

H.R. Rep. No. 102-1040 ........................................................................................................8, 9

News Release, Jason Miyares, Attorney General of Virginia, Virginia Court
    Orders American Muslims for Palestine to Produce Records Requested by
    Attorney General Miyares, https://tinyurl.com/yy7ryuck .......................................11

Rebecca Cohen, *Hersh Goldberg-Polin, Israeli American whose family led calls
    for hostage deal, is killed in Gaza*, NBC News (Sept. 1, 2024),
    https://tinyurl.com/3p7ayuyx ......................................................................................2

Shirin Sinnar, *Separate and Unequal: The Law of "Domestic" and
    "International" Terrorism*, 117 Mich. L. Rev. 1333, 1339 (2019) ...........................6

## INTRODUCTION AND INTERESTS OF *AMICI CURIAE*

On October 7, 2023, designated terrorist organization Hamas began a massive terror attack against Israel, culminating in the worst slaughter of Jews since the Holocaust. Such terrorism is, of course, illegal. But just as illegal is providing material support to the terrorists and terror organizations that perpetrated the attack.

Providing material support to designated terrorist organizations like Hamas violates federal law—as well as the laws of many States. Defendants Americans for Muslims in Palestine (AMP) and the National Students for Justice in Palestine (NSJP) declared on October 8 that they were "PART of" a "Unity Intifada" under Hamas's "unified command." First Amend. Compl. (FAC) (Dkt. 24) ¶¶ 83–84. They should be taken at their word. And just like their predecessor organizations—convicted or admitted material supporters of Hamas—they should be held accountable. Dismissing the Anti-Terrorism Act (ATA) claims before discovery and a chance to prove these incredibly disturbing allegations would be a disservice to the very purpose of the ATA.

Attorneys General, as their States' chief law enforcement officers, have a deep interest in holding terrorists and their supporters accountable. That accountability helps ensure that citizens of their States receive financial compensation from the individuals and organizations who supported the terrorists that engaged in the horrific attacks that harmed family members and loved ones—fully acknowledging that no amount of financial compensation can ever make up for the tragic losses these citizens have experienced. The Attorneys General of Virginia, Iowa, Alabama, Alaska, Arkansas, Florida, Georgia, Indiana, Kansas, Kentucky, Louisiana, Missouri, Montana, Nebraska, North Dakota, Oklahoma, South Carolina, South Dakota, Tennessee, Texas, Utah and West Virginia (collectively, *Amici* States) thus submit this *amici curiae* brief in support of Plaintiffs as they seek to hold organizations that materially support Hamas accountable. Plaintiffs' First Amended Complaint, brought by "survivors of Hamas's October 7 terrorist attack, family

1

members of those murdered by Hamas, civilians still under fire from Hamas's ongoing terrorism, and persons displaced by Hamas's ongoing terrorism," tells a disturbing story of AMP and NSJP serving as "the propaganda and recruiting wing of a Foreign Terrorist Organization in the United States." FAC at 4. The ATA claims should survive a motion to dismiss.

Material-support statutes recognize that organizations like Hamas "are so tainted by their criminal conduct that any contribution to such an organization facilitates that [criminal] conduct." Pub. L. 104-132, Title III, § 301(a)(7). Federal law has long made the knowing provision of material support to designated foreign terrorist organizations like Hamas illegal. See, *e.g.*, 18 U.S.C. § 2339B. Many States also prohibit providing material support for terrorism. See, *e.g.*, Iowa Code ch. 708A; Va. Code § 18.2-46.5. States thus have an important interest in making sure that violations of material support statutes can be enforced.

Defendants here are alleged to have provided material support for Hamas, the brutal terrorist regime that not only oppresses millions in Gaza but that also murdered more than a thousand innocents and kidnapped hundreds more. After the recent murder of Hersh Goldberg-Polin,[1] Edan Alexander, Sagui Dekel-Chen, Omer Neutra, and Keith Siegel are Americans that still remain in Hamas hands following the October 7 massacre—a massacre alleged here to have been materially supported by Defendants. States have an interest in ensuring that valid claims brought under material support statutes are allowed to be litigated in court and that any violators are held accountable.

---

[1] See Rebecca Cohen, *Hersh Goldberg-Polin, Israeli American whose family led calls for hostage deal, is killed in Gaza*, NBC News (Sept. 1, 2024), https://tinyurl.com/3p7ayuyx.

2

## BACKGROUND

As alleged,[2] AMP and NSJP did not begin their material support for Hamas on October 8, 2023; rather, their material support had been going on for decades—both as the current organizations and through predecessor entities. Specifically, AMP was founded after a predecessor organization and five of its board members were convicted of providing material support for Hamas. See FAC ¶¶ 27–34. AMP in turn founded NSJP, which disseminates pro-Hamas propaganda on college campuses throughout the country, *id.* ¶¶ 60–63, and both AMP and NSJP have supported Hamas generally and specifically as to the October 7 massacre in Israel, *id.* ¶¶ 78–88.

First, the Muslim Brotherhood founded the "Palestine Committee" in 1988 to fund the terrorist organization Hamas. FAC ¶ 25. That committee comprised several organizations providing Hamas financial, informational, and political support. *Ibid.* Among those organizations were the Holy Land Foundation for Relief and Development and the Islamic Association for Palestine (IAP), organizations founded and controlled by senior members of Hamas leadership. *Id.* ¶¶ 27–28.

In 2001, the U.S. Office of Foreign Asset Control designated the Holy Land Foundation a terrorist organization. FAC ¶ 30. In 2008, the Holy Land Foundation and five of its leaders were convicted of providing material support to Hamas. See *Boim v. Holy Land Found. For Relief & Dev.*, 549 F.3d 685, 701 (7th Cir. 2008). Other organizations founded by the same group of individuals (and their friends and family members) were also dissolved because they too materially supported Hamas. See, *e.g.*, *Kindhearts v. Geithner*, 647 F. Supp. 2d 857 (N.D. Ohio 2009).

---

[2] For purposes of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the relevant facts are those alleged in Plaintiffs' complaint. See *Mason v. Machine Zone, Inc.*, 851 F.3d 315, 319 (4th Cir. 2017).

3

In 2006, some of the senior Holy Land Foundation leaders founded AMP. See FAC ¶¶ 33–34. AMP in turn founded its fiscal sponsor, AJP Educational Foundation, Inc., in 2008 and its campus advocacy wing, NSJP, in 2010. *Id.* ¶¶ 51, 60. These successor organizations to the Holy Land Foundation, with overlapping founders and senior members, are now alleged to be engaged in the same type of material support for terror that led to the Foundation and five of its board members being convicted for providing material support to Hamas. See, *e.g.*, *id.* ¶ 35 ("While these individuals have adopted AMP as their new corporate form, there can be no doubt that they retain the same mission they always have: to provide ongoing, systematic, material support to Hamas and its allies."); *id.* ¶ 66 ("There is no indication that AMP, NSJP, or the individuals affiliated with them . . . ever ceased providing material support to Hamas and its affiliates—even in the transition period between IAP and AMP.").

Hamas's charter calls on its supporters to provide strategic depth and to engage in communication and propaganda campaigns on its behalf. FAC ¶ 72. Within hours of the October 7 attack, Hamas terrorist leader Ismail Haniyeh called for the "resistance abroad" to join the battle. *Id.* ¶ 77. The head of Hamas's diaspora office, and founder of one of AMP's predecessor organizations, echoed that call. *Ibid.* And Defendants answered the call by releasing their toolkit which made clear their support of the October 7 attack and explained how their members could continue to support Hamas in its aftermath. *Id.* ¶¶ 78–88.

In support of those efforts, Defendants provide public relations and communications assistance for Hamas. For although Hamas, a designated foreign terror organization, cannot hire American public relations firms to advocate on its behalf, Defendants can act as one themselves. FAC ¶ 174. And Hamas has adopted messaging coming from Defendants. See *id.* ¶ 101. Indeed, whenever Hamas asks for aid, Defendants step up—and Hamas thanks them. *Id.* ¶ 102 (collecting

4

examples). Without Defendants' support of "knowingly serving as the propaganda and recruiting wing of a Foreign Terrorist Organization in the United States," *id.* at 4, Hamas's goals would be unachievable.

Given these troubling facts, Plaintiffs sued to hold Defendants liable for materially supporting Hamas. *Amici* States file this brief to express their interest in ensuring that Plaintiffs have their day in court.

## ARGUMENT

Plaintiffs have alleged that Defendants follow in the footsteps of their predecessor organizations—organizations that courts across the country have found materially support the foreign terrorist organization Hamas. This Court should allow the claims to proceed against Defendants—each of whom is plausibly alleged to have materially supported terror. *Amici* States focus on two key aspects of the litigation for the Court: first, why States have an interest in ensuring this case proceeds, and second, why this ATA suit may be the only method for these victims of terror to receive financial compensation for their losses at the hands of terrorists and their supporters.

**I.      States have an interest in ensuring supporters of terrorism are held accountable**

Terrorism is a crime in America—both at the federal level and in many States. So too is material support for terrorism. To combat terrorism, the federal government, state governments, and private citizens have various tools in their toolkits to hold terrorists and their supporters accountable. *Amici* States have a strong interest in ensuring that terrorists pay for their crimes.

The federal government and States often have complementary roles in the criminal prosecution of terrorism. The federal government can prosecute international terrorism based on its constitutionally enumerated powers to regulate commerce between States and with foreign nations, to define and punish "Offences against the Law of Nations," to declare war, and to make

5

treaties. See, *e.g.*, Pub. L. No. 104-132, § 301(a). As for States, they can prosecute domestic terrorism occurring within their borders based on their traditional police powers to suppress violent crime. See *United States v. Morrison*, 529 U.S. 598, 618 (2000) (describing the power to suppress violent crime as "denied [to] the National Government and reposed in the States"). "[D]ue in part to the uneven federalization of terrorism, federal prosecutors handle most international terrorism cases while local prosecutors frequently charge domestic terrorism under state law." Shirin Sinnar, *Separate and Unequal: The Law of "Domestic" and "International" Terrorism*, 117 Mich. L. Rev. 1333, 1339 (2019). States are not precluded from prosecuting international terrorism, however; rather, States "can exercise criminal jurisdiction over international terrorism committed or threatened within their borders where state law does not conflict with federal law." *Id.* at 1379.

And these laws are effective: for example, the Commonwealth of Virginia successfully prosecuted a would-be terrorist under its terrorism statute for planning a pipe bomb attack on a school. See *Bay v. Commonwealth*, 729 S.E.2d 768, 770 (Va. App. 2012). Virginia's antiterrorism statute provided the basis for multiple charges that led to conviction. Authority to pursue terrorism and terroristic threats is a necessary part of the States' police power and law enforcement authority.

Federal law has also long made the knowing provision of material support to designated foreign terrorist organizations like Hamas illegal. See, *e.g.*, 18 U.S.C. § 2339B. The federal statute defines material support to include "any property, tangible or intangible, or service, including currency or monetary instruments . . . expert advice or assistance . . . communications equipment, facilities . . . and transportation, except medicine or religious materials." *Id.* § 2339A. Many States similarly prohibit providing material support for terrorism. For example, Iowa criminalizes "provid[ing] material support or resources to a person who commits or attempts to commit terrorism." Iowa Code ch. 708A.4. And here in Virginia, an entity violates the law if it "knowingly

6

provides any material support (i) to an . . . organization whose primary objective is to commit an act of terrorism and (ii) does so with the intent to further such . . . organization's objective." Va. Code § 18.2-46.5. Iowa and Virginia are not the only States with such laws: Alabama, Arizona, Arkansas, Florida, Illinois, Indiana, Louisiana, Michigan, Missouri, Nevada, New Jersey, Ohio, Pennsylvania, and Tennessee all have their own material-support statutes.[3] States enforce these material support statutes to ensure that their citizens are protected from would-be terrorists and their supporters.

Combatting terrorism does not end with criminal prosecution. Federal law allows those affected by terrorist attacks to seek civil damages from supporters of terrorism. See Part II, *supra*. So too do certain States, where state anti-terrorism acts create a private right of action for those injured by terrorism—including by those providing material support for terrorists. See, *e.g.*, Fla. Stat. § 775.30; 42 Pa. Stat. and Consol. Stat. § 8318 (creating private right of action to pursue remedies against a "person who knowingly provided material support or resources to or aided a terrorist or terrorist organization"). In one prominent case under Florida's statute, for instance, plaintiffs sued to recover against defendants that knowingly provided material support for terrorism by selling drugs, the profits of which would be remitted to foreign terrorist organization Fuerzas Armadas Revolucionarias de Colombia (more commonly known as FARC). *Osio v. Moros*, 2023 WL 5019877, at *4 (S.D. Fla. July 19, 2023), *report and recommendation adopted*, 2023 WL 5015435 (S.D. Fla. Aug. 7, 2023) (citing Fla. Stat. § 775.30). Florida's law allowed the plaintiffs to pursue their claims alleging material support. This type of enforcement action

---

[3] See AL Code § 13A-10-153, Ariz. Rev. Stat. Ann. § 13-2308.01, Ark. Code Ann. § 5-54-202, Fla. Stat. Ann. § 775.33, 720 Ill. Comp. Stat. Ann. 5/29D-29.9, Ind. Code § 35-46.5-2-5, La. Civ. Code Ann. art. 2315.9, Mich. Comp. Laws Ann. § 750.543k, Mo. Rev. Stat. Ann. § 576.080, Nev. Rev. Stat. Ann. § 202.445, N.J. Rev. Stat. 2C:38-5, Ohio Rev. Code Ann. § 2909.22, 42 Pa. Stat. and Consol. Stat. Ann. § 8318, Tennessee Code § 39-13-807.

complements the federal framework and shows how important it is to allow private rights of action—when authorized by statute—to enforce anti-terrorism laws.

States have vital interests in ensuring the safety and security of their citizens and attempt to do so through state law. Indeed, many States have enacted analogues and complements to the federal antiterrorism laws—including private rights of action for persons injured by those who provide material support for terrorists and terror organizations. The facts presented here are incredibly disturbing. At this motion to dismiss stage, construing all facts in Plaintiffs' favor, the Court should hold that Plaintiffs have grounds to proceed on the ATA claims. Allowing Plaintiffs to proceed will allow for justice here to be done.

## II. The ATA is the most effective tool for these Plaintiffs to attempt to receive compensation from Defendants

Although criminal prosecution can hold terrorists and their supporters accountable, a private right of action for damages is the most effective method for the actual victims of terrorism to be compensated. The federal ATA was created for this exact purpose, and this Court should not shut the courthouse doors for Plaintiffs who have put forward credible allegations that they were seriously injured by Defendants' material support of terror in the horrific October 7 attacks.

The ATA was passed precisely to provide plaintiffs like the ones here a civil cause of action for damages. In 1986, Congress had passed legislation that provided extraterritorial *criminal* jurisdiction for acts of international terrorism against U.S. nationals. See H.R. Rep. No. 102-1040, at 5. But a subsequent case showed Congress that there was a "gap" in this country's "efforts to develop a comprehensive legal response to international terrorism." *Ibid.* After a cruise passenger was executed and thrown overboard by terrorists, his widow and family pursued legal remedies against the terrorists in the courts of their home state of New York. *Ibid.* "Only by virtue of the fact that the attack violated certain Admiralty laws and that the organization involved—the

8

Palestine Liberation Organization—had assets and carried on activities in New York, was the court able to establish jurisdiction over the case." *Ibid.* A similar attack "occurring on an airplane or in some other locale might not have been subject to civil action in the U.S." *Ibid.*

Congress thus passed the expansive ATA statute. The ATA permits civil claims for injuries caused by an "act of international terrorism." 18 U.S.C. § 2333(a). "International terrorism" is defined as activities that "occur primarily outside the territorial jurisdiction of the United States" or "transcend national boundaries" in "the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum." *Id.* § 2331(1)(C). "International terrorism" is contrasted with "domestic terrorism," which is limited to activities that "occur primarily within the territorial jurisdiction of the United States." *Id.* § 2331(5)(C).

The ATA was meant to "codify general common law tort principles and to extend civil liability for acts of international terrorism to the full reaches of traditional tort law." *Boim v. Quranic Literacy Inst. & Holy Land Found. for Relief & Dev.*, 291 F.3d 1000, 1010 (7th Cir. 2002). The Act "accords victims of terrorism the remedies of American tort law, including treble damages and attorney's fees." *Ibid.* (quoting 137 Cong. Rec. S4511-04 (April 16, 1991)). The Act is "powerfully broad" and is meant to "bring in all of the substantive law of the American tort law system." *Ibid.* (quoting *Antiterrorism Act of 1990*, Hearing Before the Subcommittee on Courts and Administrative Practice of Committee on the Judiciary, United States Senate, 101st Congress, Second Session, July 25, 1990, Testimony of Joseph Morris, at 136 (brackets omitted)).

Congress thus created the ATA to overcome obstacles to holding terrorists accountable in American courts. Congress recognized that allowing private civil actions for these horrific attacks would not only provide remedies to the victims of terror but also could provide "an important

9

instrument in the fight against terrorism," *Antiterrorism Act of 1991*, Hearing Before the Subcomm. on Intellectual Property & Judicial Admin. of the H. Comm. on the Judiciary, 102d Cong. 10 (1992), at 10 (letter from Sen. Grassley), by striking at "the resource that keeps [international terrorists] in business – their money," 138 Cong. Rec. S17252-04 (1992) (statement of Sen. Grassley). The ATA reaffirmed America's "commitment to the rule of law," under which "the people of the United States" could "bring terrorists to justice the American way, by using the framework of our legal system to seek justice against those who follow no framework or defy all notions of morality and justice." *Antiterrorism Act of 1990*, Hearing Before the Subcommittee on Courts and Administrative Practice of the Senate Committee on the Judiciary, 101st Cong., 2nd Sess., at 2–3 (July 25, 1990).

    The ATA is thus a critical tool for citizens of *Amici* States to receive compensation for the effects of horrific acts of international terrorism, like the October 7 attacks. Although the treble damages provision of the ATA was intended to punish terrorists, it also serves the important purpose of attempting—in some small way—to make victims whole after life-altering events. See *Stansell v. Revolutionary Armed Forces of Columbia*, 2022 WL 17830551, at *5 (S.D.N.Y. Dec. 21, 2022) (The ATA "reflects both a desire to punish terrorists via criminal and civil penalties and to compensate victims of terrorism."). Indeed, "it is important to realize that treble damages have a compensatory side, serving remedial purposes in addition to punitive objectives." *Cook Cnty., Ill. v. United States ex rel. Chandler*, 538 U.S. 119, 130 (2003). The ATA's legislative history "reflects that Congress conceived of the ATA, at least in part, as a mechanism for protecting the public's interests through private enforcement." *Linde v. Arab Bank, PLC*, 706 F.3d 92, 112 (2d Cir. 2013). Thus, "[t]reble damages under the ATA are compensatory damages because they are remedial in nature, and function, in essence, as a form of liquidated damages." *Stansell*, 2022 WL

10

17830551, at *3. ATA damage awards can "compensate the estates of victims and their family members for non-economic harms such as pain and suffering, loss of companionship and mental anguish." *Id.* at *6; see also *Knox v. Palestine Liberation Org.*, 442 F. Supp. 2d 62 (S.D.N.Y. 2006) (awarding damages for "loss of consortium, loss of companionship, society and guidance, and damages for mental anguish"); *Pugh v. Socialist People's Libyan Arab Jamahiriya*, 530 F. Supp. 2d 216 (D.D.C. 2008) (awarding damages for loss of consortium and pain and suffering); *Estates of Ungar ex rel. Strachman v. Palestinian Auth.*, 304 F. Supp. 2d 232, 239 (D.R.I. 2004).

Virginia, unlike certain other States, does not have a private right of action for victims of terrorism to seek damages from the supports of terrorism. Thus, it would be difficult to receive damages against AMP under the state law of Virginia, where AMP has its principal place of business. See FAC ¶ 10. The ATA is likely Plaintiffs' only avenue to receive compensation for the horrific crimes perpetrated against them. This Court should not dismiss Plaintiffs' ATA claims and allow AMP and NSJP to escape liability without Plaintiffs having a chance to prove their case.

A civil action may also be effective here given AMP's conduct in an ongoing governmental investigation. The Virginia Attorney General has launched an investigation into AMP for potential violations of Virginia's laws, including allegations that AMP may have used funds raised for impermissible purposes, such as "benefitting or providing support to terrorist organizations." See FAC ¶ 52 (quoting News Release, Jason Miyares, Attorney General of Virginia, Attorney General's Office Opens Investigation Into American Muslims for Palestine Nonprofit (Oct. 31, 2023)). But rather than comply with the investigation, AMP sued the Attorney General in the Circuit Court for the City of Richmond. See FAC ¶ 157. A state court judge rejected AMP's attempt to set aside the Attorney General's request for information, see News Release, Jason Miyares, Attorney General of Virginia, Virginia Court Orders American Muslims for Palestine to

11

Produce Records Requested by Attorney General Miyares, https://tinyurl.com/yy7ryuck, but the point remains that AMP has stonewalled a legitimate investigation into its potential material support of terror. This investigation into AMP remains ongoing and, while it may help bring justice to the victims of the October 7 attacks, it will not give those victims financial compensation. For that reason, this Court should not dismiss Plaintiffs' ATA claims and should rather allow them to have their day in court.

## CONCLUSION

For all these reasons, this Court should decline to dismiss Plaintiffs' ATA claims.

Dated: September 20, 2024                               Respectfully submitted,

**COMMONWEALTH OF VIRGINIA, *ET AL.***

By:  ___*/s/ Kevin M. Gallagher*___
     Kevin M. Gallagher (VSB #87548)
     *Principal Deputy Solicitor General*

| | |
|---|---|
| Brenna Bird<br>  *Attorney General* | Jason S. Miyares<br>  *Attorney General* |
| Eric Wessan<br>  *Solicitor General* | Erika L. Maley (VSB #97533)<br>  *Solicitor General* |
| Office of the Attorney General<br>1305 E. Walnut St.<br>Des Moines, Iowa 50319<br>(515) 823-9117 – Telephone | Office of the Attorney General<br>202 North Ninth Street<br>Richmond, Virginia 23219<br>(804) 786-7704 – Telephone<br>(804) 371-0200 – Facsimile |
| eric.wessan@ag.iowa.gov | EMaley@oag.state.va.us |
| *Counsel for the State of Iowa* | *Counsel for the Commonwealth of Virginia* |

12

*Counsel for Additional* Amici *States*

| | |
|---|---|
| STEVE MARSHALL<br>Attorney General<br>State of Alabama | TREG TAYLOR<br>Attorney General<br>State of Alaska |
| TIM GRIFFIN<br>Attorney General<br>State of Arkansas | ASHLEY MOODY<br>Attorney General<br>State of Florida |
| CHRISTOPHER M. CARR<br>Attorney General<br>State of Georgia | THEODORE E. ROKITA<br>Attorney General<br>State of Indiana |
| KRIS KOBACH<br>Attorney General<br>State of Kansas | RUSSELL COLEMAN<br>Attorney General<br>Commonwealth of Kentucky |
| LIZ MURRILL<br>Attorney General<br>State of Louisiana | ANDREW BAILEY<br>Attorney General<br>State of Missouri |
| AUSTIN KNUDSEN<br>Attorney General<br>State of Montana | MICHAEL T. HILGERS<br>Attorney General<br>State of Nebraska |
| DREW WRIGLEY<br>Attorney General<br>State of North Dakota | GENTNER F. DRUMMOND<br>Attorney General<br>State of Oklahoma |
| ALAN WILSON<br>Attorney General<br>State of South Carolina | MARTY JACKLEY<br>Attorney General<br>State of South Dakota |
| JONATHAN SKRMETTI<br>Attorney General and Reporter<br>State of Tennessee | KEN PAXTON<br>Attorney General<br>State of Texas |
| SEAN D. REYES<br>Attorney General<br>State of Utah | PATRICK MORRISEY<br>Attorney General<br>State of West Virginia |

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that on September 20, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all parties of record.

                                                               */s/ Kevin M. Gallagher*
                                                               Kevin M. Gallagher (VSB #87548)
                                                               *Counsel for the Commonwealth of Virginia*