# IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

| | |
|---|---|
| MAYA PARIZER, ADIN GESS, NOACH NEWMAN, NATALIE SANANDAJI, YONI DILLER, DAVID BROMBERG, LIOR BAR OR, ARIEL EIN-GAL, and HAGAR ALMOG, <br><br> Plaintiffs, <br><br> v. <br><br> AJP EDUCATIONAL FOUNDATION, INC. a/k/a AMERICAN MUSLIMS FOR PALESTINE, NATIONAL STUDENTS FOR JUSTICE IN PALESTINE, WESPAC FOUNDATION, HATEM BAZIAN, OSAMA ABUIRSHAID, TAHER HERZALLAH, and ZAREFAH BAROUD, <br><br> Defendants. | Civil No. 1:24-cv-00724-RDA-IDD |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANT HATEM BAZIAN'S MOTION TO DISMISS**

## INTRODUCTION

Defendant Hatem Bazian's motion to dismiss the First Amended Complaint ("Complaint" or "FAC", ECF No. 24) is without merit and should be denied. This case seeks to hold responsible the individuals and entities in the United States that provide material support and resources to Hamas, a designated foreign terrorist organization that has carried out horrific attacks against Plaintiffs and countless others. Bazian is one of these individuals. He is the founder and Principal Officer of Defendant AJP Educational Foundation, Inc. d/b/a American Muslims for Palestine ("AMP"), the Chairman of AMP's National Board, and a founder of AMP's on-campus brand, Defendant National Students for Justice in Palestine ("NSJP"). (FAC ¶ 13.) He has served in senior positions at AMP for years, with significant control over its finances, and has a history of involvement in organizations linked to supporting Hamas. (*Id.* ¶¶ 13, 42, 47, 50, 66.) Indeed, he has raised funds for an entity that was disbanded by the Treasury Department for its ties to Hamas. (*Id.* ¶¶ 32, 42.)

Plaintiffs' Complaint is more than sufficient as a matter of law as it alleges in extraordinary detail that AMP, led by Bazian, has been supplying Hamas with money, propaganda services, recruiting services, and political mobilizations for nearly forty years. It describes how immediately after the attacks on October 7, 2023, as Hamas's butchery continued, AMP declared through NSJP that it was "PART of" Hamas and operating under its "unified command," and began pumping a torrent of pro-Hamas propaganda across the country. (*Id.* ¶ 84.) And as Bazian "is responsible, in whole or in part, for directing AMP's ideological efforts for the benefit of Hamas and its allies" (*id*. ¶ 13), his fingerprints are all over AMP's wrongful acts. The specific and detailed allegations of the Complaint, if proven, would subject Bazian to liability under both the Antiterrorism Act ("ATA") and the Alien Tort Statute ("ATS").

Bazian argues the Complaint should be dismissed for lack of personal jurisdiction, failure to state claims under the ATA and ATS, and lack of subject matter jurisdiction for the ATS claim. He is wrong, and his motion should be denied for three reasons.

First, the ATA provides for jurisdiction over Bazian via its nationwide service of process provision because venue is proper, he was properly served according to Virginia law and federal rules, and he has sufficient contacts with the United States. And even if the ATA's provisions were inapplicable, Bazian's role as AMP's founder and Chairman creates sufficient contacts with Virginia to authorize personal jurisdiction pursuant to its long-arm statute.

Second, Plaintiffs state a claim against Bazian for aiding and abetting Hamas's violation of the ATA. As explained in the joint opposition to AMP and WESPAC Foundation Inc.'s motions to dismiss,[1] Bazian's organization knowingly and substantially assisted Hamas with propaganda and recruiting services before, during, and after the October 7 attacks. Indeed, AMP's contributions to Hamas have been so systemic and intentional that Bazian's organization is liable for **all** of Hamas's crimes. Under well-established legal principles, Bazian may be held individually liable for this wrongdoing because he controlled and directed as AMP's founder and Principal Officer.

Third, Plaintiffs have more than met the legal standard by alleging abundant facts that both state a claim under the ATS and permit this Court to exercise subject matter jurisdiction over those claims. Bazian's motion to dismiss merely recycles the same meritless contentions as AMP's motion, and the motion thereby fails for the same reasons. Like with the ATA claim, Bazian may

---

[1] *See* Plaintiffs' Memorandum of Law in Opposition to the Motions to Dismiss Filed by Defendants AJP Educational Foundation, Inc. a/k/a American Muslims for Palestine and WESPAC Foundation, Inc. ("Joint Opp."), ECF No. 85.

2

be held individually liable for AMP's wrongdoing under the ATS because he controls and directs it.

For all these reasons, the Court should deny Bazian's motion.

## **ARGUMENT**

I.   **PERSONAL JURISDICTION OVER BAZIAN IS PROPER**

Through their Complaint, Plaintiffs have made a prima facie showing that personal jurisdiction over Bazian exists, and that his motion to dismiss for lack of personal jurisdiction should be denied. *D'Addario v. Geller*, 264 F. Supp. 2d 367, 386 (E.D. Va. 2003). While a plaintiff bears the burden of establishing the existence of personal jurisdiction by a preponderance of the evidence, "he is entitled 'to favorable inferences from the pleadings, affidavits, and documents submitted on the issue.'" *Id.* at 377 (citations omitted). A plaintiff "need only make a prima facie showing of personal jurisdiction to survive the jurisdictional challenge." *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1980)). "When determining whether a plaintiff has made the requisite prima facie showing, the court must take the allegations and available evidence relating to personal jurisdiction in the light most favorable to the plaintiff." *Id*.

  A.   **The Court May Exercise Nationwide Personal Jurisdiction Over Bazian Under the ATA**

The ATA provides a statutory basis for personal jurisdiction over Bazian on a nationwide basis. Rule 4(k)(1)(C) states that service of a summons can establish personal jurisdiction over a defendant "when authorized by federal statute." Fed. R. Civ. P. 4(k)(1)(C). Under this rule, personal jurisdiction can be achieved "through proper service of process upon a defendant pursuant to a federal statute that contains its own service provision." *Weiss v. Nat'l Westminster Bank PLC*, 176 F. Supp. 3d 264, 283 (E.D.N.Y. 2016). The ATA includes such a provision, which explicitly

3

authorizes nationwide service of process and thus "permits the exercise of personal jurisdiction over parties properly served anywhere in the United States." *Cohen v. Facebook, Inc.*, 252 F. Supp. 3d 140, 152 (E.D.N.Y. 2017). The ATA states:

> Any civil action under section 2333 of this title against any person may be instituted in the district court of the United States for any district where any plaintiff resides or where any defendant resides or is served, or has an agent. Process in such a civil action may be served in any district where the defendant resides, is found, or has an agent.

18 U.S.C. § 2334(a). This provision "clearly confers nationwide service of process and therefore jurisdiction under Rule 4(k)(1)(C)." *Zobay v. MTN Grp. Ltd.*, 695 F. Supp. 3d 301, 322 (E.D.N.Y. 2023).

Federal courts routinely exercise nationwide personal jurisdiction over ATA defendants where: (1) venue is proper under the ATA; (2) the defendants are properly served under the ATA; and (3) the defendants have sufficient minimum contacts with the United States as a whole. *See Stansell v. BGP, Inc.*, 2011 WL 1296881, at *3 (M.D. Fla. Mar. 31, 2011) (holding ATA and Rule 4(k)(1)(C) provided "an adequate basis for personal jurisdiction" over domestic corporations not domiciled in the forum state); *see also Estates of Ungar v. Palestinian Auth.*, 153 F. Supp. 2d 76, 86–91 (D.R.I. 2001); *Wultz v. Islamic Republic of Iran*, 762 F. Supp. 2d 18, 25–26 (D.D.C. 2011); *Strauss v. Crédit Lyonnais, S.A.*, 175 F. Supp. 3d 3, 26–27 (E.D.N.Y. 2016). All three requirements are present here.

1. <u>Venue Is Proper Under the ATA</u>

The ATA's nationwide service of process provision allows a civil action under § 2333 to be instituted in *any* district court where any defendant resides. 18 U.S.C. § 2334(a). The Complaint sufficiently alleges that AMP's principal place of business is located in this District. (FAC ¶ 10.) Defendant Osama Abuirshaid also resides in this District. Venue is thus proper under the ATA.

4

### 2. Bazian Was Properly Served

Bazian was also properly served under the ATA when he was served through his wife at their California home after five separate attempts to serve him personally were unsuccessful. Bazian argues that he should have been served according to California law and the summons was defective, but both arguments are meritless.

*First*, Rule 4(e)(1) provides that service can be accomplished by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). Service would thus be proper by following *either* the laws of Virginia (this Court's location) or California (the location of service). Rule 4(e)(2)(B) also further provides that service may be effected by "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." Fed. R. Civ. P. 4(e)(2)(B).

Here, Bazian was properly served pursuant to Virginia law, and in accordance with Rule 4(e). Service on a natural person in Virginia is proper "[i]f the party to be served is not found at his usual place of abode, by delivering a copy of such process and giving information of its purport to any person found there, who is a member of his family, . . . and who is of the age of 16 years or older." Va. Code § 8.01-296(2)(a); *accord Santamaria v. GL Constr., Inc.*, 2015 U.S. Dist. LEXIS 174819, at *3 (E.D. Va. Dec. 28, 2015) (plaintiff properly served individual defendant by leaving summons at his place of abode with his spouse), *report and recommendation adopted*, 2016 U.S. Dist. LEXIS 5562 (E.D. Va. Jan. 15, 2016). Substitute service is as equally effective as personal service on a defendant, and it is immaterial whether the defendant authorized the family member to accept service. (*Contra* Bazian Mem., ECF No. 71, at 11.) Here, through their research, Plaintiffs identified a California residential address for Bazian. Plaintiffs then retained a process server who made five separate attempts to serve Bazian at his residence over the span of 10 days—

5

on July 20, 22, 25, 27, and 30—but no one answered. (ECF No. 41 at 3.) Finally, on August 3, 2024, the process server made substitute service on Bazian's wife, with whom Bazian resides at the same California residence. (*Id.*) Accordingly, Plaintiff properly served Bazian under Virginia Code § 8.01-296(2)(a) and Rule 4(e).

*Second*, Bazian is wrong that the summons is defective because it included the principal office address of AJP—the nonprofit doing business as AMP, which Bazian founded and for which he serves as Principal Officer and Chairman—and not the residential address at which he was served. (Bazian Mem. at 11.) Even if a summons contains defects, service is generally effective as long as those defects are not misleading or prejudicial to the defendant. *United States v. A.H. Fischer Lumber Co.*, 162 F.2d 872, 873 (4th Cir. 1947) (holding that service was effective despite summons and complaint erroneously naming defendant as "A.H. Fischer Lumber Company" rather than "A.H. Fischer Company"); *Morrel v. Nationwide Mut. Fire Ins. Co.*, 188 F.3d 218, 224 (4th Cir. 1999) (finding that failure to include the abbreviation "Inc." after a corporation's name did not render a summons ineffective). If a lawsuit names a defendant "in such terms that every intelligent person understands who is meant . . . it has fulfilled its purpose; and courts should not put themselves in the position of failing to recognize what is apparent to everyone else." *A.H. Fischer*, 162 F.2d at 873. Rule 4(a)(1) does not even require an address to be included on the summons at all, so courts have found service to be effective where the summons listed an address where the defendant no longer lived,[2] where the summons failed to include an email address,[3] or where an address was omitted from the summons completely.[4]

---

[2] *Patch Rubber Co. v. Schmersey*, 2005 WL 8159161, at *1 (E.D.N.C. Nov. 30, 2005).
[3] *May v. Martin Fein Int. Ltd.*, 2023 WL 1873155, at *4 (E.D.N.C. Jan. 24, 2023), *report and recommendation adopted*, 2023 WL 1864859 (E.D.N.C. Feb. 9, 2023).
[4] *Gryphon Oilfield Sols., LLC v. Stage Completions (USA) Corp.*, 2018 WL 7117891, at *1 n.1 (S.D. Tex. Feb 2, 2018).

6

Plaintiffs logically believed that Bazian could be served at the principal office of a nonprofit that he founded and where he serves as the Principal Officer and Chairman, so they included AJP's Falls Church, Virginia, address on the summons. When Plaintiffs' process server attempted to serve Bazian at AJP, however, she was informed that Bazian did not work at that office. Plaintiffs then served Bazian at his residential address in California. The presence of a different address on the summons, then, is wholly irrelevant. Because "there is simply no possibility" that Bazian "did not understand that the [summons] sought to bring [him] into court," it properly effected service on him. *Morrel*, 188 F.2d at 224.

### 3. Bazian Has Sufficient Minimum Contacts With the United States

While a court's exercise of nationwide personal jurisdiction must still comport with constitutional due process, *Zobay*, 695 F. Supp. 3d at 323, the proper inquiry for assessing minimum contacts under § 2334(a) is whether Bazian has sufficient minimum contacts with the United States *as a whole*. *See Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 32 (D.D.C. 2010) (applying the national contacts test to an ATA claim); *Est. of Ungar v. Palestinian Auth.*, 400 F. Supp. 2d 541, 548 (S.D.N.Y. 2005) (same).[5] "It will rarely be the case under the ATA that 'a defendant who has minimum contacts with the United States nonetheless will be unduly burdened by the assertion of jurisdiction' such that the 'inconvenience rise[s] to a level of constitutional concern.'" *Wultz*, 755 F. Supp. 2d at 32 (quoting *Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp. 2d 86, 96 n.5 (D.D.C. 2003)).

---

[5] *See also ESAB Grp. v. Centricut, Inc.*, 126 F.3d 617, 628 (4th Cir. 1997) ("[I]f the claim is based on a federal statute authorizing nationwide service of process, personal jurisdiction may be asserted over a defendant anywhere in the country[.]"); *Nunes v. Fusion GPS*, 531 F. Supp. 3d 993, 1003 (E.D. Va. 2021) (applying the "national contacts" test to a RICO claim because RICO provides for nationwide service of process, denying personal jurisdiction challenge); *D'Addario*, 264 F. Supp. 2d at 386 ("The Fourth Circuit, … has held a 'national contacts' standard applicable when federal law authorizes nationwide service of process.").

7

Bazian is a United States citizen who clearly has "minimum contacts" with the United States. His motion also does not provide any compelling reason for this Court to treat this as the "rare" case where jurisdiction should be deemed unreasonable. Bazian's challenge to personal jurisdiction thus fails on its face.

### B. Bazian Has Sufficient Minimum Contacts with Virginia to Permit Personal Jurisdiction

Even if the ATA's nationwide service provision did not apply (which it does), Bazian has sufficient contacts with Virginia to authorize personal jurisdiction under two provisions of Virginia's long arm statute. As AMP's founder and Chairman, Bazian cannot evade personal jurisdiction for acts committed by a corporation that he directs and controls. *See Columbia Briargate Co. v. First Nat'l Bank*, 713 F.2d 1052, 1063 (4th Cir. 1983) (out of state corporate director subject to personal jurisdiction if he has "direct personal involvement in a tort committed in the forum state" or his acts have a "causal connection with the plaintiff's alleged cause of action" (internal quotations omitted)).

First, the long-arm statute permits Virginia courts to exercise personal jurisdiction over a person who "[t]ransact[s] any business in this Commonwealth." Va. Code § 8.01-328.1(A)(1). Bazian is the founder and current Chairman of AMP, the d/b/a of AJP Educational Foundation, a corporation with its principal office in Falls Church, Virginia. (FAC ¶¶ 10, 42.) While Bazian may not have an office or regularly work in Virginia, it is reasonable to infer from these allegations that he transacts at least some business in Virginia.

The statute additionally permits Virginia courts to exercise personal jurisdiction over a person who "[c]aus[es] tortious injury by an act or omission in this Commonwealth." Va. Code § 8.01-328.1(A)(3). "[A]n act" sufficient to confer jurisdiction includes "[u]sing a computer or computer network located in the Commonwealth." *Id.* § 8.01-328.1(B); *Aitken v. Commc'ns*

8

*Workers of Am.*, 496 F. Supp. 2d 653, 659 (E.D. Va. 2007) (finding that § 328.1(B) conferred personal jurisdiction over out-of-state defendants who allegedly sent tortious email messages to Virginia computers over Virginia servers). AMP, operating from its principal place of business in Virginia, aided and abetted Hamas's tortious acts by serving as Hamas's propaganda arm in the United States. AMP, its on-campus brand NSJP, and Bazian himself use Instagram, X, and other social media sites to spread Hamas propaganda throughout the country. (FAC ¶¶ 43, 97, 102, 115.) Many of these "acts" are directed to campus SJP chapters across the country (FAC ¶¶ 60–63), some of which are in Virginia. And many of the social media companies whose sites they use to disseminate this information operate through servers located in Virginia. It is therefore reasonable to infer that AMP's, NSJP's, and Bazian's acts of aiding and abetting Hamas' tortious acts is directed to, occurred in, and continues to occur within, the Commonwealth.

Exercising personal jurisdiction over Bazian under either of these provisions comports with due process. When analyzing whether a defendant has sufficient "minimum contacts" with the forum state to satisfy due process, this Court should consider "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 189 (4th Cir. 2016). Importantly, "it is not necessary that the defendant ever actually enter the forum State's territory; so long as the defendant has purposefully directed his activities toward the forum State, and the litigation arises from those activities, due process is satisfied." *Pittsburgh Terminal Corp. v. Mid Allegheny Corp.*, 831 F.2d 522, 525 (4th Cir. 1987).

Bazian directs and controls a corporation that principally operates in Falls Church, Virginia and directs its terroristic propaganda throughout the country via the internet. Bazian "may not

9

avoid personal jurisdiction by simply pleading ignorance of where these servers were physically located, nor by pleading ignorance of the . . . recipient's location." *Aitken*, 496 F. Supp. 2d at 660 (internal quotation marks omitted). Rather, courts have recognized that "those who commit . . . torts via computer and the Internet know, or reasonably should know, that servers are either targets of their conduct or the means by which their tortious conduct is given effect." *Id.* at 559–60. Accordingly, because Bazian has "purposefully directed his activities toward [Virginia], and the litigation arises from those activities, due process is satisfied."[6] *See Pittsburgh Terminal Corp.*, 831 F.2d at 525.

### C. The Court Has Pendent Personal Jurisdiction Over Plaintiffs' ATS Claims Against Bazian

Personal jurisdiction under the ATA extends to Plaintiffs' ATS claim against Bazian. Through "pendent personal jurisdiction," a district court with jurisdiction over a defendant as to one claim also has jurisdiction as to any claims that "arise from a common nucleus of operative fact." *ESAB*, 126 F.3d at 628; *accord D'Addario*, 264 F. Supp. 2d at 387–89. Because the ATS and ATA claims arise out of the same facts—Bazian's provision of substantial aid, support, and resources to Hamas—the Court also has jurisdiction over the ATS claim. It is irrelevant that the claims are asserted by different Plaintiffs. Bazian "will have to adjudicate the facts of the [ATA] claim," so it "could impose only a minimal burden to require [him] to provide a defense on the factually-related [ATS] claim." *See ESAB*, 126 F.3d at 628.

\*\*\*

Having made a prima facie showing of jurisdiction, the burden shifts to Bazian to demonstrate why the exercise of jurisdiction would be unfair or unreasonable. *ESAB*, 126 F.3d at

---

[6] Should the Court deem it necessary to further explore Bazian's contacts with Virginia, Plaintiffs respectfully request the Court permit jurisdictional discovery under Rule 26. *See Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 64 (4th Cir. 1993).

10

627 (citing *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 948 (11th Cir. 1997)). But Bazian's motion does not show that exercising jurisdiction would result in any unfairness or unreasonableness to him, nor can he. Accordingly, the motion should be denied.

## II.    PLAINTIFFS STATE AN ATA CLAIM AGAINST BAZIAN

In arguing that Plaintiffs fail to state an ATA claim against him, Bazian recycles the same meritless arguments made by AMP, the entity he founded and directs. These contentions fail for all the same reasons identified in Plaintiffs' Joint Opposition, and the ATA claim against Bazian for aiding and abetting Hamas's October 7 attack should be sustained. (Joint Opp. at 5–19.)

*First*, Bazian argues that the ATA claim fails because Plaintiffs fail to allege that he had "prior knowledge" of the October 7 attacks. (Bazian Mem. 17.) But there is no "prior knowledge" requirement under either a near-common enterprise theory or a traditional aiding-and-abetting theory. (Joint Opp. 11, 12–13 (citing *Twitter v. Taamneh*, 598 U.S. 471, 495–96 (2023), *Halberstam v. Welch*, 705 F.2d 472, 488 (D.C. Cir. 1983), *Linde v. Arab Bank*, 882 F.3d 314, 329 (2d Cir. 2018), and *Zobay*, 695 F. Supp. 3d at 346).) The Complaint alleges that Bazian's organization had a high, culpable level of knowledge, including whatever degree of prior knowledge might be required. (*See* Joint Opp. 11–12, 13–15.)

*Second*, Bazian argues that the Complaint lacks allegations that Bazian "substantially assisted in Hamas' October 7 attacks. (Bazian Mem. 18.) Relying on the same fictional proposition and phantom case citation as AMP, Bazian argues that "substantial assistance requires a plaintiff to show that the defendant's actions significantly enhanced the terrorist actor's ability to carry out the attacks." (*Id.* (citing "*Taamneh*, 598 U.S. at 461").) Bazian's citation points to an unrelated case, *Ohio Adjutant General's Department v. Federal Labor Relations Authority*, 598 U.S. 449, 461 (2023), and *Twitter* establishes no such rule. As Plaintiffs have shown, using the proper analysis, Bazian's organization directly assisted the October 7 attack. (Joint Opp. 15–17.) With the

11

substantiality and knowledge allegations considered "in tandem," the Complaint alleges such "pervasive and systemic aid" to Hamas that Bazian's organization is liable for all of Hamas's crimes. *Twitter*, 598 U.S. at 491, 506.

Contrary to Bazian's unsupported, one-sentence assertion (Bazian Mem. 17), Bazian is individually liable under the ATA. Plaintiffs allege that Bazian, who founded AMP and NSJP and now serves as AMP's Principal Officer and Chairman of its National Board, is responsible for "directing" AMP's propaganda for Hamas and "managing" AMP's donor relationships. (FAC ¶ 13.) These allegations easily state an ATA claim against Bazian individually. *See Abecassis v. Wyatt*, 785 F. Supp. 2d 614, 650 (S.D. Tex. 2011) (sustaining ATA claim against corporation's alleged employee/executive officer/managerial employee who was "responsible for purchasing Iraqi oil using front companies and paying kickbacks to Iraq"); *see also Revolon Monterey Energy LLV v. Operator*, 2014 WL 12576644, at *5 (C.D. Cal. Sept. 18, 2014) (plaintiff has "adequately plead that [individual defendant] is individually liable for the actions he took while acting as manager/president" of the defendant corporations because "[a]s manager, president, and owner of the [corporate defendants], it is plausible that [he] occupied a prominent position in the companies and had extensive control and knowledge over their affairs" (citing *Iqbal*, 566 U.S. at 678)).

In addition to his responsibilities as part of AMP's senior management, Bazian "personally directed and/or engaged in nearly all" of AMP and NJSP's activities in support of Hamas. *Trans-Radial Sols., LLC v. Burlington Med., LLC*, 2019 WL 3557879, at *5 (E.D. Va. Aug. 5, 2019) (denying motion to dismiss claims against defendant corporation's CEO, who, among other things, "formed" the corporation and "directed" it to commit the tortious conduct alleged). Bazian promoted Hamas's ideology on social media (FAC ¶ 43), was a speaker and fundraiser for the Hamas-founded Palestine Committee (*id.* ¶¶ 25, 35), and was a fundraiser for Charitable

12

Humanitarian Development, Inc., another Hamas-founded organization that was disbanded after providing material support for Hamas. (*Id.* ¶ 32). Tellingly, Bazian completely ignores these allegations.

Finally, Bazian's reliance on *Keren Kayemeth LeIsrael – Jewish National Fund v. Education for Just Peace in the Middle East*, 66 F.4th 1007 (D.C. Cir. 2023), is misplaced. There, the plaintiffs claimed that a non-profit assisted a terror attack by funding a coalition of many groups, some of which coordinated the launching of incendiary devices into Israel. 66 F.4th at 1011. The court found no substantial assistance because the plaintiffs did not allege the nonprofit itself sent Hamas money and because the coalition had "extensive legitimate operations," with Hamas and an ally being just two of its "many members." *Id*. at 1018. Bazian's organization, however, is composed of Hamas collaborators and provides its propaganda services directly to Hamas with the goal of supporting terrorism. (FAC ¶¶ 33–50, 62–66.)

Accordingly, Plaintiffs state an ATA claim against Bazian.

## III.   PLAINTIFFS' ALIEN TORT STATUTE CLAIM MORE THAN MEETS THE LEGAL STANDARD

Plaintiffs' ATS claim against Bazian is also more than sufficient as a matter of law. In seeking to dismiss this claim, Bazian once again parrots the unsuccessful arguments made by AMP in its motion. They should be rejected for all the reasons set forth in the Joint Opposition.[7]

*First*, Bazian urges that the Complaint alleges insufficient domestic conduct to support subject matter jurisdiction. (Bazian Mem. 13–14.) But as explained, in an aiding and abetting case, only the abettor's conduct need be domestic. (Joint Opp. 27–28 (citing *Doe I v. Cisco Sys.*, 73 F.4th 700, 737–38 (9th Cir. 2023) and *Al Shimari v. CACI Premier Tech., Inc.*, 684 F. Supp. 3d

---

[7] Joint Opp. 25–39.

481, 497 (E.D. Va. 2023).) The Complaint alleges extensive domestic conduct by Bazian's organization, which has supplied Hamas with propaganda services from the United States for nearly forty years. (Joint Opp. 28.) The Court therefore has subject matter jurisdiction.

*Second*, Bazian further challenges subject matter jurisdiction on the ground that the Complaint does not allege an actionable international norm. (Bazian Mem. 14–15.) Put differently, Bazian thinks the law of nations **condones** Hamas's atrocities and his and his organization's extensive support. Bazian is wrong. As shown, the Complaint alleges four distinct actionable norms: genocide, war crimes, harming civilians in terror attacks, and supporting terrorism. (Joint Opp. 25, 29–35.) Bazian and his organization are secondarily liable for Hamas's violations of the first three and primarily liable for their own violation of the fourth. Bazian's focus on self-enforcing treaties and private rights of action is misplaced. Neither is required to evidence an actionable norm. (*Id.* at 34 (citing *Abelesz v. Magyar Nemzeti Bank*, 692 F.3d 661, 685 (7th Cir. 2012), *Flomo v. Firestone Nat'l Rubber Co., LLC*, 643 F.3d 1013, 1021–22 (7th Cir. 2011), and *Al Shimari v. CACI Premier Tech., Inc.*, 263 F. Supp. 3d 595, 600, 606 (E.D Va. 2017).) Because Bazian is individually liable for his organization's misconduct, *see supra* § II, the Court has subject matter jurisdiction over the ATS claim against him as well.

*Third*, Bazian's challenges to the merits of the ATS claim fail. Bazian argues that the Complaint does not allege that he had the purpose of facilitating the October 7 attack or that he substantially assisted it. (Bazian Mem. 15–16.) But the Complaint sufficiently alleges knowledge, which is the required mental state for the terror support norm, and which should be the requirement for abetting Hamas's violations of the other three norms. (Joint Opp. 36.) Although the Fourth Circuit has stated that the requisite mental state for aiding and abetting an ATS violation is the "purpose of facilitating" a primary violation, *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 401 (4th Cir.

2011), that narrow aspect of *Aziz* is wrong. The correct standard is knowledge, *see Cisco*, 73 F.4th at 734, and the error in *Aziz* requires correction by a higher court. In any event, as explained, the Complaint sufficiently alleges that Bazian's organization had the purpose of facilitating the attack. (Joint Opp. 36–37.) As for substantiality, AMP's aid to Hamas's ATS violations was substantial for the same reasons it substantially assisted the ATA violations (*id.* at 37, 15–18), and Bazian is individually liable for this misconduct for the reasons discussed above. *See supra* § II.

*Fourth*, any First Amendment argument is waived and meritless for the reasons Plaintiffs have already set forth. Although Bazian echoes AMP's rhetorical appeals to First Amendment concepts (Bazian Mem. 1–2, 15–16, 17, 19), he makes no legal argument and therefore waives it. (Joint Opp. 37–38 (citing *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017)).) In any event, any challenge is meritless: the Constitution does not protect providing terrorists with propaganda and recruiting services. (*Id.* at 38–39 (citing *Holder v. Humanitarian Law Proj.*, 561 U.S. 1, 29–32 (2010) and *U.S. v. Osadzinski*, 97 F.4th 484, 486, 492 (7th Cir. 2024)).)

Accordingly, Plaintiffs allege facts supporting jurisdiction and state a claim under the ATS.

## CONCLUSION

As a threshold matter, this Court has personal jurisdiction over Bazian. Further, the Complaint plausibly alleges that Bazian's organization deliberately aided Hamas both before and after the horrific terror attacks on October 7, and that Bazian may be held personally liable for these acts as its founder and senior manager. Accordingly, his motion should be denied.[8]

---

[8] In the alternative, Plaintiffs respectfully request leave to amend. (Joint Opp. at 39.)

15

Date: September 23, 2024

Respectfully submitted,

*Counsel for Plaintiffs Maya Parizer, Ariel Ein-Gal, Hagar Almog, Adin Gess, Noach Newman, Natalie Sanandaji, Yoni Diller, David Bromberg, and Lior Bar Or*

By: */s/ Jason Torchinsky*
Jason Torchinsky

**GREENBERG TRAURIG, LLP**
SCOTT BORNSTEIN*
bornsteins@gtlaw.com
RICHARD EDLIN*
edlinr@gtlaw.com
RICHARD ROSENBAUM*
rosenbaumr@gtlaw.com
HAL SHAFTEL*
shaftelh@gtlaw.com
One Vanderbilt Avenue
New York, New York 10017
T. 212.801.9200

**GREENBERG TRAURIG, P.A.**
BRADFORD KAUFMAN*
kaufmanb@gtlaw.com
777 South Flagler Drive
Suite 300
East West Palm Beach,
Florida 33401
T. 561.650.7900
ZACHARY NEEDELL*
zachary.needell@gtlaw.com
401 East Las Olas
Boulevard, Suite 2000
Fort Lauderdale, Florida
33301
T. 954.765.0500

**LAW OFFICES OF DAVID SCHOEN**
DAVID SCHOEN*
schoenlawfirm@gmail.com
2800 Zelda Road, Suite 100-6
Montgomery, Alabama 36106

**HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK, PLLC**
JASON TORCHINSKY
Va. Bar No. 47481
jtorchinsky@holtzmanvogel.com
JONATHAN FAHEY
Va. Bar No. 44854
jfahey@holtzmanvogel.com
ERIELLE DAVIDSON*
edavidson@holtzmanvogel.com
2300 N. Street NW, Suite 643
Washington D.C. 20037
PHILLIP GORDON
Va. Bar No. 95621
pgordon@holtzmanvogel.com
JOHN CYCON
Va. Bar No. 100104
jcycon@holtzmanvogel.com
DANIEL BRUCE
Va. Bar No. 98120
dbruce@holtzmanvogel.com
15405 John Marshall Hwy
Haymarket, VA 20169
T. 202.737.8808

**NATIONAL JEWISH ADVOCACY CENTER**
MARK GOLDFEDER*
mark@jewishadvocacycenter.org
BEN SCHLAGER*
ben@jewishadvocacycenter.org
ANAT BECK*
Anat@jewishadvocacycenter.org
National Jewish Advocacy Center, Inc.
International Legal Forum

16

T. 334.395.6611                                     1718 General George Patton Drive
                                                    Brentwood, TN 37027
                                                    T. (800) 269-9895

*Admitted Pro Hac Vice*

## Certificate of Service

      I hereby certify that on September 23, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

      */s/ Jason Torchinsky*
JASON TORCHINSKY
Va. Bar No. 47481
**HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK, PLLC**
2300 N. Street NW, Suite 643
Washington D.C. 20037
T. 202.737.8808
jtorchinsky@holtzmanvogel.com
*Counsel for Plaintiffs*