## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| MAYA PARIZER, *et al.*, | : |
| | : |
| **Plaintiffs,** | : |
| | : |
| | : |
| v. | :   **Civil No. 1:24-00724-RDA-IDD** |
| | : |
| AJP EDUCATIONAL FOUNDATION, | : |
| INC., *et al.*, | : |
| | : |
| **Defendants.** | : |

### WESPAC FOUNDATION, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS

Defendant WESPAC Foundation, Inc. ("WESPAC"), by counsel, pursuant to Fed. R. Civ. P. 12(b)(1), (b)(2), and (b)(6), in support of its Motion to Dismiss Plaintiffs' First Amended Complaint ("Complaint") files the following Reply in response to Plaintiffs' Opposition. Plaintiffs have failed to establish that this Court has jurisdiction or to sufficiently allege facts that state a plausible claim for relief. Further amendment would be futile as the jurisdictional and factual defects are incurable. Dismissal with prejudice is the only appropriate remedy.

### INTRODUCTION

The Complaint alleges that WESPAC was the fiscal sponsor of NSJP, *not* AMP. Am. Compl. ¶¶ 53, 57-59, 182. There is no mention in the Complaint of a relationship between WESPAC and AMP. Rather, the Complaint focuses on the relationship between WESPAC and NSJP, particularly regarding the control over funds sent from WESPAC to NSJP.[1] Plaintiffs

---

[1] As the "fiscal sponsor of NSJP, WESPAC receives and administers donations on behalf of NSJP. WESPAC then keeps a percentage of the donations and remits the rest to the groups that it fiscally sponsors." Am. Compl. ¶ 53. While the Complaint alleges that WESPAC sponsors many groups, the Opposition states that NSJP is the only organization WESPAC fiscally sponsored. Plaintiffs speculate, without citation, that most of WESPAC's funds went to NSJP rather than the other organizations WESPAC sponsored. Plaintiffs admit they have no facts to support this.

incorrectly assert that WESPAC's liability, and minimum contacts, are somehow tied to AMP's actions because "AMP is NSJP." The Complaint, meanwhile describes NSJP as an "unincorporated association" of college students without a formal structure or leadership. Am. Compl. ¶11. There is no factual basis in the Complaint to suggest that WESPAC had any awareness of a direct link between NSJP and AMP. Plaintiffs argue that because WESPAC shared "ideological alignment" with NSJP and exercised fiscal control over the funds provided, WESPAC should have known that NSJP was connected to AMP. Plaintiffs wrongly infer in their Opposition that the relationship between AMP, NSJP, and Hamas must have been evident to WESPAC during the seven years it funded NSJP—an inference without support in the Complaint.

Ultimately, the Court should separate and disregard the AMP allegations, which do not affect WESPAC's liability. If the Court reaches the claims, WESPAC's liability must be determined from its own alleged actions, awareness, and knowledge in relation to NSJP alone.

## ARGUMENT

### I.   THIS COURT LACKS PERSONAL JURISDICTION OVER WESPAC FOR THE ATS CLAIMS.

Personal jurisdiction must be established with respect to each claim asserted by Plaintiffs, and where it is not established, a claim must be dismissed. *Gatekeeper Inc. v. Stratech Sys.*, 718 F. Supp. 2d 664, 667-68 (E.D. Va. 2010); *see also Sunward Elec., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004). Plaintiffs argue that the Court has personal jurisdiction over WESPAC for the ATA claims under 18 U.S.C. § 2334(a). Pls.' Opp'n at 26. That argument is dependent on this Court finding, as a matter of first impression in the Fourth Circuit, that the ATA confers nationwide service of process and therefore personal jurisdiction for the ATA claims under Rule 4(k)(1)(C). This is a threshold finding that the Court must address, and if it finds that the ATA does not confer nationwide service, the Court would lack personal jurisdiction for both the ATA and ATS claims.

2

If the Court agrees with Plaintiffs that the ATA has a nationwide service provision, they must still independently establish that this Court has personal jurisdiction over WESPAC for the Israeli Plaintiffs' federal ATS claims. It is uncontested that the ATS does not have a nationwide service provision—meaning, Plaintiffs must establish that WESPAC maintains traditional minimum contacts with the forum state of Virginia. Plaintiffs attempt to circumvent WESPAC's non-existent Virginia contacts with the doctrine of "pendent personal jurisdiction" is unavailing.

### A.     The Court may not exercise pendent personal jurisdiction.

Separation of powers considerations caution against the exercise of pendent personal jurisdiction. First, pendent personal jurisdiction is not an available jurisdictional remedy because the ATS is a federal claim, not a state law claim. The Fourth Circuit "recognize[s] pendent personal jurisdiction of a district court which has obtained personal jurisdiction over a defendant by reason of a federal claim to adjudicate **state claims** properly within the court's subject matter jurisdiction, even though that **state's** long-arm statute could not authorize service over the defendants with respect to the **state claims**." *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 628 (4th Cir. 1997) (emphasis added). "When a federal statute authorizes a federal district court to exercise personal jurisdiction over a defendant beyond the borders of the district and the defendant is effectively brought before the court, we can find little reason not to authorize the court to adjudicate a **state claim** properly within the court's subject matter jurisdiction so long as the facts of the federal and state claims arise from a common nucleus of operative fact." *Id*. (emphasis added).

Second, if the Court agrees with Plaintiffs that pendent personal jurisdiction exists, the Court should decline to exercise it over WESPAC. "Pendent jurisdiction is a discretionary power exercised in furtherance of judicial economy, convenience, and fairness to the litigants." *Id*. "The Anti-terrorism Act provides a cause of action only to 'national[s] of the United States' and their

3

'estate, survivors, or heirs,'" whereas, "the ATS is available only for claims brought by 'an alien.'" *Jesner v. Arab Bank, PLC*, 584 U.S. 241, 267 (2018). The ATA was expressly limited by Congress in its relief to U.S. national plaintiffs, which "suggests that there should be no common-law action under the ATS" for foreign citizens alleging harm caused by the financing of terrorism. *Id*. at 267-68. The *Jesner* Court reasoned that, "[o]therwise, foreign plaintiffs could bypass Congress' express limitations on liability under the Anti-Terrorism Act simply by bringing an ATS lawsuit." *Id*. at 268. The same reasoning applies with equal force to personal jurisdiction—foreign plaintiffs can bypass Congress' express limitations on nationwide service of process by bringing their ATS claims alongside U.S. Plaintiffs asserting ATA claims for the same terrorist attack.

Alien plaintiffs bringing an ATS suit may not hitch their claims to the purported nationwide service provision of the ATA, a statute explicitly reserved only for U.S. Nationals, as the exclusive basis for personal jurisdiction for their ATS claims. To allow otherwise would render Congressional intent meaningless, offending traditional notions of fair play and substantial justice. If the Israeli Plaintiffs wish to sue WESPAC under the ATS, they must do so in a jurisdiction where WESPAC's conduct or "at home" presence is such that it would reasonably anticipate being haled into court there. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

### B. WESPAC lacks sufficient minimum contacts with the forum state of Virginia.

Lastly, Plaintiffs' argue that if this Court cannot exercise personal jurisdiction over WESPAC under the ATA's nationwide service provision, "WESPAC still has sufficient minimum contacts with … Virginia to confer jurisdiction." Pls.' Opp'n at 27. The Complaint alleges during the pertinent period that WESPAC was the fiscal sponsor of NSJP, not AMP. Am. Compl. ¶¶ 53, 57-59, 182. NSJP is a separate, stand-alone entity, *id*. at ¶11, that has entered its appearance in this case. The Complaint does not allege NSJP is based in or operates out of Virginia, and AMP's

domicile is irrelevant. The Complaint does not allege that WESPAC sent any funds to Virginia or fiscally sponsors any Virginia organization, and fails to allege any plausible minimum contacts with Virginia. Rather, all contacts point to New York, WESPAC's state of incorporation and location of its principal place of business, where it was served. *Id*. at ¶ 12. Accordingly, personal jurisdiction over WESPAC is not met and the ATS claims must be dismissed accordingly.

## II. THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THE ATS CLAIMS.

The Israeli Plaintiffs' ATS claims should likewise be dismissed because the Complaint fails to allege facts that vest this Court with subject matter jurisdiction. Plaintiffs <u>fail to</u> (A) establish that WESPAC, a corporation, violated a universal and recognized international law norm, (B) demonstrate why the Court should exercise judicial discretion to create a new cause of action rather than defer to Congress, and (C) plead facts that overcome the presumption against extraterritorial application. Every ATS case to date that has come before the Supreme Court has been dismissed on jurisdictional grounds.

### A. The Israeli Plaintiffs' fail to plead that WESPAC violated a customary international norm that extends to corporate liability.

Plaintiffs allege that WESPAC, a nonprofit corporation, should be liable under the ATS for supporting terrorism, and/or for violating the International Convention for the Suppression of the Financing of Terrorism ("ICSFT"). Am. Compl. ¶¶ 198, 204-06; Pls.' Opp'n at 29-35 (Plaintiffs also claim two other purported international norms for the first time: genocide and war crimes, but these were not alleged in the Complaint and should be rejected outright). Because Plaintiffs failed to even counter the argument, WESPAC incorporates by reference its arguments in its opening memorandum as to why Plaintiffs fail to establish an international norm for terrorism, supporting terrorism, and financing terrorism as well as creating any private right of action under the ICSFT, citing no authority. *See* Def.'s Mem. at 14-17.

5

A "related consideration is whether international law extends the scope of liability for a violation of a given norm to the perpetrator being sued, if the defendant is a private actor such as a corporation or individual." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 732, n.20 (2004). Plaintiffs fail to address WESPAC's corporate liability argument, which applies to all the "international norms" they claim, including terrorism financing under the ICSFT. Plaintiffs' sole rebuttal is that the *Jesner* opinion only states "that the ICSFT is insufficiently specific to evidence a norm of foreign corporate liability." Pls.' Opp'n at 35. This concession should be the end of the inquiry.

While the Court in *Jesner* held that foreign corporations are not subject to ATS liability, whether ATS claims brought against domestic corporations should also be precluded was not addressed. The plurality in *Jesner* did note that there was a "strong argument" international law did not impose an obligatory norm of corporate liability. *Id*. at 259. The Court's rationale clearly applied with equal force to domestic corporations when discussing corporate liability in general (or rather the lack thereof) under the ICSFT. *Jessner* 584 U.S. at 261-262.  And because the ICSFT does not require "signatories to hold corporations liable in common-law tort actions raising claims under international law," *id*. at 262, Plaintiffs' attempt to use the ICSFT to establish universal international law violation by WESPAC fails. *See Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 120, 145 (2d Cir. 2010) (dismissing ATS claims brought against corporation for lack of subject matter jurisdiction, because ATS claims for criminal customary international law violations are limited to individuals, and corporate liability has not achieved universal recognition as an international norm). The other supposed "international norms" Plaintiffs identify likewise fail because corporate liability has not achieved universal recognition as an international norm.

### B.     The Israeli Plaintiffs fail to demonstrate why the Court should exercise judicial discretion to create a cause of action, rather than defer to Congress.

Plaintiffs misstate that WESPAC did not "argue that it would be an improper exercise of

judicial discretion to allow the ATS claims to proceed." Pls.' Opp'n at 35 (referencing the second part of *Sosa* test). WESPAC laid out the legal standard, *see* Def.'s Mem. at 14,[2] then made the argument. *See* Def.' Mem. at 17 and n.6. Regardless, it is Plaintiffs' burden, not WESPAC's, to demonstrate why the Court should exercise judicial discretion and create a new ATS cause of action rather than defer to Congress. *Nestle USA, Inc. v. Doe*, 593 U.S. 628, 636 (2021) ("[Plaintiffs] suggest that a plaintiff is entitled to a judicially created cause of action absent compelling reasons to withhold one. But our precedents demand precisely the opposite rule.").

Despite there being many reasons to defer to Congress in ATS actions, Plaintiffs only mention one: "the risk of creating 'significant diplomatic tensions' between the United States and its allies." Pls. Opp'n at 35. Without substantively elaborating, Plaintiffs conclude "that concern is absent" because Hamas is "an enemy of all mankind." *Id*. ATS suits against domestic corporations frequently involve claims of aiding and abetting misconduct abroad—which implicate the policies and conduct of foreign states. Here, there are certainly foreign policy implications at play between the U.S. and Israel at the very least. Outside of the foreign policy implications, in its memorandum WESPAC identified several other "sound reason[s] to think Congress might doubt the efficacy or necessity of the new remedy" suggested by Plaintiffs, although just one is sufficient to warrant dismissal under part two of the *Sosa* test.

First, Congress has already adopted detailed regulatory regimes governing financial support for terrorism, and this Court should not displace them by allowing common-law actions under the ATS. To that end, the ATA, "part of a comprehensive statutory and regulatory regime

---

[2] If the plaintiff establishes a specific, universal, and obligatory international norm, the plaintiff must then also demonstrate why the court "should exercise 'judicial discretion' to create a cause of action rather than defer to Congress." *Nestle*, 593 U.S. at 636. Additionally, "a court must not create a private right of action if it can identify even one sound reason to think Congress might doubt the efficacy or necessity of the new remedy." *Id*. at 637.

that prohibits terrorism and terrorism financing," reflects the careful deliberation of the political branches on when, and how, financial organizations should be held liable for financing terrorism. *Jesner*, 584 U.S. at 268. Its existence "suggests that there should be no common-law action under the ATS" for foreign citizens alleging harm caused by the financing of terrorism because "foreign plaintiffs could bypass Congress' express limitations on liability under the [ATA] simply by bringing an ATS lawsuit." *Id*. at 267-68. As such, it would be inappropriate for this Court to displace the ATA by holding WESPAC subject to common-law liability under the ATS. *Id*. at 268.

Second, the Court in *Jesner* held that the requisite "caution" in recognizing new causes of action under the ATS "extends" to whether courts should "impose[] liability upon artificial entities like corporations." 584 U.S. at 264. And here, "[w]hether corporate defendants should be subject to suit [is] 'a question for Congress.'" *Id*. The third and fourth reasons to defer to Congress are that it has acted before to create a cause of action under the ATS, yet declined to create a cause of action for the relief sought by Plaintiffs here and declined to extend liability to corporations. "Even in areas less fraught with foreign-policy consequences, the Court looks to analogous statutes for guidance on the appropriate boundaries of judge-made causes of action." *Jesner*, 584 U.S. at 265. Here, the analogous statute is the Torture Victim Protection Act (TVPA), which is "the only cause of action under the ATS created by Congress rather than the courts." *Id*. The TVPA limits liability to "natural persons," and "Congress' decision to exclude liability for corporations in actions brought under the TVPA is all but dispositive." *Id*. at 266. Unlike Plaintiffs' claims stemming from a terrorist attack committed by Hamas, the TVPA only creates a civil remedy for torture victims and the survivors of victims of extrajudicial killing committed by those acting "under actual or apparent authority, or color of law, of any foreign nation." 28 U.S.C. § 1350 (note).

Fifth, given *Jesner*'s rejection of foreign corporate ATS liability, a contrary rule for U.S. corporate liability discriminates against U.S. corporations. When Congress enacted the ATS, it did not intend to treat U.S. businesses worse than foreign businesses engaged in the same conduct.

WESPAC has provided the Court with several reasons why it should not create a private right of action and instead defer to Congress. The Court need only accept one.

### C. The Complaint fails to displace the presumption against extraterritoriality as applied to Defendant WESPAC.

WESPAC addressed extraterritoriality in its opening memorandum and will now elaborate. *See* Def.'s Mem. at 18-19. The relevant domestic conduct in an ATS aiding and abetting case must be "extensive" and "specific." *Jara v. Núñez*, 878 F.3d 1268, 1273 (11th Cir. 2018). This Court, in *Al Shimari v. CACI Premier Tech., Inc.*, 684 F. Supp. 3d 481, 496 (E.D. Va. 2023) likewise found that extensive and specific domestic conduct with direct connections to the harm alleged is required. This is not alleged against WESPAC. Indeed, *Al Shimari* noted the significant factual difference between the conduct alleged versus the facts in *Kiobel*, *Jesner*, and *Nestlé* "none of which involved the alleged torts being committed by U.S. nationals, acting under a U.S. government contract, and in foreign territory controlled by the U.S. government" but rather, allegations of a cover-up in the U.S. after the fact. *Id.* It is not alleged that WESPAC committed the tort of international terrorism. The alleged tort was committed by foreign terrorists in a foreign territory. WESPAC's situation is more synonymous with that of *Nestlé* where the Court ruled that domestic conduct cannot include "general corporate activity." *Nestle*, 593 U.S. at 628, 634. The only conduct alleged as to WESPAC is general authorized business conduct, *i.e.* legally providing funds to NSJP for charitable purposes. *See also Jara*, 878 F.3d at 1273 (noting "allegations that an American [corporate] defendant made a funding and policy decision in the U.S. to support a foreign paramilitary group will not outweigh the extraterritorial location of foreign torts"); *Doe v.*

*Drummond Co.*, 782 F.3d 576, 598 (11th Cir. 2015) ("allegations involving U.S. defendants' domestic decision-making with regard to supporting and funding terrorist organizations were insufficient to warrant displacement and permit jurisdiction."); *Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184, 198 (5th Cir. 2017) (defendant corporation's alleged financial transactions do not permit a domestic application of the ATS because the connection between financial transactions and international law violations was too attenuated).

Because the Israeli Plaintiffs fail to allege facts upon which subject-matter jurisdiction may be based, and that would overcome the presumption against extraterritorial application, this Court lacks jurisdiction over the ATS claims and must dismiss them.

### III.   THE ISRAELI PLAINTIFFS FAIL TO STATE A PLAUSIBLE ATS CLAIM.

Even if Plaintiffs prevail on the arguments above, and the Court elects to create new jurisdiction to hear the actual claims, the ATS claims still warrant dismissal under Rule 12(b)(6) because the allegations do not state a claim upon which relief can be granted.

The pleading requirements for an ATS aiding-and-abetting claim are that the defendant "(1) provides practical assistance to the principal which has a substantial effect on the perpetration of the crime, and (2) does so with the purpose of facilitating the commission of that crime." *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 396, 401-02 (4th Cir. 2011) (dismissing ATS claim because the plaintiffs failed to plead non-conclusory facts that demonstrated that the defendant pharmaceutical company gave chemical supplies to Iraq with the purpose of facilitating genocide). Although Plaintiffs acknowledge "that *Aziz*'s intent holding is binding on the Court," Plaintiffs seem to indirectly ask this Court to ignore binding precedent when they note that "although *Aziz* states that the defendant must have 'the purpose of facilitating' a primary violation, this narrow aspect of *Aziz*

is wrong." *See* Pls.' Opp'n at 36. Notwithstanding Plaintiffs' opinions on binding precedent, *Aziz* still controls, and the allegations asserted against WESPAC do not meet *Aziz*.

WESPAC lacks the requisite *mens rea* to be found liable under the ATS.  It is not alleged that WESPAC gave money to Hamas (the principal), just to NSJP. The Complaint fails to plausibly show that WESPAC gave money to NSJP for the purpose of facilitating the October 7 attack (or any attack by Hamas), as required. The alleged facts do not plausibly support WESPAC having any prior knowledge of the October 7 Hamas attack or that it was aware of NSJP's alleged role as the "propaganda arm" for Hamas. All that the allegations demonstrate is that WESPAC gave NSJP charitable funds for the purpose of domestic First Amendment discourse, including protests against Israel's military response. Plaintiffs' only argument in an effort to demonstrate the requisite intent is that "WESPAC's purpose is shown by its long-term role as NSJP's fiscal sponsor, a relationship that requires close coordination and ideological agreement, and by its refusal even now to distance itself from NSJP." Pls.' Opp'n at 37. Plaintiffs fail to explain how WESPAC and NSJP's former fiscal sponsor relationship alone is somehow sufficient to demonstrate WESPAC was giving money to NSJP <u>for the purpose of facilitating the October 7 attack</u>. There are likewise no allegations that WESPAC's unspecified payments to NSJP had a "substantial effect" on the perpetration of the act of terror by Hamas that harmed Plaintiffs. Indeed, the Complaint does not even allege the "WESPAC" money ever reached Hamas. Plaintiffs' ATS claims are defective.

## IV.   THE U.S. PLAINTIFFS FAIL TO STATE A PLAUSIBLE CLAIM UNDER THE ATA

Aiding and abetting liability under the ATA is limited to only "conscious, voluntary, and culpable participation in another's wrongdoing," meaning that "the defendant consciously and culpably 'participate[d]' in a wrongful act so as to help 'make it succeed.'" *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 493, 497 (2023). Importantly, "the text requires that defendants have

aided and abetted the [specific] act of international terrorism that injured the plaintiffs." *Id*. at 497. Plaintiffs fail to allege facts that plausibly show (1) that NSJP, the party whom WESPAC "aided", performed a wrongful act of international terrorism that caused Plaintiffs' injuries; (2) that WESPAC was "generally aware of [its] role as part of an overall illegal or tortious activity at the time [WESPAC] provide[d] assistance;" and (3) that WESPAC "knowingly and substantially assist[ed] the principal violation," *i.e.* the October 7 terrorist attack. *See Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983) (the aiding and abetting elements).

### A.   WESPAC did not aid a wrongful act of international terrorism.

"[T]he party whom the defendant aids must perform a wrongful act" of international terrorism "that causes" the Plaintiffs' injuries. *Taamneh*, 598 U.S. at 486. Here, WESPAC is alleged to have aided NSJP by funding legal First Amendment activity in the United States. NSJP did not commit the wrongful act of international terrorism that caused Plaintiffs' injuries. While WESPAC does not dispute that the October 7 attack committed by Hamas meets the ATA definition of terrorist acts, Plaintiffs have not effectively pled that WESPAC's conduct "aided" Hamas in this attack in any way as contemplated in *Taamneh* and *Halberstam*.

Plaintiffs argue that "the first *Halberstam* component asks only if a terror group 'committed a wrong' for the abettor to assist" and "whether Plaintiffs were victims of a terror attack." Pls.' Opp'n at 20.  In *Taamneh*, the defendant social media platforms were alleged to have directly aided and abetted ISIS by allowing ISIS to operate and post videos on their platforms and connect them with like-minded users. 598 U.S. at 474. Similarly, in *Halberstam*, the defendant, who lived with the robber, was alleged to directly aid and abet the individual committing the burglaries by selling and laundering the stolen goods. *Id*. at 485-86. So, of course, in those cases, it was a given that the party whom the defendant aided performed the wrongful acts that caused the plaintiff's harm.

What those cases do not contemplate when considering the first aiding and abetting element and finding it sufficiently pled is when the defendant aids an intermediary only, not the party alleged to have committed the wrongful act that harmed Plaintiffs. Considering the foregoing and the fact that the Complaint does not allege anywhere that WESPAC's funds actually reached Hamas, the first aiding and abetting element is not satisfied.

Moreover, Plaintiffs argument that these "contentions go to whether WESPAC's aid was substantial" is misguided. *See* Pls.' Opp'n at 20. For purposes of the first element, WESPAC has not argued the extent of any aid provided to Hamas (whether it was substantial), but rather whether any aid was provided from WESPAC to Hamas <u>at all</u>. Based on Plaintiffs' own allegations in the Complaint, WESPAC provided no aid to Hamas whatsoever. *Taamneh*, 598 U.S. at 486; *Halberstam,* 705 F.2d at 477. Nonexistent aid surely cannot be "substantial."

### B.    WESPAC lacks the requisite general awareness.

As to the second *Halberstam* element of general awareness, "the defendant must be generally aware of his role as part of an overall illegal or tortious activity <u>at the time he provides assistance</u>." *Taamneh*, 598 U.S. at 486. "When a plaintiff's ATA aiding and abetting claim depends on aid flowing through an intermediary, the general awareness element requires that (1) the defendant was aware of the intermediary's connection to the terrorist organization, and (2) the intermediary is 'so closely intertwined' with the terrorist organization's illegal activities as to give rise to an inference that the defendant was generally aware of its role in the organization's terrorist activities." *Bernhart v. Islamic Republic of Iran*, 47 F.4th 856, 867-68 (D.C. Cir. 2022).

Plaintiffs cite a New York district court case for the broad idea that "general awareness is a low threshold at the pleading stage," but avoid mentioning three key circuit court cases. In those cases, ATA claims were dismissed under Rule 12(b)(6) because the complaints inadequately

alleged defendants like WESPAC, who provided money to an intermediary, were generally aware of potential ties to terrorism. *Compare* Pls.' Opp'n at 20-21 (general awareness section) with Def.'s Mem. at 22-25 (general awareness section discussing *Siegel v. HSBC N. Am. Holdings, Inc.*, 933 F.3d 217, 224-25 (2d Cir. 2019); *Bernhart*, 47 F.4th at 867-69; and *Kayemeth I and Kayemeth Leisrael-Jewish National Fund v. Education for a Just Peace*, 66 F.4th 1007 (D.C. Cir. 2023)).

*Siegel* involved a bank (HSBC) providing financial services to an intermediary (Saudi) bank with alleged ties to terrorism. The Second Circuit held that the general awareness requirement was not sufficiently pled. *Siegel*, 933 F.3d at 224-25. In *Bernhardt*, the D.C. Circuit found that concerns of a senior bank manager that another bank might be linked to terrorism did not show general awareness, warranting dismissal, because those concerns reflected only the *possibility* of a terrorist connection, and not awareness of an actual one. 47 F.4th at 869.

Plaintiffs do not explain how WESPAC was aware that NSJP—a group of U.S. college students—was connected to Hamas before the October 7 attack and that NSJP's connection was "so closely intertwined with [Hamas's] illegal activities" such that it would give rise to a reasonable inference that WESPAC was generally aware of its own role in Hamas's terrorist activities. *Bernhart*, 47 F.4th at 867-68. NSJP is not an FTO, nor has the U.S. government declared it an "arm of Hamas." Plaintiffs do not allege anything specific about WESPAC's awareness, rendering the allegations much weaker even than *Bernhardt*. Plaintiffs rely exclusively on the nature of the fiscal sponsor relationship between WESPAC and NSJP in an attempt to establish that WESPAC was generally aware of its role as part of Hamas's terrorist activity. *See* Pls.' Opp'n at 20-21. Plaintiffs' arguments aside, the only inference that can be made from the alleged fiscal sponsor relationship alleged is that WESPAC knows and controls how the money it gave to NSJP was used. Anything further is simply not alleged.

The D.C. Circuit case of *Kayemeth*, involving a fiscal sponsor, not a bank, is most analogous, and establishes that merely alleging a fiscal sponsorship does not create an inference of general awareness or knowing and substantial assistance. In *Kayemeth*, the plaintiffs alleged ATA liability for a fiscal sponsor which did not provide funds to an entity designated as an FTO, but rather to a U.S. group alleged to be affiliated with an FTO. 66 F.4th at 1011-13. The plaintiffs alleged the defendant, U.S. Campaign for Palestinian Rights ("USCPR"), was a fiscal sponsor of the Boycott National Committee ("BNC"), a Palestinian activist group allegedly tied to Hamas, and acted as a "coordinating framework" to assist Hamas. *Id*. The D.C. Circuit dismissed the ATA claim because the Complaint lacked concrete, factual allegations to show a sufficient connection between USCPR and Hamas to hold USCPR liable for any acts of terrorism. *Id*. at 1011, 1016-18. While the plaintiff claimed that BNC's efforts to "economically, academically, and diplomatically" boycott Israel constituted terrorism, the D.C. Circuit determined that those actions were legal, and there were no other facts alleged to suggest USCPR was taking a role in acts of terrorism. *Id*. at 1017. Put differently, the D.C. Circuit found that BNC (which received funds from USPCR) engaged in legal advocacy activities (rejecting the plaintiff's allegation that boycotting Israel was terrorism), which militated against concluding that USCPR was "'generally aware' that its role of providing funds to the [BNC] was 'part of an overall illegal or tortious activity.'" *Id*.

Similarly, Plaintiffs allege that public gatherings and protests against Israel's actions in Gaza is terrorism—a far cry from the substantial allegations made against BNC and USPCR. WESPAC's activities and those of NSJP, meanwhile, are legal – and no allegations are made to suggest WESPAC was aware of any illegal or terroristic activities being undertaken by NSJP (or beyond). Plaintiffs, relying on their allegations concerning the NSJP Toolkit, claim that NSJP was "aware that their propaganda and incitement activities support Hamas but also that they perceive

themselves as 'PART of' Hamas's 'Unity Intifada.'" Am. Compl. ¶ 185. These allegations fail to demonstrate WESPAC's awareness that NSJP perceived themselves as part of Hamas's "Unity Intifada." Any notice of this "self-perception" by NSJP would not have been available to WESPAC until after the October 7 attack, when the so-called "Toolkit" was released. Thus, even if the Court accepts the wild proposition that NSJP is part of or identifies as Hamas, the Toolkit would not have alerted WESPAC to NSJP's alleged "role" until after the attack at issue, if it was even alerted at all. Plaintiffs' weak allegations fail to establish "general awareness."

### C.   WESPAC did not knowingly and substantially assist the act of terror.

The third element Plaintiffs fail to plead with requisite specificity is that "the defendant must knowingly and substantially assist the principal violation." *Taamneh*, 598 U.S. at 486. "The focus must remain on assistance to the tort for which plaintiffs seek to impose liability." *Id.* at 503-04, 506.  "[T]he more attenuated the nexus, the more courts should demand that plaintiffs show culpable participation through intentional aid that substantially furthered the tort." *Id*. at 506.

Plaintiffs attempt to distance themselves from *Taamneh*'s nexus standard, arguing it is not a requirement because they cannot meet it. Here, the nexus between WESPAC's acts and the tort (the October 7 attack) is the most attenuated it could be. Plaintiffs claim WESPAC provided financial support to NSJP, which allegedly published and/or distributed a "Toolkit" and organized protests in the U.S. <u>after</u> the October 7 attack. Plaintiffs could not, and did not, reasonably allege that the attack was dependent on WESPAC. Vagary is the opposite of well pleaded allegations showing "culpable participation through intentional aid that substantially furthered the tort." *Taamneh*, 598 U.S. at 506. Nothing alleged against WESPAC, a non-profit that provided funds to college students in the United States for legal First Amendment activity (*i.e.* protests, assembly) demonstrates intentional aid to Hamas that substantially furthered the terrorist attack on October

16

7. It certainly does not evince culpable participation in the wrongful act when there are no factual allegations that WESPAC knew anything about the attack. Just like the plaintiffs in *Kayemeth* called an organized, legal economic boycott against Israel "terrorism," Plaintiffs here call NSJP's organized protests against Israel's military action "terrorism." The D.C. Circuit ignored the plaintiffs' conclusory labels and identified the boycott for what it is: legal activity.

Another indicator of whether aid was substantial is if the defendant's money ever reached the terrorist organization. The D.C. Circuit in *Kayemeth*, addressing the third element, found the allegations conclusory and insufficient because they did not suggest that funds provided by defendant were used to "finance any terrorist attacks much less that [USCPR] was aware that it was happening." 66 F.4th at 1017. As the D.C. Circuit observed, there were no allegations that BNC even provided funds to Hamas (whether or not such funds had originated with USCPR). *Id.* at 1017; *see also Bernhardt*, 47 F.4th at 871 (noting the Complaint "fails to allege how much (if any) of that money indirectly flowed to al-Qaeda"); *Siegel*, 933 F.3d at 225 (although plaintiffs alleged the provision of "hundreds of millions of dollars" to an intermediary, "they did not advance any non-conclusory allegation that [al-Qaeda] received any of those funds").

Here, the nature of the assistance is financial support to NSJP, not Hamas. Plaintiffs do not plead that any funds sent by WESPAC to NSJP ended up with Hamas. *See Taamneh*, 598 U.S. at 505-06.  Even assuming *arguendo* that this Court were to consider Plaintiffs' allegations plausible that NSJP acts as Hamas' unofficial propaganda arm, those allegations do not satisfy Plaintiffs' high burden. Plaintiffs cannot merely allege that NSJP provided general assistance through public relations; they must instead connect WESPAC to the specific act of violent terrorism that gives rise to Plaintiffs' injuries. *Id.* at 497, 503. This, they cannot do.

Regarding the *Halberstam* factors, rather than restate them here, WESPAC incorporates its argument in the opening memorandum by reference. Def.'s Mem. at 28-29. It is worth noting that the allegations here are a far cry from the facts of *Halberstam*, involving a serial burglar who had killed the decedent during a break-in and his partner-in-crime who lived with him and would sell and launder the stolen goods. *See Taamneh*, 598 U.S. at 472, 485-88.

If Plaintiffs wish to pursue a theory of liability against WESPAC "for all the torts of an enterprise," then "a showing of pervasive and systemic aid is required to ensure that [WESPAC] actually aided and abetted each tort of that enterprise." *Taamneh*, 598 U.S. at 506. Plaintiffs claim that WESPAC has been a fiscal sponsor to NSJP since 2016, but the Complaint does not allege the amount of money allocated to NSJP over that time period, when it was transferred, what it was used for, or any facts that show NSJP gave assistance to Hamas over that time frame. Instead, the Complaint focuses on NSJP's activity in 2023 *after* the October 7 attack. The only factual allegation that ties NSJP to Hamas is the Toolkit, which was published on October 8—a day after the attack. The Complaint is silent as to WESPAC's knowledge of this alleged connection. Indeed, liability for all the torts of an enterprise is impossible for a defendant where the intermediary's aid, not the defendant's, is the alleged pervasive and systemic aid to a terrorist enterprise.

In sum, none of Plaintiffs' allegations against WESPAC suggest that it culpably "associated [itself] with" the October 7 attack, "participate[d] in it as something that [it] wishe[d] to bring about," or sought "by [its] action to make it succeed." *Taamneh*, 598 U.S. at 498. There is even less support that WESPAC so pervasively and systemically assisted Hamas as to render it liable for every Hamas attack, an incredibly high bar that has yet to be met in *any* cases involving an intermediary. Plaintiffs have thus failed to state a claim under §2333(d)(2).

**V.      PLAINTIFFS' REQUEST FOR LEAVE TO AMEND THEIR COMPLAINT SHOULD BE DENIED.**

Plaintiffs' request for leave to amend their Amended Complaint, made as an alternative argument in the Opposition to the Motions to Dismiss, should be denied. First, Plaintiffs' do not explicitly move to amend their Amended Complaint, nor do they enclose a proposed Second Amended Complaint for review, so reference to a request for leave to amend fails to comply with Rule 7(b). *See* Fed. R. Civ. P. 7(b) ("application to the court for an order shall be made by motion which…shall state with particularity the grounds therefor, and shall set forth the relief or order sought."); *see also Liberty Legal Found. v. Nat'l Democratic Party of the USA, Inc*., 875 F. Supp. 2d 791 (W.D. Tenn. 2012), *aff'd*, 575 Fed. Appx. 662 (6th Cir. 2014) (reference to leave to amend within an Opposition to a Motion to Dismiss, without more, is improper). Plaintiffs' Motion is contained in the final paragraph of its Opposition, and states, in relevant part:

> Plaintiffs respectfully request leave to amend the Complaint. Always "freely given," leave to amend would be especially warranted here because this case is in its infancy and because the amendment would be Plaintiffs' first opportunity to address any alleged pleading defect. *Johnson v. Oroweat Foods Co*., 785 F.2d 503, 509 (4th Cir. 1986). There has been no delay or bad faith, Defendants cannot claim prejudice, and an amendment would not be futile because it is clearly "at least possible" to cure any perceived defect. *In re Xe Servs*., 665 F. Supp. [2d] at 592.

*See* "Plaintiffs' Memorandum" at p. 39. Plaintiffs' Motion for Leave to Amend raises three basic arguments, all of which should be rejected: 1) the case is in its infancy; 2) absence of delay or bad faith; and 3) the possibility that an amendment can cure the pleading defects.

The case is not in its infancy. Plaintiffs filed a 207 paragraph, 79 page Complaint, which includes 202 footnotes, photographs, organizational charts—*then amended it*. To say that their investigation is in its infancy is improbable in the face of such extensive pleading. The Complaint was also filed in bad faith, and the request to amend is likewise made in bad faith. Everything WESPAC is accused of doing in Plaintiffs' lawsuit amounts to nothing more than distributing

donations to student groups associated with protest and assembly against the actions of a foreign government—squarely within First Amendment protections. The subtext of Plaintiffs' lawsuit is obvious: to exhaust the resources of dissenting voices until they quit. Plaintiffs' attempt to beleaguer WESPAC's operations via the legal system is the definition of a bad faith pleading. Allowing Plaintiffs the opportunity to amend a frivolous Complaint would reward their efforts.

An amendment also will not cure the defects. Jurisdictional defects are innate, and new allegations will not "solve the law" the Plaintiffs ignored in bringing suit. Further amendment would also be futile as Plaintiffs cannot sufficiently cure the factual defects in the Complaint, which strain plausibility and miss elements of the supposed causes of action. Without the benefit of proposed amendments in hand, further analysis is impossible, but unless Plaintiffs change the entire complexion of their case and unearth new Supreme Court precedent, amendment will not cure their inadequate allegations. As explained in the Motion to Dismiss and this Reply, after 79 pages, Plaintiffs have yet to reach even a gray area of plausibility, much less state a legally cognizable claim for relief.

## CONCLUSION

This Court lacks subject matter jurisdiction and personal jurisdiction over the ATS claims. Plaintiffs' Complaint also fails to state a plausible claim for relief under the ATS and ATA. Defendant WESPAC respectfully requests this Court grant its Motion, dismiss Plaintiffs' First Amended Complaint with prejudice and enter such other and further relief as is appropriate.

DATE: September 25, 2024                    Respectfully submitted,

                                            */s/Felicity A. McGrath*
                                            Felicity A. McGrath, VSB #41708
                                            James Hittinger, VSB #81728
                                            KIERNAN TREBACH LLP
                                            1233 20th Street, N.W., Eighth Floor
                                            Washington, D.C. 20036
                                            (202) 712-7000
                                            (202) 712-7100 Fax
                                            fmcgrath@kiernantrebach.com
                                            jhittinger@kiernantrebach.com
                                            *Attorneys for Defendant WESPAC*

### **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 25th day of September, 2024, a copy of the foregoing

*Defendant WESPAC Foundation's Reply Memorandum in Support of Motion to Dismiss* was

electronically filed via CM/ECF, which will send notice to all counsel of record.

                                            */s/ Felicity A. McGrath*
                                            Felicity A. McGrath