IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| MAYA PARIZER, *et al.*,<br><br>PLAINTIFFS,<br><br>v.<br><br>AJP EDUCATIONAL FOUNDATION, INC.<br>a/k/a AMERICAN MUSLIMS FOR<br>PALESTINE, *et al.*,<br><br>DEFENDANTS. | CASE NO. 1:24-cv-00724-RDA-IDD |

**DEFENDANT AMP'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

### I.     INTRODUCTION

Despite repetition of the word "terrorism" in varied forms 137 times in their thirty-nine (39) page brief (an average of three to four times per page), Plaintiffs fail to counter the substantive arguments made by Defendant AJP Educational Foundation d/b/a American Muslims for Palestine ("AMP").[1]  Plaintiffs do not satisfy the standards as set forth in binding Fourth Circuit precedent, instead calling the Fourth Circuit "wrong," arguing that the Fourth Circuit's "error" requires "correction," and favoring instead the reasoning in a Ninth Circuit case.  *See* Doc. 85 at 37. Plaintiffs employ inflammatory rhetoric to generally malign AMP and its actions during any time period, while still failing to plead any link between AMP and the October 7 attacks on which they rest their claims.  And, Plaintiffs wrongly lump AMP and all other named defendants together as

---

[1] In recognition of this filing's status as a Reply brief, Defendant AMP will not fully repeat its arguments as presented in its Motion to Dismiss, and instead highlights and directs the Court to the relevant portions in response to Plaintiffs' deficient Response in Opposition.

unspecified "Defendants," in violation of federal pleading requirements. Finally, these well-represented Plaintiffs have already amended once, and identify no reason to support their current request that they be given leave to amend their expansive pleadings yet again. For those reasons and the remainder of the authority set forth in its Motion to Dismiss, AMP respectfully requests this Court grant its Motion to Dismiss in full.

## II. PLAINTIFFS' BRIEF LARGELY IGNORES KEY ATS AUTHORITY AND CALLS BINDING FOURTH CIRCUIT PRECEDENT WRONG

Plaintiffs give key authority governing their claim under the Alien Tort Statute ("ATS") only cursory attention. *See* Doc. 85 at 24, 37. Plaintiffs sidestep their failure to allege that AMP undertook any actions enabling the attacks to occur "with the purpose of facilitating the commission of that crime," as required by the Fourth Circuit in a case dismissing ATS claims. *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 396 (4th Cir. 2011). The Fourth Circuit reiterated this standard in upholding dismissal of ATS claims most recently in 2024. *Estate of Alvarez v. Rockefeller Found.*, 96 F.4th 686 (4th Cir. 2024). Plaintiffs' conclusory assertions that AMP "provided Hamas with material support despite knowledge of Hamas's terrorist activity" do not suffice. *See* Doc. 24 at ¶ 204. The only material support Plaintiffs allege consists purely of sponsoring marches, advocating for boycotts, and releasing educational materials in support of AMP's mission to advocate for justice for Palestine within the United States. *Id*. at ¶¶ 102(b), 102, 106. As set forth more fully in AMP's Motion to Dismiss, this Circuit holds that "a defendant may be held liable under international law for aiding and abetting the violation of that law by another when the defendant (1) provides practical assistance to the principal which has a substantial effect on the perpetration of the crime, and (2) does so with the purpose of facilitating the commission of that crime." *Aziz*, *supra*, 658 F.3d 388, 396 (4th Cir. 2011), quoted with approval in *Estate of Alvarez, supra*. Knowledge of a crime itself does not suffice. *Alvarez,* 658 F.3d at 396. Plaintiffs assert

2

no allegations that AMP provided aid for the purpose of Hamas committing the October 7 attacks. Nor can they, as this was a surprise attack in which AMP is not alleged to have any involvement whatsoever.

Plaintiffs attempt to talk around the Fourth Circuit holding with generalities, and call the Fourth Circuit wrong, but do not plead facts sufficient to warrant jurisdiction under the ATS. Doc. 85 at 24; *see also* Doc. 34 at 12-17.

Plaintiffs attempt further distraction from the law by claiming AMP somehow waived its First Amendment arguments. Doc. 85 at 37. Yet in the same paragraph, Plaintiffs concede AMP made the argument and presented authority, even citing to AMP's Motion to show exactly where AMP did so, before addressing the First Amendment issues themselves on the merits. Doc. 85 at 38; Doc. 34 at 14. Plaintiffs raised the First Amendment issue in their own Complaint, AMP addressed it, and this Court may therefore properly consider it. In reply to Plaintiffs' argument in their opposition, which cited Supreme Court precedent on the First Amendment issue, Doc. 85 at 38, 39, the Supreme Court has made clear that offensive and hurtful speech, and even inflammatory speech, is protected from civil suit. *Snyder v. Phelps*, 562 U.S. 443 (2011); *NAACP v. Claiborne Hardware*, 458 U.S. 886 (1982).

### III.    PLAINTIFFS FAIL TO PLEAD A NECESSARY ATA ELEMENT

Despite devoting majority of their Response to the claim under the Anti-Terrorism Act ("ATA"), Plaintiffs again fail to address the substantive authority on point. *See generally* Doc. 85 at 5-19. Plaintiffs attempt to differentiate the Supreme Court's ruling in *Twitter v. Taamneh*, 598 U.S. 471 (2023), from its own claims. But that attempt does not negate the holding in *Taamneh* that "aiding and abetting" claims under the ATA require a showing of—and at this stage, facts pled to support—the actions by the defendant at issue were "conscious, voluntary, and culpable

participation in another's wrongdoing." *Id*. at 493.[2]  As to AMP specifically, Plaintiffs only identify lawful activity—whether they agree with AMP's educational efforts regarding Palestine's history and culture or not—and conclusory rhetoric.  That does not suffice.  Nothing in their Response shows anything to the contrary, nor do Plaintiffs even really try.  Instead, they ask this Court to adopt their rhetoric and presume that work in the United States to create awareness of Palestine somehow must equate to material support of terrorism.  That is a leap of faith this Court need not take, and which no precedent supports.

 Plaintiffs attempt convoluted twists of the requirements set forth in *Halberstam v. Welch*, alternating between directing this Court's attention between elements to claiming that considering them "in tandem" effectively equates to being able to stack unsuccessful attempts on top of each other.  Doc. 85 at 5, 15-19, relying on *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983).  But the Supreme Court's higher authority in *Taamneh* clarified any vagueness of what the ATA or its amendments require to show aiding and abetting via substantial assistance: "at bottom," these claims require a showing "that the defendant consciously and culpably 'participate[d]' in a wrongful act so as to help 'make it succeed.'" *Taamneh*, 598 U.S. at 493.  The Supreme Court further simplified the myriad Halberstam elements into a cohesive and usable sentence:  the elements, at least as of 2023, should be considered as "designed to hold defendants liable when they consciously and culpably 'participate[d] in' a tortious act in such a way as to help 'make it

---

[2] Plaintiffs identify what they call a "fictional principle" as cited by AMP in its Motion to Dismiss, and due to one error in a pincite designation urge this Court to "disregard" AMP's reliance on *Taamneh*. Doc. 85 at 15, citing Doc. 34 at 23. First, AMP appreciates Plaintiffs allowing AMP the opportunity to correct that inadvertent error and now corrects it. Second, that erroneous pincite does not negate that *Taamneh* does in fact hold that to proper allege liability, the claims must be that the actions of the defendant in "aiding and abetting" and providing "substantial assistance" must equate to actions that "help make it succeed." *Taamneh*, 598 U.S. at 497.  This Court need not accept the summarized standard as stated by AMP or by Plaintiffs; the Supreme Court already made this standard clear.

succeed.'" *Taamneh*, 598 U.S. at 497. Plaintiffs fail to meet that standard, "in tandem" or otherwise.

## IV. PLAINTIFFS ALREADY AMENDED THEIR COMPLAINT

Plaintiffs filed their Original Complaint on May 1, 2024, complete with seven exhibits, 49 pages and 141 paragraphs. Doc. 1. Then, three days before AMP's deadline to file its responsive pleading, Plaintiffs filed their currently active Amended Complaint. Doc. 24. The Amended Complaint, as this Court is likely well aware by this point, consists of nine exhibits, 79 pages and 207 numbered paragraphs. *Id*. That Amended Complaint has already formed the basis of numerous motions requiring the attention of this Court and the parties, and the docket sheet in this matter rapidly approaches 100 entries already. To say the least, the parties and this Court have already invested significant time in response to Plaintiffs' allegations.

Yet Plaintiffs assert as a failsafe in the final paragraph of their Response in Opposition that they should be granted leave to amend again prior to dismissal. Doc. 85 at 39. Claiming leave to amend is "[a]lways freely given," Plaintiffs further assert that "Defendants cannot claim prejudice" because "this case is in its infancy." *Id*. Leave is not actually "always" given to amend. *See Perkins v. United States*, 55 F.3d 910 (4th Cir. 1995) (affirming that if an amended complaint could not withstand a motion to dismiss, it is futile). In addition to the futility of any amendments, Plaintiffs' admitted disregard of Fourth Circuit precedent as to the ATS (a jurisdictional statute) further supports denial of their requested leave to amend. *Lee v. Frederick County Dep't of Soc. Servs.*, 2008 Va. App. LEXIS 370 at 2\* (Va. Ct. App. 2008) ("A defect in subject matter jurisdiction cannot be cured by reissuance of process, passage of time, or *pleading amendment*") (emphasis added).

And contrary to Plaintiffs' representation that the potential future amendment "would be Plaintiffs' first opportunity to address any alleged pleading defect," they have in fact and as noted above already amended once. The lack of a defined map before doing so does not negate futility or justify the time and resources that doing so will cause this Court and the parties. Doc. 85.

## V.  THE *AMICUS* BRIEF ADDS NOTHING TO THIS ANALYSIS

This Court has permitted the filing of an *amicus* brief submitted on behalf of Attorneys General for twenty-two states.  Doc. 97; Doc. 91-1.  But this Court need not consider any *amicus* brief that does not aid in its consideration of the legal issues at hand.  *Mainstream Loudoun v. Bd. of Tr. of Loundon Cnty. Library*, 24 F. Supp. 2d 552, 557 n.3 (E.D. Va. 1998) (determining "the issues raised in these [*amicus*] briefs were adequately covered in the briefs submitted by the parties, [so] we do not address them specifically in this Opinion").  Here, the Amicus does not lend any information that is new, unique, or specialized. Accordius Health at Ashville, LLC, 2024 U.S. Dist. LEXIS 88452, at *3-4 (reiterating the Supreme Court's recognition that amicus briefs burden the court when they fail to bring new relevant matters to the court's attention not otherwise raised by the parties). *Amici* provide nothing more than a regurgitation of the importance of prosecuting terrorism and the importance of the ATA, yet offer no specialized information on how the states can effectively assist this Court in applying that federal statute. *Cf.* Doc. 91-1 at 6 (highlighting instances of successful implementation of state anti-terrorism law) and *Tafas v. Dudas*, 511 F. Supp. 2d 652, 669 (E.D. Va. 2007) (recognizing the usefulness of amici who provided perspectives from different industries affected by the case's outcome). This Court, not states' attorneys, can best address the purely federal claims at issue in this lawsuit.

## VI.     CONCLUSION

Plaintiffs paint with overly broad, conclusory brushes throughout both their lengthy Amended Complaint and their lengthy Response in Opposition to AMP's Motion to Dismiss. And despite the number of times they or any supporters of theirs utilize inflammatory rhetoric in hopes of supporting those conclusions, saying it more times won't make it so. Plaintiffs need to ultimately prove, and at this stage adequately plead, actual facts sufficient to support the elements of the legal claims they assert. Unlike a generalized court of public opinion or campaign rally, federal courts diligently rely on relevant precedent and satisfaction of the legal elements of the claims asserted when evaluating motions to dismiss. Plaintiffs' Response lacks both. The dearth of appropriate support for their claims as pled does not disappear in the presence of their posturing. As AMP recognized in its Motion to Dismiss, these Plaintiffs no doubt suffered harm. They rightly want a remedy. Those who took the actions that harmed them are responsible for their harm. But broadly pointing the legal finger at a lawful American nonprofit organization with no link to the actions that caused their harm cannot be the remedy. Our legal system does not validate the use of federal courts in that manner, Supreme Court precedent does not validate the use of federal courts in that manner, and this Circuit's precedent does not validate the use of federal courts in that manner. The legal analysis necessary in this case is not as complicated as Plaintiffs represent in their efforts to obscure where they fail. Plaintiffs, after already amending their Complaint, fail to meet the requirements of Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) for the reasons set forth above and in AMP's Motion to Dismiss. Defendant AMP therefore requests this Court dismiss the claims against it in full and deny the request for leave to amend as futile.

Dated: September 25, 2024							Respectfully submitted,

/s/ George R.A. Doumar
George R.A. Doumar, VSB No. 26490
Doumar Martin PLLC
1530 Wilson Boulevard, Suite 1060
Arlington, Virginia 22209
Tel: 703-243-3737
Fax: 703-524-7610
gdoumar@doumarmartin.com

Christina A. Jump
(*pro hac vice*)
Samira S. Elhosary
(*pro hac vice*)
Constitutional Law Center
for Muslims in America[3]
100 N. Central Expy. Suite 1010
Richardson, Texas 75080
Tel: 972-914-2507
Fax: 972-692-7454
cjump@clcma.org
selhosary@clcma.org

COUNSEL FOR DEFENDANT AJP
EDUCATIONAL FOUNDATION, INC. d/b/a
AMERICAN MUSLIMS FOR PALESTINE

---

[3] The Constitutional Law Center for Muslims in America is the legal division of the Muslim Legal Fund of America.

**CERTIFICATE OF SERVICE**

      I certify that on September 25, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

/s/ George R.A. Doumar
George R.A. Doumar, VSB No. 26490
Doumar Martin PLLC
1530 Wilson Boulevard, Suite 1060
Arlington, Virginia 22209
Tel: 703-243-3737
Fax: 703-524-7610
gdoumar@doumarmartin.com

COUNSEL FOR DEFENDANT AJP
EDUCATIONAL FOUNDATION, INC. d/b/a
AMERICAN MUSLIMS FOR PALESTINE