# IN THE UNITED STATES DISTRICT FOR THE
# EASTERN DISTRICT OF VIRGINIA
# Alexandria Division

| | |
|---|---|
| MAYA PARIZER, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 1:24-cv-00724-RDA-IDD |
| v. ) | |
| ) | |
| AJP EDUCATIONAL FOUNDATION, INC. ) | |
| a/k/a AMERICAN MUSLIMS FOR ) | |
| PALESTINE, et al., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS TAHER HERZALLAH'S AND ZAREFAH BAROUD'S COMBINED MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Defendants Taher Herzallah ("Mr. Herzallah") and Zarefah Baroud ("Ms. Baroud"), by and through their undersigned counsel, respectfully submit this memorandum of law in support of their motion to dismiss Plaintiffs' First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(2) and 12(b)(6).

## INTRODUCTION

Taher Herzallah and Zarefah Baroud are employees of AJP Educational Foundation, d/b/a American Muslims for Palestine ("AMP"), a 501(c)(3) non-profit organization that works to advance Palestinian rights. Mr. Herzallah is the Associate Director of Outreach and Grassroots Organizing and Ms. Baroud is the Digital Media Associate. Plaintiffs did not sue Mr. Herzallah and Ms. Baroud in their original complaint and have added them to this lawsuit as defendants in a perfunctory fashion merely because of their publicly identified roles in AMP—their names appear in only *one* of the 156 paragraphs that comprise the "Factual Allegations" section of the Amended

Complaint. *See* Am. Compl., ¶ 47. Further, the Amended Complaint fails to even mention Defendant Herzallah in its "Defendants" section. *See* Am. Compl., p. 7-8.

This Court does not have personal jurisdiction over Mr. Herzallah or Ms. Baroud because Plaintiffs fail to allege sufficient facts to grant this Court general or specific personal jurisdiction over them. Mr. Herzallah's domicile is Minnesota and Ms. Baroud's domicile is Washington, and they are therefore subject to the general personal jurisdiction of Minnesota and Washington courts, respectively, not Virginia courts. Plaintiffs do not allege sufficient contact by either Mr. Herzallah or Ms. Baroud to establish specific jurisdiction.

Plaintiffs fail to allege any specific actions whatsoever by either Mr. Herzallah or Ms. Baroud that could possibly render them liable under the Anti-Terrorism Act ("ATA") or the Alien Tort Statute ("ATS") for aiding and abetting the October 7, 2023 attacks committed by Hamas (hereinafter "October 7 attacks"). To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege facts that state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating a complaint, the court must disregard "labels and conclusions," "formulaic recitation of the elements of a cause of action," "legal conclusion[s] couched as . . . factual allegation[s]" and "naked assertions devoid of further factual enhancement." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

Applying that standard to this case, the Amended Complaint consists of a few conclusory allegations that are grossly insufficient to support the claims asserted against either Mr. Herzallah or Ms. Baroud. The only allegations related to Ms. Baroud are that she: (1) works for AMP as a Digital Media Associate; (2) "oversees AMP's copious social media activity and assists NSJP in the same"; and (3) "produce[s] propaganda for dissemination amongst SJP chapters." *Id.*, ¶¶ 15, 47, 188. The only allegations related to Mr. Herzallah are that he: (1) works for AMP as the

Director of Outreach and Grassroots Organizing; and (2) "ensures that the propaganda is properly utilized by SJP chapters." *Id.*, ¶¶ 47, 188. There are no allegations regarding any specific social media posts, articles, or other materials that were written, produced or disseminated by Ms. Baroud or Mr. Herzallah, and there are no allegations that link Mr. Herzallah or Ms. Baroud to Hamas, much less the October 7 attacks. Cursory allegations that Mr. Herzallah and Ms. Baroud provided "propaganda" services to Hamas, untethered to any supporting facts including any identifying details or dates, constitute naked assertions that are devoid of factual enhancement and not entitled to the assumption of truth. Mr. Herzallah and Ms. Baroud's motion to dismiss should be granted and the claims against them should be dismissed with prejudice.

## MOTION TO DISMISS STANDARDS

Federal Rule of Civil Procedure 12(b)(2) permits dismissal of an action where the court lacks personal jurisdiction. Courts undertake a two-part analysis to determine whether they have personal jurisdiction over a defendant in a case. *Medmarc Cas. Ins. Co. v. GD Grp. USA Co.*, 669 F. Supp. 3d 555, 560 (E.D. Va. 2023). A court first determines whether personal jurisdiction comports with state law, and then it determines whether the court's exercise of personal jurisdiction aligns with constitutional due process. *Id.* (citing *Mitrano v. Hawes*, 377 F.3d 402, 406 (4th Cir. 2004)). In Virginia, the statutory analysis aligns with the constitutional one, because Virginia's long-arm statute allows personal jurisdiction to the limits allowed by due process. *Id.* (citing *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009)). Taking all allegations in a complaint as true, a court first determines whether a plaintiff presented a *prima facie* showing of personal jurisdiction. *Id.* If a court finds that a *prima facie* showing of personal jurisdiction exists, "the defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction [so] unreasonable' as to 'offend traditional notions of fair

3

play and substantial justice.'" *Id*. at 560-61 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) and *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Personal jurisdiction can be either general or specific. *Wolf v. Menh*, 2019 U.S. Dist. LEXIS 250467, at *4 (E.D. Va. Feb. 5, 2019). General jurisdiction is appropriate if the nonresident defendant has continuous and systematic contacts with the forum state such that she is "essentially domiciled within the foreign state." *Id*. (internal citation omitted). Specific jurisdiction over a non-resident defendant exists where the litigation arises from the defendant's contacts with the state. *Id*. at *5-6.

To survive a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, citing *Twombly,* 550 U.S. at 570. The "plausibility standard" asks for "more than a sheer possibility that a defendant has acted unlawfully." *Id. at* 678 (internal quotation marks and citation omitted). While detailed factual allegations are not required, the complaint must contain more than mere "labels and conclusions or a formulaic recitation of the elements of a cause of action." *Id*. (internal quotation marks and citation omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.*; *see also SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015) ("We do not, however, accept as true a legal conclusion couched as a factual allegation. Nor do we accept unwarranted inferences, unreasonable conclusions, or arguments. We can further put aside any naked assertions devoid of factual enhancement.") (internal quotation marks and citations omitted).

"Rule 12(b)(1) provides for the dismissal of an action if the Court lacks subject matter jurisdiction." *Alexander v. Hilton Hotels Worldwide*, 2024 U.S. Dist. LEXIS 5677, at *2 (E.D. Va. Jan. 9, 2024). "In considering a Rule 12(b)(1) motion to dismiss, the burden is on the plaintiff to

prove that subject-matter jurisdiction exists." *Id*. at *2-3. A defendant can argue either "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based" (facial challenge) or "that the jurisdictional allegations of the complaint [are] not true" (factual challenge). *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). When addressing a facial challenge to its jurisdiction, a court must "apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged." *Id*. at 193. However, conclusory statements and legal conclusions in a complaint are not entitled to a presumption of truth. *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017). "Regardless of the particular challenge, a plaintiff bears the burden of proving that the court has jurisdiction, and a court must dismiss the action if a plaintiff fails to carry that burden." *McArthur v. Brabrand*, 610 F. Supp. 3d 822, 834 (E.D. Va. 2022).

## FACTS AND PROCEDURAL HISTORY

Plaintiffs are victims of Hamas' attack on October 7, 2023 in Israel. Seven of the Plaintiffs are U.S. citizens and two are Israeli citizens who reside outside of the United States. On May 1, 2024, Plaintiffs filed their original complaint, naming as defendants AMP and National Students for Justice in Palestine. Dkt. 1.

AMP is a 501(c)(3) non-profit organization that works to advance Palestinian rights and awareness of Palestine's rich history and culture within the United States. Mr. Herzallah and Ms. Baround are employees of AMP. Mr. Herzallah is the Associate Director of Outreach and Grassroots Organizing and Ms. Baroud is the Digital Media Associate.

On July 9, 2024, Plaintiffs filed an Amended Complaint adding Mr. Herzallah and Ms. Baroud among others as defendants. Dkt. 24. Plaintiffs assert two causes of action: the seven U.S.-citizen plaintiffs sue under Count I, relying on the ATA; and the two non U.S.-citizen plaintiffs sue under Count II, based on the ATS. Plaintiffs' apparent theory of the case is that the Defendants

5

aided and abetted the October 7 attacks, not by providing any type of support for the October 7 attacks, but by exercising their right to free speech and association.

Plaintiffs do not allege that Mr. Herzallah or Ms. Baroud is or was a member of, or affiliated with, Hamas. Nor do Plaintiffs allege that Mr. Herzallah or Ms. Baroud participated in or had any advance knowledge of the October 7 attacks.

In support of Mr. Herzallah's individual liability, Plaintiffs make only the following cursory allegations, which are quoted in their entirety:

(1) "Defendant Herzallah, as the liaison between AMP and NSJP, ensures that the propaganda is properly utilized by the various SJP chapters." Am. Compl., ¶ 47.

(2) "Mr. Herzallah has worked for AMP since 2010 and has been its Director of Outreach and Grassroots Organizing specifically since 2021." *Id.*, ¶ 188.

As noted *supra*, Mr. Herzallah is not even included in the "Defendants" section of the Amended Complaint. *See id.*, ¶ 10-15.

Plaintiffs make the following equally cursory allegations against Ms. Baroud, which are quoted in their entirety:

(1) "Individual Defendant Zarefah Baroud serves as the Digital Media Associate of AMP, producing propaganda for later dissemination among SJP chapters. Ms. Baroud's father is Ramzy Baroud, a scholar at the Center for Islamic and Global Affairs ("CIGA"), a Turkish "think tank" that hosts conferences attended by Hamas and Muslim Brotherhood leadership. Mr. Baroud is also the Editor-in-Chief of *The Palestine Chronicle*, a newspaper controlled by a U.S.-based nonprofit that employed a Hamas operative caught holding three Israeli hostages. Defendant resides with her father in Seattle." *Id.*, ¶ 15.

(2) "Ms. Baroud, under the leadership of Abuirshaid and Bazian, oversees AMP's copious social media activity and assists NSJP in the same." *Id.*, ¶ 47.

(3) "Ms. Baroud currently provides and has been providing media services to AMP since at least 2019." *Id.*, ¶ 188.

**ARGUMENT**

Plaintiffs fail to allege sufficient facts to grant this Court general or specific personal jurisdiction over Mr. Herzallah and Ms. Baroud. If this Court determines that it does possess personal jurisdiction over Mr. Herzallah and Ms. Baroud, the claims against them should be dismissed because Plaintiffs fail to state a claim upon which relief could be granted for either the ATA or ATS claim, and this Court has no subject matter jurisdiction over the ATS claim. Plaintiffs fail to allege any actions by Mr. Herzallah or Ms. Baroud in support of Hamas' October 7 attacks, much less actions that would support allegations of knowing and substantial assistance to Hamas. To the extent that Plaintiffs allege that Mr. Herzallah and Ms. Baroud are liable under either theory merely because of their employment with AMP or because of allegations against "Defendants" in general (neither of which establish individual liability), this Motion incorporates and relies on the arguments presented in AMP's currently pending Motion to Dismiss.

**I.     This Court Lacks Personal Jurisdiction Over Ms. Baroud and Mr. Herzallah**

Ms. Baroud and Mr. Herzallah have insufficient contacts with the Commonwealth of Virginia to vest this Court with personal jurisdiction. Ms. Baroud lives and works in Bothell, Washington and Mr. Herzallah lives and works in Columbia Heights, Minnesota. *See* Baroud Declaration, Ex. A ¶ 3, 6; Herzallah Declaration, Ex. B ¶ 3, 6. They are therefore not subject to general personal jurisdiction in Virginia. *See Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 262 (2017) (reiterating that the forum for general personal jurisdiction over an individual is that individual's domicile).

Neither are they subject to specific personal jurisdiction in Virginia, as they do not have sufficient relevant contacts to establish specific personal jurisdiction. *Id*. (emphasizing that the suit must arise out of or relate to the defendant's contacts with the forum). Neither Ms. Baroud nor Mr.

7

Herzallah have a residence or an office in Virginia. Ex. A ¶ 4-5; Ex. B ¶ 4-5. Ms. Baroud has worked from her home office in Washington since she started working for AMP in 2019. Ex. A ¶ 6. Mr. Herzallah has worked from his home office in Minnesota since July 2022. Ex. B ¶ 6. Ms. Baroud has only traveled to Virginia four times in her life. Ex. A ¶ 7. Each time was for an AMP event: once in 2018, for several days; once in 2019 for several days; and once in 2023 for several days; and once in 2024 for several days. *Id.* Mr. Herzallah has traveled to Virginia 3 times since 2022. Ex. B ¶ 7. Virginia law authorizes personal jurisdiction over a person as to a cause of action arising from one of ten enumerated situations. Va. Code Ann. § 8.01-328.1 (2024). Ms. Baroud and Herzallah meet none of those categories as they do not transact business in Virginia, nor do the claims in this lawsuit arise from any act Ms. Baroud or Mr. Herzallah took in Virginia. *Id.* Plaintiffs have failed to allege that either Ms. Baroud or Mr. Herzallah have sufficient contacts with Virginia that relate to or arise out of Plaintiffs' claims. Under both Virginia law and the constitutional analysis, this Court has no personal jurisdiction over Ms. Baroud and Mr. Herzallah.

## II. The Amended Complaint Does Not Plausibly Allege Secondary Liability Under the ATA Against Mr. Herzallah or Ms. Baroud

Section 2333(d) of the ATA imposes civil liability on a defendant "who aids and abets, by knowingly providing substantial assistance" to "an act of international terrorism" that is committed by a designated foreign terrorist organization ("FTO"). 18 U.S.C. § 2333(d)(2). To satisfy this standard, a plaintiff must allege that the defendant's conduct amounted to "conscious, voluntary, and culpable participation in another's wrongdoing." *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 493 (2023). Culpable participation in this context requires an "affirmative act," undertaken "with the intent of facilitating the offense's commission." *Id.* at 490 (internal quotation marks omitted). Aiding-and-abetting liability will not attach to "omissions, inactions, or nonfeasance." *Id.* at 489. Rather, a plaintiff must plausibly allege that the defendants "culpably associated themselves with

8

the [relevant] attack, participated in it as something that they wished to bring about, or sought by their action to make it succeed." *Id.* at 490 (internal quotation marks omitted).

To state an ATA aiding-and-abetting claim, it is not enough for a plaintiff to allege that a defendant gave "assistance to [the FTO's] activities in general." *Id.* at 503; *Ofisi v. BNP Paribas, S.A.*, 77 F.4th 667, 675 (D.C. Cir. 2023) ("Aiding and abetting requires more than the provision of material support to a terrorist organization.") (internal quotation marks omitted). It is "not enough . . . that a defendant have given substantial assistance to a transcendent 'enterprise' separate from and floating above all the actionable wrongs that constitute it." *Twitter*, 598 U.S. at 495. Rather, the defendant must have specifically "aided and abetted the act of international terrorism that injured the plaintiffs." *Id.* at 497.

When Congress enacted Section 2333(d), it pointed to *Halberstam v. Welch*, 705 F. 2d 472 (D.C. Cir. 1983), as "provid[ing] the proper legal framework" for "civil aiding and abetting and conspiracy liability." Justice Against Sponsors of Terrorism Act ("JASTA") § 2(a)(5), 130 Stat. 852. Thus, to state an aiding-and-abetting claim under the ATA, *Halberstam* requires a plaintiff to show that "(1) the party whom the defendant aids [performed] a wrongful act that cause[d] an injury; (2) the defendant [was] generally aware of his role as part of an overall illegal or tortious activity at the time that he provide[d] the assistance; [and] (3) the defendant . . . knowingly and substantially assist[ed] the principal violation." 705 F.2d at 477.[1] Plaintiffs fail to satisfy the second and third elements.

---

[1] While *Twitter* warned courts against "hew[ing] too tightly to the precise formulations *Halberstam* used," it did not invalidate that test. 598 U.S. at 493. Rather, the Court explained that "both JASTA and *Halberstam*'s elements and factors rest on the same conceptual core that has animated aiding-and-abetting liability for centuries: that the defendant consciously and culpably "participate[d]" in a wrongful act so as to help make it succeed." *Id.*

9

### A. The Amended Complaint does not plausibly allege that Mr. Herzallah or Ms. Baroud knowingly provided substantial assistance to the October 7 attacks

The Amended Complaint is devoid of non-conclusory allegations that Mr. Herzallah or Ms. Baroud provided any aid whatsoever to Hamas, much less that they "consciously, voluntarily, and culpably" provided aid with the intent of facilitating Hamas's terrorist activities, much less the October 7 attacks. *Twitter*, 598 U.S. at 489-90, 505. The only allegations related to Mr. Herzallah and Ms. Baroud beyond a description of their roles as employees of AMP are the following allegations regarding "propaganda"—that Ms. Baroud "produce[s] propaganda for dissemination amongst SJP chapters" and that Mr. Herzallah "ensures that the propaganda is properly utilized by SJP chapters." Am. Compl., ¶¶ 15, 47, 188. These are exactly the type of "naked assertions devoid of further factual development" that must be disregarded. *See Iqbal*, 556 U.S. at 678 (2009). The Amended Complaint contains no allegations regarding any specific actions by Mr. Herzallah or Ms. Baroud concerning the production or dissemination of any specific material that could be considered "propaganda." There are no allegations whatsoever regarding any specific social media posts, articles, or other materials that were written, produced or disseminated by Mr. Herzallah or Ms. Baroud, much less any allegations linking any such unmentioned materials to Hamas, much less any allegations linking such unmentioned materials to the October 7 attacks. Plaintiffs' claims against Mr. Herzallah and Ms. Baroud should be dismissed on this basis alone. *See, e.g., Aziz v. Alcolac, Inc.*, 658 F.3d 388, 401 (4th Cir. 2011) ("The Appellants' sole reference to Alcolac's intentional conduct in the Amended Complaint is an allegation that Alcolac placed Kromfax 'into the stream of international commerce with the purpose of facilitating the use of said chemicals in the manufacture of chemical weapons to be used, among other things, against the Kurdish population in northern Iraq.' J.A. 370 (Am. Compl. ¶ 53). Such a cursory allegation, however, untethered to any supporting facts, constitutes a legal

conclusion that neither binds us, *see Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222 (4th Cir. 2009), nor is 'entitled to the assumption of truth,' *Iqbal*, 129 S. Ct. at 1950.").

Even if the Amended Complaint had factually alleged that Mr. Herzallah or Ms. Baroud produced or disseminated specific writings that were used to provide assistance to Hamas's terrorist activities, that would still not qualify as "knowing and substantial" assistance for two reasons. First, the Amended Complaint does not allege the requisite *mens rea*—*i.e.*, that Mr. Herzallah or Ms. Baroud did so "knowingly," "with the intent of facilitating" Hamas's terrorist attacks. *Twitter*, 598 U.S. at 490. The Amended Complaint is devoid of any facts indicating that Mr. Herzallah and Ms. Baroud "wished" Hamas's terrorist operations "to succeed." *Id.* at 490. Second, the Amended Complaint does not allege a "concrete nexus between [these] services" and the October 7 attacks. *Id.* at 501. The Amended Complaint is utterly devoid of facts indicating that Mr. Herzallah or Ms. Baroud knew or understood that their speech (whatever that alleged speech consisted of) was, or even might be, used to support terrorism, nor does it draw any "concrete nexus" between their speech and the October 7 attacks. Even if the Amended Complaint had alleged that Mr. Herzallah and Ms. Baroud inadvertently provided support to Hamas through some specifically identified speech, that would be insufficient to state a claim under Section 2333(d). *Twitter*, 598 U.S. at 489, 499-500 (aiding-and-abetting liability does not attach to inadvertent support); *id.* at 503 (general provision of aid to an FTO insufficient to establish aiding and abetting); *Ofisi*, 77 F.4th at 675 (mere provision of "material support" to FTO insufficient to state a claim).

In sum, drawing every inference in Plaintiffs' favor, the Amended Complaint fails to plausibly allege that Mr. Herzallah and Ms. Baroud provided "knowing and substantial" assistance. Given these failings, the Court need not consider the six-part test that *Halberstam* articulated to

assist in determining whether aid is "substantial." *Halberstam*, 705 F.2d at 484-85; *see Twitter*, 598 U.S. at 493, 497, 504 (eliminating the requirement that courts rigidly adhere to the six-factor test). Regardless, applying that test to Plaintiffs' allegations yields the same result:

1) "Nature of the act assisted". *Halberstam*, 705 F.2d at 488. This first factor asks "whether the alleged aid . . . would be important to the nature of the injury-causing act." *Honickman*, 6 F.4th at 500. Plaintiffs do not allege that Mr. Herzallah or Ms. Baroud committed any specific act that aided Hamas, let alone any specific act that was important to or otherwise used in the October 7 attacks.

2) "[A]mount of assistance provided". *Halberstam*, 705 F.2d at 488. This factor also weighs heavily against liability insofar as Mr. Herzallah and Ms. Baroud are not alleged to have committed any specific acts that assisted Hamas.

3) Whether Mr. Herzallah or Ms. Baroud was present at the time of the principal tort. *Id.* The Amended Complaint does not allege that Mr. Herzallah or Ms. Baroud was present at the place and time of the October 7 attacks.

4) Mr. Herzallah's and Ms. Baroud's "relation to" Hamas. *Id.* This factor is designed to ascertain whether the defendant occupied a "position of authority [that gives] greater force to his power of suggestion." *Id.* at 484. The Amended Complaint does not allege any relationship whatsoever between Hamas and Mr. Herzallah or Ms. Baroud, much less one that would give Mr. Herzallah or Ms. Baroud any power of persuasion. *See Bernhardt*, 47 F.4th at 872 (plaintiff "does not allege a connection between the foreign banks and al-Qaeda sufficient to infer any relationship, much less a close one, between HSBC and al- Qaeda.").

5) Mr. Herzallah's and Ms. Baroud's "state of mind". *Halberstam*, 705 F.2d at 488. This inquiry is designed to determine whether the defendant consciously provided aid with the "intent

12

and desire to make the [unlawful] venture succeed." *Id.*; *Twitter*, 598 U.S. at 496-97. The Amended Complaint is devoid of any non-conclusory or other allegations that Mr. Herzallah or Ms. Baroud furnished aid to Hamas with the intent of facilitating Hamas' terrorist operations.

      6) "[D]uration of the assistance given". *Id.* 488. This factor is irrelevant to the analysis because Plaintiffs have completely failed to allege any specific assistance to Hamas or any of its operations. S*ee Siegel v. HSBC N. Am. Holdings, Inc*., 933 F.3d 217, 225 (2d Cir. 2019) (25-year banking relationship did not support aiding-and-abetting liability where complaint failed to allege assistance to FTO's terrorist operations).

      Plaintiffs' failure to come anywhere close to adequately pleading conscious, culpable, and concrete assistance by Mr. Herzallah or Ms. Baroud to Hamas's terrorist operations is independently fatal to their aiding and abetting claim.

      **B.**      **The Amended Complaint does not plausibly allege that Mr. Herzallah or Ms. Baroud were generally aware of playing a role in Hamas's terrorist operations**

      The Amended Complaint also fails to plead the separate element that either Mr. Herzallah or Ms. Baroud were "generally aware of aware of [their] role" in Hamas's terrorist activities. *Halberstam*, 705 F.2d at 477. To satisfy *Halberstam*'s general awareness requirement, it is not enough that the defendant understood that they were generally supporting a terrorist organization; rather, the defendant must be cognizant of "assuming a role in terrorist activities." *Weiss v. Nat'l Westminster Bank PLC*, 381 F. Supp. 3d 223, 231, 239 (E.D.N.Y. 2019), *aff'd* 993 F.3d 144 (2d Cir. 2021) ("Evidence that Defendant knowingly provided banking services to a terrorist organization, without more, is insufficient to satisfy JASTA's scienter requirement."). Moreover, the "inquiry is not whether a defendant should have been aware of its role"—rather, the plaintiff

13

must establish "actual awareness." *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 867 n.11 (D.C. Cir. 2022) (rejecting "extreme recklessness" standard for general awareness).

Here, there are no factual allegations that Mr. Herzallah or Ms. Baroud had any knowledge that their work for AMP would assist any violent or terrorist activities, including the October 7 attacks (or that it in fact did). The two cursory sentences regarding Mr. Herzallah and Ms. Baroud being involved in providing "propaganda" services for Hamas through an association with NSJP or an SJP chapter, with no factual allegations to support these conclusory and vague assertions, are "not entitled to the assumption of truth." *See Aziz*, 658 F.3d at 401. Thus, Plaintiffs have failed to satisfy the "generally aware" element as well.

### C. Plaintiffs' claims are an attack on protected speech

Plaintiffs' attempt to tie Mr. Herzallah and Ms. Baroud's liability to their speech based on the most conclusory of allegations does not plausibly state a claim under the ATA. Plaintiffs' failure to allege any specific speech by Mr. Herzallah or Ms. Baroud, much less speech that exceeds the protections of the First Amendment, further supports dismissal of their claims. *See Snyder v. Phelps*, 562 U.S. 443 (2011); *NAACP v. Claiborne Hardware*, 458 U.S. 886 (1982); B*randenburg v. Ohio*, 395 U.S. 444 (1969). The only inference that can be drawn from the cursory allegations that Ms. Baroud provided unspecified "media services" and that Mr. Herzallah somehow ensured that some unspecified "propaganda" was properly utilized is that these actions encompass protected speech.

### III. The Court Should Dismiss Plaintiffs' Alien Tort Statute Claim for Failure to State a Claim and for lack of Subject Matter Jurisdiction, as Plaintiffs Fail to Allege an Enforceable Treaty or Law of Nations Violation

This Court should dismiss Plaintiffs' ATS claim for at least two reasons. First, the facts alleged in the Amended Complaint are insufficient to state a claim for a violation of the law of

nations for the same reasons they are insufficient to state a claim for secondary liability under the ATA. The requirements for an ATS aiding-and-abetting claim are at least as strict as those of an ATA claim. *See Aziz,* 658 F.3d at 398 (ATS claims require defendant "(1) provides practical assistance to the principal which has a substantial effect on the perpetration of the crime, and (2) does so with the purpose of facilitating the commission of that crime"); *Estate of Alvarez v. Rockefeller Found.*, 96 F. 4th 686 (4th Cir. 2024) (confirming Aziz and reiterating the standard for aiding and abetting liability). As explained in Section I of this brief, the Amended Complaint does not plausibly allege that Mr. Herzallah or Ms. Baroud aided and abetted the October 7 attacks.

Second, the Court does not have subject matter jurisdiction under the ATS because the International Convention for the Suppression of the Financing of Terrorism (the "Financing Convention") does not trigger ATS jurisdiction. The ATS confers jurisdiction over "any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U. S. C. § 1350. The ATS does not create a cause of action, but is a strictly jurisdictional statute that affords subject matter jurisdiction over a narrow set of international law violations. *Sosa v. Alvarez-Machain*, 542 U.S. 692, 712-14, 720 (2004). To recognize a cause of action under the ATS, the threshold question is whether the international norm alleged to have been violated is "specific, universal, and obligatory." *Jesner v. Arab Bank, PLC*, 584 U.S. 241, 258 (2018) (quoting *Sosa*, 542 U.S. at 732). If there is no such norm, the inquiry ends. *Id.*

Plaintiffs' appear to contend that the Financing Convention provides subject matter jurisdiction under the "treaty" prong of the ATS. Am. Compl. at ¶ 198-206. This is wrong. "For any treaty to be susceptible to judicial enforcement it must both confer individual rights and be self-executing." *Cornejo v. Cty. of San Diego*, 504 F.3d 853, 856 (9th Cir. 2007); *Sosa*, 542 U.S. 692, 734-35 (Universal Declaration of Human Rights and International Covenant on Civil and

Political Rights are not privately enforceable in federal court because they were not self-executing); *Mannington Mills, Inc. v. Congoleum Corp.,* 595 F.2d 1287, 1298 (3d Cir. 1979) ("unless a treaty is self-executing, it must be implemented by legislation before it gives rise to a private cause of action.") The Financing Convention "is neither self-executing nor does it create a private right of action." *Krishanthi v. Rajaratnam*, 2010 WL 3429529, at *10-11, *13 (D.N.J. Aug. 26, 2010); *see also* Financing Convention, arts. 4-7 (specifying that enforcement relies on adoption of implementing legislation by parties to the Convention).

To the extent that Plaintiffs contend that "terrorism" constitutes customary international law violations to satisfy the requirements for ATS jurisdiction, this is wrong too. No Fourth Circuit case has upheld a claim of terrorism as a customary international law norm cognizable under the ATS, because the concept of terrorism has not been clearly defined internationally, and cannot satisfy the *Sosa* requirements of "specific, universal and obligatory." *See, e.g.*, *Terrorist Attacks on September 11, 2001 v. Al Rajhi Bank (In re Terrorist Attacks on September 11, 2001)*, 714 F.3d 118, 125 (2d Cir. 2013) (affirming district court dismissal of ATS claim because "no universal norm against 'terrorism' existed under customary international law"); *see Tel-Oren v. Libyan Arab Republic*, 726 F.2d 774, 795 (D.C. Cir. 1984) (Edwards, J., concurring) ("Indeed, the nations of the world are so divisively split on the legitimacy of such aggression [i.e., terrorism] as to make it impossible to pinpoint an area of harmony or consensus."); *In re Chiquita Brands Int'l., Inc. Alien Tort Statute & S'holder Derivative Litig*., 792 F. Supp. 2d 1301, 1317 (S.D. Fla. 2011) (rejecting plaintiffs' "attempt to group this broad, ill-defined class of conduct under the umbrella of 'terrorism,' or material support thereof, and create a cause of action against it under the ATS"); *Mwani v. Bin Ladin,* 2006 WL 3422208, at *3 n.2 (D.D.C. Sept. 28, 2006) ("The law is seemingly unsettled with respect to defining terrorism as a violation of the law of nations.").

Because Plaintiffs fail to identify a cause of action over which the ATS grants jurisdiction, their claim must fail.

## CONCLUSION

For the foregoing reasons, Defendants Baroud and Herzallah respectfully request that the Court dismiss the Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(2), Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 12(b)(1).

Dated: October 14, 2024                                                 Respectfully submitted,

**ZAREFAH BAROUD and
TAHER HERZALLAH**

By Counsel,

_____
Christopher E. Brown (VSB No. 39852)
The Brown Firm PLLC
526 King Street, Suite 213
Alexandria, VA 22314
T: 703-924-0223
F: 703-997-2362
cbrown@brownfirmpllc.com

Ben H. Elson, Esq. (IL Bar No. 6286106)
*Pro Hac Vice Pending*
Janine Hoft, Esq. (IL Bar No. 6188139)
*Pro Hac Vice Pending*
People's Law Office
1180 N. Milwaukee Ave.
Chicago, IL 60642
T: 773-235-0070
F: 773-235-6699
ben@peopleslawoffice.com
janinehoft@peopleslawoffice.com

*Counsel for Defendant Zarefah Baroud
and Taher Herzallah*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 14th day of October, 2024, I filed a true copy of the foregoing with the Court's ECF system, which will send notice and a copy to all registered users.

_____
Christopher E. Brown, Esq.