# IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

| | |
|---|---|
| MAYA PARIZER, ADIN GESS, NOACH NEWMAN, NATALIE SANANDAJI, YONI DILLER, DAVID BROMBERG, LIOR BAR OR, ARIEL EIN-GAL, and HAGAR ALMOG, <br><br> Plaintiffs, <br><br> v. <br><br> AJP EDUCATIONAL FOUNDATION, INC. a/k/a AMERICAN MUSLIMS FOR PALESTINE, NATIONAL STUDENTS FOR JUSTICE IN PALESTINE, WESPAC FOUNDATION, HATEM BAZIAN, OSAMA ABUIRSHAID, TAHER HERZALLAH, and ZAREFAH BAROUD, <br><br> Defendants. | Civil No. 1:24-cv-00724-RDA-IDD |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT OSAMA ABUIRSHAID'S MOTION TO DISMISS**

Plaintiffs' First Amended Complaint alleges Defendant Osama Abuirshaid, the Executive Director of Defendant AMP, supplied Hamas with propaganda and recruiting services in violation of the Antiterrorism Act, 18 U.S.C. § 2333, and the Alien Tort Statute, 28 U.S.C. § 1350.[1] Abuirshaid moves to dismiss for failure to state claims under either statute, for lack of subject matter jurisdiction as to the Alien Tort Statute claim, and because the First Amendment supposedly protects his conduct.[2] But the Complaint easily withstands Abuirshaid's meritless challenges, and his motion should be denied.

## INTRODUCTION

This case seeks to hold responsible the individuals and entities in the United States that provide material support and resources to Hamas, the formally designated Foreign Terrorist Organization that carried out horrific attacks against Plaintiffs and countless others. Defendant Osama Abuirshaid—the Executive Director of Defendant AMP and one of just five members of AMP's Board of Directors—is one of these individuals.[3] (FAC ¶ 14.) Despite claiming that he "does not support Hamas [or] any other terrorist group," he has a long, well-publicized history of doing so. (Abuirshaid Mem. 1.) Abuirshaid was on the Board of Directors for AMP's predecessor entity, which was adjudicated by American courts as a material supporter of Hamas. (FAC ¶¶ 35, 38, 25–31.) He also has repeatedly traveled to Turkey to meet with convicted terrorist Sami Al-Arian (FAC ¶ 39); has interviewed and attended conferences with Hamas leaders and a convicted

---

[1] Unless otherwise defined, capitalized terms used herein have the same meanings as in Plaintiffs' oppositions to the motions filed by AMP, WESPAC, and Hatem Bazian. *See* Joint Opposition, ECF No. 85; Plaintiffs' Memorandum Of Law in Opposition to Defendant Hatem Bazian's Motion to Dismiss, ECF No. 92.

[2] Memorandum in Support of Dr. Osama Abuirshaid's Motion to Dismiss ("Abuirshaid Mem."), ECF No. 106.

[3] AMP, "Our Team," https://www.ampalestine.org/about-amp/our-team (last visited Oct. 16, 2024).

hijacker (FAC ¶¶ 38–40); and very publicly supports Hamas and promotes its goals through publications that castigate Jews and spread antisemitic conspiracy theories (FAC ¶ 41).[4]

And as alleged in extraordinary detail in the Complaint, through AMP and its predecessors, Abuirshaid and other senior leaders have supplied Hamas with money, propaganda services, recruiting services, and political mobilization for nearly forty years. Indeed, immediately after the attacks on October 7, 2023, as Hamas's butchery continued, AMP declared through NSJP that it was "PART of" Hamas and operating under its "unified command," and began pumping a torrent of pro-Hamas propaganda across the country. (FAC ¶ 84.) As AMP's Executive Director and Board member, Abuirshaid is intimately involved in its operations, and his fingerprints are all over AMP's wrongful acts. The specific and detailed allegations of the Complaint, if proven, would subject both AMP *and* Abuirshaid to liability under both the Antiterrorism Act and the Alien Tort Statute. Accordingly, his motion to dismiss should be denied.

Abuirshaid is represented by the same counsel as AMP and Hatem Bazian, and his motion largely recycles their meritless arguments. He argues the Complaint should be dismissed for failure to state claims under the Antiterrorism Act and Alien Tort Statute, lack of subject matter jurisdiction for the Alien Tort Statute claim, and on First Amendment grounds. These arguments all fail.

*First*, Plaintiffs state a claim against Abuirshaid for aiding and abetting Hamas's violation of the Antiterrorism Act. Abuirshaid's organization knowingly and substantially assisted Hamas

---

[4] In addition, according to a lawsuit Abuirshaid recently filed in this Court, the U.S. Government has placed him on a terrorism watchlist. Complaint at 4–5, *Osama Abu Irshaid et al. v. Garland et al.*, No. 1:24-cv-1405 (E.D. Va. filed Aug. 12, 2024). This Court may—and should—take judicial notice of this fact when deciding Abuirshaid's Motion. *See Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015) (noting that when deciding a motion to dismiss, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'").

2

with propaganda and recruiting services before, during, and after the October 7 attacks, as more fully explained in the Joint Opposition. Indeed, AMP's contributions to Hamas have been so systemic and intentional that Abuirshaid's organization is liable for *all* of Hamas's crimes. Under well-established legal principles, Abuirshaid may be held individually liable for this wrongdoing because, with other senior leaders, he personally engaged in and authorized AMP's misconduct.

*Second*, Plaintiffs have exceeded the legal standard by alleging abundant facts that both state a claim under the Alien Tort Statute and permit this Court to exercise subject matter jurisdiction over the claim. Abuirshaid's motion merely recycles the same meritless contentions as AMP's motion, and it fails for the reasons Plaintiffs have already given. Like with the Antiterrorism Act claim, Abuirshaid may be held individually liable for AMP's wrongdoing under the Alien Tort Statute because he engaged in and authorized it.

*Third*, for the first time in any defense motion, Abuirshaid argues that the First Amendment immunizes his conduct. This argument strains credulity. Abuirshaid is not sued for any peaceable advocacy or writings, but for personally engaging in and authorizing his organization to provide Hamas with recruiting and propaganda services. It is well-established that the First Amendment does not protect that conduct.

## ARGUMENT

### I. PLAINTIFFS STATE CLAIMS UNDER THE ANTITERRORISM ACT

Abuirshaid's recycled challenges to Plaintiffs' Antiterrorism Act claim fail. Just as Plaintiffs allege sufficient facts to state an Antiterrorism Act claim against AMP, Plaintiffs state a claim against Abuirshaid. Abuirshaid's motion fails largely for the same reasons stated in Plaintiffs' Joint Opposition. (Joint Opp. 5–19.)

*First*, Abuirshaid argues that the claim fails because Plaintiffs fail to allege that he had "prior knowledge" of the October 7 attacks. (Abuirshaid Mem. 14.) But there is no "prior

3

knowledge" requirement under either a near-common enterprise theory or a traditional aiding-and-abetting theory. (Joint Opp. 11, 12–13 (citing *Twitter v. Taamneh*, 598 U.S. 471, 495–96 (2023), *Halberstam v. Welch*, 705 F.2d 472, 488 (D.C. Cir. 1983), *Linde v. Arab Bank*, 882 F.3d 314, 329 (2d Cir. 2018), and *Zobay v. MTN Grp. Ltd.*, 695 F. Supp. 3d 301, 346 (S.D.N.Y. 2023)).) The Complaint alleges that Abuirshaid's organization had a high, culpable level of knowledge, including whatever degree of prior knowledge might be required. (*See* Joint Opp. 11–12, 13–15.) As explained in the Joint Opposition, AMP's knowledge is shown in part by its historic, deep ties with Hamas—including Abuirshaid's service as a Board member to AMP's predecessor, an adjudicated material supporter of Hamas, and his deep and sustained ties with Hamas and other terror groups. (FAC ¶¶ 25–35, 38–41.)

*Second*, Abuirshaid argues that the Complaint lacks allegations that he "substantially assisted in Hamas' October 7 attacks." (Abuirshaid Mem. 15.) In making this argument, Abuirshaid finally abandons the phantom rule advanced by other Defendants represented by the same counsel—albeit without explaining how it appeared in two separate briefs.[5] But as Plaintiffs have shown, using the proper analysis, Abuirshaid's organization provided direct and extraordinary support to the October 7 attack. (Joint Opp. 15–17.) With the substantiality and knowledge allegations considered "in tandem," the Complaint alleges such "pervasive and systemic aid" to Hamas that Abuirshaid's organization is liable for all of Hamas's crimes. *Twitter*,

---

[5] *Compare* Abuirshaid Mem. 15 ("Demonstrating substantial assistance requires plaintiffs to show the defendants' assistance helped the tortious act in a way that "ma[d]e it succeed." *Taamneh*, 598 U.S. at 497."), *with* Bazian Mem. 18 ("Demonstrating substantial assistance requires a plaintiff to show that the defendant's actions significantly enhanced the terrorist actor's ability to carry out the attacks. *Taamneh*, 598 U.S. at 461."); AMP Mem. 23 ("To determine whether alleged assistance is substantial, Plaintiffs must allege the defendant's substantial assistance significantly enhanced the terrorist organization's ability to carry out the attacks at issue. *Taamneh*, 598 U.S. at 461."). *See also* Joint Opp. 15 (explaining that the AMP/Bazian rule is fictional).

4

598 U.S. at 491, 506.

Contrary to Abuirshaid's unsupported, one-sentence assertion (Abuirshaid Mem. 15), Abuirshaid is individually liable for these acts. "Corporate officers may of course be liable jointly and severally with their corporation for obligations arising out of tortious conduct of the officers that subject the corporation to liability." *Sit-Set, A.G. v. Universal Jet Exchange*, 747 F.2d 921, 929 (4th Cir. 1984). The question is whether the individual "directly engaged" in the conduct "upon which [corporate] liability was found," *id.*, or "commit[ted] or authorize[d]" those acts "on behalf of the corporation," *Airlines Reporting Corp. v. Cartagena Travel & Tours, Inc.*, 2012 WL 13019408, at *2 (E.D. Va. Feb. 8, 2012); *see also, e.g.*, *Trans-Radial Sols., LLC v. Burlington Med., LLC*, 2019 WL 3557879, at *5 (E.D. Va. Aug. 5, 2019) (sustaining claims against defendant corporation's CEO, who, among other things, "formed" the corporation and "personally directed and/or engaged" in the corporation's tortious conduct); *Revolon Monterey Energy LLV v. Operator*, 2014 WL 12576644, at *5 (C.D. Cal. Sept. 18, 2014) (holding plaintiff sufficiently alleged that a defendant was "individually liable for the actions he took while acting as manager/president" of the defendant corporations because "[a]s manager, president, and owner of the [corporate defendants], it is plausible that [he] occupied a prominent position in the companies and had extensive control and knowledge over their affairs" (citing *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009))); *Abecassis v. Wyatt*, 785 F. Supp. 2d 614, 650 (S.D. Tex. 2011) (sustaining Antiterrorism Act claim against corporation's alleged employee/executive officer/managerial employee who was "responsible for purchasing Iraqi oil using front companies and paying kickbacks to Iraq").

The Complaint alleges sufficient facts to support individual liability. Abuirshaid is AMP's Executive Director, and as one of just five Board members, he is intimately involved in its

5

operations. (FAC ¶ 14.) Indeed, Abuirshaid has been in this role so long that he was a Board member of AMP's predecessor entity, an adjudicated material supporter of Hamas. (FAC ¶¶ 35, 38, 25–31.) At this stage of the litigation, it is reasonable to infer that Abuirshaid—like the defendant in *Revolon*—has "extensive control and knowledge over [AMP's] affairs," was directly engaged in AMP's corporate misconduct, and is therefore individually liable. 2014 WL 12576644, at *5.

Abuirshaid's reliance on *Keren Kayemeth LeIsrael – Jewish National Fund v. Education for Just Peace in the Middle East*, 66 F.4th 1007 (D.C. Cir. 2023), is misplaced. There, the plaintiffs claimed that a nonprofit assisted a terror attack by funding a coalition of many groups, some of which coordinated the launching of incendiary devices into Israel. *Id.* at 1011. The court found no substantial assistance because the plaintiffs did not allege the nonprofit itself sent Hamas money and because the coalition had "extensive legitimate operations," with Hamas and an ally being just two of its "many members." *Id*. at 1018. Abuirshaid's organization, however, is composed of Hamas collaborators and provides its propaganda services directly to Hamas with the goal of supporting terrorism. (FAC ¶¶ 33–50, 62–66.)

Accordingly, Plaintiffs state a claim under the Antiterrorism Act against Abuirshaid.

## II.  PLAINTIFFS' ALIEN TORT STATUTE CLAIM MORE THAN MEETS THE LEGAL STANDARD

Plaintiffs' Alien Tort Statute claim is likewise more than legally sufficient. Abuirshaid once again parrots the unsuccessful arguments made by AMP and Bazian, and they should be rejected for reasons the Plaintiffs have already given. (Joint Opp. 25–39.)

### A.  The Complaint Alleges Sufficient Domestic Conduct

The Court should reject Abuirshaid's contention that the Complaint alleges insufficient domestic conduct to support subject matter jurisdiction. (Abuirshaid Mem. 10–11.) As explained,

in an aiding and abetting case, only the abettor's conduct need be domestic. (Joint Opp. 27–28 (citing *Doe I v. Cisco Sys.*, 73 F.4th 700, 737–38 (9th Cir. 2023) and *Al Shimari v. CACI Premier Tech., Inc.*, 684 F. Supp. 3d 481, 497 (E.D. Va. 2023).) The Complaint alleges extensive domestic conduct by Abuirshaid's organization, which has supplied Hamas with propaganda services from the United States for nearly forty years. (Joint Opp. 28.) Abuirshaid's jurisdictional objection therefore fails.

### B. The Complaint Alleges Actionable International Norms

Abuirshaid also challenges subject matter jurisdiction on the ground that the Complaint does not allege an actionable international norm. (Abuirshaid Mem. 11–12.) Like his codefendants, Abuirshaid thinks the law of nations **condones** Hamas's atrocities and his and his organization's extensive support. He is wrong. The Complaint alleges four distinct actionable norms: genocide, war crimes, harming civilians in terror attacks, and supporting terrorism. (Joint Opp. 25, 29–35.) Abuirshaid and his organization are secondarily liable for Hamas's violations of the first three and primarily liable for their own violation of the fourth. Abuirshaid's focus on self-executing treaties and private rights of action is misplaced. Neither is required to evidence an actionable norm. (Joint Opp. 34 (citing *Abelesz v. Magyar Nemzeti Bank*, 692 F.3d 661, 685 (7th Cir. 2012), *Flomo v. Firestone Nat'l Rubber Co., LLC*, 643 F.3d 1013, 1021–22 (7th Cir. 2011), and *Al Shimari v. CACI Premier Tech., Inc.*, 263 F. Supp. 3d 595, 600, 606 (E.D Va. 2017).) Because Abuirshaid is individually liable for his organization's misconduct, *see supra* § I, the Court has subject matter jurisdiction over the Alien Tort Statute claim against him as well.

Abuirshaid's contention that courts lack authority to recognize causes of action beyond violation of safe conduct, infringement of the rights of ambassadors, and piracy is wrong. (Abuirshaid Mem. 11.) The Supreme Court expressly held otherwise in *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004), and it has never retreated from that holding. (*See* Joint Opp. 29 & n.20.) The

7

seemingly contrary language Abuirshaid quotes from *Nestle USA, Inc. v. Doe* is an argument made by three Justices in a non-binding plurality opinion, not a holding of the Supreme Court. *See* 593 U.S. 628, 634–35, 637 (2021) (opinion of Thomas, J., joined by Gorsuch and Kavanagh, JJ.)). The binding, majority opinion in *Nestle* rests on extraterritoriality grounds and does not reach the *Sosa* question. *See id.* at 633–34. Because *Nestle* left *Sosa* undisturbed, lower courts have continued to apply *Sosa* to recognize new causes of action. *See, e.g.*, *Cisco*, 73 F.4th at 717 (aiding and abetting). This Court should do the same.

Finally, in a footnote citing no legal authority, Abuirshaid urges the Court to disregard Plaintiffs' genocide and war crimes theories because they are supposedly not alleged in the Complaint. (Abuirshaid Mem. 12 n.5.) Of course, the only reason Abuirshaid can make this argument is that Plaintiffs have already asserted these theories at length. (Joint Opp. 25, 29–31.) Tellingly, however, neither Abuirshaid nor any other Defendant has ever challenged the substance of these theories.[6] Nor can they. As explained, they are widely recognized by federal courts around the country and supported by detailed factual allegations. (Joint Opp. 29–31.)

Abuirshaid's objection to the form of the Complaint is meritless. "Federal pleading rules call for 'a short and plain statement of the claim showing that the pleader is entitled to relief'; they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam) (quoting Fed. R. Civ. P. 8(a)(2)); *accord Skinner v. Switzer*, 562 U.S. 521, 530 (2011) ("[A] complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) . . . generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal

---

[6] WESPAC raises the same procedural argument as Abuirshaid. (WESPAC Reply, ECF No. 100, at 5.) AMP and Bazian do not even go that far; their replies do not specifically address the genocide and war crimes theories. (AMP Reply, ECF No. 101, at 2–3; Bazian Reply, ECF No. 104, at 8–9.)

8

argument."). As the Fourth Circuit recently held, "Plaintiffs need not put a claim under a special heading, quote the statute, or use magic words to make out a claim. Courts should focus on the substance of the allegations to avoid making pleading a formalistic headache." *Stanton v. Elliott*, 25 F.4th 227, 238 (4th Cir. 2022); *see also In re Railworks Corp.*, 760 F.3d 398, 403–04 (4th Cir. 2014) ("[W]e have long held that a plaintiff is not limited by any one specific legal theory set forth in the complaint.").

In *Johnson*, the Supreme Court held that a complaint asserting claims under 42 U.S.C. § 1983 need not cite the statute so long as the underlying facts were sufficiently alleged. *See* 574 U.S. at 12 ("Having informed the city of the factual basis for their complaint, they were required to do no more to stave off threshold dismissal for want of an adequate statement of their claim."). In another case, the Fourth Circuit deemed wrongful death claims sufficiently alleged where they were labeled as negligence and battery claims, but where the plaintiff cited the appropriate statute in the complaint and "ma[de] allegations that naturally fit Wrongful Death Act claims." *Stanton*, 25 F.4th at 238.[7] In still another, a court sustained claims under Sections 905 and 916 of the Electronic Fund Transfer Act when the complaint did not cite them. *See Virginia is for Movers, LLC v. Apple Fed. Credit Union*, 2024 WL 1091786, at *13 n.18 (E.D. Va. Mar. 13, 2024).

The Complaint easily satisfies the pleading standards. As Plaintiffs have explained, the Complaint includes extensive factual allegations in support of the genocide and war crimes theories, including Hamas's genocidal intent (FAC ¶¶ 19, 67–71), the existence of an armed conflict (FAC ¶ 67), and actionable harms to Ms. Almog and Mr. Ein-Gal (FAC ¶¶ 8–9, 69(a), (b)). (*See also* Joint Opp. 29–31.) And, of course, the Complaint expressly asserts a claim under

---

[7] *See also Stanton v. Elliott*, 2021 WL 217610, at *7 (N.D. W.Va. Jan. 21, 2021) (describing complaint), *rev'd in relevant part by* 25 F.4th at 237–38.

9

the Alien Tort Statute, 28 U.S.C. § 1350. (FAC ¶¶ 195–206.) Nothing more is required. Abuirshaid's unsupported objection to the form of the Complaint should therefore be rejected.

Plaintiffs therefore sufficiently assert international norms supporting jurisdiction.

### C. Recognizing Plaintiffs' Claims Is a Proper Exercise of Judicial Discretion

Abuirshaid urges that recognizing Plaintiffs' Alien Tort Statute claim is an improper exercise of judicial discretion under the Supreme Court's decision in *Jesner v. Arab Bank, PLC*, 584 U.S. 241 (2018). (Abuirshaid Mem. 13.) But Abuirshaid completely misreads *Jesner*, including by again ignoring the majority in favor of a plurality. The narrow majority opinion in *Jesner* declined to recognize foreign corporate liability under the Alien Tort Statute because of the "significant diplomatic tensions" the litigation risked creating. 584 U.S. at 271. That concern is completely absent here. This case is about extending civil liability to close allies of Hamas, an enemy of all mankind if ever there was one: its domestic propaganda arm and the driving force behind a group that considers itself part of Hamas. Just weeks ago, the Department of Justice announced charges against the Hamas officials who masterminded the October 7 attacks.[8] Courts of the United States have civilly and criminally adjudicated AMP's predecessor firms as material supporters of Hamas's terrorism. (FAC ¶¶ 29–32.) Indeed, Abuirshaid does not even try to argue that this litigation could somehow create diplomatic tensions.

Abuirshaid's reliance on a three-Justice plurality opinion in *Jesner* is misplaced. A plurality opinion, of course, is not binding. But more fundamentally, the cited portion of the opinion does not even address judicial discretion to recognize a claim (the second *Sosa* inquiry), but instead discusses whether there is an actionable international norm (the first *Sosa* inquiry). *See Jesner*, 584

---

[8] U.S. Attorney's Office for the Southern District of N.Y., "U.S. Attorney Announces Terrorism Charges Against Senior Leaders of Hamas" (Sept. 3, 2024), https://www.justice.gov/usaosdny/pr/us-attorney-announces-terrorism-charges-against-senior-leaders-hamas.

U.S. at 261–62 (opinion of Kennedy, J., joined by Roberts, C.J., and Thomas, J.). The cited opinion argues that the ICSFT is insufficiently specific to evidence a norm of foreign corporate liability because it allows countries to enable corporate liability in different ways. *See id.* The United States did so with the Antiterrorism Act, the Bank Secrecy Act, and certain terrorism sanctions regulations, the same three sources of law that Abuirshaid's argument relies on; other countries could proceed differently. *See id.* But the plurality nowhere suggests that these sources of law somehow affect a district court's discretion to recognize a terror claim, and Abuirshaid utterly fails to explain how they would.

Accordingly, the Court should exercise its discretion to recognize Plaintiffs' claims.

**D.     Plaintiffs State a Claim Against Abuirshaid Under the Alien Tort Statute**

Abuirshaid's attacks on the merits of the Alien Tort Statute claim also fall short. (Abuirshaid Mem. 15–17.)

*First*, the Complaint sufficiently alleges that Abuirshaid "provide[d] substantial assistance" to Hamas, the required conduct for aiding and abetting liability. *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 401 (4th Cir. 2011). *Aziz* did not define substantial assistance, but as that term has deep common-law roots, the traditional standards applicable to the Antiterrorism Act are equally applicable to the Alien Tort Statute. *See generally Twitter*, 598 U.S. 471; *Halberstam*, 705 F.2 472. Because the conduct supports liability under the Antiterrorism Act, it supports liability under the Alien Tort Statute as well. (Joint Opp. 37, 15–18.)

Abuirshaid incorrectly interprets the law as requiring allegations that a defendant "provide[d] practical assistance to the principal which has a substantial effect on the perpetration of the crime." (Abuirshaid Mem. 15 (quoting *Aziz*, 658 F.3d at 396).) But *Aziz* clearly states that "***we hold that for liability to attach under the ATS for aiding and abetting a violation of international law, a defendant must provide substantial assistance*** with the purpose of

11

facilitating the alleged violation. . . ." 658 F.3d at 401 (emphasis added). Abuirshaid ignores this express holding and instead highlights a portion of the opinion focusing on mental state, which is not relevant to his conduct argument. *See id.* at 396 ("We turn next to the parties' competing contentions as to the applicable mens rea for the claim."). Moreover, the conduct standard he references is from another circuit's formulation, which *Aziz* did not adopt.[9] *See id.* at 396 (explaining "***[t]he Second Circuit held*** that 'a defendant may be held liable under international law for aiding and abetting the violation of that law by another when the defendant (1) provides practical assistance to the principal which has a substantial effect on the perpetration of the crime . . .'" (quoting *The Presbyterian Church of Sudan v. Talisman*, 582 F.3d 244, 258 (2d Cir. 2009) (emphasis added)). *Aziz* only requires "substantial assistance," not the additional conduct criteria Abuirshaid suggests. *Id.* at 401.

*Second*, the Complaint sufficiently alleges the required mental state for aiding and abetting liability. The correct mental state should be knowledge for all Plaintiffs' theories of liability under the Alien Tort Statute. (Joint Opp. 36.) Although *Aziz* adopted a higher "purpose" standard for generic aiding-and-abetting liability, *see* 658 F.3d at 401, that narrow aspect of *Aziz* is incorrect. Contrary to another Defendant's accusations (Bazian Reply 8), Plaintiffs are not inviting the Court to "ignore" the *Aziz* standard but are preserving this argument for potential review by a higher court. The Joint Opposition could not be clearer: "Although Plaintiffs recognize that *Aziz*'s intent holding is binding on the Court, the error requires correction by a higher tribunal." (Joint Opp. 36.) As explained, the Complaint amply alleges that Abuirshaid's organization knowingly assisted the

---

[9] Although a later decision of the Fourth Circuit recites the *Talisman* standard, its discussion is dicta because the decision rests solely on agency law grounds, not the quantum of substantial assistance. *See Est. of Alvarez v. Rockefeller Found.*, 96 F.4th 686, 693, 694–95 (4th Cir. 2024).

October 7 attacks. (Joint Opp. 36, 11–15.) The same allegations readily support an inference of purpose. (Joint Opp. 37.)

Finally, as explained above, Abuirshaid is individually liable for AMP's wrongdoing through his direct engagement in the misconduct. *See supra* § I. Accordingly, the Complaint states a claim under the Alien Tort Statute against Abuirshaid.

### III. ABUIRSHAID'S TERROR SUPPORT IS NOT CONSTITUTIONALLY PROTECTED

Abuirshaid's motion introduces a new defense: that his conduct is protected by the First Amendment. (Abuirshaid Mem. 17–18.) His inclusion of this First Amendment argument only confirms that his codefendants have waived similar claims. (Joint Opp. 37–38.) And in any event, his argument is unconvincing. The Constitution does not protect activities like providing propaganda and recruiting services for terrorists. (Joint Opp. 38–39 (citing *Holder v. Humanitarian Law Project*, 561 U.S. 1, 29–32 (2010) and *United States v. Osadzinski*, 97 F.4th 484, 486, 492 (7th Cir. 2024)).) Abuirshaid is not being sued for his advocacy or his writings but for actively engaging in and authorizing AMP's pro-Hamas propaganda and recruiting services in order to provide public relations services for Hamas. It's not speech—it's a service.

The cases Abuirshaid cites are irrelevant. *Snyder v. Phelps* protects personally offensive but peaceable speech, 562 U.S. 443 (2011), while *NAACP v. Claiborne Hardware* protects economic boycotts "to secure compliance by both civic and business leaders with a lengthy list of demands for equality and racial justice," 458 U.S. 886, 907 (1982). This case is not about offensive speech or racial justice. It concerns public relations services "addressed to, directed by, or coordinated by" Hamas, a terrorist organization, which the First Amendment does not shield. *Osadzinski*, 97 F.4th at 492.

## **CONCLUSION**

The Complaint's detailed allegations readily state claims under the Antiterrorism Act and Alien Tort Statute and support subject matter jurisdiction. Abuirshaid's motion should be denied.[10]

Date: October 16, 2024

Respectfully submitted,

*Counsel for Plaintiffs Maya Parizer, Ariel Ein-Gal, Hagar Almog, Adin Gess, Noach Newman, Natalie Sanandaji, Yoni Diller, David Bromberg, and Lior Bar Or*

By:   */s/ Jason Torchinsky*
      Jason Torchinsky

---

[10] In the alternative, Plaintiffs respectfully request leave to amend. (Joint Opp. 39.)

14

| | |
|---|---|
| **GREENBERG TRAURIG, LLP**<br>SCOTT BORNSTEIN*<br>bornsteins@gtlaw.com<br>RICHARD EDLIN*<br>edlinr@gtlaw.com<br>RICHARD ROSENBAUM*<br>rosenbaumr@gtlaw.com<br>HAL SHAFTEL*<br>shaftelh@gtlaw.com<br>One Vanderbilt Avenue<br>New York, New York 10017<br>T. 212.801.9200<br><br>**GREENBERG TRAURIG, P.A.**<br>BRADFORD KAUFMAN*<br>kaufmanb@gtlaw.com<br>777 South Flagler Drive<br>Suite 300<br>East West Palm Beach,<br>Florida 33401<br>T. 561.650.7900<br>ZACHARY NEEDELL*<br>zachary.needell@gtlaw.com<br>401 East Las Olas<br>Boulevard, Suite 2000<br>Fort Lauderdale, Florida<br>33301<br>T. 954.765.0500<br><br>**LAW OFFICES OF DAVID SCHOEN**<br>DAVID SCHOEN*<br>schoenlawfirm@gmail.com<br>2800 Zelda Road, Suite 100-6<br>Montgomery, Alabama 36106<br>T. 334.395.6611 | **HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK, PLLC**<br>JASON TORCHINSKY<br>Va. Bar No. 47481<br>jtorchinsky@holtzmanvogel.com<br>JONATHAN FAHEY<br>Va. Bar No. 44854<br>jfahey@holtzmanvogel.com<br>ERIELLE DAVIDSON*<br>edavidson@holtzmanvogel.com<br>2300 N. Street NW, Suite 643<br>Washington D.C. 20037<br>PHILLIP GORDON<br>Va. Bar No. 95621<br>pgordon@holtzmanvogel.com<br>JOHN CYCON<br>Va. Bar No. 100104<br>jcycon@holtzmanvogel.com<br>DANIEL BRUCE<br>Va. Bar No. 98120<br>dbruce@holtzmanvogel.com<br>15405 John Marshall Hwy<br>Haymarket, VA 20169<br>T. 202.737.8808<br><br>**NATIONAL JEWISH ADVOCACY CENTER**<br>MARK GOLDFEDER*<br>mark@jewishadvocacycenter.org<br>BEN SCHLAGER*<br>ben@jewishadvocacycenter.org<br>ANAT BECK*<br>Anat@jewishadvocacycenter.org<br>National Jewish Advocacy Center, Inc.<br>International Legal Forum<br>1718 General George Patton Drive<br>Brentwood, TN 37027<br>T. (800) 269-9895 |

*Admitted Pro Hac Vice*

**Certificate of Service**

      I hereby certify that on October 16, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

                                            */s/ Jason Torchinsky*
                                            JASON TORCHINSKY
Va. Bar No. 47481
**HOLTZMAN VOGEL BARAN TORCHINSKY & JOSEFIAK, PLLC**
2300 N. Street NW, Suite 643
Washington D.C. 20037
T. 202.737.8808
jtorchinsky@holtzmanvogel.com

*Counsel for Plaintiffs*

16