# IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

| | | |
|---|---|---|
| MAYA PARIZER, ADIN GESS, NOACH NEWMAN, NATALIE SANANDAJI, YONI DILLER, DAVID BROMBERG, LIOR BAR OR, ARIEL EIN-GAL, and HAGAR ALMOG, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil No. 1:24-cv-00724-RDA-IDD |
| AJP EDUCATIONAL FOUNDATION, INC. a/k/a AMERICAN MUSLIMS FOR PALESTINE, NATIONAL STUDENTS FOR JUSTICE IN PALESTINE, WESPAC FOUNDATION, HATEM BAZIAN, OSAMA ABUIRSHAID, TAHER HERZALLAH, and ZAREFAH BAROUD, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS TAHER HERZALLAH'S AND ZAREFAH BAROUD'S MOTION TO DISMISS <u>PLAINTIFFS' AMENDED COMPLAINT</u>**

## INTRODUCTION

Hamas, a designated Foreign Terrorist Organization, has long perpetrated mass violence and terror against innocent men, women, and children. The horrific attacks against Plaintiffs and countless others on October 7, 2023 exemplify Hamas's methods for reaching its evil aims. Yet Hamas does not act alone. Hamas's crimes are materially supported and facilitated by individuals and entities in the United States, who work with Hamas to legitimize and provide public relations services for the terror group. Defendants Taher Herzallah and Zarefah Baroud ("Moving Defendants") are among these individuals. As alleged in Plaintiffs' First Amended Complaint, Herzallah and Baroud, as employees of Defendant AMP, supplied Hamas with propaganda and recruiting services in violation of the Antiterrorism Act, 18 U.S.C. § 2333, and the Alien Tort Statute, 28 U.S.C. § 1350.[1] They move to dismiss for lack of personal and subject matter jurisdiction, failure to state claims under either statute, and because the First Amendment supposedly protects their conduct.[2] But the Complaint stands firm against these unfounded arguments, and their motion should be denied.

Herzallah joined AMP in 2010 and has served as AMP's Associate Director of Outreach and Grassroots Organizing since 2021. (FAC ¶ 188.) He is the liaison between AMP and NSJP (AMP's campus brand), and he ensures that pro-Hamas propaganda is properly utilized by SJP chapters. (FAC ¶¶ 47, 11, 60–61.) Herzallah helps campus groups "procure grants, materials and

---

[1] Unless otherwise defined, capitalized terms used herein have the same meanings as in Plaintiffs' oppositions to the motions filed by AMP, WESPAC, Hatem Bazian, and Osama Abuirshaid. *See* Joint Opposition, ECF No. 85; Plaintiffs' Memorandum of Law in Opposition to Defendant Hatem Bazian's Motion to Dismiss ("Pls. Bazian Opp."), ECF No. 92; Plaintiffs' Memorandum of Law in Opposition to Defendant Osama Abuirshaid's Motion to Dismiss ("Pls. Abuirshaid Opp."), ECF No. 112.

[2] Defendants Taher Herzallah's and Zarefah Baroud's Combined Memorandum in Support of Their Motion to Dismiss Plaintiffs' Amended Complaint ("Combined Mem."), ECF No. 110.

speakers," is "instrumental in helping students set up programs and activities," and "coordinates AMP's grassroots organizing and helps facilitate national coalition building."[3] Like his organization, Herzallah believes that October 7 was a "historic win." (FAC ¶ 79.) He has rhapsodized that "October 7 showed that the most poor, under-resourced, devastated, starving, people of the world . . . have destroyed the veneer of superiority that the West and the colonizers have fed us for generations."[4] Like the so-called NSJP "Toolkit," the pro-Hamas propaganda piece AMP distributed through its campus brand after October 7, Herzallah views domestic disruption as part and parcel of Hamas's brutality abroad. At this year's People's Conference for Palestine, Herzallah declared: "I want to make it clear that the Palestinian diaspora in North America has committed its martyrs for this cause. . . . We are an integral part of the Palestinian liberation struggle."[5] Herzallah also declared that he and his allies are prepared to "sacrifice" themselves for Hamas's genocidal cause, stating: "There are people among us today who might not be with us next year at this conference. And this is a reality because the liberation struggle requires sacrifice. And I know everyone here is prepared to make that sacrifice."[6]

---

[3] AMP, "Our Team," https://www.ampalestine.org/about-amp/our-team (last visited Oct. 28, 2024).

[4] *American Muslims for Palestine Official Taher Herzallah at San Diego Mosque: This is the Time to Make Zionists Feel Very Uncomfortable on Campuses; It is Incumbent Upon the Muslims to Rule Palestine, Enforce the Rules of Allah on Earth*, MEMRI.ORG (Dec. 27, 2023), https://www.memri.org/reports/american-muslims-palestine-official-taher-herzallah-san-diego-mosque-time-make-zionists-feel (last visited Oct. 28, 2024) (embedded video at 0:59). The Court may take judicial notice of this and other Herzallah statements quoted herein because they are "not subject to reasonable dispute" and "can be readily determined from an indisputably accurate source": publicly available recordings of the Defendant's own words. *United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017); *accord, e.g.*, *Barich v. City of Cotati*, 2021 WL 3053204, at *5–*7 (N.D. Cal. July 20, 2021) (taking notice of publicly available recordings and body camera video).

[5] "The War on Palestine," https://www.youtube.com/live/10bjt2G31ck? (1:05:20) (last visited Oct. 28, 2024).

[6] "The War on Palestine," https://www.youtube.com/live/10bjt2G31ck? (1:15:01) (last visited Oct. 28, 2024).

Baroud serves as AMP's Digital Media Associate, producing propaganda for distribution among campus groups. (FAC ¶ 15.) She oversees AMP's copious social media activity and assists NSJP with its social media. (FAC ¶¶ 47, 188.) Baroud is AMP's Media and Communications Coordinator, and her predecessor for that position was the daughter of a convicted material supporter of Palestinian Islamic Jihad, another terror group. (FAC ¶ 39.) Baroud lives with her father, Ramzy Baroud, who works for an organization that has hosted conferences attended by Hamas and Muslim Brotherhood leadership. (FAC ¶ 15.) Ramzy Baroud and his organization have also been accused of aiding and abetting Hamas's terrorism by employing a known Hamas operative who held four Israelis hostage in his home in Gaza.[7]

As alleged in extraordinary detail in the Complaint, Herzallah's and Baroud's employer has supplied Hamas with money, propaganda services, recruiting services, and political mobilization for nearly 40 years. Indeed, immediately after the attacks on October 7, 2023, as Hamas's butchery continued, AMP declared through NSJP that it was "PART of" Hamas and operating under its "unified command," and began pumping a torrent of pro-Hamas propaganda across the country. (FAC ¶ 84.) Because Herzallah is the AMP employee responsible for coordinating with campus groups and ensuring they properly utilize pro-Hamas propaganda, it is reasonable to infer that he was closely involved in disseminating the "Toolkit" and coaching students how to use it. And because Baroud is AMP's Digital Media Associate responsible for producing propaganda and social media, it is reasonable to infer that she was closely involved in preparing the "Toolkit" for distribution immediately after October 7 and in publishing the flurry of pro-Hamas propaganda in the weeks and months afterward. The specific and detailed allegations

---

[7] Complaint, *Meir Jan v. People Media Project et al.*, No. 2:24-cv-01005 (W.D. Wash. filed July 9, 2024).

of the Complaint, if proven, would subject AMP, Herzallah, and Baroud to liability under both the Antiterrorism Act and the Alien Tort Statute. Accordingly, their motion to dismiss should be denied.

Herzallah and Baroud largely echo the meritless arguments made by AMP, Hatem Bazian (AMP's founder), and Osama Abuirshaid (AMP's Executive Director). They contend that the Complaint should be dismissed for lack of personal jurisdiction, failure to state claims under the Antiterrorism Act and Alien Tort Statute, lack of subject matter jurisdiction for the Alien Tort Statute claim, and on First Amendment grounds. These arguments all fail.

*First*, the Court has personal jurisdiction over Herzallah and Baroud. The Antiterrorism Act provides for jurisdiction via its nationwide service of process provision. And the Court has pendent personal jurisdiction as to the Alien Tort Statute claim because the claims arise from the same facts: Moving Defendants' role in creating and distributing the "Toolkit," coordinating with campus groups to foment chaos, and other pro-Hamas propaganda services.

*Second*, Plaintiffs state a claim against Herzallah and Baroud for aiding and abetting Hamas's acts of terrorism in violation of the Antiterrorism Act. As explained in the Joint Opposition, their organization knowingly and substantially assisted Hamas with propaganda and recruiting services before, during, and after the October 7 attacks. Indeed, AMP's contributions to Hamas have been so systemic and intentional that Moving Defendants' organization is liable for ***all*** of Hamas's crimes. Under well-established legal principles, Herzallah and Baroud may be held individually liable for this wrongdoing because they personally engaged in AMP's misconduct through their efforts to prepare and disseminate the "Toolkit," incited pro-Hamas chaos and disruption on college campuses, and published other pro-Hamas propaganda.

*Third*, the Complaint's detailed allegations easily state a claim under the Alien Tort Statute and permit this Court to exercise subject matter jurisdiction over the claim. Herzallah and Baroud largely echo the same meritless contentions as AMP, Bazian, and Abuirshaid, and their arguments fail for the reasons Plaintiffs have already given. Like with the Antiterrorism Act claim, Herzallah and Baroud may be held individually liable for AMP's wrongdoing under the Alien Tort Statute because they personally engaged in it.

*Fourth*, Herzallah and Baroud briefly argue that the First Amendment immunizes their conduct. This argument is meritless. Moving Defendants are not sued for speech, protected or otherwise, but for their personal involvement in AMP's provision of recruiting and propaganda services to Hamas. It is well established that the First Amendment does not protect that conduct.

For all these reasons, the Court should deny Moving Defendants' motion.

## ARGUMENT

### I.   THE COURT HAS PERSONAL JURISDICTION OVER MOVING DEFENDANTS

Like Bazian and WESPAC before them, Herzallah and Baroud argue that the Court lacks personal jurisdiction over them because they reside outside Virginia and supposedly have minimal contacts with it. (Combined Mem. 7–8.) These arguments fail for reasons Plaintiffs have already given. The Antiterrorism Act provides for nationwide service of process, Herzallah and Baroud have sufficient contacts with Virginia in any event, and the Court has pendent personal jurisdiction as to the Alien Tort Statute Claim because it arises out of the same facts as the Antiterrorism Act claim. (*See* Pls. Bazian Opp. 3–8, 10–11; Joint Opp. 26–27.)

#### A.   The Court Has Jurisdiction Over Moving Defendants as to the ATA Claim

The Court has personal jurisdiction over Herzallah and Baroud as to the Antiterrorism Act claim. Rule 4(k)(1)(C) states that service of a summons can establish personal jurisdiction over a

defendant "when authorized by a federal statute." FED. R. CIV. P. 4(k)(1)(C).[8] Under this rule, personal jurisdiction can be achieved "through proper service of process upon a defendant pursuant to a federal statute that contains its own service provision." *Weiss v. Nat'l Westminster Bank PLC*, 176 F. Supp. 3d 264, 283 (E.D.N.Y. 2016). The ATA includes such a provision, which explicitly authorizes nationwide service of process and thus "permits the exercise of personal jurisdiction over parties properly served anywhere in the United States." *Cohen v. Facebook, Inc.*, 252 F. Supp. 3d 140, 152 (E.D.N.Y. 2017). The ATA states:

> Any civil action under section 2333 of this title against any person may be instituted in the district court of the United States for any district where any plaintiff resides or where any defendant resides or is served, or has an agent. Process in such a civil action may be served in any district where the defendant resides, is found, or has an agent.

18 U.S.C. § 2334(a). This provision "clearly confers nationwide service of process and therefore jurisdiction under Rule 4(k)(1)(C)." *Zobay v. MTN Grp. Ltd.*, 695 F. Supp. 3d 301, 322 (E.D.N.Y. 2023).

Federal courts routinely exercise nationwide personal jurisdiction over ATA defendants where: (1) venue is proper under the ATA; (2) the defendants are properly served under the ATA; and (3) the defendants have sufficient minimum contacts with the United States as a whole. *See Stansell v. BGP, Inc.*, 2011 WL 1296881, at *3 (M.D. Fla. Mar. 31, 2011) (holding ATA and Rule 4(k)(1)(C) provided "an adequate basis for personal jurisdiction" over domestic corporations not domiciled in the forum state); *see also Est. of Ungar v. Palestinian Auth.*, 153 F. Supp. 2d 76, 86–91 (D.R.I. 2001); *Wultz v. Islamic Republic of Iran*, 762 F. Supp. 2d 18, 25–26 (D.D.C. 2011); *Strauss v. Crédit Lyonnais, S.A.*, 175 F. Supp. 3d 3, 26–27 (E.D.N.Y. 2016). All three requirements

---

[8] Unless otherwise indicated, all internal quotation marks, citations, alterations, brackets, and ellipses are omitted from citations herein.

are present here.

### 1.  Venue Is Proper Under the ATA

The ATA's nationwide service of process provision allows a civil action under § 2333 to be instituted in *any* district court where any defendant resides. 18 U.S.C. § 2334(a). The Complaint sufficiently alleges that AMP's principal place of business is in this District. (FAC ¶ 10.) Defendant Osama Abuirshaid also resides in this District. Venue is thus proper under the ATA, and Herzallah and Baroud make no argument to the contrary.

### 2.  Moving Defendants Were Properly Served

Just as Herzallah and Baroud do not challenge venue, they do not contest service. They have therefore waived any service objection, and the Court need not examine the details of service. *See, e.g.*, *Patterson v. Whitlock*, 392 F. App'x 185, 192 (4th Cir. 2010) (unpublished) (holding defendant waived service objection by failing to raise it in his first Rule 12 motion and explaining the waiver "operates not only to cut off his right to raise the defense, but the court's power to invoke it") (citing FED. R. CIV. P. 12(h)(1)(A), (g)(2), and *Pusey v. Dallas Corp.*, 938 F.2d 498 (4th Cir. 1991)); *Tate v. Smith*, 2016 WL 4444856, at *2 (M.D.N.C. Aug. 23, 2016) ("[D]efendants wishing to raise a Rule 12(b)(5) insufficiency of service of process defense must do so in their first defensive move, be it a Rule 12 motion or a responsive pleading."). In any event, Moving Defendants were properly served by personal delivery (ECF No. 73 (Herzallah)) and by leaving a copy of the process at their dwellings with a person of suitable age and discretion who lives there (ECF No. 40 at 3 (Baroud); ECF No. 42 at 3 (Herzallah)), as permitted by Rule 4. *See* FED. R. CIV. P. 4(e)(2)(A), (B).

### 3.   Moving Defendants Have Sufficient Minimum Contacts with the United States

While a court's exercise of nationwide personal jurisdiction must still comport with constitutional due process, *Zobay*, 695 F. Supp. 3d at 323, the proper inquiry for assessing minimum contacts under § 2334(a) is whether Herzallah and Baroud have sufficient minimum contacts with the United States as a whole. *See Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 32 (D.D.C. 2010) (applying the national contacts test to an ATA claim); *Est. of Ungar v. Palestinian Auth.*, 400 F. Supp. 2d 541, 548 (S.D.N.Y. 2005) (same).[9] "It will rarely be the case under the ATA that 'a defendant who has minimum contacts with the United States nonetheless will be unduly burdened by the assertion of jurisdiction' such that the 'inconvenience rise[s] to a level of constitutional concern.'" *Wultz*, 755 F. Supp. 2d at 32 (quoting *Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp. 2d 86, 96 n.5 (D.D.C. 2003)). Here, Herzallah and Baroud are longtime residents of the United States and therefore clearly have sufficient minimum contacts with the country as a whole. Nor does their motion provide any compelling reason to treat this as the "rare" case where jurisdiction should be deemed unreasonable. To the contrary, Herzallah and Baroud work for a Virginia corporation and periodically travel to the state, confirming that the exercise of jurisdiction is reasonable. (ECF No. 110-1 ¶ 7; ECF No. 110-2 ¶ 7.)

---

[9] *See also ESAB Grp. v. Centricut, Inc.*, 126 F.3d 617, 628 (4th Cir. 1997) ("[I]f the claim is based on a federal statute authorizing nationwide service of process, personal jurisdiction may be asserted over a defendant anywhere in the country[.]"); *Nunes v. Fusion GPS*, 531 F. Supp. 3d 993, 1003 (E.D. Va. 2021) (applying the "national contacts" test to a RICO claim because RICO provides for nationwide service of process, denying personal jurisdiction challenge); *D'Addario v. Geller*, 264 F. Supp. 2d 367, 386–87 (E.D. Va. 2003) (exercising personal jurisdiction over individual defendants based on their national contacts).

**B.      Moving Defendants Have Sufficient Minimum Contacts with Virginia to Permit Personal Jurisdiction**

Even if the ATA's nationwide service provision did not apply (which it does), Herzallah and Baroud have sufficient contacts with Virginia to authorize personal jurisdiction under two provisions of Virginia's long arm statute. As AMP agents directly involved in the organization's misconduct, Herzallah and Baroud are subject to specific jurisdiction in Virginia despite living outside the state. *See Columbia Briargate Co. v. First Nat'l Bank*, 713 F.2d 1052, 1064 (4th Cir. 1983) (out of state corporate director subject to personal jurisdiction if he has "direct personal involvement in a tort committed in the forum state" or his acts have a "causal connection with the plaintiff's alleged cause of action").

First, the long-arm statute permits Virginia courts to exercise personal jurisdiction over a person who "[t]ransact[s] any business in this Commonwealth." Va. Code § 8.01-328.1(A)(1). Herzallah and Baroud are senior employees of AMP, the d/b/a of AJP Educational Foundation, a corporation with its principal office in Falls Church, Virginia. (FAC ¶¶ 10, 47, 188.) By Moving Defendants' own admissions, they have traveled to Virginia multiple times in the past two years. (ECF No. 110-1 ¶ 7; ECF No. 110-2 ¶ 7.) It is therefore reasonable to infer from these allegations that they transact at least some business in Virginia.

The statute additionally permits Virginia courts to exercise personal jurisdiction over a person who "[c]aus[es] tortious injury by an act or omission in this Commonwealth." Va. Code § 8.01-328.1(A)(3). "[A]n act" sufficient to confer jurisdiction includes "[u]sing a computer or computer network located in the Commonwealth." *Id.* § 8.01-328.1(B); *Aitken v. Commc'ns Workers of Am.*, 496 F. Supp. 2d 653, 659 (E.D. Va. 2007) (finding that § 328.1(B) conferred personal jurisdiction over out-of-state defendants who allegedly sent tortious email messages to Virginia computers over Virginia servers). AMP, operating from its principal place of business in

Virginia, aided and abetted Hamas's tortious acts by serving as Hamas's propaganda arm in the United States. AMP and its campus brand NSJP use Instagram, X, and other social media sites to spread Hamas propaganda throughout the country. (FAC ¶¶ 43, 97, 102, 115.) Baroud is the AMP employee responsible for producing that propaganda, and Herzallah is responsible for ensuring that SJP chapters properly use the propaganda, including through social media.  (FAC ¶¶ 11, 47, 60–61.) Many of these "acts" are directed to campus SJP chapters across the country (FAC ¶¶ 60–63), some of which are in Virginia. And many of the social media companies whose sites they use to disseminate this information operate through servers located in Virginia. It is therefore reasonable to infer that AMP's, NSJP's, and Moving Defendants' acts of aiding and abetting Hamas's tortious acts are directed to, occurred in, and continue to occur within, the Commonwealth.

Exercising personal jurisdiction over Herzallah and Baroud under either of these provisions comports with due process. When analyzing whether a defendant has sufficient "minimum contacts" with the forum state to satisfy due process, this Court should consider "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 189 (4th Cir. 2016). Importantly, "it is not necessary that the defendant ever actually enter the forum State's territory; so long as the defendant has purposefully directed his activities toward the forum State, and the litigation arises from those activities, due process is satisfied." *Pittsburgh Terminal Corp. v. Mid Allegheny Corp.*, 831 F.2d 522, 525 (4th Cir. 1987).

Herzallah and Baroud are employees of a corporation that principally operates in Virginia and directs its terroristic propaganda throughout the country via the Internet. As shown, it is

reasonable to infer that they are directly involved in producing and distributing that material. They "may not avoid personal jurisdiction by simply pleading ignorance of where these servers were physically located, nor by pleading ignorance of the . . . recipient's location." *Aitken*, 496 F. Supp. 2d at 660. Rather, courts have recognized that "those who commit . . . torts via computer and the Internet know, or reasonably should know, that servers are either targets of their conduct or the means by which their tortious conduct is given effect." *Id.* at 559–60. Accordingly, because Moving Defendants have "purposefully directed [their] activities toward [Virginia], and the litigation arises from those activities, due process is satisfied." *Pittsburgh Terminal Corp.*, 831 F.2d at 525.[10]

## C.     The Court Has Pendent Personal Jurisdiction over Moving Defendants as to the ATS Claims

Finally, the Court separately has jurisdiction over Herzallah and Baroud as to the Alien Tort Statute claim through the doctrine of pendent personal jurisdiction. Under that doctrine, a district court with jurisdiction over a defendant as to one claim also has jurisdiction as to any claim "aris[ing] from a common nucleus of operative fact." *ESAB Grp.*, 126 F.3d at 628. The doctrine is often applied when the plaintiff asserts multiple factually related claims, one of which—the anchor claim—allows for nationwide service of process. *See, e.g.*, *D'Addario*, 264 F. Supp. 2d at 387–89 (exercising pendent personal jurisdiction as to state-law claims factually related to a claim under RICO, which provides for nationwide service of process). Because the doctrine turns on factual closeness of the claims, pendent jurisdiction is permissible even when the party asserting the pendent claim cannot independently establish jurisdiction. *See, e.g.*, *In re Packaged Seafood*

---

[10] Should the Court deem it necessary to further explore Herzalalh's or Baroud's contacts with Virginia, Plaintiffs respectfully request the Court permit jurisdictional discovery under Rule 26. *See Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 64 (4th Cir. 1993).

*Prods. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1173 (S.D. Cal. 2018) (exercising pendent jurisdiction where anchor and pendent claims were brought by different parties). It is also permissible irrespective of whether the pendent claim is brought under federal or state law. *See, e.g.*, *Noble Sec., Inc. v. MIZ Eng'g, Ltd.*, 611 F. Supp. 2d 513, 555–56 (E.D. Va. 2009) ("[T]he Fourth Circuit has approved the exercise of pendent personal jurisdiction over claims arising from a common nucleus of operative fact, whether the additional claim is a state claim or a federal claim." (citing *ESAB Grp.*, 126 F.3d at 628)); *Robinson Eng'g Co. Pension Plan & Trust v. George*, 223 F.3d 445, 449 (7th Cir. 2000) (finding jurisdiction proper where anchor and pendent claims both arose under federal law); *Alcohol Monitoring Sys., Inc. v. Actsoft, Inc.*, 682 F. Supp. 2d 1237, 1253 (D. Colo. 2010) (same).

Here, the Alien Tort Statute claim arises out of the same facts as the Antiterrorism Act claim: Moving Defendants' support of Hamas's crimes through propaganda services. Herzallah and Baroud "will have to adjudicate the facts" of the ATA claim, so it "could impose only a minimal burden" to also defend the closely related ATS claim. *ESAB Grp.*, 126 F.3d at 628. As shown, it is irrelevant that different Plaintiffs assert the claims, and it is irrelevant that both claims arise under federal law. Accordingly, the Court should exercise pendent personal jurisdiction over Moving Defendants as to the Alien Tort Statute claim.

* * *

Having made a prima facie showing of jurisdiction, the burden shifts to Herzallah and Baroud to demonstrate why the exercise of jurisdiction would be unfair or unreasonable. *ESAB Grp.*, 126 F.3d at 627 (citing *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 948 (11th Cir. 1997)). But Herzallah and Baroud do not, and cannot, show that exercising

jurisdiction would result in any unfairness or unreasonableness. Accordingly, the Court has personal jurisdiction over Herzallah and Baroud.

## II.     PLAINTIFFS STATE A CLAIM UNDER THE ANTITERRORISM ACT

Moving Defendants' repackaged challenges to Plaintiffs' Antiterrorism Act claim should be rejected. Just as Plaintiffs state claims against AMP, WESPAC, Bazian, and Abuirshaid, Plaintiffs state a claim against Herzallah and Baroud. Their motion fails largely for reasons Plaintiffs have now given several times. (*See* Joint Opp. 5–19; Pls. Bazian Opp. 11–13; Pls. Abuirshaid Opp. 3–6.)

### A.     The Complaint Sufficiently Alleges Knowing and Substantial Assistance

Herzallah and Baroud first argue that the Complaint insufficiently alleges knowing and substantial assistance. (Combined Mem. 10–13.) They are wrong. As Plaintiffs have shown, the Complaint alleges in detail that Herzallah's and Baroud's organization had a high, culpable level of knowledge (Joint Opp. 11–15) and provided direct and extraordinary assistance to the October 7 attack (Joint Opp. 15–17). With the substantiality and knowledge allegations considered "in tandem," *Twitter v. Taamneh*, 598 U.S. 471, 491 (2023), the Complaint alleges such "pervasive and systemic aid" to Hamas that their organization is liable for all of Hamas's crimes, *id.* at 506.

Herzallah and Baroud are individually liable for these acts because they directly participated in the misconduct at the heart of the Complaint. "Corporate officers may of course be liable jointly and severally with their corporation for obligations arising out of tortious conduct of the officers that subject the corporation to liability." *Sit-Set, A.G. v. Universal Jet Exch.*, 747 F.2d 921, 929 (4th Cir. 1984). The question is whether the individual "directly engaged" in the conduct "upon which [corporate] liability was found," *id.*, or "commit[ted] or authorize[d]" those acts "on behalf of the corporation," *Airlines Reporting Corp. v. Cartagena Travel & Tours, Inc.*, 2012 WL 13019408, at *2 (E.D. Va. Feb. 8, 2012); *accord McFarland v. Virginia Ret. Servs. of Chesterfield,*

*LLC*, 477 F. Supp. 2d 727, 739 (E.D. Va. 2007) (explaining that "officers or agents of a company who have played a key role in contributing to the company's tortious conduct" may be held individually liable for the misconduct).

Numerous cases sustain claims against individuals for wrongs they committed as agents of a corporation or other entity. *See, e.g.*, *Trans-Radial Sols., LLC v. Burlington Med., LLC*, 2019 WL 3557879, at *5 (E.D. Va. Aug. 5, 2019) (sustaining claims against defendant corporation's CEO, who, among other things, "formed" the corporation and "personally directed and/or engaged" in the corporation's tortious conduct); *Revolon Monterey Energy LLV v. Operator*, 2014 WL 12576644, at *5 (C.D. Cal. Sept. 18, 2014) (plaintiff has "adequately plead[ed] that [individual defendant] is individually liable for the actions he took while acting as manager/president" of the defendant corporations because "[a]s manager, president, and owner of the [corporate defendants], it is plausible that [he] occupied a prominent position in the companies and had extensive control and knowledge over their affairs" (citing *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009))); *Abecassis v. Wyatt*, 785 F. Supp. 2d 614, 650 (S.D. Tex. 2011) (sustaining ATA claim against corporation's alleged employee/executive officer/managerial employee who was "responsible for purchasing Iraqi oil using front companies and paying kickbacks to Iraq").

The Complaint alleges sufficient facts to support individual liability. AMP's core misconduct in this case is providing propaganda services and rallying support for Hamas before, during, and after the October 7 attack. A critical piece of evidence is the "Toolkit," a pro-Hamas propaganda piece that AMP distributed on October 8 through its NSJP name. The "Toolkit" touts October 7 as a "***historic win***" and urges the "Palestinian student movement" to "join the call for mass mobilization" issued by Hamas the previous day. (FAC ¶ 79 (emphasis added); *see also* FAC ¶¶ 78–81.) The "Toolkit" further declares that AMP and NSJP are "***PART of***" the "***Unity Intifada***"

operating under Hamas's "***unified command***." (FAC ¶¶ 83, 84 (emphases added).) In the weeks and months after October 7, AMP promoted numerous pro-Hamas protests and even a day of mass infrastructure disruption. (FAC ¶¶ 95–97, 102–08.)

Herzallah is personally liable because he directly participated in AMP's misconduct. As AMP's Associate Director of Outreach and Grassroots Organizing, Herzallah is responsible for ensuring that student groups properly utilize propaganda materials provided by his organization. (FAC ¶¶ 11, 47, 60–61, 188.) He also helps campus groups "procure grants, materials and speakers," is "instrumental in helping students set up programs and activities," and "coordinates AMP's grassroots organizing and helps facilitate national coalition building."[11] At this stage of the litigation, it is reasonable to infer that Herzallah was personally involved in distributing the "Toolkit" and coaching campus groups in its use. It is also reasonable to infer he personally encouraged, organized, and facilitated pro-Hamas protests around the country; that's practically his job description. And Herzallah's own words show that his actions were knowing and highly culpable. He has valorized the October 7 terrorists,[12] he believes the domestic chaos he personally foments is an "integral part" of Hamas's genocidal crimes,[13] and he is ready to "sacrifice" his life for what he euphemistically calls the "Palestinian liberation struggle"—*i.e.*, Hamas's genocidal agenda.[14] The details of Herzallah's misconduct will be uncovered in discovery.

---

[11] AMP, "Our Team," https://www.ampalestine.org/about-amp/our-team.

[12] *American Muslims for Palestine Official Taher Herzallah at San Diego Mosque: This is the Time to Make Zionists Feel Very Uncomfortable on Campuses; It Is Incumbent Upon the Muslims to Rule Palestine, Enforce the Rules of Allah on Earth*, MEMRI.ORG (Dec. 27, 2023), https://www.memri.org/reports/american-muslims-palestine-official-taher-herzallah-san-diego-mosque-time-make-zionists-feel (embedded video at 0:59).

[13] "The War on Palestine," https://www.youtube.com/live/10bjt2G31ck? (1:05:20).

[14] "The War on Palestine," https://www.youtube.com/live/10bjt2G31ck? (1:15:01).

Like Herzallah, Baroud is personally liable for AMP's conduct because she directly engaged in it. As AMP's Digital Media Associate, Baroud's job is producing propaganda for distribution among campus groups, overseeing AMP's social media activity, and assisting NSJP with its social media activity. (FAC ¶¶ 15, 47, 188.) That social media activity includes numerous AMP posts that respond to Hamas's calls for protests abroad by promoting disruption around the United States. (FAC ¶ 102.) AMP also exhorts sympathizers to themselves promote these pro-Hamas events using their social media accounts. (*E.g.*, FAC ¶ 115.) At this stage of the litigation, it is entirely reasonable to infer that Baroud was personally and culpably involved in creating the "Toolkit," in authoring and posting pro-Hamas messages to social media, and in encouraging fellow travelers to do the same. As with Herzallah, the details of Baroud's wrongdoing will be explored in discovery.

Moving Defendants' contrary arguments should be rejected.

*First*, Herzallah and Baroud urge that the allegations that they produce propaganda and ensure it is properly used by campus groups are "naked assertions devoid of further factual enhancement" that should not be credited. (Combined Mem. 10 (quoting *Iqbal*, 556 U.S. at 678).) This argument is meritless. The challenged allegations are just as detailed as allegations that *Iqbal* itself credits.[15] The allegations must also be assessed in the context of the Complaint as a whole, which includes detailed allegations of AMP's pro-Hamas social media activity and coordination between AMP (acting as NSJP) and campus groups. (FAC ¶¶ 102, 105.) Read together, and with reasonable inferences taken in Plaintiffs' favor, the Complaint alleges that Herzallah and Baroud

---

[15] *See Iqbal*, 556 U.S. at 681 (crediting allegations that "the FBI, under the direction of Defendant MUELLER, arrested and detained thousands of Arab Muslim men as part of its investigation of the events of September 11" and that "the policy of holding post–September–11th detainees in highly restrictive conditions of confinement until they were 'cleared' by the FBI was approved by Defendants ASHCROFT and MUELLER in discussions in the weeks after September 11, 2001").

were personally involved in this core misconduct. These robust factual allegations must be credited, and Moving Defendants cite no cases declining to credit anything comparable.[16]

*Second*, Herzallah and Baroud urge that the Complaint insufficiently alleges that they acted with the requisite mental state. (Combined Mem. 11.) As Plaintiffs have explained, there is no single required mental state for aiding and abetting a violation of the Antiterrorist Act. (Joint Opp. 10.) Instead, knowledge and assistance are analyzed "in tandem," with a "lesser showing of one demanding a greater showing of the other." *Twitter*, 598 U.S. at 491, 491–92.[17] The Complaint amply alleges that AMP had a high, culpable level of knowledge. (Joint Opp. 13–15.) Its knowledge is shown in part by its distribution of the "Toolkit," complete with images of the signature paragliders Hamas used in the attack, immediately after October 7. (FAC ¶¶ 78–81, 86.) Its knowledge is further shown by the striking pattern of post-attack coordination, conducted on social media, between Hamas and AMP to foment disruption on and off campus. (FAC ¶ 102.) As explained, Herzallah and Baroud were centrally involved in both sets of activities. With reasonable inferences drawn in Plaintiffs' favor, these facts create a strong inference that Herzallah and Baroud, like AMP itself, had a high, culpable level of knowledge.

*Third*, Herzallah and Baroud argue that the Complaint insufficiently alleges a "nexus" between October 7 and their substantial assistance. (Combined Mem. 11 (quoting *Twitter*, 598 U.S. at 501).) That is wrong. Properly understood, *Twitter* did not create a separate "nexus" requirement. (Joint Opp. 18–19.) Instead, the decision's "nexus" discussion shows that substantial

---

[16] *Aziz v. Alcolac, Inc.* is distinguishable because it declines to credit an allegation under the principle that a "legal conclusion" is not entitled to a presumption of truth. 58 F.3d 388, 401 (4th Cir. 2011). Here, the contested allegations contain facts, not legal conclusions.

[17] Moving Defendants' contention that Plaintiffs must show an "intent of facilitating" October 7 is wrong. (Combined Mem. 11 (quoting *Twitter*, 598 U.S. at 490).) Their quotation is taken from *Twitter*'s summary of criminal aiding and abetting, and it does not apply to a civil claim under JASTA. (*See* Joint Opp. 10 n.8.)

assistance is generally analyzed with an eye toward aiding the tort, not the organization writ large. *See Twitter*, 598 U.S. at 504. Correctly analyzed, the substantiality factors show that Moving Defendants' organization provided direct and extraordinary support to Hamas. (*See* Joint Opp. 15–17.) And because Herzallah and Baroud were personally involved in the core misconduct—the creation and dissemination of pro-Hamas propaganda following the October 7 attack—the factors are sufficient as to them as well. In any event, "insofar as *Twitter* calls for a nexus between [Moving Defendants'] actions and Plaintiffs' injuries," the requirement is satisfied here. *Bonacasa v. Standard Chartered PLC*, 2023 WL 7110774, at *11 (S.D.N.Y. Oct. 27, 2023). The Complaint plausibly alleges that AMP was aware of the impending attack, prepared targeted propaganda to disseminate on a moment's notice, and promptly sprang into action when the events of October 7 began to unfold—and that Herzallah and Baroud were personally engaged in the wrongdoing.

*Fourth*, Herzallah and Baroud separately urge that the substantiality factors favor them. (Combined Mem. 12–13.) Properly understood, this argument simply duplicates the "nexus" argument and fails for the reasons already given. The factors heavily weigh in favor of liability as to Herzallah's and Baroud's organization (*see* Joint Opp. 15–17), and because they were personally involved in the wrongdoing, the factors weigh in favor of liability as to them as well.

### B. The Complaint Sufficiently Alleges General Awareness

Herzallah and Baroud next argue that the Complaint insufficiently alleges their general awareness of their role in Hamas's illegal activity. (Combined Mem. 13–14.) They are wrong. At the pleading stage, the burden to allege this component is minimal. A plaintiff need allege only that a defendant knew it was "playing some sort of role" in the terrorist organization's enterprise. *Twitter*, 598 U.S. at 497; *accord Zobay*, 695 F. Supp. 3d at 337 (noting that "something less than full, or fully focused, recognition" is sufficient). "In determining general awareness," courts must "bear in mind the challenges of establishing a defendant's state of mind without the benefit of

discovery." *Zobay*, 695 F. Supp. 3d at 337. "A complaint is allowed to contain general allegations as to a defendant's knowledge because a plaintiff realistically cannot be expected to plead a defendant's actual state of mind." *Id.* (quoting *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 864 (2d Cir. 2021)).

The Complaint easily satisfies this standard. AMP is the current iteration of Hamas's captive propaganda firm (FAC ¶¶ 25–34), its leaders and members include open Hamas sympathizers (FAC ¶¶ 35–44), and it provides extensive public relations services for Hamas (FAC ¶¶ 62–66, 101–08). Herzallah and Baroud can scarcely claim ignorance of their employer's long, public history of pro-Hamas views and misconduct. Any conceivable doubt is erased by their direct participation in AMP's pro-Hamas activities. At this stage of the litigation, it is reasonable to infer that Baroud, who is charged with producing propaganda and running AMP's social media, was personally involved in drafting the "Toolkit" declaring that AMP is "***PART of***" the "***Unity Intifada***" operating under Hamas's "***unified command***." (FAC ¶¶ 84, 83 (emphases added).) It is also reasonable to infer that Baroud was personally involved in AMP's public coordination with Hamas and its allies over social media. (FAC ¶ 102.) And it is reasonable to infer that Herzallah personally instructed campus groups in the use of the Toolkit and personally fomented pro-Hamas disruption around the country. (FAC ¶¶ 47, 11, 60–61.) Indeed, Herzallah views himself and the domestic chaos he instigates as an "integral part" of Hamas's murderous acts abroad,[18] and he is prepared to "sacrifice" himself for the cause.[19] It is, in short, an understatement to say that

---

[18] "The War on Palestine," https://www.youtube.com/live/10bjt2G31ck? (1:05:20) ("I want to make it clear that the Palestinian diaspora in North America has committed its martyrs for this cause. . . . We are an integral part of the Palestinian liberation struggle.").

[19] "The War on Palestine," https://www.youtube.com/live/10bjt2G31ck? (1:15:01) ("There are people among us today who might not be with us next year at this conference. And this is a reality because the liberation struggle requires sacrifice. And I know everyone here is prepared to make that sacrifice.").

Herzallah and Baroud were generally aware of their role in Hamas's criminality.

     **C.**    **The First Amendment Does Not Protect Moving Defendants' Conduct**

     Herzallah and Baroud parrot Abuirshaid's argument that the First Amendment protects their conduct. (Combined Mem. 14.) As Plaintiffs have shown, it does not. (Joint Opp. 38–39; Pls. Abuirshaid Opp. 13 (citing *Holder v. Humanitarian Law Project*, 561 U.S. 1, 29–32 (2010), and *United States v. Osadzinski*, 97 F.4th 484, 486, 492 (7th Cir. 2024)).) Like Abuirshaid, Herzallah and Baroud are not sued for any advocacy or writings but for their personal participation in AMP's pro-Hamas propaganda and recruiting services to provide public relations services for Hamas. The First Amendment does not protect that conduct.

* * *

     Plaintiffs therefore state a claim under the Antiterrorism Act against Herzallah and Baroud.

**III.**    **THE ALIEN TORT STATUTE CLAIM EXCEEDS THE LEGAL STANDARD**

     Finally, Herzallah and Baroud challenge the Alien Tort Statute claim on merits and jurisdictional grounds. (Combined Mem. 14–17.) These arguments fail for reasons Plaintiffs have set forth at length. The robust factual allegations easily state a claim, and Plaintiffs allege violations of actionable international norms that support subject matter jurisdiction. (*See* Joint Opp. 24–25, 28–37; Pls. Abuirshaid Opp. 11–13.)

     *First*, Herzallah and Baroud briefly argue that the Alien Tort Statute claim fails on the merits for the same reasons that the Antiterrorism Act claims supposedly fail. (Combined Mem. 14–15.) At the outset, Herzallah and Baroud mistake the elements of aiding and abetting a primary violation of the Alien Tort Statute. The required conduct is "provid[ing] substantial assistance," not "provid[ing] practical assistance to the principal which has a substantial effect on the perpetration of the crime," which is the Second Circuit's formulation. *Aziz*, 658 F.3d at 401, 396. (*See* Pls. Abuirdshaid Opp. 11–12.) The required mental state should be knowledge for all

Plaintiffs' theories of liability under the Alien Tort Statute. (*See* Joint Opp. 36; Pls. Abuirshaid Opp. 12–13.) Although *Aziz* adopted a higher "purpose" standard for generic aiding-and-abetting liability, *see* 658 F.3d at 401, that narrow aspect of *Aziz* is incorrect and requires correction by a higher court.  Here, because the conduct alleged supports liability under the Antiterrorism Act, it supports liability under the Alien Tort Statute as well. (Joint Opp. 37, 15–18.) By the same token, the Complaint amply alleges that Moving Defendants' organization knowingly assisted the October 7 attacks. (Joint Opp. 36, 11–15.) The same allegations readily support an inference of purpose. (Joint Opp. 37.) And Herzallah and Baroud are individually liable for AMP's wrongdoing through their direct engagement in the misconduct. *See supra* § II.A.

*Second*, Herzallah and Baroud repeat the meritless jurisdictional argument that the Complaint does not allege an actionable international norm. (Combined Mem. 15–16.) Like their codefendants, Herzallah and Baroud think the law of nations **condones** Hamas's atrocities and their and their organization's extensive support. They are wrong. As shown, the Complaint alleges four distinct actionable norms: genocide, war crimes, harming civilians in terror attacks, and supporting terrorism. (Joint Opp. 25, 29–35.) Herzallah, Baroud, and their organization are secondarily liable for Hamas's violations of the first three and primarily liable for their own violation of the fourth.

Herzallah's and Baroud's focus on self-executing treaties and private rights of action is misplaced. Neither is needed to evidence an actionable norm. (Joint Opp. 34 (citing *Abelesz v. Magyar Nemzeti Bank*, 692 F.3d 661, 685 (7th Cir. 2012), *Flomo v. Firestone Nat'l Rubber Co., LLC*, 643 F.3d 1013, 1021–22 (7th Cir. 2011), and *Al Shimari v. CACI Premier Tech., Inc.*, 263 F. Supp. 3d 595, 600, 606 (E.D Va. 2017).) Their claim that "terrorism" is too indefinite to be an actionable norm is likewise meritless. (Combined Mem. 16.) Plaintiffs do not assert a vague

"terrorism" norm, but a highly specific norm that tracks the language of a treaty that has been joined by over 98% of countries worldwide. (Joint Opp. 33–34.) Herzallah and Baroud rely on the same cases as their codefendants, and they are distinguishable or unpersuasive for reasons Plaintiffs have already given. (*See* Joint Opp. 34–35 & nn. 29, 31.)

Plaintiffs therefore sufficiently assert international norms supporting jurisdiction.

## <u>CONCLUSION</u>

The Complaint's detailed allegations readily state claims under the Antiterrorism Act and Alien Tort Statute and support subject matter jurisdiction. Herzallah's and Baroud's motion should be denied.[20]

Date: October 28, 2024                      Respectfully submitted,

                                            *Counsel for Plaintiffs Maya Parizer, Ariel*
                                            *Ein-Gal, Hagar Almog, Adin Gess, Noach*
                                            *Newman, Natalie Sanandaji, Yoni Diller,*
                                            *David Bromberg, and Lior Bar Or*

                                            By:      */s/ Jason Torchinsky*
                                                     Jason Torchinsky

---

[20] In the alternative, Plaintiffs respectfully request leave to amend the Complaint to address any deficiencies the Court might identify. (*See* Joint Opp. 39.) Any potential amendment would include, among other additional allegations, the public statements of Herzallah quoted herein.

**GREENBERG TRAURIG, LLP**
SCOTT BORNSTEIN*
bornsteins@gtlaw.com
RICHARD EDLIN*
edlinr@gtlaw.com
RICHARD
ROSENBAUM*
rosenbaumr@gtlaw.com
HAL SHAFTEL*
shaftelh@gtlaw.com
One Vanderbilt Avenue
New York, New York 10017
T. 212.801.9200

**GREENBERG TRAURIG, P.A.**
BRADFORD KAUFMAN*
kaufmanb@gtlaw.com
777 South Flagler Drive
Suite 300
East West Palm Beach,
Florida 33401
T. 561.650.7900
ZACHARY NEEDELL*
zachary.needell@gtlaw.com
401 East Las Olas
Boulevard, Suite 2000
Fort Lauderdale, Florida
33301
T. 954.765.0500

**LAW OFFICES OF
DAVID SCHOEN**
DAVID SCHOEN*
schoenlawfirm@gmail.com
2800 Zelda Road, Suite 100-6
Montgomery, Alabama 36106
T. 334.395.6611

*Admitted Pro Hac Vice*

**HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK, PLLC**
JASON TORCHINSKY
Va. Bar No. 47481
jtorchinsky@holtzmanvogel.com
JONATHAN FAHEY
Va. Bar No. 44854
jfahey@holtzmanvogel.com
ERIELLE DAVIDSON*
edavidson@holtzmanvogel.com
2300 N. Street NW, Suite 643
Washington D.C. 20037
PHILLIP GORDON
Va. Bar No. 95621
pgordon@holtzmanvogel.com
JOHN CYCON
Va. Bar No. 100104
jcycon@holtzmanvogel.com
DANIEL BRUCE
Va. Bar No. 98120
dbruce@holtzmanvogel.com
15405 John Marshall Hwy
Haymarket, VA 20169
T. 202.737.8808

**NATIONAL JEWISH ADVOCACY
CENTER**
MARK GOLDFEDER*
mark@jewishadvocacycenter.org
BEN SCHLAGER*
ben@jewishadvocacycenter.org
ANAT BECK*
Anat@jewishadvocacycenter.org
National Jewish Advocacy Center, Inc.
International Legal Forum
1718 General George Patton Drive
Brentwood, TN 37027
T. (800) 269-9895

**<u>Certificate of Service</u>**

I hereby certify that on October 28, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Jason Torchinsky*
JASON TORCHINSKY
Va. Bar No. 47481
**HOLTZMAN VOGEL BARAN**
**TORCHINSKY & JOSEFIAK, PLLC**
2300 N. Street NW, Suite 643
Washington D.C. 20037
T. 202.737.8808
jtorchinsky@holtzmanvogel.com

*Counsel for Plaintiffs*
