# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

|  |  |
|---|---|
| Maya Parizer, *et al.*, | |
| Plaintiffs, | |
| v. | Case No.    1:24-cv-00724-RDA-IDD |
| AJP Educational Foundation, Inc. a/k/a American Muslims for Palestine, *et al.*, | |
| Defendants. | |

## DEFENDANT NATIONAL STUDENTS FOR JUSTICE IN PALESTINE'S MOTION TO STRIKE AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

**Table of Contents**

I.   INTRODUCTION ................................................................................... 1

II.  BACKGROUND ................................................................................... 4

III. MOTION TO STRIKE UNDER FEDERAL RULE 12(f) ................................ 6

IV. FACTUAL ALLEGATIONS .................................................................... 7

V.  STANDARDS OF REVIEW .................................................................. 10

    A.  Fed. R. Civ. Proc. 12(b)(6) Requires Facts Sufficient to Make a Claim Plausible ......................................................................................... 10

    B.  Judicial Notice ............................................................................. 11

VI. ARGUMENT .................................................................................... 12

    A. Plaintiffs Lack Article III Standing to Sue NSJP ................................. 12

    B. The Court Lacks Personal Jurisdiction Over NSJP in this Case ........................... 13

       1.  NSJP is Not Subject to General Jurisdiction in Virginia ................................... 14

       2.  NSJP is Not Subject to General Jurisdiction in Virginia ................................... 15

       3.  Because Plaintiffs Have Failed to Allege Any Facts Tying the Alleged Conduct to this Forum, Jurisdictional Discovery Should be Denied .............................. 16

    C. This Court Lacks Subject Matter Jurisdiction Under the ATS ............................. 17

       1.  Plaintiffs Fail to Plead a Violation of an International Norm Justiciable Under the ATS ................................................................................ 17

          i.  *Specific, Universal, and Obligatory* ................................................. 18

          ii.  *Judicial Deference* ........................................................................ 20

       2.  Plaintiffs Fail to Overcome the Presumption Against Extraterritorial Application of the ATS ............................................................................... 21

       3.  The ATS Does Not Permit Subject Matter Jurisdiction Over Claims Against Corporations or Artificial Entities Such as NSJP ............................................ 22

    D. The Non-Citizen Plaintiffs Fail to State a Claim Under the ATS ......................... 23

1. <u>Plaintiffs Fail to Sufficiently Allege NSJP Violated the ICSFT</u> ........................23

2. <u>Plaintiffs Fail to Sufficiently Allege NSJP Aided and Abetted the Attack on October 7</u> ...............................................................................................24

   i. *Plaintiffs Fail to Sufficiently Allege that NSJP's Assistance to the October 7 Attack Was Practical and Had a Substantial Effect* ..................................................24

   ii. *Plaintiffs Fail to Sufficiently Allege that NSJP's Actions Were for the Purpose of Facilitating the Violation of an International Norm* ..........................................26

**E. The U.S. Citizen Plaintiffs Fail to State a Claim Under the ATA** ......................28

1. <u>Plaintiffs Fail to Allege NSJP Participated in an Act of International Terrorism So As to Make it Succeed</u> ...............................................................................29

2. <u>Plaintiffs Fail to Allege Knowing Provision of Substantial Assistance</u>.............30

3. <u>Plaintiffs Fail to Establish the Requisite Proximate Causation</u>........................31

**F. NSJP's Alleged Activities Constitute Protected First Amendment Speech** ..........32

**VII. CONCLUSION** .................................................................................................34

## I.      INTRODUCTION

Since October 7, 2023, Israel has carried out a relentless genocide against the people of Palestine. Defendants do not use the term "genocide" as a rhetorical device, but as a concrete legal prohibition that exists in federal and international law. *See* 18 U.S.C § 1091 (implementing the Genocide Convention).[1] Israel's genocidal conduct in Palestine has been recognized by international courts,[2] United Nations experts,[3] genocide scholars,[4] leading medical professionals,[5] and even U.S. courts,[6] among others. Demanding an end to this

---

[1] The crime of genocide occurs when someone "whether in time of peace or in time of war and with the specific intent to destroy, in whole or in substantial part, a national, ethnic, racial, or religious group as such—(1) kills members of that group; (2) causes serious bodily injury to members of that group; (3) causes the permanent impairment of the mental faculties of members of the group through drugs, torture, or similar techniques; (4) subjects the group to conditions of life that are intended to cause the physical destruction of the group in whole or in part; (5) imposes measures intended to prevent births within the group; or (6) transfers by force children of the group to another group." 18 U.S.C. § 1091; *see also* Convention on the Prevention and Punishment of the Crime of Genocide, December 9, 1948, General Assembly Resolution 260, entered into force on January 12, 1951, ("The Genocide Convention"), Article II.

[2] *See* International Court of Justice, Dkt. No. 87, ICJ opinion dated January 26, 2024, at ¶ 30.

[3] *See, e.g.,* United Nations, "Anatomy of a Genocide, Report of the Special Rapporteur on the Situation of Human Rights in the Palestinian Territories Occupied Since 1967, Francesca Albanese," A/HRC/55/73 (March 25, 2024), https://perma.cc/9GRF-XR7K; United Nations, "Gaza: UN Human Rights Experts Call on International Community to Prevent Genocide Against the Palestinian People—OHCHR Press Release" (November 16, 2023), https://perma.cc/XDS8-PJF2.

[4] *See, e.g.,* "Declaration of William A. Schabas in Support of Plaintiffs' Motion for Preliminary Injunction," 4:23-cv-05829-DMR, Document 19-5 (November 16, 2023), https://perma.cc/4MH2-ENU5; *see also* "Declaration of Dr. John Cox, Dr. Victoria Sanford and Dr. Barry Trachtenberg in Support of Plaintiffs' Motion for Preliminary Injunction," 4:23-cv-05829-DMR, Document 19-6 (November 16, 2023), https://perma.cc/3RPE-F6AN.

[5] *See, e.g.,* "[Proposed] Brief of Amici Curiae Medical Doctors in Support of Plaintiffs' Motion for Preliminary Injunction and Opposition to Defendants' Motion to Dismiss," 4:23-cv-05829-JSW, Document 52-1 (December 30, 2023), https://perma.cc/A68V-DU4C.

[6] In his decision in *Defense for Children International-Palestine v. Biden,* Judge Jeffrey S. White noted that "the undisputed evidence before this Court comports with the finding of the ICJ

genocide and justice for the people being annihilated is not only lawful and constitutionally protected, but also a legal imperative upon all nations under the Genocide Convention.[7]

In a blatant overreach, Plaintiffs allege in this suit that National Students for Justice in Palestine (NSJP) violated the Anti-Terrorism Act (ATA) under 18 U.S.C.§ 2333(d) and the Alien Tort Statute (ATS) under 28 U.S.C. § 1350. Doc. 24 at 72-77. Being incensed by American students affirming the humanity of Palestinians and who believe that Palestinians must live free of occupation, apartheid, and genocide is not enough to plead ATA and ATS claims against NSJP—the United States is not an extension of a tyrannical regime.

After extensive preparation involving fourteen attorneys from five diverse law firms, Plaintiffs have presented this Court with a First Amended Complaint (FAC) that falls far short of legal sufficiency. The FAC represents a dangerous attempt to intimidate and malign students by criminalizing their constitutionally protected speech and association— fundamental rights at the core of our First Amendment. Plaintiffs must be mindful that the Court sits in a nation where the suppression of speech is anathema to our foundational principles and that prohibiting speech is the essence of tyranny.

---

and indicates that the current treatment of the Palestinians in the Gaza Strip by the Israeli military may plausibly constitute a genocide in violation of international law. Both the uncontroverted testimony of the Plaintiffs and the expert opinion proffered at the hearing on these motions as well as statements made by various officers of the Israeli government indicate that the ongoing military siege in Gaza is intended to eradicate a whole people and therefore plausibly falls within the international prohibition against genocide." 714 F.Supp.3d 1160, 1163 (N.D. Cal. 2024). (Because the Judge granted Defendants' Motion to Dismiss based on the political question doctrine, this section of the opinion does not have legal force as a factual finding).

[7] The Genocide Convention, supra note 1, Article I; *see also* Application of Convention on Prevention and Punishment of Crime of Genocide (Bosn. & Herz. v. Serb. & Montenegro), Judgment, 2007 I.C.J. 43, 221, ¶ 430.

The FAC not only fails to meet basic pleading standards but also poses a significant threat to civil liberties. It seeks to penalize students for engaging in humanitarian discourse and political activism, activities that have long been recognized as essential to a functioning democracy and vibrant academic environment. By attempting to silence voices through legal action (a.k.a. lawfare), the Plaintiffs risk chilling free speech on college campuses—spaces traditionally revered as marketplaces of ideas.

When stripped of its baseless and conclusory assertions, the FAC merely alleges that these students exercised their First Amendment rights to divest their universities from a genocide, where some students remarked on the defiant spirit of Palestinians, who—despite living under a brutal occupation, violent dispossession from homes and lands, being corralled into suffocating gulags, concentration camps, ghettos, and prisons—are resisting that genocide with incredible steadfastness, perseverance, and faith.

Moreover, the FAC's overreach demonstrates a fundamental misunderstanding or willful misapplication of anti-terrorism laws. These statutes were never intended to be wielded against students exercising their right to political expression, no matter how controversial their views may be. Such an application threatens to dilute the serious purpose of these laws and trivialize the real dangers of terrorism.

In essence, this Court is being asked to sanction an assault on the very freedoms it exists to protect. The First Amendment's guarantees are not mere platitudes but vital safeguards against tyranny and oppression. To uphold these principles, this Court must dismiss the FAC.

## II.     BACKGROUND

Within hours of the actions of October 7, 2023 that allegedly harmed Plaintiffs, Israel

launched its genocidal assault. That same day, Israel began immediate, indiscriminate aerial

bombing of civilian infrastructure and population centers across Gaza.[8] Israel's Prime

Minister immediately declared that "the enemy will pay an unprecedented price," signaling

the acts of genocide that would follow.[9] Within the first twenty-four hours of Israel's

genocide, it had already killed 313 Palestinians and injured more than 2,000, while 20,000

had been forcibly displaced.[10]

By October 9, 2023, Israeli political and military leaders had openly proclaimed their

genocidal intentions to the world, the Minister of Defense declared that "no electricity, no

food, no water, no fuel" would be allowed to the "human animals" in Gaza.[11] The Energy

Minister declared that "[w]hat *was* will not *be*."[12] Israeli Major General Ghassan Alian

declared "there will only be destruction."[13]

---

[8] "Damning Evidence of War Crimes as Israeli Attacks Wipe Out Entire Families in Gaza,"
Amnesty International (October 20, 2023), https://perma.cc/AY8W-38K5.
[9] "Active Genocide Alert – Israel-Palestine: There is No Justification for Genocide,"
Lemkin Institute for Genocide Prevention and Human Security (October 13, 2023),
https://perma.cc/B9BZ-E62R.
[10] United Nations, "Identical Letters Dated 8 October 2024 from the Permanent Observer of
the State of Palestine to the United Nations Addressed to the Secretary-General, the
President of the General Assembly and the President of the Security Council" A/ES-
10/1012-S/2024/719 ("Letter from Permanent Observer of the State of Palestine") (October
8, 2024), https://perma.cc/B957-TDL.
[11] Sanjana Karanth, "Israeli Defense Minister Announces Siege on Gaza to Fight 'Human
Animals,'" Huffington Post (October 9, 2023), https://perma.cc/HXN5-DQRJ.
[12] Israel Katz, @Israel_Katz, Tweet (12:48 pm, 9 October 2023) ("I ordered to immediately
cut off the water supply from Israel to Gaza. Electricity and fuel were cut off yesterday.
What was will not be."), https://perma.cc/33TM-5Z2F.
[13] Gianluca Pacchiani, "COGAT Chief Addresses Gazans: 'You Wanted Hell, You Will
Get Hell,'" Times of Israel (October 10, 2023), https://perma.cc/6J5E-SYKH.

By the end of the first week of Israel's genocide, the Israeli military had already begun using chemical weapons such as white phosphorous,[14] and had murdered 2,800 Palestinians, the majority women and children.[15] Israel also began its campaign of targeting life-sustaining civilian infrastructure, which now includes hospitals, pharmacies, refugee camps, sanitation facilities, electricity networks, apartment complexes, mosques, and churches.[16] Within less than a month, Israel had dropped the equivalent of two nuclear bombs on Gaza.[17]

It was with this sense of urgency that people of conscience—Jews, Christians, Muslims, agnostics, and atheists—organically and swiftly rose into action to demand an end to these horrifying atrocities. They organized emergency rallies and protests across the country in hopes of averting the ongoing annihilation by Israel. One of the earliest attempts by students to support their families and friends living in Palestine was through NSJP. Seeing the massive scale of the devastation inflicted upon the Palestinian population by Israel, on October 12, 2023, NSJP acted quickly to draft guidance to campus organizers with educational resources, advice on campus logistics, and a call for all universities to divest from genocide ("Toolkit").

NSJP students have now watched for more than a year as Israel carries out its genocide in Palestine. The Israeli military has killed more than 42,000 Palestinians—at least

---

[14] White phosphorous is a chemical weapon that causes burns that penetrate through skin and flesh straight to the bone, and reignite whenever exposed to oxygen. *See* "Questions and Answers on Israel's Use of White Phosphorus in Gaza and Lebanon," Human Rights Watch (October 12, 2023), https://perma.cc/5TNA-PY8J.

[15] Chris McGreal, "The Language Being Used to Describe Palestinians is Genocidal," The Guardian (October 16, 2023), https://perma.cc/XT6C-7FSC.

[16] Letter from Permanent Observer of the State of Palestine, *supra* n.11, at 1.

[17] Euro-Med Human Rights Monitor, "Israel Hits Gaza Strip With the Equivalent of Two Nuclear Bombs," November 2, 2023, https://perma.cc/U45J-PET7.

16,000 of whom were children, and has orphaned more than 17,000 Palestinian children. Israel has completely massacred at least four generations of more than 900 Palestinian families.[18] NSJP students have spent each day watching thousands of ordinary Palestinian civilians livestream their own extermination. These students wake up each day and wonder: which of their friends or family have been killed in the night? Which of their neighborhoods has Israel wiped off the map? The student organizers at NSJP have bravely protested these unprecedented crimes against humanity. Now, Plaintiffs seek to punish them.

### III.   MOTION TO STRIKE UNDER FEDERAL RULE 12(f)

NSJP moves to strike certain "redundant, immaterial, impertinent, or scandalous" statements in the First Amended Complaint (FAC) under Federal Rule of Civil Procedure 12(f). A 12(f) motion is properly used to attack "allegations...of marginally related incidents." *Cummings v. Geo Group, Inc.*, No. 3:23CV327 (RCY), 2024 WL 250794, at *4 (E.D. Va. Jan. 23, 2024) (citing *Carter v. Morris,* 164 F.3d 215, 218 (4th Cir. 1999) ("a plaintiff cannot rely upon scattershot accusations")). Prejudicial and immaterial allegations are also properly stricken. *Fischer v. Fort Belvoir Residential Communities. LLC*, No. 122CV286RDALRV, 2023 WL 5352297, at *5 (E.D. Va. Aug. 21, 2023); *Hicks v. Alarm.com Inc.,* No. 1:20-CV-532, 2020 WL 9261758, at *5 (E.D. Va. Aug. 6, 2020); *Bernath v. Extreme Seal Experience, LLC,* No. 2:16CV185, 2016 WL 11671369, at *3 (E.D. Va. July 12, 2016).

The FAC is littered with redundant, immaterial, impertinent, and scandalous matter that bears no relevance to the claims, is prejudicial to NSJP, and is unsupported by or directly misrepresents the content of the sources and authorities cited to. NSJP moves the Court to strike such material, which is identified fully in the attached Attorney Affirmation.

---

[18] Letter from Permanent Observer of the State of Palestine, *supra* n.11, at 3.

## IV.    FACTUAL ALLEGATIONS

In attempting to construct a case against NSJP, Plaintiffs to rely heavily on multiple layers of hearsay allegations. Much of these allegations come from American nonprofits that are created, funded, or managed through a revolving door of Israeli government agents. These organizations often cite each other as sources, creating a circular reference pattern. As a result, many of Plaintiffs' allegations seem to originate from Israeli government talking points rather than independent, verifiable sources. This raises concerns about the reliability and objectivity of the evidence presented in the FAC. For the purposes of this Motion, NSJP lists a summary of these unscrupulous allegations.

First, Plaintiffs repeatedly and implausibly contend that NSJP is merely a branch of American Muslims for Palestine ("AMP"). *See*, *e.g.*, FAC at 60-61. They assert, with no specific factual support, that NSJP was founded by American Muslims for Palestine ("AMP") to serve as a branch of the organization, and remains controlled by AMP. From this unsupported premise, Plaintiffs construct an elaborate spider chart that attempts to tie AMP—through alleged predecessor organizations—to Hamas. Even after the smoke clears and the screens fall away, Plaintiffs still fail to allege any fact that could plausibly show NSJP is directed or controlled by AMP, let alone Hamas.

Second, Plaintiffs allege that NSJP's social media posts and speech included historical and political background on Palestine and its political parties. FAC ¶ 128. NSJP expressed the view that armed resistance in Gaza against genocide and occupation is both legally permissible under international law and morally justified. *Id.* ¶ 82. The student organizers also called for people of conscience nationwide to contribute to the global anti-genocide movement and the struggle for freedom and justice in Palestine. *Id.* ¶¶ 90, 99.

These positions have been articulated for decades by legal scholars, elected officials, historians, political analysts, and human rights advocates. They represent reasonable, widely held beliefs that Plaintiffs cannot plausibly characterize as terrorist propaganda.

Third, Plaintiffs spuriously—and with complete disregard for the repeated and ongoing suffering of Palestinian Americans—posit that any student who declares herself in solidarity with Palestine, or with Palestine's resistance of its occupation, apartheid, and genocide, only does so from, by, and for Hamas. FAC ¶¶ 79, 80-1, 92. This vindictive allegation seeks to tar all Palestinians (and Palestinian Americans) as terrorists and erases the thousands of Palestinian civilians whose daily struggle for survival is in and of itself an act of resistance against genocide. One does not have to be a "Hamas's PR foot soldier" to declare that from the Jordan River to the Mediterranean Sea, Palestine should be free, nor to say that armed resistance to an illegal occupation is permitted under international law. *Id.* at 32. This outlandish assertion is both legally and factually unsupported.

Plaintiffs continue in their series of dangerous assumptions that conflate legitimate political expression with support for terrorism by alleging that terms like 'intifada' and 'resistance' are codewords for Hamas. FAC ¶ 84. This claim ignores the well-documented historical context in which these terms have been used for decades to refer to non-violent civil disobedience and popular mass movements in the Palestinian struggle for self-determination.

Moreover, Plaintiffs' fantastical assertions rely on the unfounded and broad assumption that the only people in Palestine opposing the Israeli occupation, apartheid, and genocide are members of Hamas—feeding into Israel's genocidal narrative that there is no innocent man, woman, or child in Palestine. This ignores the reality that thousands of

Palestinian civilians—including journalists, healthcare workers, teachers, first responders, aid workers, and ordinary citizens—have been documenting and broadcasting their own genocide live for over a year, ceaselessly asking for humanitarian assistance, recognition of their unimaginable suffering, and an end to the genocide.

Fourth, Plaintiffs balefully point to Hamas' acknowledgement of people around the world protesting Israel's genocide and claim that within a few days, American students called for or hosted protests, or that NSJP's advocacy was prompted or aligned before and after each statement. FAC ¶¶ 77, 96, 102, 107-8, 129, 150. In fact, students across the country have been protesting and speaking out against this genocide nearly every day since it began—without prompt or direction and only guided by their own humanity. For these students, nothing could be more urgent than stopping this genocide.[19] This line of allegations is as patently offensive as it is implausible.

Fifth, Plaintiffs' allegations against NSJP describe activities typical of any national association. NSJP distributed resources to local chapters, providing organizing advice, talking points for campaigns, and encouraging inter-chapter support. FAC ¶¶ 86, 90. However, Plaintiffs acknowledge that these chapters have pursued diverse, independent activism tailored to their specific campuses, primarily focusing on divestment from arms manufacturers and opposition to genocide. Plaintiffs' unsupported allegations extend to isolated incidents at SJP protests where unidentified individuals allegedly made offensive

---

[19] Ash Center for Democratic Governance, Harvard Kennedy School, "Crowd Counting Consortium: An Empirical Overview of Recent Pro-Palestine Protests at U.S. Schools" (May 30, 2024) (reporting more than 3,700 Palestine solidarity and anti-genocide protests since October 7, 2023, spread across "525 different colleges, universities, K-12 schools, and school district offices across 317 different U.S. cities and towns."), https://perma.cc/K49E-PQLB.

statements. *Id.* ¶ 97. Plaintiffs further claim that in some instances, protesters entered restricted campus areas, resulting in arrests, and that occasional physical confrontations occurred. *Id.* ¶¶ 97, 113. These allegations, while attempting to paint a picture of coordinated misconduct, actually demonstrate the decentralized nature of campus activism and the limited role of NSJP in local chapter activities.

## V.    STANDARDS OF REVIEW

### A.    Fed. R. Civ. Proc. 12(b)(6) Requires Facts Sufficient to Make a Claim Plausible

In evaluating a motion to dismiss under Rule 12(b)(6), the court must first identify the elements of the plaintiff's claim and then determine whether the plaintiff has pleaded those elements with sufficient factual support to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 678 (2009). A claim is facially plausible when the plaintiff's factual allegations allow the court to draw a reasonable inference of the defendant's liability. *Id.* at 678. The factual allegations must raise the right to relief above a speculative level, pushing the claims "across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

The court need not accept a plaintiff's legal conclusions, unwarranted inferences, or unreasonable arguments as true. *Aruna v. S. States Corp.*, No. 1:24-cv-21, 2024 U.S. Dist. LEXIS 86413, at *4 (E.D. Va. May 10, 2024) (*quoting Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 (4th Cir. 2009)). The court's review is generally restricted to the "four corners of the complaint." *Id.* (*citing Goldfarb v. Mayor & City Counsel of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015)).

### B. Judicial Notice

Courts may consider facts alleged in a complaint, attached or incorporated documents, and matters subject to judicial notice when evaluating a motion to dismiss. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-25 (D.C. Cir. 1997). Judicial notice is appropriate for facts not subject to reasonable dispute that are either generally known within the court's jurisdiction or can be accurately determined from reliable sources. Fed. R. Evid. 201(b). Courts must take judicial notice of such facts if requested and provided with necessary information. Fed. R. Evid. 201(c)(2); *Rodney Mills v. City of Norfolk*, No. 2:20CV521 (RCY), 2020 U.S. Dist. LEXIS 241340, at *10 (E.D. Va. Dec. 22, 2020). However, judicial notice of disputed facts is inappropriate. *Summit Cmty. Bank v. David*, 629 B.R. 804, 814 (E.D. Va. 2021).

NSJP objects to judicial notice of the exhibits attached to Plaintiffs' FAC, because their sources and accuracy are questionable. Many exhibits are uncertified, untranslated, or from anonymous online sources. *Clark v. Trans Union, L.L.C.*, No. 3:15cv391, 2016 U.S. Dist. LEXIS 170720, at *10 (E.D. Va. Dec. 9, 2016). Numerous citations in the FAC refer to individual social media posts and opinions. Doc. 24 at n. 84, 92, 108, 126, 131, 132, 134, 135, 137, 138, 140–143, 157–163, 167–171, and 173–175. While the court should accept Plaintiffs' allegations as true at this stage, these exhibits do not warrant judicial notice.

NSJP also adopts AMP's objection to judicial notice of allegations in the *Boim v. AMP* complaint, which are contested and unrelated to the present case. *See* Doc. 34, at 9-10 (*citing Summit Cmty. Bank*, 629 B.R. at 814).

## VI.   ARGUMENT

### A.  Plaintiffs Lack Article III Standing to Sue NSJP

Plaintiffs bear the burden of demonstrating standing. *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017). Plaintiffs must therefore show that they have (1) suffered an injury in fact, (2) which is fairly traceable to NSJP's conduct, and (3) is likely to be redressed by a favorable ruling. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Plaintiffs lack standing to sue NSJP because their claimed injuries are not fairly traceable to NSJP's conduct in any way.

In determining whether a Plaintiff has pled harms that are fairly traceable to the Defendant's alleged aiding and abetting, the Court assesses how direct the causal relationship is between the alleged harm and the challenged conduct. *Episcopal Church in S.C. v. Church Ins. Co. of Vermont*, 997 F.3d 149, 158 (4th Cir. 2021) (citing *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 28-9 (1976)). Article III standing is lacking when "it is purely speculative" whether Plaintiffs' claimed harms are fairly traceable to the challenged conduct, rather than the result of third-party decisions and actors not before the Court. *Simon*, 426 U.S. at 42-43 (finding that Plaintiffs lacked standing because it was "'purely speculative' whether removal of the challenged tax breaks would cause the hospitals" to cease discriminating against Plaintiffs). The plaintiff may only sue a party that bears some responsibility for its injury. *Lujan*, 504 U.S. at 560-61. In an aiding and abetting claim, the traceability element requires plaintiffs to show that the defendants' conduct actually caused the alleged harm, though it need not be the last link in the causal chain. *Air Evac EMS Inc. v. Cheatham*, 910 F.3d 751, 760 (4th Cir. 2018).

Plaintiffs fail to allege any facts demonstrating NSJP's involvement in the injuries sustained on October 7, 2023. The FAC lacks any non-conclusory allegations linking NSJP's activities to Plaintiffs' inability to return to Israel, the ongoing conflict, or Hamas's detention of hostages. *See, e.g.*, Doc. 24 ¶¶ 68, 203. Any purported causal relationship between NSJP's conduct and these injuries is so attenuated as to be legally insufficient.

The FAC provides no plausible basis for the Court to find a causal connection between NSJP's actions and Hamas' military capabilities or operations, either before or after October 7, 2023. The alleged causal relationship is purely speculative and far too remote for Plaintiffs' harms to be 'fairly traceable' to NSJP's campus activities and rhetoric. *See Lujan*, 504 U.S. at 560-61. Moreover, Plaintiffs have not alleged that NSJP's conduct had any material impact on U.S. foreign policy or military support for Israel. The FAC does not allege facts showing that NSJP's alleged 'public relations' or 'propaganda' activities materially affected Hamas' ability to carry out its alleged activities. Plaintiffs offer no plausible allegations that NSJP's cessation of advocacy for a ceasefire and Palestinian human rights would result in Hamas ceasing its alleged activities.

In short, the FAC fails to establish the requisite causal connection between NSJP's conduct and Plaintiffs' alleged injuries. Plaintiffs have not established Article III standing, and the FAC must be dismissed. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

## B.  The Court Lacks Personal Jurisdiction Over NSJP in this Case

A court's exercise of personal jurisdiction over a non-resident defendant is consistent with due process only if that defendant has "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Walden v. Fiore*, 571 U.S. 277, 283 (2014). The exercise of personal

jurisdiction over a non-resident defendant must be authorized by the forum state's long-arm statute and must not violate due process. *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). As Virginia's long-arm statute extends to the full extent permitted by due process, the statutory and constitutional inquiries merge. *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002). There are two forms of personal jurisdiction that a forum state may exercise over a non- resident defendant—general and specific jurisdiction. NSJP is not subject to jurisdiction in Virginia under either theory, requiring dismissal. *See* Fed. R. Civ. P. 12(b)(2).

### 1. NSJP is Not Subject to General Jurisdiction in Virginia

NSJP is not "at home" in Virginia. It is not incorporated in and maintains no office there. Although Plaintiffs allege that NSJP has an office in Virginia they have offered no proof of this, and it is their burden to prove, by a preponderance of the evidence, that NSJP has its home office there. *Combs v. Bakker,* 886 F.2d 673, 674 (4th Cir. 1989). Indeed, Plaintiffs have admitted that NSJP has "no publicly disclosed principal place of business". Doc. 44-1 at 5; Doc. 44-5. Plaintiffs themselves invoke, and never dispute AJP's assertion firmly refuting Plaintiffs' unsupported prior claim that NSJP had some corporate relationship with AJP. Doc. 44-2 at 1.

A defendant will not be "at home" in a state for general jurisdiction purposes, even where it distributed thousands of cars to and did billions of dollars of sales in that state. *Daimler AG v. Baum*, 571 U.S. 117, 122-23, 148. (2014) Likewise, a court could not exercise general jurisdiction over a railway with over 2,000 miles of railroad track and more than 2,000 employees in Montana. *BNSF Ry. v. Tyrell*, 581 U.S. 402, 413-414 (2017). The lesson of *Daimler* and *BNSF* is that a defendant is not subject to general jurisdiction everywhere it

may conduct business, absent exceptional circumstances showing that in-forum activity justifies jurisdiction. A defendant is only subject to general jurisdiction in the states in which it is incorporated or maintains its headquarters. There is not an atom of evidence—or a single substantiated allegation—that NSJP maintains its headquarters in Virginia.

Plaintiffs' rote invocation of the ATA does not cure a *constitutionally* defective claim of jurisdiction. *See Waldman v. PLO*, 835 F.3d 317, 335 (2d Cir. 2016) (applying *Walden*, 571 U.S. at 283). Since asserting jurisdiction exposes a defendant to the coercive power of the State, that assertion is <u>always</u> "subject to review for compatibility with the Fourteenth Amendment's Due Process Clause." *Goodyear Dunlop Tire Operations, S.A. v. Brown*, 564 U.S. 915, 918 (2011). That constitutional interest is not diminished because Plaintiffs raise an allegation involving terrorism. *Fuld v. PLO*, 82 F.4th 74, 86 (2nd Cir. 2023); *accord Waldman v. PLO*, 82 F.4th 64, 69 (2nd Cir. 2023); *see also Livnat v. Palestinian Auth.*, 428 U.S. App. D.C. 140, 152-53, 851 F.3d 45, 57-58 (2017) (applying the same constitutional analysis and affirming dismissal).

### 2. <u>NSJP is Not Subject to General Jurisdiction in Virginia</u>

*Waldman* and the numerous cases following it apply to ATA cases the constitutional principal that a court may only exercise specific jurisdiction if the claim asserted in the complaint arises out of or relates to the defendant's contacts with the forum state. *Bristol-Myers Squibb Co. v. Super. Ct.*, 582 U.S. 255, 262 (2017). The inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 284 (citation omitted).

To determine whether a defendant has sufficient contacts with the forum state to be subject to specific personal jurisdiction, the Fourth Circuit instructs courts to test:

> (1)    the extent to which the non-resident defendant purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2)    whether the Plaintiffs' claims arise out those activities directed at the State;
>
> (3)    whether the exercise of jurisdiction would be constitutionally reasonable, e.g., a controversy that arises out of the defendant's contact with the forum.

*ALS Scan, Inc. v. Digital Serv. Consultants, Inc.* 29707, 711-712 (4th Cir. 2002). The plaintiff bears the burden of satisfying the first two prongs of the test. *White v. Aetna Life Ins. Co.*, 519 F. Supp. 3d 253, 258 (W.D.N.C. 2021) Only if the plaintiff satisfies the first two prongs, does it become the defendant's burden to demonstrate that the third prong—reasonableness—has not been satisfied. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 46 476-78 (1985)).

Here the plaintiffs have not even *alleged* 'purposeful availment' or that their claims against NSJP arise from activities in Virginia. Plaintiff's failure to even allege any tie between the challenged conduct and this forum precludes a finding of jurisdiction over NSJP, because it is Plaintiff's burden to supply evidence of such a tie. *See White,* 519 F.Supp.3d at 258. Because the plaintiffs have not proven any Virginia contacts whatsoever, dismissal for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) is appropriate.

       3.   Because Plaintiffs Have Failed to Allege Any Facts Tying the Alleged Conduct to this Forum, Jurisdictional Discovery Should be Denied

District courts have broad discretion in their resolution of discovery problems. "When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." *Design Res.,*

*Inc. v. Leather Indus. of Am.*, 900 F. Supp. 2d 622, 639 (M.D.N.C. 2012) (*citing McLaughlin v. McPhail*, 707 F.2d 800, 806 (4th Cir. 1983).

### C. This Court Lacks Subject Matter Jurisdiction Under the ATS

Courts must find that they have jurisdiction to hear a matter before they may review the allegations. *Bryant v. Udell & Assocs.*, No. 1:23-cv-00414 (AJT/LRV), 2023 U.S. Dist. LEXIS 140767, at *5 (E.D. Va. Aug. 11, 2023). The ATS does not confer jurisdiction on this Court. Enacted in 1789 by the First Congress, the ATS provides jurisdiction for district courts over civil actions brought by an alien only for a tort committed in violation of international law or U.S. treaties. 28 U.S.C. § 1350. Importantly, the ATS is "strictly jurisdictional and does not by its own terms provide or delineate the definition of a cause of action for violations of international law." *Jesner v. Arab Bank, PLC,* 584 U.S. 241, 254 (2018). "ATS claims must be subject to vigilant doorkeeping" by the courts. *Id.* at 256.

The Supreme Court has established two stringent limitations on the ATS which preclude the Plaintiffs from establishing subject matter jurisdiction in this case: the presumption against creating new judicial causes of action, and the presumption against extraterritoriality. Plaintiffs have failed to plead that NSJP violated a universal and recognized international law norm identified in federal case law as justiciable, and have failed to plead facts sufficient to overcome the heavy presumption against extraterritorial application of the statute. As a result, this Court must dismiss the non-citizen Plaintiffs' allegations under the ATS because they fail to "allege facts upon which subject-matter jurisdiction may be based." *Alexander*, 2024 U.S. Dist. LEXIS 5677, at *3 (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)); *see also* Fed. R. Civ. P. 12(b)(1).

1. <u>Plaintiffs Fail to Plead a Violation of an International Norm Justiciable Under the ATS</u>

Plaintiffs fail to overcome the strict presumption against expanding the ATS to provide subject matter jurisdiction over new causes of action—in this case, aiding and abetting terrorism. The Supreme Court has limited causes of action under the ATS to three common law torts that had gained universal recognition, were defined with specificity, and were obligatory upon nations in 1789 when the statute was enacted: violations of safe conduct, infringement of the rights of ambassadors, and piracy. *Sosa v. Alvarez-Machain*, 542 U.S. 692, 723-24 (2004).

To sufficiently plead subject matter jurisdiction over a new cause of action beyond these three historical torts, Plaintiffs must plausibly plead that the new tort—in this case aiding and abetting terrorism through material support—is "specific, universal, and obligatory" in the same way that the original three torts were in 1789. *Jesner*, 584 U.S. at 257-58. If Plaintiffs sufficiently allege that NSJP's conduct violated a specific, universal, and obligatory international norm, they must also demonstrate why the court "should exercise 'judicial discretion' to create a cause of action rather than defer to Congress." *Nestle USA, Inc. v. Doe*, 593 U.S. 628, 636 (2021). Plaintiffs fail on both prongs.

i.   *Specific, Universal, and Obligatory*

Plaintiffs fail to sufficiently plead that NSJP violated a specific, universal, and obligatory norm under international law. There is not a single fact in the FAC that can plausibly show NSJP has violated such a norm—in fact, no such norm is alleged whatsoever. The only international norms Plaintiffs assert in attempting to plead a cause of action under the ATS are a violation of the International Convention for the Suppression of Financing of Terrorism (ICSFT) and generic aiding and abetting of terrorism. FAC ¶ 205. Plaintiffs' claim must be dismissed because the ICSFT is not subject to enforcement through

a private cause of action under the ATS, and because the tort of generally aiding and

abetting terrorism cannot be shown to violate a universal, specific, and obligatory norm.

Plaintiffs' ATS claim for a violation of the ICSFT must fail. The ICSFT is not a

"treaty" subject to enforcement under the ATS because it does not "confer individual

rights" and is not "self-executing." *Cornejo v. Cty. Of San Diego*, 504 F.3d 853, 856 (9th Cir.

2007) ("For any treaty to be susceptible to judicial enforcement it must both confer

individual rights and be self-executing."). Furthermore, the prohibitions under the ICSFT

have not attained universal, specific, obligatory status required for a cause of action under

the ATS. *See, e.g., In re Chiquita Brands Int'l*, 792 F. Supp. 2d 1301, 1318 (S.D. Fla. 2011);

*Karunamunige Chamila Krishanthi v. Rajakumara Rajaratnam,* 2010 U.S. Dist. LEXIS 88788,

at *36-43 (D.N.J. Aug. 26, 2010). The non-citizen Plaintiffs therefore cannot bring a cause

of action via the ATS in reliance on a violation of the ICSFT or use it as a basis to otherwise

establish a cognizable international norm for the financing of terrorism.

Plaintiffs' only remaining basis for their ATS cause of action is the generally alleged

tort of aiding and abetting terrorism. Even if Plaintiffs were to somehow sufficiently allege

NSJP engaged in materially supporting or aiding and abetting terrorism, they still could not

plead a cause of action under the ATS because no universal definition of "terrorism" exists

that establishes a "specific, universal, and obligatory" norm sufficient to confer subject

matter jurisdiction on this Court under *Sosa*. The legal concept of "terrorism" in general has

not been clearly defined internationally and the nations of the world are divided on the

legitimacy of such (undefined) conduct. *See, e.g.*, *Terrorist Attacks on September 11, 2001 v. Al

Rajhi Bank (In re Terrorist Attacks on September 11, 2001)*, 714 F.3d 118, 122, 125 (2d Cir. 2013)

(affirming dismissal of ATS claim because "no universal norm against 'terrorism' existed

under customary international law"); *In re Chiquita Brands Int'l, Inc.,* 792 F. Supp. 2d at 1317 (rejecting plaintiffs' "attempt to group this broad, ill-defined class of conduct under the umbrella of 'terrorism,' or material support thereof, and create a cause of action against it under the ATS"); *Mwani v. Bin Ladin*, 2006 U.S. Dist. LEXIS 89483, at *3 n.2 (D.D.C. Sept. 28, 2006) ("The law is seemingly unsettled with respect to defining terrorism as a violation of the law of nations."). The lack of internationally agreed-upon definitions for terrorism, terrorism financing, or material support of terrorism renders those allegations insufficient for a new cause of action under the ATS.

ii.     *Judicial Deference*

Even if Plaintiffs had sufficiently plead that NSJP violated a universal, specific, obligatory cause of action, they would still have to plausibly show that this Court has discretion to expand the ATS to reach said cause of action, and that there is not a single sound reason for the Court to defer to Congress. *Nestle*, 593 U.S. at 637. They cannot do so.

In *Nestle*, the Supreme Court reinforced the ATS's narrow scope, and provided that "a court must not create a private right of action if it can identify even one sound reason to think Congress might doubt the efficacy or necessity of the new remedy." *Nestle*, 593 U.S. at 637. The Court further explained that, due to inherent foreign policy concerns attending the creation of any new domestic cause of action for alleged violations of international customary law, "there will always be a sound reason for courts not to create a cause of action for violations of international law—other than perhaps for those three torts that were well established in 1789." *Nestle*, 593 U.S. at 638. The Court noted the Trafficking Victims Protection Reauthorization Act of 2003 (TVPRA) as an example of the means by which Congress can create specific, defined causes of action for violations of international law if it

so desires, and explained that those specific decisions must be left to Congress. *Nestle*, 593

U.S. at 639.

Therefore, although the test created in *Sosa* remains good law, the Supreme Court's

decision in *Nestle* clarifies that the judicial discretion identified in *Sosa* should be limited:

> "[C]auses of action for the three historical torts likely on the mind of the First
> Congress. But as to other torts, our precedents already make clear that there is
> *always* a sound reason to defer to Congress, so courts *may not create a cause of
> action for those torts*. Whether and to what extent defendants should be liable
> under the ATS for torts beyond the three historical torts identified in *Sosa* lies
> within the province of the Legislative Branch."

*Nestle*, 593 U.S. at 640 (emphasis added).[20] The non-citizen Plaintiffs ask this Court to apply

the ATS to create subject matter jurisdiction over a new cause of action—aiding and

abetting terrorism. Because such a cause of action would give rise to "inherent foreign

policy concerns," it would be an improper use of judicial discretion for this court to do so,

and the ATS claim should be dismissed with prejudice.

2. Plaintiffs Fail to Overcome the Presumption Against
Extraterritorial Application of the ATS

Plaintiffs cannot and have not overcome the presumption against extraterritorial

application of the ATS. The general presumption against extraterritorial application of

federal statutes applies to claims under the ATS. *Jesner*, 584 U.S. at 256-57. Plaintiffs are

barred in most situations from bringing an ATS claim regarding tortious conduct that

occurred in the territory of a foreign sovereign, as is the case here. Plaintiffs can only

overcome this presumption by showing domestic conduct that is sufficiently connected to

---

[20] *But see Al Shimari v. CACI Premier Technology, Inc.*, 684 F.Supp.3d 481 (E.D.V.A. 2023)
(declining to revisit the Court's prior holding in *Al Shimari v. Caci Premier Tech., Inc.*, 263
F.Supp.3d 595 (E.D.V.A. 2017), and holding that the 'law of the case' from the 2017
decision required it to find that a cause of action under the ATS for the specific international
torts of torture, cruel, inhumane, and degrading treatment, and war crimes did not violate
the separation of powers principle, despite the Supreme Court's decision in *Nestle*).

the violation that harmed the Plaintiffs. *Nestle*, 593 U.S. at 634. Plaintiffs may not rely on "generic allegations" to "draw a sufficient connection between the cause of action … and domestic conduct." *Id*. "Even where the claims touch and concern the territory of the United States, they must do so with sufficient force to displace the presumption against extraterritorial application." *Jesner*, 584 U.S. at 257.

Thus, the non-citizen Plaintiffs must overcome the presumption against extraterritorial application of the ATS by alleging that the domestic conduct of NSJP is sufficiently connected to the attack on October 7 that harmed Plaintiffs. Plaintiffs have failed to do so. In this case, the violation of the international norm alleged is the attack on October 7; none of the planning, preparation, funding, or execution of the attack took place in the United States. None of the attackers themselves are alleged to be citizens of the United States. The only actions NSJP is alleged to have taken in the United States are discussing the attack and placing it within its historical context, and organizing students to try to stop an imminent genocide in response to the attack—both of which happened *after* the alleged violation of international law.

Since the non-citizen Plaintiffs have failed to plausibly allege that any domestic activities or United States citizens played a role in the damages they claim from October 7, this court lacks subject matter jurisdiction over their ATS claims.

3. <u>The ATS Does Not Permit Subject Matter Jurisdiction Over Claims Against Corporations or Artificial Entities Such as NSJP</u>

NSJP is a loose, unincorporated association and cannot be sued under the ATS. FAC ¶11. The Supreme Court has held already that there is no specific, universal, and obligatory norm extending liability for international human rights violations "to corporations or other artificial entities." *Jesner*, 584 U.S. at 241, 260, 263.

In *Jesner*, the Supreme Court specifically addressed the question of whether the ATS can be extended to create corporate liability for violations of international norms. The Court noted the immense foreign-policy implications underlying this particular question, and looked to Congress for guidance. The Court analyzed the only private cause of action that has been explicitly created under the ATS by Congress—the Torture Victims Protection Act—and found that "Congress' decision to exclude liability for corporations in actions brought under the TVPA is all but dispositive." *Jesner*, 584 U.S. at 266.

Because Plaintiffs have alleged no international norm that would establish universal, specific, and obligatory liability for corporations or artificial entities such as NSJP, they have failed to plausibly show that NSJP is subject to suit under the ATS.

### D. The Non-Citizen Plaintiffs Fail to State a Claim Under the ATS

Even if Plaintiffs were somehow able to establish that the ATS confers jurisdiction over their causes of action for aiding and abetting terrorism, the FAC still fails to plausibly state a claim as required by Rule 12(b)(6).

#### 1. Plaintiffs Fail to Sufficiently Allege NSJP Violated the ICSFT

Plaintiffs fail to allege a single concrete fact that could plausibly show NSJP has violated the ICSFT. Plaintiffs allege no specific or even approximate quantity of funds alleged provided to Hamas with NSJP's assistance, no specific means by which these funds were transferred, no date or approximate time frame within which such funding would have been raised or provided, nor the specific individuals or intermediary actors who could have provided such funding. Absent a single concrete factual allegation to plausibly show that NSJP violated the ICSFT, Plaintiffs' only remaining basis for their ATS cause of action is the generally alleged tort of aiding and abetting terrorism.

2.  <u>Plaintiffs Fail to Sufficiently Allege NSJP Aided and Abetted the Attack on October 7</u>

This Circuit has held, as recently as earlier this year, that the pleading requirements for an ATS aiding-and-abetting claim are that "the defendant (1) provides practical assistance to the principal which has a substantial effect on the perpetration of the crime, and (2) does so with the purpose of facilitating the commission of that crime." *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 396 (4th Cir. 2011), quoted with approval in *Estate of Alvarez v. Rockefeller Found.*, 96 F.4th 686 (4th Cir. 2024). Knowledge of a crime itself does not suffice. *Aziz*, 658 F.3d at 396. Plaintiffs fail to sufficiently allege NSJP provided assistance that was practical and had a substantial effect on the perpetration of the October 7 attack, or that NSJP provided such assistance with the purpose of facilitating the October 7 attack. As such, Plaintiffs' ATS claim must be dismissed.

i.  *Plaintiffs Fail to Sufficiently Allege that NSJP's Assistance to the October 7 Attack Was Practical and Had a Substantial Effect*

Plaintiffs fail to plausibly allege that NSJP's alleged assistance to Hamas was both practical and substantial. Plaintiffs allege that: Hamas expressed appreciation for "the masses" who demonstrated "in support of the justice of our national cause," FAC ¶ 150; that based on hearsay evidence Hamas "care[s]" about support from American students protesting, FAC ¶ 150; that Defendants' "propaganda" constitutes substantial and invaluable assistance, FAC ¶ 174; and that Defendants' protest activities against the ongoing genocide constitute "substantial" assistance. None of these alleged forms of support are claimed to have had a practical and substantial effect on the October 7 attack, and none can plausibly give rise to aiding and abetting liability under the ATS.

In a wholly incredible and unsupportable allegation, Plaintiffs also claim that "for decades," NSJP has "recruit[ed] domestic foot soldiers for Hamas." FAC ¶ 181. Plaintiffs do not point to a single individual recruited by NSJP who has gone on to be a Hamas member or "soldier"; they do not specifically allege who was recruited, how this recruitment was carried out, when the recruited occurred, what activities the 'recruits' performed in service to Hamas, nor even what Plaintiffs mean by the inflammatory and gratuitous phrase "foot soldiers for Hamas."[21] Absent a single specific fact alleged in support of this legally conclusory claim, the Court should not treat it as plausible.

Finally, Plaintiffs claim NSJP and others provided substantial assistance to Hamas "by organizing, managing, controlling, and intentionally inciting riots and acts of domestic terrorism." FAC ¶ 183. Plaintiffs go on to list disparate protest events that took place on campuses spread across the country in response to Israel's genocide, and assert that NSJP is responsible for those protests. Plaintiffs fail to allege any fact that plausibly supports the claim that NSJP organized these protests, managed them, and controlled them. Plaintiffs do not allege that SJP chapters are obliged to follow the guidance of NSJP, nor that NSJP has any code of conduct or other mechanism to enforce the suggestions and advice included in its toolkit. Plaintiffs do not allege that NSJP helped plan or execute any of the student protests identified. Absent any such factual supports, the broad claim that NSJP is responsible for this long list of protests is simply not plausible.

Plaintiffs fail to identify any specific acts of 'domestic terrorism' that occurred after October 7, and appear to use the term solely for its inflammatory effect in reference to

---

[21] Upon information and belief, Plaintiffs would apply the phrase to every student activist calling for freedom for Palestinians or protesting against Israel's genocide.

generalized student protest activity. While it may be unlawful, trespass and vandalism on university campuses does not amount to 'domestic terrorism,' and certainly has no practical and substantial effect on Hamas' ability to carry out violations of international law.

Plaintiffs fail to plausibly allege that any of the 'riots' they point to had a practical and substantial effect on the October 7 attack.[22][23] Plaintiffs merely state that Hamas has expressed appreciation for the masses around the world who have protested in support of the Palestinian national cause. That fact, even taken as true, would not support the conclusion that student protests have had a substantial effect on Hamas' activities.

      ii.    *Plaintiffs Fail to Sufficiently Allege that NSJP's Actions Were for the Purpose of Facilitating the Violation of an International Norm*

To plead an aiding and abetting claim under the ATS, Plaintiffs are required to plausibly allege that NSJP, "acted with the purpose of facilitating the violation of an international norm." *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 398 (4th Cir. 2011). Regardless of whether Plaintiffs agree with this *mens rea* requirement, they nonetheless must plead sufficiently under the authoritative and binding caselaw in the Fourth Circuit. Plaintiffs fail to do so.

Plaintiffs allege no fact that can plausibly show that NSJP had any knowledge whatsoever of the planned October 7 attack, much less that NSJP acted "with the purpose"

---

[22] Plaintiffs' list of student protests since October 7 includes many groups not alleged to be NSJP members or under its control. They imply, without support, that all pro-Palestinian student activism is directed by NSJP. This unsupported assertion that all pro-Palestinian protesters are part of a Hamas-led conspiracy is both implausible and offensive, yet it forms the unspoken basis of Plaintiffs' entire claim. *See, e.g.*, FAC ¶¶ 97(m), 97(e), 97(k).
[23] Plaintiffs also cherry-pick specific protests among hundreds, pulling out only the most confrontational amongst them. Even among the specific protests selected by Plaintiffs for inclusion in their complaint, Plaintiffs overstate the violence that occurred and fail to provide factual support for multiple specific claims.

of facilitating the attack nor any specific violations of customary international law thereafter. Nor could they, as this was a surprise attack in which NSJP is not alleged to have had any involvement whatsoever. Plaintiffs specifically concede that the October 7 attack is widely recognized as unprecedented, and a surprise attack known only to a very small circle of operatives. FAC at n.53 (citing to an article containing the statement that Hamas's actions on October 7 were "unprecedented" and a "surprise").

In the FAC's conclusory introduction, Plaintiffs speculate that the NSJP Toolkit included materials created prior to October 7, 2023, and leap from that wholly unsupported assertion to the implausible conclusion that NSJP therefore knew about the October 7 attack in advance. FAC at 3. There is no plausible factual support for this assertion, and Plaintiffs omitted it from the later numbered paragraphs discussing the Toolkit. FAC ¶¶ 78-87. Fueling Plaintiffs' speculation is the alleged fact that the NSJP Toolkit provided graphics of paragliders, which (according to the FAC) had never been used in an attack prior to October 7. FAC ¶ 86. Assuming there is a correlation between the two, Plaintiffs attempt to use this allegation to then leap to the improper and unsupported inference that NSJP must have known details of the attack beforehand because there is no way they would be able to create a basic graphic of paragliders for dissemination in just one day's time. This Court can take judicial notice that a simple Canva graphic like the one Plaintiffs identify can be created in only a few hours, and need not credit the unsupported conclusion that the graphic's inclusion of a clip-art style paraglider is somehow evidence of American students' prior knowledge of the October 7 Attack.

Aside from the NSJP Toolkit graphic, Plaintiffs offer no other alleged fact that could plausibly show NSJP had any knowledge whatsoever of Hamas' intentions on October 7.

Absent any knowledge of the tort to be committed, NSJP could not have acted with the purpose of facilitating that tort.

At best, Plaintiffs allege that NSJP's activity in the United States was intended to "normalize" Hamas' activity *after* October 7, FAC ¶ 63, 81, which has consisted first and foremost in opposing and resisting a genocide. Even if Plaintiffs could plausibly claim NSJP acted for the purpose of facilitating Hamas's subsequent resistance to genocide after October 7, they have not claimed "normalization" as a basis for liability under the ATS and the Court need not consider such a claim.

Because Plaintiffs wholly fail to plausibly allege any of NSJP's activities were for the purpose of facilitating the October 7 attack, they fail to state a claim for aiding and abetting terrorism under the ATS.

### E.  The U.S. Citizen Plaintiffs Fail to State a Claim Under the ATA

In an attempt to intimidate and malign students for their protected speech and association, U.S. Citizen Plaintiffs seek to hold NSJP liable under the Anti-Terrorism Act ("ATA"). This is a stark overreach, and this claim must be dismissed.

The ATA creates a cause of action for U.S. nationals injured by an act of international terrorism against (in relevant part) "any person who aids and abets, by knowingly providing substantial assistance" to the actor who commits the act of international terrorism. 18 U.S.C. § 2333(d)(2). Such "aiding and abetting liability" is governed by the legal framework in *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983), coupled with the rules applying the ATA in *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 490 (2023). *See Taamneh*, 598 U.S. at 493, 498. *Halberstam* sets forth three pleading requirements: (1) "the party whom the defendant aids must perform a wrongful act that causes an injury;"

(2) "the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time he provides assistance;" and (3) "the defendant must knowingly and substantially assist the principal violation." 705 F.2d at 477.

Plaintiffs fail to carry their burden on all three fronts. First, NSJP did not undertake, participate in, assist, or aid and abet Hamas's activities in any way. NSJP, as a loosely organized student group advocating for Palestinian human rights, cannot be held liable for the independent actions of Hamas or other foreign entities. Second, Plaintiffs do not allege any direct connection between NSJP and Hamas or any act of international terrorism. The FAC lacks any factual allegations demonstrating that NSJP provided—knowingly or otherwise—substantial assistance to, or conspired with, the perpetrators of the alleged acts of international terrorism. Finally, Plaintiffs again fail to establish the requisite proximate causation between NSJP's alleged conduct and Plaintiffs' injuries.

1. Plaintiffs Fail to Allege NSJP Participated in an Act of International Terrorism So As to Make it Succeed

The FAC fails to allege any facts showing NSJP participated in planning, preparing, or executing an act of international terrorism. Instead, it relies solely on NSJP's alleged advocacy activities and dissemination of information. But liability under the material support statutes requires more than mere advocacy. *Holder*, 561 U.S. at 39.

In *Taamneh*, the Supreme Court clarified that aiding and abetting liability is limited to "conscious, voluntary, and culpable participation in another's wrongdoing," meaning that "the defendant consciously and culpably 'participate[d]' in a wrongful act so as to help 'make it succeed.'" 598 U.S. at 493, 497. In the context of the ATA, "the text requires that defendants have aided and abetted the [specific] act of international terrorism that injured the plaintiffs." *Twitter*, 598 U.S. at 497. For instance, in *Atchley v. AstraZeneca UK Ltd.*, the

court dismissed ATA claims against pharmaceutical companies that allegedly provided corrupt payments to an Iraqi ministry infiltrated by a terrorist group, holding that "allegations of generalized support to a terrorist organization are insufficient." 474 F. Supp. 3d 194, 210 (D.D.C. 2020).

The focus must therefore remain on the tort for which Plaintiffs seek to impose liability—in this case, the October 7 attack. *Taamneh*, 598 U.S. at 489. Generalized "assistance" over time, whether through search engines and algorithms, or public advocacy that was part of NSJP's mission, is not actionable. Indeed, Plaintiffs allege merely that NSJP engaged in advocacy that supposedly benefited Hamas in some vague, unspecified way. They do not allege that NSJP took a single "affirmative act with the intent of facilitating" the commission of the October 7 attack. *Id.* at 490 (cleaned up). This alone is fatal to their claim.

### 2.   Plaintiffs Fail to Allege Knowing Provision of Substantial Assistance

Plaintiffs have also failed to plausibly allege that NSJP knowingly provided substantial assistance to the person(s) who committed the act(s) of international terrorism, as required by § 2333(d)(2). The Supreme Court emphasized that "mere knowledge" of wrongful conduct is insufficient to establish aiding and abetting liability. *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 181 (1994). Instead, Plaintiffs must sufficiently and plausibly allege that NSJP "purposefully associated" themselves "with or participated in the illegal venture." *Nye & Nissen v. United States*, 336 U.S. 613, 619 (1949). Stated differently, Plaintiffs must establish that NSJP "knowingly and substantially assist[ed]" the October 7 attack. *Leisrael v. Educ. For a Just Peace in the Middle E.*, 66 F.4th 1007, 1016 (D.C. Cir. 2023).

The FAC contains no factual allegations demonstrating that NSJP purposefully associated itself with or participated in any terrorist activities, on October 7 or otherwise. NSJP's alleged actions of organizing educational events and advocating for Palestinian rights fall far short of the substantial assistance required under the ATA. As the Fourth Circuit has noted, "substantial assistance means assistance that is considerable in amount, value or worth." *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 277 (4th Cir. 2018). Let's assume, *arguendo*, that Plaintiffs adequately alleged the preposterous notion that Hamas directly benefits from NSJP's conscientious advocacy for Palestinian rights and its criticism of the systematic occupation, apartheid, and genocide of Palestinians. That still would not be enough. As the Fourth Circuit has held, "advocacy on behalf of a terrorist organization's legitimate activities does not constitute the provision of material support to terrorists." *United States v. Hammoud*, 381 F.3d 316, 329 (4th Cir. 2004).

The FAC does not contain a single non-conclusory allegation that NSJP had knowledge of any act of international terrorism before it occurred or provided any assistance to make it succeed or that NSJP provided assistance that was "considerable in amount, value or worth" to any terrorist organization or individual. And "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The vague allegations here fall far short of that standard. *Owens*, 897 F.3d at 277.

### 3.   Plaintiffs Fail to Establish the Requisite Proximate Causation

Plaintiffs similarly fail to establish the proximate causation required for ATA liability. This requires them to show that the alleged assistance was both substantial and significantly enhanced the terrorist organization's ability to carry out the act of international

terrorism. *Taamneh*, 598 U.S. at 495 (finding insufficient the claim that a defendant assisted a "transcendent 'enterprise' separate from and floating above all the actionable wrongs that constitute it"). To satisfy the ATA's "by reason of" requirement, a plaintiff must show that the defendant's act was a substantial factor in the sequence of events leading to the plaintiff's injury and that the injury was reasonably foreseeable as a natural consequence of the defendant's actions. *See Hemi Group, LLC v. City of New York*, 559 U.S. 1, 9 (2010).

The FAC does not allege any facts demonstrating that NSJP's actions were a substantial factor in causing Plaintiffs' alleged injuries or that such injuries were a reasonably foreseeable consequence of NSJP's advocacy. As the Fourth Circuit emphasized in *Owens*, "foreseeability alone is insufficient to establish proximate cause under the ATA." 897 F.3d at 273. Generously speaking, the attenuated chain of causation alleged by Plaintiffs—from NSJP's campus activities to the independent actions of foreign entities—is far too speculative to satisfy the ATA's proximate cause requirement.

For these reasons, the ATA claim against NSJP under 18 U.S.C. § 2333(d) must be dismissed.

### F. NSJP's Alleged Activities Constitute Protected First Amendment Speech

The First Amendment provides a robust defense against Plaintiffs' baseless allegations, and this defense is ripe for consideration at the motion to dismiss stage. As multiple courts have held, a First Amendment defense may prevail when it is "apparent on the face of the complaint and documents relied on in the complaint." *Homevestors of Am., Inc. v. Warner Bros. Discovery, Inc.*, Civ. No. 22-1583-RGA, 2023 U.S. Dist. LEXIS 187653, at *12 (D. Del. Oct. 18, 2023). This principle has been consistently applied in cases involving creative expression and free speech. *Moore v. Hadestown Broadway Ltd. Liab. Co.*, No. 23-CV-

4837 (LAP), 2024 U.S. Dist. LEXIS 40245, at *43-44 (S.D.N.Y. Mar. 7, 2024) ("The Court finds Defendant's creative expression, and therefore its First Amendment defense, is apparent both from the face of the Amended Complaint and Exhibits 4 and 5 . . . Accordingly, Defendant properly raised it with the Court in its motion"); *K & K Prods. v. Walt Disney Studios Motion Pictures*, No. 2:20-CV-1753 JCM (NJK), 2021 U.S. Dist. LEXIS 182012, at *16 (D. Nev. Sep. 23, 2021), *affirmed*, 2022 U.S. App. LEXIS 23466 (9th Cir. 2022).

In this case, the First Amendment defense is not only apparent but glaringly obvious from the face of the FAC. Plaintiffs have utterly failed to show any concerted activity between NSJP's protected speech and Hamas, which is required to transform pure speech into action for the purposes of the ATS or ATA. *See In re Terrorist Attacks on September 11, 2001*, 740 F. Supp. 2d at 519-20. The ATA does not prohibit mere association with a foreign terrorist organization, nor does it abridge First Amendment rights. As the court in *In re Terrorist Attacks* emphasized, "One is free to espouse support for a foreign terrorist organization, and to engage in independent advocacy as a means to sway others into adopting one's pro-terrorist point of view." *Id.*

The Supreme Court has unequivocally stated that "independent advocacy . . . is not prohibited." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 4 (2010). NSJP's activities, as described in the FAC, fall squarely within this protected category of independent advocacy. Plaintiffs' allegations center around NSJP's distribution of a Toolkit calling for mainstream First Amendment-protected activities such as hosting demonstrations, tabling on campus, conducting teach-ins, and sharing information. Each of these activities is patently protected by the First Amendment. *Columbia v. Haley*, 738 F.3d 107, 122 (4th Cir. 2013)

(demonstrations); *Child Evangelism Fellowship of Md., Inc. v. Montgomery Cnty. Pub. Sch.*, 457 F.3d 376, 381 (4th Cir. 2006) (flyers); *Univ. of Md. Students for Just. in Palestine v. Bd. of Regents of the Univ. Sys. of Md.*, No. 24-2683 PJM, 2024 U.S. Dist. LEXIS 178359, at *11-12 (D. Md. Oct. 1, 2024) (teach-ins); *People for the Ethical Treatment of Animals, Inc. v. N.C. Farm Bureau Fed'n, Inc.*, 60 F.4th 815, 829 (4th Cir. 2023) *cert. den.* 144 S. Ct. 326 (2023) (dissemination).

The recent case of *Univ. of Md. Students for Just. in Palestine* is particularly instructive. The court emphatically defended SJP's right to engage in controversial speech, stating that "however vile they may seem to some," the terms and ideas expressed by SJP "are expressive of ideas" and thus protected by the First Amendment.

Plaintiffs' attempt to criminalize NSJP's protected speech is part of a broader, troubling trend to chill and suppress pro-Palestinian speech through litigation and other means. This Court must recognize this lawsuit for what it is: a dangerous assault on core First Amendment principles. As Justice Holmes famously stated, "if there is any principle of the Constitution that more imperatively calls for attachment than any other it is the principle of free thought -- not free thought for those who agree with us but freedom for the thought that we hate" (United States v. Schwimmer, 1929).

Stated simply, the First Amendment stands as an insurmountable barrier to the Plaintiffs' claims. This Court should dismiss the FAC with prejudice, reaffirming the vital importance of protecting free speech, even—and especially—when that speech is controversial or unpopular.

## VII.   CONCLUSION

Plaintiffs have sued NSJP students who had nothing to do with the attack on Plaintiffs' loved ones; students who have done nothing more than exercise their free speech

and, at times, engaged in civil disobedience at enormous risk to themselves and their future careers, all in hopes of ending their universities' complicity in Israel's genocide against their people.

Plaintiffs have had ample opportunity to plead their claim. Plaintiffs filed their Original Complaint on May 1, complete with seven exhibits, 49 pages and 141 paragraphs, then amended their Complaint, expanding it to nine exhibits, 79 pages, 207 numbered paragraphs, and 202 footnotes. That Amended Complaint has already formed the basis of numerous motions requiring the attention of this Court and the parties, and the docket sheet in this matter rapidly approaches 100 entries. All of this time and ink has not produced a single plausible, justiciable claim against NSJP, and no amount of additional time or filings would remedy the fundamental defects in Plaintiffs' claim. Jurisdictional defects are innate, and new allegations will not "solve the law" the Plaintiffs ignored in bringing suit. Further amendment would also be futile as Plaintiffs cannot sufficiently cure the factual defects in the FAC, which strain plausibility and miss elements of the supposed causes of action.

Finally, the FAC was filed in bad faith as evidenced by the misrepresentation of sources and authorities, as well as the litany of impertinent, scandalous allegations that appear in the FAC with no factual support whatsoever. Any request to amend will likewise be made in bad faith. Everything NSJP is accused of doing is protected by the First Amendment, and Plaintiffs seek only to harry these student organizers and exhaust their resources with scurrilous litigation. Allowing Plaintiffs the opportunity to amend a frivolous FAC would reward their efforts. The Court should not permit such a misuse of this forum.

For these reasons, Defendant NSJP moves to dismiss the instant proceeding for lack of standing, lack of personal jurisdiction, lack of subject matter jurisdiction, and failure to

state a claim upon which relief can be granted. These proceedings should be dismissed with prejudice, with no leave granted to amend.

Respectfully submitted,

/s/ *Abdel-Rahman Hamed*

ABDEL-RAHMAN HAMED, ESQ.
VA Bar No. 99055
**Hamed Law**
P.O. Box 25085
Washington, D.C. 20027
(202) 888-8846
advocates@hamedlaw.com

MARK ALLEN KLEIMAN, ESQ.*
Kleiman Rajaram
12121 Wilshire Boulevard
Suite 810
Los Angeles, CA 90025
(310) 392-5455
mark@krlaw.us

JONATHAN WALLACE, ESQ.**
P.O. Box 728
Amagansett NY 11930
(917) 359-6234
Jonathan.wallace80@gmail.com

COLLIN POIROT, ESQ.**
2603 Oak Lawn, Suite 300
Dallas, TX 75219
(214) 392-2281
cpoirot.law@gmail.com

*Attorneys for Defendant NSJP*

*admitted pro hac vice
** pro hac vice application pending