**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| MAYA PARIZER, ADIN GESS, NOACH NEWMAN, NATALIE SANANDAJI, YONI DILLER, DAVID BROMBERG, LIOR BAR OR, ARIEL EIN-GAL, and HAGAR ALMOG, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil No. 1:24-cv-00724-RDA-IDD |
| AJP EDUCATIONAL FOUNDATION, INC. a/k/a AMERICAN MUSLIMS FOR PALESTINE, NATIONAL STUDENTS FOR JUSTICE IN PALESTINE, WESPAC FOUNDATION, HATEM BAZIAN, OSAMA ABUIRSHAID, TAHER HERZALLAH, and ZAREFAH BAROUD, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT**
**NATIONAL STUDENTS FOR JUSTICE IN PALESTINE'S MOTION TO STRIKE AND**
**MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................1

ARGUMENT ..............................................................................................................3

    I.      STANDARDS OF REVIEW ..............................................................3
    II.     PLAINTIFFS HAVE STANDING TO SUE NSJP ...........................4
    III.    THE COURT HAS PERSONAL JURISDICTION OVER NSJP ..........7

          A.     The Court Has Jurisdiction as to the Antiterrorism Act Claim ....................8
          B.     The Court Has Pendent Personal Jurisdiction over NSJP as to the Alien Tort Statute Claim ..............................11
          C.     Jurisdictional Discovery Is Proper ...........................................12

    IV.    PLAINTIFFS STATE CLAIMS UNDER THE ANTITERRORISM ACT ..........13

          A.     JASTA Creates Liability for Providing Propaganda Services to a Terrorist Organization ................................14
          B.     The Complaint Sufficiently Alleges Knowing and Substantial Assistance ..............................15
          C.     JASTA Does Not Require Proximate Causation .......................18

    V.     PLAINTIFFS' ALIEN TORT STATUTE CLAIMS MORE THAN MEET THE LEGAL STANDARD ..............................19

          A.     The Complaint Alleges Facts Supporting Subject Matter Jurisdiction ..............................19
          B.     Plaintiffs State a Claim Against NSJP Under the ATS ..............22

    VI.    THE FIRST AMENDMENT DOES NOT PROTECT NSJP'S CONDUCT ........24
    VII.   THE COURT SHOULD DENY NSJP'S IMPROPER MOTION TO STRIKE..............................26

          A.     Plaintiffs' allegations are supported by the sources cited. ........27
          B.     Plaintiffs' allegations are relevant and material to Plaintiffs' causes of action. ..............................28
          C.     Plaintiffs' allegations do not significantly prejudice NSJP. .......29

CONCLUSION.............................................................................................................30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abecassis v. Wyatt*,
 704 F. Supp. 2d 623 (S.D. Tex. 2010) .................................................................5, 6

*Abelesz v. Magyar Nemzeti Bank*,
 692 F.3d 661 (7th Cir. 2012) ...................................................................................19

*Air Evac EMS, Inc. v. Cheatham*,
 910 F.3d 751 (4th Cir. 2018) .....................................................................................7

*Al Shimari v. CACI Premier Tech., Inc.*,
 263 F. Supp. 3d 595 (E.D Va. 2017) .................................................................19, 22

*Al Shimari v. CACI Premier Tech., Inc.*,
 684 F. Supp. 3d 481 (E.D. Va. 2023) ......................................................................21

*Al-Ahmed v. Twitter, Inc.*,
 603 F. Supp. 3d 857 (N.D. Cal. 2022), *appeal dismissed*, 2022 WL 4352712
 (9th Cir. July 7, 2022) ...............................................................................................5

*Alcohol Monitoring Sys., Inc. v. Actsoft, Inc.*,
 682 F. Supp. 2d 1237 (D. Colo. 2010).....................................................................12

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009).....................................................................................................3

*Aziz v. Alcolac, Inc.*,
 658 F.3d 388 (4th Cir. 2011) ........................................................................22, 23, 24

*Bennett v. Spear*,
 520 U.S. 154 (1997).....................................................................................................6

*BNSF Ry. v. Tyrell*,
 581 U.S. 402 (2017).....................................................................................................11

*Boim v. Am. Muslims for Palestine*,
 2021 WL 1556085 (N.D. Ill. May 17, 2022) ..........................................................16

*Boim v. Holy Land Found.*,
 549 F.3d 685 (8th Cir. 2008) ......................................................................................6

*Boncasa v. Standard Chartered PLC*,
 2023 WL 7110774 (S.D.N.Y. Oct. 27, 2023) ....................................................14, 15

*Cohen v. Facebook, Inc.*,
 252 F. Supp. 3d 140 (E.D.N.Y. 2017) ........................................................................8

*Combs v. Bakker*,
 886 F.2d 673 (4th Cir. 1980) ......................................................................................3

*D'Addario v. Geller*,
    264 F. Supp. 2d 367 (E.D. Va. 2003) ..................................................................3, 9, 11

*Daimler AG v. Baum*,
    571 U.S. 117 (2014) .................................................................................................11

*Design Res., Inc. v. Leather Indus. of Am.*,
    99 F. Supp. 2d 622 (M.D.N.C. 2012) ......................................................................12

*Doe I v. Cisco Sys.*,
    73 F.4th 700 (9th Cir. 2023), *r'hrg and r'hrg en banc denied*, No. 15-16909
    (9th Cir. Sept. 3, 2024) .......................................................................................20, 21

*Doe I v. Nestle USA, Inc.*,
    766 F.3d 1013 (9th Cir. 2014) .................................................................................22

*Doe v. Natraj Enters., Inc.*,
    2021 WL 3190386 (D.S.C. July 28, 2021) .........................................................29, 30

*Doriety v. Sletten*,
    109 F.4th 670 (4th Cir. 2024) ...............................................................................3, 17

*Episcopal Church in S.C. v. Church Ins. Co. of Vt.*,
    997 F.3d 149 (4th Cir. 2021) .....................................................................................7

*ESAB Grp. v. Centricut, Inc.*,
    126 F.3d 617 (4th Cir. 1997) .........................................................................9, 11, 12

*Est. of Alvarez v. Rockefeller Found.*,
    96 F.4th 686 (4th Cir. 2024) ....................................................................................23

*Est. of Ungar v. Palestinian Auth.*,
    400 F. Supp. 2d 541 (S.D.N.Y. 2005) .......................................................................9

*Flomo v. Firestone Nat'l Rubber Co., LLC*,
    643 F.3d 1013 (7th Cir. 2011) .................................................................................19

*Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*,
    204 F.3d 149 (4th Cir. 2000) .....................................................................................6

*Fuld v. Palestine Liberation Org.*,
    82 F.4th 74 (2d Cir. 2023), *r'hrg en banc denied*, 101 F.4th 190 (2d Cir.
    2024), *cert. filed*, Nos. 24-20, 24-151 (U.S. July 9 and Aug. 12, 2024).................10

*Grayson v. Anderson*,
    816 F.3d 262 (4th Cir. 2016) .....................................................................................3

*Halberstam v. Welch*,
    705 F.2d 472 (D.C. Cir. 1983) .....................................................................13, 16, 23

*Hemi Grp. v. City of New York*,
    559 U.S. 1 (2010) ....................................................................................................19

*Holder v. Humanitarian Law Proj.*,
    561 U.S. 1 (2010) ..................................................................................................6, 24

*Idaho Conservation League v. Mumma*,
   956 F.2d 1508 (9th Cir. 1992) ...........................................................................4

*Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*,
   500 U.S. 72 (1991) ...........................................................................................4, 7

*Jesner v. Arab Bank*,
   584 U.S. 241 (2018) ........................................................................................21, 22

*Kaplan v. Lebanese Canadian Bank, SAL*,
   999 F.3d 842 (2d Cir. 2021) ...............................................................................14

*Kerns v. United States*,
   585 F.3d 187 (4th Cir. 2009) ................................................................................3

*Libertarian Party of Va. v. Judd*,
   718 F.3d 308 (4th Cir. 2013) .............................................................................4, 6

*Livnat v. Palestinian Auth.*,
   851 F.3d 45 (D.C. Cir. 2017) ..........................................................................10, 11

*Mastafa v. Australian Wheat Bd.*,
   2008 WL 4378443 (S.D.N.Y. Sept. 25, 2008) .................................................5, 6

*McLaughlin v. McPhail*,
   707 F.2d 800 (4th Cir. 1983) ..............................................................................12

*Merriam v. Demoulas*,
   2013 WL 2422789 (D. Mass. June 3, 2013) .........................................................4

*Mylan Labs., Inc. v. Akzo, N.V.*,
   2 F.3d 56 (4th Cir. 1993) ....................................................................................12

*Nestle USA, Inc. v. Doe*,
   593 U.S. 628 (2021) ............................................................................................20

*Noble Sec., Inc. v. MIZ Eng'g, Ltd.*,
   611 F. Supp. 2d 513 (E.D. Va. 2009) ..................................................................11

*Nunes v. Fusion GPS*,
   531 F. Supp. 3d 993 (E.D. Va. 2021) ....................................................................9

*Owens v. BNP Paribas, S.A.*,
   897 F.3d 266 (D.C. Cir. 2018) ........................................................................18, 19

*In re Packaged Seafood Prods. Antitrust Litig.*,
   338 F. Supp. 3d 1118 (S.D. Cal. 2018) ...............................................................11

*Ray v. Roane*,
   948 F.3d 222 (4th Cir. 2020) ................................................................................3

*Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc.*,
   227 F. App'x 239 (4th Cir. 2007) ........................................................................26

*Robinson Eng'g Co. Pension Plan & Tr. v. George*,
   223 F.3d 445 (7th Cir. 2000) ...............................................................................11

iv

*Rothstein v. UBS AG*,
 708 F.3d 82 (2d Cir. 2013)...................................................................................6

*Scherer v. Steel Creek Prop. Owners Ass'n*,
 2014 WL 813824 (W.D.N.C. Mar. 3, 2014)........................................................26

*Simon v. E. Ky. Welfare Rights Org.*,
 426 U.S. 26 (1976).............................................................................................7

*Sosa v. Alvarez-Machain*,
 542 U.S. 692 (2004)..........................................................................................20

*Telecomm. Sys. v. Sybase 365*,
 2009 WL 10690034 (E.D. Va. Nov. 17, 2009).......................................26, 29, 30

*In re Terrorist Attacks on September 11, 2001*,
 740 F. Supp. 2d 494 (S.D.N.Y. 2010) ................................................................25

*The Presbyterian Church of Sudan v. Talisman*,
 582 F.3d 244 (2d Cir. 2009)...............................................................................23

*Trustees of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*,
 791 F.3d 436 (4th Cir. 2015) ...................................................................9, 10, 11

*Twitter v. Taamneh*,
 598 U.S. 471 (2023).................................................................13, 14, 15, 18, 23

*United States. v. Osadzinski*,
 97 F.4th 484 (7th Cir. 2024) ..............................................................................25

*United States v. Powers*,
 59 F.3d 1460 (4th Cir. 1995) .......................................................................28, 29

*United States v. Rahim*,
 860 F. App'x 47 (5th Cir. 2021) .........................................................................25

*Waldman v. Palestine Liberation Org.*,
 82 F. 4th 64 (2d Cir. 2023), *r'hrg en banc denied*, 101 F.4th 190 (2d Cir. 2024), *cert. filed*, No. 24-151 (U.S. Aug. 12, 2024) ............................................10

*Waldman v. Palestine Liberation Org.*,
 835 F.3d 317 (2d Cir. 2016)...............................................................................10

*Waste Mgmt. Holdings v. Gilmore*,
 252 F.3d 316 (4th Cir. 2001) .............................................................................26

*Weiss v. Nat'l Westminster Bank PLC*,
 176 F. Supp. 3d 264 (E.D.N.Y. 2016) .................................................................8

*Wultz v. Islamic Republic of Iran*,
 755 F. Supp. 2d 1 (D.D.C. 2010)..........................................................................8

*Zobay v. MTN Grp. Ltd.*,
 695 F. Supp. 3d 301 (E.D.N.Y. 2023) ......................................................8, 14, 17

**Statutes**

18 U.S.C. § 2333 ...................................................................................................................2

18 U.S.C. § 2333(d) ............................................................................................................13

18 U.S.C. § 2333(d)(2) .......................................................................................................14

18 U.S.C. § 2334(a) ..............................................................................................................8

18 U.S.C. § 2339B .............................................................................................................24

28 U.S.C. § 1350 ..................................................................................................................2

Pub. L. No. 114-222, 130 Stat. 852, § 2(a)(5) ..................................................................13

Pub. L. No. 114-222, 130 Stat. 852, § 2(b) .........................................................................4

Va. Code § 8.01-328.1(A)(1) .............................................................................................10

**Other Authorities**

Fed. R. Civ. P. 4(k)(1)(C) ....................................................................................................8

Fed. R. Civ. P. 8(a)(2) ........................................................................................................27

Fed. R. Civ. P. 12(b)(6) ........................................................................................................3

Fed. R. Civ. P. 26 ...............................................................................................................12

Fed. R. Evid. 401 ...............................................................................................................28

The Court should deny the motions to dismiss and strike the First Amended Complaint ("Complaint") filed by Defendant National Students for Justice in Palestine ("NSJP").[1] The Complaint's detailed allegations readily support liability under well-established legal principles.

## **INTRODUCTION**[2]

Hamas, a designated Foreign Terrorist Organization, has long perpetrated mass violence and terror against innocent men, women, and children. The horrific attacks against Plaintiffs and countless others on October 7, 2023, exemplify Hamas's methods for reaching its evil aims. Yet Hamas does not act alone. Hamas's crimes are aided and abetted by individuals and organizations within the United States who work with Hamas to legitimize the group and effectively provide public relations services. These actors—among them, Defendant NSJP—have actively supported Hamas, both before and after the October 7 attacks, by endorsing violence, praising its terrorist acts, and spreading propaganda across college campuses nationwide. (*See, e.g.*, FAC ¶¶ 62–66, 77–122.) Contrary to NSJP's claim, this case does not seek to "intimidate" or "malign" individuals exercising their right to free speech or association. Rather, it seeks to hold accountable those acting as propagandists for international terrorist organizations and proxies operating in plain sight throughout the United States. There is a clear legal distinction between independent advocacy and knowingly providing public relations services for a Foreign Terrorist Organization. Defendant NSJP is engaged in the latter.

---

[1] Defendant National Students for Justice in Palestine's Motion to Strike and Motion to Dismiss Plaintiffs' First Amended Complaint ("NSJP Mem."), ECF No. 118; Attorney Affirmation of Abdel-Rahman Hamed, Esq. ("Hamed Aff."), ECF No. 118-1.

[2] Unless otherwise defined, capitalized terms used herein have the same meanings as in Plaintiffs' oppositions to the motions filed by AMP, WESPAC, Hatem Bazian, Osama Abuirshaid, Taher Herzallah, and Zarefah Baroud. (*See* Joint Opp., ECF No. 85; Bazian Opp., ECF No. 92; Abuirshaid Opp., ECF No. 112; Plaintiffs' Memorandum of Law in Opposition to Defendants Taher Herzallah's and Zarefah Baroud's Motion to Dismiss Plaintiffs' Amended Complaint ("Herzallah/Baroud Opp."), ECF No. 116.

As alleged in the Complaint, Defendant American Muslims for Palestine ("AMP") created, manages, and controls NSJP as the brand for its on-campus public relations efforts. Through hateful rhetoric, misinformation, violence, and the illegal occupation of U.S. college campuses, NSJP has attempted to indoctrinate American educational institutions into aligning with Hamas's agenda. Indeed, just one day after Hamas's terrorist attack, NSJP distributed a pre-prepared manifesto and attack plan—its so-called "Toolkit"—which explicitly aligned NSJP with Hamas. NSJP described itself in the Toolkit as "PART of" the "Unity Intifada" and operating under Hamas's "unified command" of terrorist operations in Gaza. The "Toolkit" itself, which included images of paragliders (a form of attack not previously used by Hamas), touted October 7 as a "historic win," urged students to seek "liberation" by "any means necessary," and implored them to "join the call for mass mobilization" issued by Hamas the previous day. Despite its claim, NSJP does not merely voice support for Hamas's international terror campaign. It actively aids, abets, and supports Hamas and its global network, all under the guise of "resistance." NSJP's deliberate and systematic provision of these services directly violates the Antiterrorism Act, 18 U.S.C. § 2333 (the "ATA"), and the Alien Tort Statute, 28 U.S.C. § 1350 (the "ATS").

NSJP's motion to dismiss—anchored in arguments about standing, jurisdiction, failure to state claims, and supposed First Amendment protections—largely parrots the baseless claims of AMP and other defendants, and it fails for the same reasons. In a new, desperate maneuver, however, NSJP also combines its dismissal motion with an attempt to strike parts of the Complaint, labeling them as "redundant" and "scandalous." The Court should see through this blatant effort to rewrite the Complaint to NSJP's advantage and reject it outright. The Complaint withstands all NSJP's meritless arguments, and both motions should be denied in their entirety.

## ARGUMENT

### I.     STANDARDS OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[3] "A complaint need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020). A court "is not permitted . . . to resolve contests surrounding the facts or the merits of a claim," and "generally must accept the facts as alleged as true and draw all reasonable inferences in favor of the plaintiff." *Doriety v. Sletten*, 109 F.4th 670, 679 (4th Cir. 2024). As for NSJP's challenge to personal jurisdiction, although a plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence, "he is entitled 'to favorable inferences from the pleadings, affidavits, and documents submitted on the issue.'" *D'Addario v. Geller*, 264 F. Supp. 2d 367, 377 (E.D. Va. 2003). A plaintiff "need only make a prima facie showing of personal jurisdiction to survive the jurisdictional challenge." *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1980)). "When determining whether a plaintiff has made the requisite prima facie showing, the court must take the allegations and available evidence relating to personal jurisdiction in the light most favorable to the plaintiff." *Id*. Finally, where (as here) a defendant "makes a facial challenge to subject matter jurisdiction," the "facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

---

[3] Unless otherwise indicated, all internal quotation marks, citations, alterations, brackets, and ellipses are omitted from citations herein.

## II.     PLAINTIFFS HAVE STANDING TO SUE NSJP

Contrary to NSJP's contentions (NSJP Mem. 12–13), Plaintiffs have standing to assert their claims. "Constitutional standing comprises three elements: (1) the plaintiff is required to have sustained an injury in fact; which (2) must be causally connected to the complained-of conduct undertaken by the defendant; and (3) will likely be redressed if the plaintiff prevails." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). NSJP contests only traceability, arguing that there is no "causal connection between NSJP's actions and Hamas's military capabilities or operations." (NSJP Mem. 13.) NSJP is wrong.

"Standing is gauged by the specific common-law, statutory or constitutional claims that a party presents." *Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 77 (1991). "Typically, the standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication *of the particular claims asserted*." *Id.* (emphasis in original); *accord Idaho Conservation League v. Mumma*, 956 F.2d 1508, 1514 (9th Cir. 1992) ("Where, as here, Congress is the source of the purportedly violated legal obligation, we look to the statute to define the injury."). And because the Justice Against Sponsors of Terrorism Act ("JASTA") extends liability in the "broadest possible" way to aiders and abettors, Pub. L. No. 114-222, 130 Stat. 852, § 2(b) (2016), the statutory injury is the aiding and abetting of a terror attack causing an injury. (*See* Joint Opp. 5–6.) Traceability in these circumstances is easily satisfied: as an aider and abettor, NSJP is ***directly*** responsible the precisely defined injury at issue.

Indeed, numerous cases confirm that traceability in secondary liability cases is satisfied simply by alleging that the defendant bears legal responsibility for the injury. *See, e.g.*, *Merriam v. Demoulas*, 2013 WL 2422789, at *4 (D. Mass. June 3, 2013) (explaining that "Article III is satisfied" when "the plaintiff's injury is fairly traceable to acts for which the defendant may be

held liable, even if the defendant did not directly cause or commit those acts" because "Article III's causation requirement does not eliminate all forms of vicarious liability"); *Al-Ahmed v. Twitter, Inc.*, 603 F. Supp. 3d 857, 872 (N.D. Cal. 2022) (finding injuries fairly traceable to corporate defendant alleged to be vicariously liable for wrongs caused by its employees), *appeal dismissed*, 2022 WL 4352712 (9th Cir. July 7, 2022); *cf. Abecassis v. Wyatt*, 704 F. Supp. 2d 623, 647–48 (S.D. Tex. 2010) ("It would be anomalous for the causal connection element of standing to be more onerous than the causation showing required to prevail on the merits.").

A decision from the Southern District of New York is particularly instructive. In *Mastafa v. Australian Wheat Bd.*, victims of Saddam Hussein's regime claimed that defendants aided and abetted the regime's violations of the ATS by paying kickbacks. 2008 WL 4378443, at *1 (S.D.N.Y. Sept. 25, 2008). The defendants challenged traceability, urging that plaintiffs' injuries were caused by "the Hussein regime, a third party not before the court." *Id.* at *2. Then-District Judge Lynch rejected this argument, which would "significantly undermine aiding and abetting liability in the federal courts." *Id.* at *3. Judge Lynch reasoned:

> Aiding and abetting liability is not itself a tort but instead a generally applicable means of identifying who should be held responsible for a particular act. . . . If plaintiffs aided and abetted the Hussein regime in the commission of human rights abuses that injured plaintiffs, then defendants are responsible for those acts, not because they caused them, but because the law holds the person who aids and abets liable for the tort itself. The injuries resulting from the Hussein regime's acts are thus fairly traceable to any who aided and abetted their commission. Similarly, the injuries are not the result of the independent action of some third party not before the court because the acts of the Hussein regime are not independent of steps taken to aid and abet those acts.

*Id.* at *2. Because the plaintiffs "alleged that the Hussein regime caused them injuries and that defendants are vicariously liable for those injuries," they "therefore ha[d] alleged sufficient facts

to support Article III standing." *Id.* The same is true here. Plaintiffs have alleged injuries caused by Hamas and that NSJP is derivatively liable for those injuries. They therefore have standing.

Even assuming *arguendo* Plaintiffs' aiding-and-abetting claims required traditional proof of causation (they do not), the Complaint would adequately allege standing. The burden to plead traceability is "relatively modest," *Bennett v. Spear*, 520 U.S. 154, 171 (1997), and "the 'fairly traceable' standard is not equivalent to a requirement of tort causation[,]" *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 161 (4th Cir. 2000); *accord, e.g.*, *Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013) ("[T]he 'fairly traceable' standard is lower than that of proximate cause . . . ."). Plaintiffs need only show that the defendant's conduct "is at least in part responsible" for their injuries. *Libertarian Party*, 718 F.3d at 315–16. Courts have found fair traceability satisfied based on the defendant's indirect provision of funds to a terror group. *See, e.g.*, *Rothstein*, 708 F.3d at 92–93 (holding plaintiffs had standing to sue bank that provided U.S. dollars to Iran, which funded Hezbollah and Hamas terrorists, deeming it "irrelevant" that the bank was not a "significant" or "primary" source of Iran's dollar supply); *Abecassis*, 704 F. Supp. 2d at 666, 647–48 (holding "standing is proper on the ATA claims" on similar facts).[4] And as the Supreme Court has explained, intangible services provided to a terror group are equally valuable because they "facilitate[] the group's ability to attract funds, financing, and goods that will further its terrorist acts." *Holder v. Humanitarian Law Proj.*, 561 U.S. 1, 32 n. 6 (2010).

---

[4] *Mastafa*, *Rothstein*, and *Abecassis* are part of a small class of pre-JASTA decisions entertaining claims of aiding and abetting violations of the ATA under a hybrid primary/secondary theory. *See also, e.g.*, *Boim v. Holy Land Found.*, 549 F.3d 685, 681 (8th Cir. 2008) (en banc) ("Primary liability in the form of material support to terrorism has the character of secondary liability."). That theory has been superseded by JASTA, which expressly extends liability under the ATA to aiders and abettors. (*See* Joint Opp. 5–17.) The standing analysis of these decisions, however, remains highly instructive.

Here, NSJP prepared for and unleashed a PR blitz immediately after the October 7 attack, and they have continued to provide extensive services afterward. It is reasonable to infer that this defrayed Hamas's publicity costs, enhanced its ability to attract money and supporters, and ultimately allowed Hamas to devote more resources to maximizing violence on October 7. Contrary to NSJP's claim (NSJP Mem. 12), there is nothing "speculative" about this reasoning, which follows readily from the cases cited above. That is more than sufficient for standing.

NSJP's cases are inapposite. *Episcopal Church in S.C. v. Church Ins. Co. of Vt.* dealt with the novel claim that an insurer abetted a state-law tort merely by reimbursing an insured's defense costs, a facially absurd theory that "would effectively prevent a party accused of breaching a fiduciary duty from mounting a legal defense." 997 F.3d 149, 158 (4th Cir. 2021). Because standing analysis must track the merits of the underlying claim, *see Int'l Primate Prot. League*, 500 U.S. at 77, the Fourth Circuit's traceability holding sweeps no further than the bogus "claim" it rejected. At most, the decision stands for the proposition that a co-insured lacks standing to sue an insurer for reimbursing defense costs provided to another co-insured. NSJP's remaining cases do not involve aiding and abetting claims of any kinds and therefore say nothing about the required showing in such a case.[5]

## III.   THE COURT HAS PERSONAL JURISDICTION OVER NSJP

Like its codefendants, NSJP contends that the Court lacks personal jurisdiction due to allegedly insufficient contacts with Virginia. (NSJP Mem. 13–17.) But the Antiterrorism Act provides for nationwide service of process, making the United States *as a whole* the relevant forum for evaluating contacts. NSJP plainly has sufficient contacts within the United States. The Court

---

[5] *See Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 28 (1976) (no standing in a challenge to federal regulations); *Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751 (4th Cir. 2018) (finding standing in a case challenging state regulations).

also has pendent personal jurisdiction over the Alien Tort Statute claim, as it arises out of the same facts as the Antiterrorism Act claim. (*See* Herzallah-Baroud Opp. 5–8, 11–13; Bazian Opp. 3–11; Joint Opp. 26–27.)

### A.     The Court Has Jurisdiction as to the Antiterrorism Act Claim

The Court has personal jurisdiction over NSJP with respect to the Antiterrorism Act claim. Under Rule 4(k)(1)(C) of the Federal Rules of Civil Procedure, service of a summons can establish personal jurisdiction over a defendant "when authorized by a federal statute." *Weiss v. Nat'l Westminster Bank PLC*, 176 F. Supp. 3d 264, 283 (E.D.N.Y. 2016). The Antiterrorism Act includes such a provision, allowing nationwide service of process, therefore permitting personal jurisdiction over defendants served anywhere in the United States. *Cohen v. Facebook, Inc.*, 252 F. Supp. 3d 140, 152 (E.D.N.Y. 2017). Civil actions under the Antiterrorism Act may be initiated in any district court "where any plaintiff resides or where any defendant resides or is served, or has an agent[,]" thereby enabling service nationwide. 18 U.S.C. § 2334(a); *see also Zobay v. MTN Grp. Ltd.*, 695 F. Supp. 3d 301, 322 (E.D.N.Y. 2023) (stating that the ATA "clearly confers nationwide service of process and therefore jurisdiction under Rule 4(k)(1)(C)"). Courts routinely uphold nationwide jurisdiction over Antiterrorism Act defendants where venue is proper, defendants are properly served, and defendants have sufficient minimum contacts with the United States as a whole. (*See* Bazian Opp. 4.)

NSJP does not contest venue or service; it disputes only the third condition. But contrary to NSJP's contention, minimum contacts should be evaluated based on its contacts with the United States as a whole, not just Virginia. *See Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 32 (D.D.C. 2010) (applying national contacts test to an ATA claim and stating "[i]t will rarely be the case under the ATA that a defendant who has minimum contacts with the United States . . . will be unduly burdened by the assertion of jurisdiction such that the inconvenience rise[s] to a level of

constitutional concern" (internal citation and quotation marks omitted)); *Est. of Ungar v. Palestinian Auth.*, 400 F. Supp. 2d 541, 548 (S.D.N.Y. 2005) (same). Though the Fourth Circuit has not specifically ruled on this issue, its decisions involving similar statutes consistently affirm that jurisdiction is based on nationwide contacts. For example, in *Trustees of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, the Fourth Circuit rejected a defendant's statewide contacts argument as "not relevant when the basis for jurisdiction is found in a federal statute containing a nationwide service of process provision." 791 F.3d 436, 444 (4th Cir. 2015) (jurisdiction proper under ERISA over out-of-state corporation that did no business in the forum state). Similarly, in *ESAB Grp. v. Centricut, Inc.*, involving RICO claims, the Fourth Circuit found jurisdiction was proper over an out-of-state corporation with no presence and few customers in the forum state, and an individual who had no business or property in the state and had not visited in decades, noting that "[n]ormally, ***when a defendant is a United States resident***, it is 'highly unusual that inconvenience will rise to a level of constitutional concern.'" 126 F.3d 617, 622, 626–27 (4th Cir. 1997) (emphasis added).[6]

NSJP's widespread presence and influence—operating across numerous United States universities, including several in Virginia—makes any claim of unconstitutional burden implausible. *See ESAB*, 126 F.3d at 627. NSJP is an unincorporated association with chapters at hundreds of universities around the United States, including several in Virginia, such as the University of Virginia, Virginia Commonwealth University, the College of William & Mary, and

---

[6] *See also Nunes v. Fusion GPS*, 531 F. Supp. 3d 993, 1003 (E.D. Va. 2021) (applying the "national contacts" test to a RICO claim because RICO provides for nationwide service of process, denying personal jurisdiction challenge); *D'Addario v. Geller*, 264 F. Supp. 2d 367, 386–87 (E.D. Va. 2003) (exercising personal jurisdiction over individual defendants based on their national contacts).

George Mason University.[7] (FAC ¶ 11.) NSJP is also controlled by AMP, a non-profit incorporated in California but based in Virginia, while WESPAC, a New York-based non-profit, acts as its fiscal sponsor.[8] (FAC ¶¶ 10–11, 46.) With such extensive contacts across the United States, this Court's jurisdiction poses no constitutional issues. *Plumbing Servs.*, 791 F.3d at 444.

NSJP's references to cases like *Waldman* and *Livnat* fail to bolster its argument, as those involved foreign entities rather than a domestic group like NSJP. *See Waldman v. Palestine Liberation Org.* ("*Waldman I*"), 835 F.3d 317, 331–44 (2d Cir. 2016) (Palestinian Authority and Palestinian Liberation Organization); *Livnat v. Palestinian Auth.*, 851 F.3d 45, 56–57 (D.C. Cir. 2017) (Palestinian Authority).[9] Instead, these cases reinforce the applicability of nationwide contacts as the standard under the Antiterrorism Act. *See Waldman I* at 835 F.3d at 330 ("under the Fifth Amendment the court can consider the defendant's contacts throughout the United States");

---

[7] *See* SJP at University of Virginia (https://virginia.presence.io/organization/students-for-peace-and-justice-in-palestine-2), SJP at Virginia Commonwealth University (https://vcu.campusgroups.com/studentsforjusticeinpalestineatvcu/home/), SJP at William & Mary (https://events.wm.edu/event/view/wm/359313), SJP at George Mason University (https://mason360.gmu.edu/sjp/home/) (each last visited Nov. 10, 2024); *see also* National SJP, https://www.nationalsjp.org/ (last visited Nov. 8, 2024); *see also* National SJP, "Open Letter from SJP to American Universities," https://www.nationalsjp.org/statement-17 (letter signed by SJP chapters from dozens of U.S. universities).

[8] Even if the Antiterrorism Act's nationwide service provision did not apply (which it does), these connections with Virginia—the SJP chapters and AMP's presence in the state—provide a basis to subject NSJP to specific jurisdiction in Virginia. *See* Va. Code § 8.01-328.1(A)(1) (permitting Virginia courts to exercise personal jurisdiction over a person who "[t]ransact[s] any business in this Commonwealth"). Plaintiffs refer the Court to § I.B of Herzallah/Baroud Opp., which is incorporated by reference herein.

[9] Two others, in addition to dealing with foreign entities, address a provision of the ATA that purported to "deem" that the PLO and PA consented to personal jurisdiction in the United States. *See Fuld v. Palestine Liberation Org.*, 82 F.4th 74, 85 (2d Cir. 2023), *r'hrg en banc denied*, 101 F.4th 190 (2d Cir. 2024), *cert. filed*, Nos. 24-20, 24-151 (U.S. July 9 and Aug. 12, 2024); *Waldman v. Palestine Liberation Org.*, 82 F. 4th 64, 73 (2d Cir. 2023), *r'hrg en banc denied*, 101 F.4th 190 (2d Cir. 2024), *cert. filed*, No. 24-151 (U.S. Aug. 12, 2024). Because that provision is not at issue in this case, these cases are doubly irrelevant.

*Livnat*, 851 F.3d at 55 ("Under the Fifth Amendment, which defines the reach of federal courts, contacts with the United States as a whole are relevant."). The other cases cited by NSJP are irrelevant as they pertain to statutes lacking nationwide service provisions. *See, e.g.*, *Daimler AG v. Baum*, 571 U.S. 117 (2014); *BNSF Ry. v. Tyrell*, 581 U.S. 402 (2017); *see also Plumbing Servs.*, 791 F.3d at 444.

> **B.     The Court Has Pendent Personal Jurisdiction over NSJP as to the Alien Tort Statute Claim**

This Court also has jurisdiction over NSJP for the ATS claim through the doctrine of pendent personal jurisdiction. Under this doctrine, a district court that has jurisdiction over a defendant for one claim also has jurisdiction over any related claims "aris[ing] from a common nucleus of operative fact." *ESAB Grp.*, 126 F.3d at 628. This doctrine is often used when multiple, interrelated claims are made by a plaintiff, one of which—the "anchor" claim—permits for nationwide service of process. *See, e.g.*, *D'Addario*, 264 F. Supp. 2d at 387–89 (exercising pendent personal jurisdiction for state-law claims related to a RICO claim, which allows nationwide service of process). Pendent jurisdiction is applied based on how closely related the claims are factually and allows for jurisdiction even if the party asserting the pendent claim cannot establish jurisdiction on their own. *See, e.g.*, *In re Packaged Seafood Prods. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1173 (S.D. Cal. 2018) (exercising pendent jurisdiction where anchor and pendent claims were brought by different parties). Jurisdiction is also permissible regardless of whether the pendent claim is brought under state or federal law. *See, e.g.*, *Noble Sec., Inc. v. MIZ Eng'g, Ltd.*, 611 F. Supp. 2d 513, 555–56 (E.D. Va. 2009) ("[T]he Fourth Circuit has approved the exercise of pendent personal jurisdiction over claims arising from a common nucleus of operative fact, whether the additional claim is a state claim or a federal claim." (citing *ESAB Grp.*, 126 F.3d at 628)); *Robinson Eng'g Co. Pension Plan & Tr. v. George*, 223 F.3d 445, 449 (7th Cir. 2000)

(finding jurisdiction proper where anchor and pendent claims both arose under federal law); *Alcohol Monitoring Sys., Inc. v. Actsoft, Inc.*, 682 F. Supp. 2d 1237, 1253 (D. Colo. 2010) (same).

In this case, the Alien Tort Statute claim is grounded in the same facts as the Antiterrorism Act claim: NSJP's provision of public relations services to support terrorism. Since NSJP must "adjudicate the facts" of the Antiterrorism Act claim, addressing the Alien Tort Statute claim simultaneously "could impose only a minimal burden." *ESAB Grp.*, 126 F.3d at 628. That different plaintiffs bring forth the claims or that both claims originate under federal law is irrelevant. The Court should therefore exercise pendent personal jurisdiction over NSJP with respect to the Alien Tort Statute claim.

### C.      Jurisdictional Discovery Is Proper

In previous briefs, Plaintiffs requested that if the Court deems it necessary to examine Defendants' contacts with Virginia, Plaintiffs be permitted to conduct jurisdictional discovery under Rule 26. *See Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 64 (4th Cir. 1993). NSJP preemptively challenges this request in its motion, asserting that Plaintiffs' claims regarding its connections to Virginia are speculative and unfounded. (NSJP Mem. 16–17.) To the contrary, Plaintiffs allege that NSJP is the "college campus brand" of AMP—a corporation with its principal place of business in Virginia—with local chapters spread nationwide, including in Virginia. (FAC ¶¶ 10, 60, 61; *see also* https://isgap.org/wp-content/uploads/2019/10/NSJP-2019-ISGAP-Report-Long-Version.pdf (cited at FAC ¶ 60 n.48) at 13.) AMP does not dispute these connections. (*See* ECF No. 33.) None of NSJP's cases help them either. (NSJP Mem. 16–17.) Unlike the defendant in *Design Resources, Inc. v. Leather Industries of America*, who submitted an affidavit denying "personal involvement" in the alleged misconduct, NSJP has not provided any factual denial of Plaintiffs' allegations. 900 F. Supp. 2d 622, 640 (M.D.N.C. 2012); *see also McLaughlin v. McPhail*, 707 F.2d 800, 806 (4th Cir. 1983) (noting "defendants' affidavits stating that they had not engaged

12

in any of the act[s] enumerated in" long arm statute). Plaintiffs' allegations independently establish NSJP's ties to Virginia. If this Court nevertheless has questions about the sufficiency of those contacts, it should order jurisdictional discovery to further explore those connections.

## IV.   PLAINTIFFS STATE CLAIMS UNDER THE ANTITERRORISM ACT

Just as the Complaint states Antiterrorism Act claims against AMP, WESPAC, and the other defendants, the Complaint also states an Antiterrorism Act claim against NSJP. NSJP merely echoes the same arguments already refuted by Plaintiffs' prior briefs and fails for the same reasons.

As explained in Plaintiffs' Joint Opposition, U.S. Plaintiffs assert their claims under JASTA, 18 U.S.C. § 2333(d), which extends Antiterrorism Act liability to aiders and abettors that have provided material support, directly or indirectly, to terrorist organizations that have attacked the United States or its citizens. (*See* Joint Opp. at 5–6.) NSJP only challenges the third JASTA element, aiding and abetting, which has three components[10]:  (i) the primary actor, such as a foreign terrorist organization like Hamas, must commit a primary violation; (ii) "the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance"; and (iii) "the defendant must knowingly and substantially assist the principal violation." *Twitter v. Taamneh*, 598 U.S. 471, 486 (2023) (quoting *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983)); *see also* 130 Stat. 852, § 2(a)(5) (stating that *Halberstam* "provides the proper legal framework" for analyzing JASTA claims). NSJP argues that JASTA does not create liability for propaganda services, and that Plaintiffs neither allege knowing assistance nor substantial assistance. It is wrong in each instance.

---

[10] NSJP concedes or does not contest the other elements. (NSJP Mem. 28–29.)

**A.  JASTA Creates Liability for Providing Propaganda Services to a Terrorist Organization**

NSJP echoes AMP's flawed argument that their propaganda services for terror groups—dismissed by NSJP as "mere advocacy"—are excluded from JASTA. (NSJP Mem. 29–30; *compare* AMP Mem. 19–20.) This argument falls flat for the same reasons outlined in Plaintiffs' Joint Opposition. (Joint Opp. at 6-9). JASTA extends to ***all*** forms of "substantial assistance," 18 U.S.C. § 2333(d)(2), without restricting liability to certain kinds of support or offering safe harbors for propaganda similar conduct. By JASTA's plain terms, as long as the support is "substantial," the form of that support is irrelevant. Caselaw further confirms that assistance under JASTA need not be tangible; services like banking, project financing, and logistical support have all been recognized as "substantial." *See, e.g.*, *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 849–50, 865–66 (2d Cir. 2021) (banking services); *Boncasa v. Standard Chartered PLC*, 2023 WL 7110774, at *2–*3, *11 (S.D.N.Y. Oct. 27, 2023) (project financing services); *Zobay*, 695 F. Supp. at 314, 349–50 (logistical support).

As *Twitter* also demonstrates, speech alone can aid and abet a terrorist attack. Simply "giving verbal encouragement"—as by "yelling 'Kill him!'"—supports liability. *Twitter*, 598 U.S. at 492; *see also id.* at 490 (noting aiding and abetting "come[s] in many forms, including inducing, encouraging, soliciting, or advising the commission of the offense, such as through words of encouragement or driving the getaway car"). Although *Twitter* did not result in liability due in large part to the platform's "arm's length, passive, and largely indifferent" relationship to the terrorists and the attack at issue, the Court noted that deliberate promotion of a terrorist group's content could indeed incur liability. *Id.* at 500 (stating that liability might well lie if the platform had "***consciously and selectively chose to promote content provided by a particular terrorist group***") *Id.* (emphasis added). This precisely captures NSJP's actions, whose public relations

services help secure financial and political support for Hamas in the United States. (FAC ¶¶ 25–44.)

NSJP is not accused of merely offering "[g]eneralized assistance over time" to Hamas, a defense invented by the defendants without basis. (AMP Mem. 30.) If NSJP is attempting to argue that its activities are "routine services," however, that fails because AMP and NSJP's propaganda services are not routine. *Twitter*, 598 U.S. at 502. AMP and NSJP's activities are tailored, deliberate, and dangerous, offering direct support to Hamas. *See, e.g.*, *Boncasa*, 2023 WL 7110774, at *11 (rejecting routine services argument where bank "carefully tailored financial instruments to fund production of a known IED ingredient to be sold to terrorist groups"). Such targeted and direct propaganda services readily supports liability under the Antiterrorism Act.

**B.    The Complaint Sufficiently Alleges Knowing and Substantial Assistance**

Plaintiffs also plausibly allege that NSJP, under AMP's control, knowingly provided substantial assistance to Hamas. (NSJP Mem. 30–31.) As Plaintiffs have shown, the Complaint alleges in detail that NSJP had a high, culpable level of knowledge (Joint Opp. 11–15) and provided direct and extraordinary assistance to the October 7 attack (Joint Opp. 15–17). With the substantiality and knowledge allegations considered "in tandem," *Twitter*, 598 U.S. at 491, the Complaint alleges such "pervasive and systemic aid" to Hamas that NSJP is liable for all of Hamas's crimes. *Id.* at 506.

1.    The Complaint Alleges a High Level of Knowledge

As explained in Plaintiffs' Joint Opposition, the Complaint alleges the requisite knowledge under a near-common enterprise theory. (Joint Opp. at 11–13.) Hamas's terror crimes are open and notorious. (FAC ¶¶ 19–23.) Were more needed, the Complaint alleges that AMP—which created and controls NSJP—is the reincarnation of adjudicated material support enterprises founded and controlled by senior Hamas leaders. (FAC ¶¶ 25–33.) The leaders of AMP and its defunct

predecessors significantly overlap, including repeat board members. (FAC ¶¶ 34–35.) AMP's leaders and advisors have deep connections to Hamas that they maintain to this day. (FAC ¶¶ 36–44.) Indeed, the connections run so deep that a district court relied on them to sustain a claim that AMP is the alter ego of its predecessors and liable for their unpaid judgments. *See Boim v. Am. Muslims for Palestine*, 2021 WL 1556085, at \*2–\*3 (N.D. Ill. May 17, 2022). AMP therefore knows that Hamas is "involved in some type of [terrorist] crime." *Halberstam*, 705 F.2d at 488. Because NSJP is simply AMP's on-campus brand, NSJP, too, is charged with this knowledge. And although the scope of October 7 was unprecedented, it was plainly—and appallingly—foreseeable that Hamas would once again attack and kill people in Israel.

But even absent a near-common enterprise theory, the Complaint amply alleges that NSJP had a high, culpable level of knowledge, even if it did not know "all particulars of the primary actor's plan." (*See* Joint Opp. 13–15.) Its knowledge is shown in part by its distribution of the "Toolkit," a pro-Hamas propaganda piece, on October 8. (FAC ¶¶ 78–81, 86.) The "Toolkit" touts October 7 as a "***historic win***" and urges the "Palestinian student movement" to "join the call for mass mobilization" issued by Hamas the previous day. (FAC ¶ 79 (emphasis added); *see also* FAC ¶¶ 78–81.) The "Toolkit" further declares that NSJP is "***PART of***" the "***Unity Intifada***" operating under Hamas's "***unified command***." (FAC ¶¶ 83, 84 (emphases added).) NSJP's readiness and lightning response strongly imply foreknowledge. The Toolkit includes a telltale sign that all but confirms it: images of paragliders, which Hamas used on October 7—and which had never been used in ***any*** prior terrorist attack. (FAC ¶ 86.)

NSJP's knowledge is further shown by the striking pattern of post-attack coordination, conducted on social media, between Hamas, AMP, and NSJP to foment disruption on and off campus. (FAC ¶ 102.) The Complaint details numerous instances in which NSJP responded within

*one to two days* of Hamas's calls for assistance across international media by rapidly advertising and conducting a "Week of Action for Gaza," several "Shut it Down for Palestine" campaigns, an activism training session for pro-Palestinian agitators, and a "Global Strike" for Palestine, just to name a few. (*Id.*) The culmination of such support manifested itself in the disruptive and violent encampments, which invaded over 100 campuses across the country, resulting in damage to numerous campus buildings; rampant discrimination against Jewish students; and, in certain instances, a halt to academic studies on campus altogether. (FAC ¶¶ 109–33, 97.)

Taken together, and with all reasonable inferences drawn in Plaintiffs' favor, these allegations strongly suggest that NSJP was aware of the impending attack, prepared targeted propaganda to disseminate on a moment's notice, and promptly sprang into action when the events of October 7 began to unfold. This suffices at the pleading stage. *See Doriety*, 109 F.4th at 679; *Zobay*, 695 F. Supp. 3d at 337 ("A complaint is allowed to contain general allegations as to a defendant's knowledge . . . because a plaintiff realistically cannot be expected to plead a defendant's actual state of mind.").

### 2. The Complaint Alleges Direct and Extraordinary Assistance

The Complaint also plausibly alleges that NSJP "substantially assisted" Hamas's terrorist activities. The actions for which Plaintiffs seek to hold NSJP liable go far beyond "organizing educational events and advocating for Palestinian rights." (NSJP Mem. 31.) The horrors inflicted by Hamas on October 7 were so extreme that they necessitated extensive propaganda and whitewashing to create even a veneer of legitimacy for rallying support and recruiting abroad. As described above and in the Joint Opposition, NSJP willingly provided these propaganda services and rallied support for Hamas before, during, and after the October 7 attacks. (Joint Opp. 15–17; *E.g.*, FAC ¶¶ 62–66, 77–122.) The Complaint therefore alleges direct and extraordinary assistance to the October 7 attack.

17

### C.    JASTA Does Not Require Proximate Causation

NSJP urges that the Complaint does not adequately allege proximate causation. (NSJP Mem. 31–32.) No other defendant has made this argument, and for good reason: proximate cause is not an element of a JASTA claim. As Plaintiffs have explained (*see* Joint Opp. 5–6), a JASTA claim involves several elements, components, and factors, designed to identify "conscious, voluntary, and culpable participation in another's wrongdoing." *Twitter*, 598 U.S. at 493. Traditional proximate cause figures nowhere in the analysis. Instead, the defendant's connection to the misconduct is principally addressed through the requirement that the defendant must provide knowing and substantial assistance. As shown above, that requirement is satisfied here.

NSJP's contrary argument relies mainly on *Owens v. BNP Paribas, S.A.*, 897 F.3d 266 (D.C. Cir. 2018). Properly understood, *Owens* confirms that proximate causation is not an element of a JASTA claim. But the problems with NSJP's reliance on *Owens* go well beyond that. NSJP repeatedly attributes the decision to "the Fourth Circuit," both in text and in the case citation, when it is a decision of the D.C. Circuit. (NSJP Mem. 31–32.) In keeping with the invented citation, NSJP also concocts a fictional quotation from the decision. NSJP writes: "As the Fourth Circuit emphasized in *Owens*, 'foreseeability alone is insufficient to establish proximate cause under the ATA.' 897 F.3d at 273." (NSJP Mem. 32.) But *Owens* does not say that on page 273 or anywhere else. So far as Plaintiffs can discern, no federal court has ever used that exact phrase. This Court should resoundingly reject NSJP's attempt to manufacture binding precedent.

In any event, *Owens* stands for the opposite proposition that NSJP cites it for. *Owens* involved claims of direct and secondary liability, and its proximate cause discussion solely applied to direct liability claims. *Owens*, 897 F.3d at 276. The secondary liability claim failed because, under the pre-JASTA rule that applied to the conduct in *Owens*, there was no secondary liability under the ATA. *See id.* at 278. But *Owens* expressly said that *if* a JASTA claim were available, then

the plaintiff **would not** need to satisfy the elements of a direct liability claim. *Id.* at 276–77 ("If aiding and abetting liability were available under the ATA, BNPP would not need to satisfy any of the ATA's elements to be held liable for Plaintiffs' injuries. Instead, BNPP would be liable for al Qaeda's acts of international terrorism, so long as BNPP 'knowingly and substantially assisted the principal violation' of the ATA by al Qaeda and was 'generally aware' of its role as part of al Qaeda's illegal activities when providing that assistance.").[11]

Accordingly, NSJP's proximate cause argument should be rejected.

## V.      PLAINTIFFS' ALIEN TORT STATUTE CLAIMS MORE THAN MEET THE LEGAL STANDARD

NSJP's attempts to dismiss the Alien Tort Statute claim on both jurisdictional and merits grounds lack merit, and their motion should be denied. (NSJP Mem. 17–28.)

### A.      The Complaint Alleges Facts Supporting Subject Matter Jurisdiction

NSJP first challenges subject matter jurisdiction on the ground that the Complaint supposedly does not allege the violation of actionable international norms. (NSJP Mem. 17–20.) Like its codefendants, NSJP thinks the law of nations **condones** Hamas's atrocities and its extensive support. It is wrong. As shown, the Complaint alleges four distinct actionable norms: genocide, war crimes, harming civilians in terror attacks, and supporting terrorism. (Joint Opp. 25, 29–35.) NSJP is secondarily liable for Hamas's violations of the first three and primarily liable for its own violation of the fourth. NSJP's focus on self-executing treaties and private rights of action is misplaced. Neither is required to evidence an actionable norm. (Joint Opp. 34 (citing *Abelesz v. Magyar Nemzeti Bank*, 692 F.3d 661, 685 (7th Cir. 2012), *Flomo v. Firestone Nat'l Rubber Co., LLC*, 643 F.3d 1013, 1021–22 (7th Cir. 2011), and *Al Shimari v. CACI Premier Tech., Inc.*, 263 F.

---

[11] NSJP's other decision deals with the level of causation required for a primary liability claim under RICO. *See Hemi Grp. v. City of New York*, 559 U.S. 1 (2010). That decision has no bearing on the level of causation required in a secondary liability claim under JASTA.

Supp. 3d 595, 600, 606 (E.D Va. 2017).) NSJP's cases are irrelevant and say nothing about whether the ICSFT evidences an actionable norm in this case. (*See* Joint Opp. 33–34 & n.29.)

NSJP further argues that the Court lacks discretion to recognize Plaintiffs' claims. The Supreme Court expressly held otherwise in *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004), and it has never retreated from that holding. (*See* Joint Opp. 29 & n.20.) The seemingly contrary language NSJP quotes from *Nestle USA, Inc. v. Doe* (NSJP Mem. 20) is an argument made by three Justices in a non-binding plurality opinion, not a holding of the Supreme Court. 593 U.S. 628, 637 (2021) (opinion of Thomas, J., joined by Gorsuch and Kavanagh, JJ.)). The binding majority opinion in *Nestle* rests on extraterritoriality grounds and does not reach the *Sosa* question. *See id.* at 633–34. Because *Nestle* left Sosa undisturbed, lower courts have continued to apply *Sosa* to recognize new causes of action. *See, e.g., Doe I v. Cisco Sys.*, 73 F.4th 700, 717 (9th Cir. 2023), *r'hrg and r'hrg en banc denied*, No. 15-16909 (9th Cir. Sept. 3, 2024) (aiding and abetting). This Court should do the same.

Next, NSJP urges that the Complaint alleges insufficient domestic conduct to support the exercise of jurisdiction. (NSJP Mem. 21–22.) NSJP is wrong. (*See* Joint Opp. 27–28.) Although the Alien Tort Statute does not apply extraterritorially, only the abettor's conduct need be domestic in an aiding and abetting case. *See Cisco*, 73 F.4th at 737 ("[C]onduct within the United States that constitutes aiding and abetting a violation of international law, even if other conduct [i.e., the principal's acts] occurred abroad, is a violation of the law of nations that falls within the focus of the ATS." (alteration in original)); *cf. Nestle*, 593 U.S. at 633–34 (reserving the issue). In *Cisco*, the primary violations were human rights abuses committed in China using Cisco's surveillance technology. 73 F.4th at 708–09. Cisco's conduct was deemed domestic because it designed and developed the technology in California and its domestic employees were heavily involved in

20

maintenance and training. *See id.* at 737–38. In *Al Shimari*, where the primary violation was torture committed in Iraq, the court found sufficient domestic conduct where the defendant was a U.S. company, its employees were U.S. citizens, the company's contract to perform services in Iraq was issued in the United States, and Iraq was effectively under U.S. control. *See Al Shimari*, 684 F. Supp. 3d at 497.

Here, the Complaint alleges extensive domestic conduct. NSJP is a United States organization that acts as AMP's college campus brand. (FAC ¶¶ 11, 61.) Sponsored by WESPAC, NSJP oversees hundreds of local chapters across U.S. college campuses. (FAC ¶¶ 11, 12.) On October 8, the day after Hamas launched its terrorist attack and while Hamas operatives were fanned out over southern Israel, NSJP responded to Hamas's "call for mass mobilization" by disseminating the NSJP Toolkit in the United States. (FAC ¶ 79.) NSJP self-identified as "PART of" Hamas's terrorist activities and directed members and allies "to engage in meaningful actions that go beyond symbolism and rhetoric." (FAC ¶ 90.) This included all potential forms of resistance, including "armed struggle" and violence. That is precisely what ensued. (FAC ¶¶ 97, 98.)

Finally, NSJP argues that claims against unincorporated associations are not cognizable under the Alien Tort Statute. (NSJP Mem. 22–23.) Indeed, NSJP goes so far as to say the Supreme Court's *Jesner* decision already precludes liability as to "corporation or other artificial entities." (NSJP Mem. 22 (quoting *Jesner v. Arab Bank*, 584 U.S. 241, 260, 263 (2018).) NSJP is wrong. NSJP completely misreads *Jesner*, including by again ignoring the binding majority in favor of a non-binding plurality. The *Jesner* majority held only that *foreign* corporations are not subject to liability under the Alien Tort Statute, not all artificial entities. Courts routinely apply the Alien Tort Statute to domestic artificial entities. *See, e.g.*, *Al Shimari*, 684 F. Supp. 3d at 481; *Cisco*, 73 F.4th

at 700.  Moreover, the *Jenser* majority declined to recognize foreign corporate liability under the Alien Tort Statute because of "significant diplomatic tensions" the litigation risked creating. 584 U.S. at 271. That concern is completely absent here. (*See* Joint Opp. 35–36.) This case is about extending civil liability to close allies of Hamas, an enemy of all mankind if ever there was one: its domestic propaganda arm and the driving force behind a group that considers itself part of Hamas. Just weeks ago, the Department of Justice announced charges against the Hamas officials who masterminded the October 7 attacks.[12] NSJP does not even try to argue that this litigation could somehow create diplomatic tensions.

### B.    Plaintiffs State a Claim Against NSJP Under the ATS

Mischaracterizing the allegations of the Complaint, NSJP first briefly argues that Plaintiffs have not stated a claim for "violat[ing] the ICSFT." (NSJP Mem. 23.) Plaintiffs' claim is not that NSJP violated this treaty, but that it is supporting terrorism, violating a norm evidenced by the ICSFT. *See, e.g.*, *Doe I v. Nestle USA, Inc.*, 766 F.3d 1013, 1019 (9th Cir. 2014) (expressing approval for "permit[ing] plaintiffs to pursue ATS claims based on a broad range of misconduct, including . . . supporting terrorism."); *Al Shimari*, 263 F. Supp. 3d at 600 (same). The provisions of the ICSFT plainly evidence the norm of financial support and closely capture NSJP's conduct: NSJP receives funding from its fiscal sponsor, WESPAC, and identifies itself as is "PART of" Hamas.

NSJP's attacks on the merits of the ATS claim fall short. (NSJP Mem. 24–28.) *First*, the Complaint sufficiently alleges that NSJP "provide[d] substantial assistance" to Hamas, the required conduct for aiding and abetting liability. *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 401 (4th Cir.

---

[12] U.S. Attorney's Office for the Southern District of N.Y., "U.S. Attorney Announces Terrorism Charges Against Senior Leaders of Hamas" (Sept. 3, 2024), https://www.justice.gov/usaosdny/pr/us-attorney-announces-terrorism-charges-against-senior-leaders-hamas.

2011). *Aziz* did not define substantial assistance, but as that term has deep common-law roots, the traditional standards applicable to the Antiterrorism Act are equally applicable to the Alien Tort Statute. *See generally Twitter*, 598 U.S. at 471; *Halberstam*, 705 F.2d at 472. Because the conduct supports liability under the Antiterrorism Act, it supports liability under the Alien Tort Statute as well. (Joint Opp. 37, 15–18.)

NSJP incorrectly interprets the law as requiring allegations that a defendant "provide[d] practical assistance to the principal which has a substantial effect on the perpetration of the crime." (NSJP Mem. 24 (quoting *Aziz*, 658 F.3d at 396).) But *Aziz* clearly states that "***we hold that for liability to attach under the ATS for aiding and abetting a violation of international law, a defendant must provide substantial assistance*** with the purpose of facilitating the alleged violation. . . ." 658 F.3d at 401 (emphasis added). NSJP ignores this express holding and instead highlights a portion of the opinion focusing on mental state, which is not relevant to his conduct argument. *See id.* at 396 ("We turn next to the parties' competing contentions as to the applicable mens rea for the claim."). Moreover, the conduct standard it references is from another circuit's formulation, which *Aziz* did not adopt.[13] *See id.* (explaining "***[t]he Second Circuit held*** that 'a defendant may be held liable under international law for aiding and abetting the violation of that law by another when the defendant (1) provides practical assistance to the principal which has a substantial effect on the perpetration of the crime . . .'" (quoting *The Presbyterian Church of Sudan v. Talisman*, 582 F.3d 244, 258 (2d Cir. 2009) (emphasis added)). *Aziz* only requires "substantial assistance," not the additional conduct criteria NSJP suggests. *Id.* at 401.

---

[13] Although a later decision of the Fourth Circuit recites the *Talisman* standard, its discussion is dicta because the decision rests solely on agency law grounds, not the quantum of substantial assistance. *See Est. of Alvarez v. Rockefeller Found.*, 96 F.4th 686, 693, 694–95 (4th Cir. 2024).

*Second*, the Complaint sufficiently alleges the required mental state for aiding and abetting liability. The correct mental state should be knowledge for all Plaintiffs' theories of liability under the ATS. (Joint Opp. 36.) Although *Aziz* adopted a higher "purpose" standard for generic aiding-and-abetting liability, *see* 658 F.3d at 401, that narrow aspect of *Aziz* is incorrect. Contrary to another Defendant's accusations (Bazian Reply 8), Plaintiffs are not inviting the Court to "ignore" the *Aziz* standard but are preserving this argument for potential review by a higher court. The Joint Opposition could not be clearer: "Although Plaintiffs recognize that *Aziz*'s intent holding is binding on the Court, the error requires correction by a higher tribunal." (Joint Opp. 36.) As explained, the Complaint amply alleges that NSJP organization knowingly assisted the October 7 attacks. *Supra* § IV.B.1. The same allegations readily support an inference of purpose.

## VI.   THE FIRST AMENDMENT DOES NOT PROTECT NSJP'S CONDUCT

NSJP's First Amendment argument is meritless. (NSJP Mem. 32–34.) While the Constitution protects wholly independent speech in favor of terrorists, it does not protect providing terrorists with propaganda and recruiting services. In *Holder*, the Supreme Court considered a challenge to a statute barring people from providing "material support" in the form of "training," "expert advice or assistance," "service," and "personnel" to terrorist groups. 561 U.S. at 14 (citing 18 U.S.C. § 2339B). Petitioners claimed it would violate the First Amendment to apply the statute to speech that would "advance only the legitimate activities of the designated terrorist organizations, not the terrorism." *Id.* at 29. The Supreme Court rejected the argument, as any support to a terrorist organization can advance terrorism by "free[ing] up other resources within the organization that may be put to violent ends." *Id.* at 30; *see also id.* at 32 n.6 (explaining that speech-related services "facilitate[] the group's ability to attract 'funds,' 'financing,' and 'goods' that will further its terrorist acts").

Under *Holder*, the First Amendment does not protect "expressive activity that amounts to the provision of material support to a foreign terrorist organization where the support is either addressed to, directed by, or coordinated with that organization." *United States. v. Osadzinski*, 97 F.4th 484, 492 (7th Cir. 2024). In *Osadzinski*, the Seventh Circuit rejected a First Amendment challenge to a conviction for sharing a propaganda-duplicating computer program because the defendant believed he was giving it to ISIS affiliates. *See id.* at 486, 492; *see also United States v. Rahim*, 860 F. App'x 47, 52–53 (5th Cir. 2021) (unpublished) (rejecting challenge where defendant's "devotion to carrying out ISIS propaganda and its recruiting agenda was not that of a mere sympathizer" and "permitted the growth of a community of ISIS followers, allowing them to mobilize and make the leap from talk to action"). NSJP is not being sued for its advocacy or its writings but for actively engaging in pro-Hamas propaganda and recruiting services to provide public relations services for Hamas. It's not speech—it's a service.

The cases cited by NSJP are irrelevant as they do not involve the provision of coordinated public relations services to a terrorist organization. (NSJP Mem. 32–34.) NSJP selectively quotes from *In re Terrorist Attacks on September 11, 2001*, in an attempt to legitimize its coordinated support of Hamas. (NSJP Mem. 33.) But NSJP conveniently omits the very next sentence, which recognizes the clear distinction between "engag[ing] in ***independent*** advocacy as a means to sway others into adopting one's terrorist point of view," on one hand, and providing "services . . . as support to a foreign terrorist organization[]" on the other. *In re Terrorist Attacks on September 11, 2001*, 740 F. Supp. 2d 494, 519 (S.D.N.Y. 2010) (emphasis added). This case is not about offensive speech or racial justice. It concerns public relations services "addressed to, directed by, or coordinated by" Hamas, a terrorist organization, which the First Amendment does not shield. *Osadzinski*, 97 F.4th at 492.

## VII.   THE COURT SHOULD DENY NSJP'S IMPROPER MOTION TO STRIKE

NSJP's attempt to rewrite the Complaint in its favor through a motion to strike is not only an abuse of legal procedure, but a clear indication of its desperation to suppress facts. Motions to strike "are generally viewed with disfavor because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." *Waste Mgmt. Holdings v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001).[14] And here, NSJP's bases for striking Plaintiffs' allegations are so lacking that this "is a prime example of a situation where a defendant files a motion to strike as a dilatory tactic to delay resolution of the merits of a case, waste judicial resources, and increase the costs of litigation on the opposing side." *See Scherer v. Steel Creek Prop. Owners Ass'n,*, 2014 WL 813824, at *1 (W.D.N.C. Mar. 3, 2014). The Court should deny NSJP's Motion to Strike on this basis alone.

Denial of the motion is further warranted because NSJP fails to show that any of its challenged allegations either "have no possible relation or logical connection to the subject matter of the controversy" or would "cause some form of *significant* prejudice to" NSJP. *See Telecomm. Sys.*, 2009 WL 10690034, at *5 (emphasis added).[15] NSJP's bases for striking Plaintiffs' allegations generally fall into three categories: (1) allegations that are allegedly unsupported by the cited sources; (2) allegations that are allegedly irrelevant or immaterial to Plaintiffs' causes of

---

[14] *See also Telecomm. Sys. v. Sybase 365*, 2009 WL 10690034, at *5 (E.D. Va. Nov. 17, 2009) (motions to strike should be denied "unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action"); *Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc.*, 227 F. App'x 239, 247 (4th Cir. 2007) (motions to strike are "granted infrequently").

[15] Plaintiffs need not rebut each of NSJP's frivolous bases for striking Plaintiffs' well-pleaded allegations to sufficiently show NSJP's Motion to Strike should be denied. Nevertheless, for the Court's reference, Plaintiffs attach an Appendix mirroring NSJP's Attorney Affirmation of Abdel-Rahman Hamed, Esq. ("Hamed Aff.") with a response to each of NSJP's claimed bases for striking.

action; and (3) allegations that are allegedly prejudicial to NSJP. But each of these allegations are not only relevant and grounded in fact, but they are also critical to exposing NSJP's misconduct. The Court should reject the Motion to Strike in its entirety.

### A.    Plaintiffs' allegations are supported by the sources cited.

NSJP attempts to undermine Plaintiffs' allegations by claiming they lack support from the cited sources, but this misinterprets the intent of the citations. For example, NSJP challenges Paragraph 73 of the Complaint, which states that Hamas uses propaganda to cast Israel as an apartheid and genocidal state. (*See* Hamed Aff. at 2.) NSJP contends the source "does not say that either accusation is 'objectively false'" and offers additional details regarding Israel's policies toward Arabs in Israel. (*Id.*) Plaintiffs, however, are not required to cite a source for every statement in the Complaint. *See* Fed. R. Civ. P. 8(a)(2) (requiring only "a short and plain statement of the claim showing that the pleader is entitled to relief"). The cited source here was also solely intended to bolster the statement in footnote 58 about the Muslim population in Israel, which is indeed supported by the source noting, "about 21 percent of Israel's population is Arab, totaling some two million people. All are citizens of Israel[,] . . . [and] [t]he majority of Arab citizens are Sunni Muslims."[16]

NSJP also appears to deliberately misrepresent the contents of Plaintiffs' cited sources. For example, NSJP claims that the source backing allegations in Paragraph 97(h) about a violent protest at the University of Michigan—where SJP members broke into buildings and assaulted police officers—"does not even mention SJP." (Hamed Aff. at 4.) Yet the source confirms that the protest was organized by University of Michigan Students Allied for Freedom and Equality

---

[16] Kali Robinson, *What to Know About the Arab Citizens of Israel*, COUNCIL ON FOREIGN RELATIONS (Oct. 26, 2023), https://www.cfr.org/backgrounder/what-know-about-arab-citizens-israel.

(SAFE) which, according to its official student organization webpage, "is a Palestinian solidarity organization and the Students for Justice in Palestine (SJP) chapter at the University of Michigan."[17] Other times NSJP merely disagrees with how the information in the cited sources is presented, far from the rigorous standard required to strike allegations in a pleading. For instance, NSJP claims that its Toolkit "does not call for armed struggle in the United States nor by NSJP members." (Hamed Aff. at 2.) Yet the Toolkit explicitly "calls upon *us*," meaning NSJP and its members, "to engage in meaningful actions that go beyond symbolism and rhetoric," and states that "[r]esistance comes in all forms—*armed struggle*, general strikes, and popular demonstrations." ECF No. 24-1 at 5 (emphasis added). Plainly, "armed struggle" is part of the "resistance" that the Toolkit seeks to train NSJP members on.

NSJP likewise disputes whether a source supports the allegation that Brandeis SJP students threatened a Rabbi. The cited op-ed illustrates that after SJP took to social media to denounce him as "racist," "dehumanizing," and "divisive," local law enforcement assigned him personal security in fear for his safety. (FAC. n. 90.) NSJP's added quote from the SJP social media post is not quoted in the cited sources or the Complaint and is therefore beyond the scope of the pleadings. (Hamed Aff. at 4.)

### B. Plaintiffs' allegations are relevant and material to Plaintiffs' causes of action.

NSJP's efforts to strike certain allegations from the Complaint because they are "irrelevant" or "immaterial" is similarly unfounded. (Hamed Aff. at 5–8.) NSJP fails to show that any of Plaintiffs allegations are irrelevant or immaterial at all, let alone enough to warrant striking. *See* FED. R. EVID. 401 (an allegation is considered relevant if "it has any tendency to make a fact more or less probable" and "the fact is of consequence in determining the action"); *United States*

---

[17] *Students Allied for Freedom and Equality – MAIZE PAGES*, UMICH.EDU (last visited November 12, 2024), https://maizepages.umich.edu/organization/safeumich.

*v. Powers*, 59 F.3d 1460, 1465 (4th Cir. 1995) (noting that the "threshold for relevancy is relatively low"). For example, the assertion that NSJP and its members aimed to create chaos, fear, and terror throughout the United States is relevant because it speaks directly to their role in aiding and abetting Hamas by spreading its terroristic propaganda through violent protests across the country. (Hamed Aff. at 6.) Similarly, allegations of support from entities like Hamas and Iran emphasize coordination with terrorist activities, which is central to Plaintiffs' claims. (*Id.* at 5, 7.) Put simply, NSJP cannot demonstrate that anything in the Complaint fails to meet the "relatively low" bar of relevance such that the allegation should be stricken. *See Powers*, 59 F.3d at 1465.

### C.   Plaintiffs' allegations do not significantly prejudice NSJP.

Finally, NSJP argues that some allegations are prejudicial enough to be struck from the Complaint. (Hamed Aff. at 5-8.) But to warrant such a severe sanction, allegedly prejudicial allegations must "cause some form of *significant* prejudice to one or more of the parties to the action." *Telecomm. Sys.*, 2009 WL 10690034, at *5 (emphasis added). Allegations that merely portray the defendant "in a negative light" do not meet this high bar, particularly when it is the plaintiff's "substantive allegations of unlawful behavior that do so, not allegations that are redundant, immaterial, impertinent, or scandalous." *Doe v. Natraj Enters., Inc.*, 2021 WL 3190386, at *4 (D.S.C. July 28, 2021). "Such is the nature of litigation." *Id.* NSJP fails to meet this high showing for prejudice.

For example, allegations that NSJP stoked violence to "'force' American institutions to bend to Hamas and its will," and that those actions were supported by Hamas (Hamed Aff. at 5), are well-documented in the Complaint, particularly through NSJP's own Toolkit. In the Toolkit, NSJP describes in detail its plans to carry out Hamas's will and sets forth a framework for recruiting students to engage in violent acts of resistance by "any means necessary," including "armed struggle." (FAC ¶¶ 81–82.) NSJP also declared itself as "PART of" Hamas's "resistance"

movement (FAC ¶¶ 83–84), which included partaking in the IRGC-orchestrated "Strike4Gaza." (FAC ¶¶ 103–08.) NSJP simply cannot be prejudiced by statements made in a document it distributed widely within NSJP, and therefore NSJP cannot claim significant prejudice over its contents. *See Natraj Enters.*, 2009 WL 10690034, at \*5.

***

Plaintiffs' allegations not only are backed by the cited sources and relevant to the case but also do not cause substantial prejudice to NSJP. Because NSJP fails to meet the stringent standard necessary to strike certain statements in the Complaint, the Motion to Strike should be denied. *Telecomm. Sys.*, 2009 U.S. Dist. LEXIS 145472, at \*13.

**CONCLUSION**

The Complaint thoroughly details NSJP's deliberate aid to the horrific terror attacks on October 7, 2023. Under well-established legal principles, NSJP is liable to Plaintiffs for supporting Hamas's crimes. NSJP also fails to satisfy the strict criteria necessary for a motion to strike, which demands proof that allegations lack any logical connection to the case and cause substantial prejudice to a party. The Court should therefore deny NSJP's motions to dismiss and strike in their entirety.[18]

Date: November 12, 2024                    Respectfully submitted,

*Counsel for Plaintiffs Maya Parizer, Ariel Ein-Gal, Hagar Almog, Adin Gess, Noach Newman, Natalie Sanandaji, Yoni Diller, David Bromberg, and Lior Bar Or*

By:      */s/ Jason Torchinsky*
        Jason Torchinsky

---

[18] In the alternative, Plaintiffs respectfully request leave to amend. (Joint Opp. 39.)

**GREENBERG TRAURIG, LLP**
SCOTT BORNSTEIN*
bornsteins@gtlaw.com
RICHARD EDLIN*
edlinr@gtlaw.com
RICHARD
ROSENBAUM*
rosenbaumr@gtlaw.com
HAL SHAFTEL*
shaftelh@gtlaw.com
One Vanderbilt Avenue
New York, New York 10017
T. 212.801.9200

**GREENBERG TRAURIG, P.A.**
BRADFORD KAUFMAN*
kaufmanb@gtlaw.com
777 South Flagler Drive
Suite 300
East West Palm Beach,
Florida 33401
T. 561.650.7900
ZACHARY NEEDELL*
zachary.needell@gtlaw.com
401 East Las Olas
Boulevard, Suite 2000
Fort Lauderdale, Florida
33301
T. 954.765.0500

**LAW OFFICES OF
DAVID SCHOEN**
DAVID SCHOEN*
schoenlawfirm@gmail.com
2800 Zelda Road, Suite 100-6
Montgomery, Alabama 36106
T. 334.395.6611

**HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK, PLLC**
JASON TORCHINSKY
Va. Bar No. 47481
jtorchinsky@holtzmanvogel.com
JONATHAN FAHEY
Va. Bar No. 44854
jfahey@holtzmanvogel.com
ERIELLE DAVIDSON*
edavidson@holtzmanvogel.com
2300 N. Street NW, Suite 643
Washington D.C. 20037
PHILLIP GORDON
Va. Bar No. 95621
pgordon@holtzmanvogel.com
JOHN CYCON
Va. Bar No. 100104
jcycon@holtzmanvogel.com
DANIEL BRUCE
Va. Bar No. 98120
dbruce@holtzmanvogel.com
15405 John Marshall Hwy
Haymarket, VA 20169
T. 202.737.8808

**NATIONAL JEWISH ADVOCACY
CENTER**
MARK GOLDFEDER*
mark@jewishadvocacycenter.org
BEN SCHLAGER*
ben@jewishadvocacycenter.org
ANAT BECK*
Anat@jewishadvocacycenter.org
National Jewish Advocacy Center, Inc.
International Legal Forum
1718 General George Patton Drive
Brentwood, TN 37027
T. (800) 269-9895

*Admitted Pro Hac Vice*

<u>**Certificate of Service**</u>

I hereby certify that on November 12, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Jason Torchinsky*
JASON TORCHINSKY
Va. Bar No. 47481
**HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK, PLLC**
2300 N. Street NW, Suite 643
Washington D.C. 20037
T. 202.737.8808
jtorchinsky@holtzmanvogel.com
*Counsel for Plaintiffs*
