IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| MAYA PARIZER, *et al.*, <br><br> PLAINTIFFS, <br><br> v. <br><br> AJP EDUCATIONAL FOUNDATION, INC. a/k/a AMERICAN MUSLIMS FOR PALESTINE, *et al.*, <br><br> DEFENDANTS. | CASE NO. 1:24-cv-00724-RDA-IDD |

**REPLY TO PLAINTIFFS' RESPONSE TO
AMP'S PRAECIPE WITH SUPPLEMENTAL AUTHORITY**

Defendant AJP Educational Foundation, Inc., a/k/a American Muslims for Palestine ("AMP") respectfully replies to Plaintiffs' Response to Defendant AMP's Praecipe with Supplemental Authority. *See* Opp to Praecipe, ECF No. 149.

*Jan* strongly supports dismissal of the Amended Complaint on two independent grounds: the lack of knowingly providing substantial assistance to a crime (under a more liberal standard in the Ninth Circuit than applicable here), and on First Amendment grounds. *Jan v. People Media Proj.*, No. 3:24-cv-05553-TMC, 2025 U.S. Dist. LEXIS 18021 (W.D. Wash. Jan. 31, 2025). If a media outlet that directly pays a Hamas operative while that operative holds an Israeli hostage, for the operative to write incendiary articles extolling Hamas operatives as martyrs and heroes, does not violate the Alien Tort Statute and warrants protection under the First Amendment, then American Muslims of Palestine's legal domestic advocacy cannot violate the Alien Tort Statute and also warrants protection under the First Amendment. *See* Am. Compl. at ¶ 102(b), ECF No. 24. Incapable of distinguishing the loss in *Jan*, Plaintiffs' counsel resorts instead to distorting it.

1

In *Jan*, Plaintiff Jan failed to plausibly allege that the People Media Project "consciously and culpably participated in the tort at issue." *Id.* at *24 (citing *Twitter v. Taamneh*, 598 U.S. 471 at 488, 506 (2023)). At minimum, for a claim under the ATS for aiding and abetting to succeed under the authority of *Jan*, a plaintiff must show that "a defendant must have aided and abetted (by knowingly providing substantial assistance) another person in the commission of an actionable wrong – here, an act of international terrorism." Id. at *19 (citing *Twitter*, 598 U.S. at 495) (emphasis added). Furthermore, mere publication Pro-Palestinian articles, even if inaccurate and incendiary, constitutes political speech protected by the First Amendment. *Id.* at 25-33. The same reasoning applied in *Jan* warrants dismissal of Plaintiffs' claims under the ATS in this case.

Nothing in the Amended Complaint supports the late-breaking assertion in Plaintiffs' last argument that AMP advocated for the purpose of coordinating and conducting the October 7 attack. The *Jan* court itself relied on Ninth Circuit precedent that Plaintiffs previously cited, as a more generous standard than that of the Fourth Circuit. In the Fourth Circuit, a defendant must (1) provide "practical assistance to the principal which has a substantial effect on the perpetration of the crime," and (2) do so "with the purpose of facilitating the commission of that crime." *Est. of Alvarez v. Rockefeller Found.*, 96 F.4th 686, 693 (4th Cir. 2024) (quoting *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 398 (4th Cir. 2011)). While knowledge of a crime in *Jan* might have been enough, in the Fourth Circuit assistance must have a substantial effect on the crime and be <u>for the purpose</u> of committing the crime. Plaintiffs fail to allege either here.

Plaintiffs' response that their allegations are "far more robust that in *Jan"* is a false, conclusory statement. *See* Opp. to Praecipe at 2 (citing Joint Opposition at 11-15). In *Jan*, the plaintiff's allegations that "…because Aljamal has served at some point as a spokesperson for the Hamas-run Ministry of Labor in Gaza, and he and Defendant Baroud were from the same Gaza

2

town, Defendants knew or should have known that Hamas operative Aljamal was an operative and official spokesperson for Hamas" did not meet the *mens rea* standard for liability under the ATS. *Jan*, at *23. Because the complaint in *Jan* lacked specific, concrete facts supporting actual knowledge, the Court correctly dismissed plaintiff's case.

Here, Plaintiffs make even weaker allegations. Plaintiffs merely state that "Hamas's terror crimes are open and notorious … the leaders of AMP and its defunct predecessors significantly overlap … AMP therefore knows that Hamas is involved in some type of terrorist crime." Joint Opposition at 11. They go on to reference alleged "post-attack" coordination between Hamas and AMP (despite alleging no actual contact), as if somehow that is retroactively relevant to their ATS claim that AMP's advocacy makes it liable for conducting the October 7 attack. *Id.* at 14. At most, Plaintiffs seek to trick the Court into applying a negligence or "should have known" standard to this case, which would require ignoring the binding precedent set by the Fourth Circuit as well as the Supreme Court in *Twitter*. But Plaintiffs do not meet even this lower standard; providing a laundry list of political advocacy with which Plaintiffs disagree, and then shouting "terrorist," cannot form the basis for any claim. None of the advocacy cited approaches the level of calling Hamas terrorists martyrs and heroes as alleged in *Jan*. Contrary to Plaintiffs' response, Plaintiffs have not and cannot allege facts supporting their current argument that AMP engaged in advocacy that substantially assisted and was for the specific purpose of coordinating and perpetuating the October 7 attack. As such, pursuant to *Jan* and the binding authority of *Estate of Alvarez* and *Aziz* (cited in AMP's previous filings), the Court must dismiss Plaintiffs' ATS claims.

More importantly, *Jan* confirms AMP's advocacy as protected by the First Amendment. "The Free Speech Clause of the First Amendment—'Congress shall make no law . . . abridging the freedom of speech'—can serve as a defense in . . . tort suits." *Snyder v. Phelps*, 562 U.S. 443, 451

3

(2011)."The Constitution distinguishes between supporting the political goals of an organization—even a violent one—and either inciting imminent unlawful conduct or using speech for management of actual crimes. *Jan*, at *29 (quoting *Sexual Minorities Uganda v. Lively*, 960 F. Supp. 2d 304, 329 (D. Mass. 2013)). In *Jan,* People Media Project paid the Hamas operative to write articles that called October 7 a "daring attack," spread misinformation about Israeli attacks on Palestine, and eulogized those with extensive ties to Hamas. *Id.* at 30. The Court confirmed that such articles constituted free speech protected from lawsuits, unless those articles were meant to precipitate the illegal activity:

> The terrorist attacks on October 7, and Israel's military response, are subjects of extensive news interest and political concern to the global community. The articles Defendants publish in the Palestine Chronicle are intended to convey their 'position on those issues, in a manner designed . . . to reach as broad a public audience as possible.' [citing *Snyder* at 454]. Many of the positions taken by the Chronicle, such as highlighting the deaths of Palestinian civilians and criticizing Israeli airstrikes, have been echoed by countless news organizations, protesters, and political leaders around the world. These articles do not cross the line from protected speech to inciting or preparing for unlawful activity.

*Id.* at 31.

Like in *Jan,* Plaintiffs' lawfare attempts to shut down the viewpoints of those who believe Israel's killing of over 50,000 Palestinians is wrong. *See* Hadeel Al-Shalchi and Daniel Estrin, *Palestinian Deaths In Gaza Rise Above 50,000 As Israel Expands Its Military Campaign*, National Public Radio (March 23, 2025), https://www.npr.org/2025/03/23/nx-s1-5337938/palestinian-deaths-gaza-israel. Allegedly organizing the National March on Washington, advertising that members sign up for training session known as "Campus Activism Track," or encouraging lawful student protests did not provide substantial assistance to and was not done for the purpose of coordinating and committing the October 7 attacks in advance. Am. Compl. at ¶¶ 102(b),(c),(e). If the First Amendment protects the KKK's advocacy for potential violence against African-

4

Americans and Jews, and protects protestors celebrating the death of American soldiers at military funerals, it certainly protects AMP's lawful criticism of Israel. *See Brandenburg v. Ohio*, 395 U.S. 444 (1969), and *Snyder,* 562 U.S. 443 (2011), respectively, and discussed in *Jan* at *28-29.

The *Jan* decision confirms the paramount First Amendment principles that apply here; this case should be dismissed.

DATED: April 4, 2025.                           Respectfully Submitted,

/s/ George R. A. Doumar
George R.A. Doumar, Va. Bar No. 26490
Doumar Martin PLLC
1530 Wilson Boulevard, Suite 1060
Arlington, Virginia 22209
Tel: 703-243-3737
Fax: 703-524-7610
gdoumar@doumarmartin.com

/s/ Christina A. Jump
Christina A. Jump
(*pro hac vice*)
Samira S. Elhosary
(*pro hac vice*)
Constitutional Law Center
for Muslims in America
100 N. Central Expy. Suite 1010
Richardson, Texas 75080
Tel: (972) 914-2507
Fax: (972) 692-7454
cjump@clcma.org
selhosary@clcma.org

COUNSEL FOR DEFENDANT
AJP EDUCATIONAL FOUNDATION, INC.
a/k/a AMERICAN MUSLIMS FOR PALESTINE

## CERTIFICATE OF SERVICE

I certify that on April 4, 2025, I served this motion via the ECF system to all Plaintiffs' counsel of record.

/s/ George R. A. Doumar

George R.A. Doumar, Va. Bar No. 26490
Doumar Martin PLLC
1530 Wilson Boulevard, Suite 1060
Arlington, Virginia 22209
Tel: 703-243-3737
Fax: 703-524-7610
gdoumar@doumarmartin.com

COUNSEL FOR DEFENDANT
AJP EDUCATIONAL FOUNDATION, INC.
a/k/a AMERICAN MUSLIMS FOR PALESTINE